IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VINCENT SORACE, JOSEPH YERTY, TAMMY YERTY, JAMES ZARONSKY, LINDA ZARONSKY, VIKTOR STEVENSON, ASHLEY YATES, and KIMBERLY SOLOMON-ROBINSON, individually and on behalf of a class of similarly situated persons,

Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

Defendant.

CIVIL ACTION

No. 2:20-CV-4318

**BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR REMAND**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................iii

I. STATEMENT OF FACTS....................1

II. STANDARD OF REVIEW....................2

III. LAW AND ARGUMENT....................2

1. Plaintiffs' Complaint does not allege any particularized and concrete injury-in-fact or make any other allegations that provide a basis for Article III standing and Federal jurisdiction....................2

2. Plaintiffs may limit the types of damages requested and by doing so are not attempting to legally bind putative class members to limit their damages....................19

3. Defendant has not met its burden of showing that the CAFA jurisdictional requirements have been met. Jurisdictional discovery requested....................21

4. A jurisdictional analysis under CAFA is not required, however if such an analysis is performed in this case, then jurisdictional discovery is warranted and requested......22

IV. CONCLUSION AND RELIEF REQUESTED....................23

**TABLE OF AUTHORITIES**

*Abraham v. St. Croix Renaissance Grp., L.L.L.P,*
719 F.3d 270 (3d Cir. 2013)....................22

*Anthony v. Small Tube Mfg. Corp.,*
535 F.Supp.2d 506, 512 (E.D. Pa. 2007)....................23

*Barnes v. ARYZTA, LLC,*
288 F. Supp. 3d 834 (N.D. Ill. 2017)....................14

*Chakejian v. Equifax Info. Servs. LLC.,*
256 F.R.D. 492 (E.D. Pa. 2009)....................20

*Cosgrove v. Citizens Automobile Finance, Inc.,*
2010 WL 3370760 (E.D. Pa. 2010)....................16

*Cottle v. Monitech, Inc.,*
2017 WL 6519024 (E.D.N.C. 2017).................... 15, fn. 5

*Erie Ins. Exch. v. Erie Indem. Co.,*
722 F.3d 154 (3d Cir. 2013)....................22

*Frank v. Gaos,*
139 S.Ct. 1041 (2019)....................2

*Frederico v. Home Depot,*
507 F.3d 188 (3rd Cir. 2007)....................2

*Greenberg v. Digital Media Sols. LLC.,*
2019 WL 1986758 (N.D. Cal. May 1, 2019)....................13, fn. 3

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.,*
846 F.3d 625 (3d Cir. 2017)....................4

*Jamison v. Bank of Am., N.A.,*
194 F.Supp.3d 1022 (E.D. Cal. 2016)....................16, fn. 5

*Judon v. Travelers Prop. Cas. Co. of Am.,*
773 F.3d 495 (3d Cir. 2014)....................2

*Kamal v. J. Crew Grp., Inc.,*
2017 WL 2587617 (D.N.J. June 14, 2017)....................8, fn. 1

*Kamal v. J. Crew Group, Inc.,*
918 F.3d 102 (3d Cir. 2019)....................passim

*Katz v. Six Flags Great Adventure, LLC.*,
2018 WL 3831337 (N.J. Dist. Ct. 2018) ....................................................9

*Kelen v. Nordstrom, Inc.*,
259 F.Supp.3d 75 (S.D.N.Y. 2016) ..............................................16, fn. 5

*Krahling v. Merck & Co.*,
44 F. Supp. 3d 581, 603 (E.D. Pa. 2014)...............................................6, 24

*Krantz v. Peerless Indem. Ins. Co.*,
2019 WL 1123150 (E.D. Pa. Mar. 12, 2019) ...............................................2

*Langer v. Capital One Auto Fin.*,
2019 WL 299620 (E.D. Pa. Jan 23, 2019) ................................16, 17, 18

*LaPierre ex rel. Yorktown v. DiBartolo*,
2013 WL 656313 (S.D.N.Y. Feb. 21, 2013) ................................13, fn. 3

*Lockerty v. Phillips*,
319 U.S. 182, 63 S. Ct. 1019, 87 L. Ed. 1339 (1943) ...................12, fn. 2

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..........................................................................4

*Mangini v. R.J. Reynolds Tobacco Co.*,
793 F.Supp. 925 (N.D.Cal.1992) ..............................................................13

*McGovern v. U.S. Bank N.A.*,
362 F. Supp. 3d 850 (S.D. Cal. 2019) ..........................................13, fn. 3

*McNutt v. General Motors Acceptance Corp. of Ind.*,
298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)...................................11

*Neal v. Volvo Cars of N. Am., LLC.*,
794 F.3d 353 (3d Cir. 2015) ..................................................................2

*Pozzuolo v. Portfolio Recovery Assocs., LLC.*,
371 F. Supp. 3d 217 (E.D. Pa. 2019) ........................................9, 10, 15

*Ramirez v. Vintage Pharm., LLC.*,
2016 WL 9131969 (E.D. Pa. Sept. 21, 2016) ...........................................11

*In re Randolph*,
2012 WL 170746 (E.D. Pa. Jan. 19, 2012) ..................................12, fn. 2

*Robainas v. Metro. Life Ins.*,
2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) ....................................13, fn. 3

*Robins v. Spokeo, Inc.*,
742 F.3d 409 (9th Cir. 2014) ....................................................5

*Robins v. Spokeo, Inc.* (Spokeo II),
867 F.3d 1108 (9th Cir. 2017) ....................................................passim

*Ross v. AXA Equitable Life Ins. Co.*,
115 F. Supp.3d 424 (S.D.N.Y. 2015) ....................................................12, 13

*Samuel–Bassett v. Kia Motors Am.*,
357 F.3d 392 (3d Cir. 2004) ....................................................2, 4, 24

*Schwartz v. HSBC Bank USA*, N.A.,
2017 WL 95118 (S.D.N.Y. 2017) ....................................................15, fn. 4

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ....................................................2

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2016) ....................................................passim

*Standard Fire Ins. Co. v. Knowles,*
568 U.S. 588 (2013) ....................................................3, 7, 11, 19

*Strubel v. Community Bank,*
842 F.3d 181 (2d Cir. 2016) ....................................................6

*Thorne v. Pep Boys - Manny, Moe & Jack Inc.*,
397 F. Supp. 3d 657 (E.D. Pa. 2019) ....................................................11

*Woturski v Federal Warranty Service Corp.*,
2018 WL 1399303 (N.J. Dist. Ct., 2018) ....................................................5

**Constitution**

U.S. Const. Art. III....................................................passim

U.S. Const. Art. III, § 1, § 2, cl. 1....................................................12

**Statutes**

12 Pa.C.S.A. §6201....................................................1

13 Pa.C.S. §9601....................................................1

13 Pa.C.S. §9610 ........ 14

13 Pa.C.S. §9614 ........ 14

13 Pa.C.S. §9614(1)(i) ........ 15, fn. 4

13 Pa.C.S. §9615 ........ 14

13 Pa.C.S. §9623 ........ 14

13 Pa. C.S.A. §9625 ........ 2, 3, 14

13 Pa. C.S.A. §9625(a) ........ 17

13 Pa.C.S.A. §9625(b) ........ 17, 21

13 Pa.C.S. §9625(c)(2) ........ 3, 17, 21

13 Pa.C.S.A. §9625(e)(5) ........ 17

13 Pa.C.S.A. §9625, Cmt. 4 ........ 3, 21

15 U.S.C. §1692(g)(b) ........ 9, 10

28 U.S.C. §1332(d) ........ 2

**Rules**

Fed.R.Civ.P. 8(a)(1) ........ 4, 11

Fed.R.Civ.P. 12(b)(1) ........ 7

NOW COME the Representative Plaintiffs, Vincent Sorace, Joseph and Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson (collectively known as "Plaintiffs"), by and through their Attorney, who submit this Brief in Support of their Motion for Remand as follows:

## I. STATEMENT OF FACTS

On July 7, 2020, Plaintiffs filed a Class Action Complaint against Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") in the Court of Common Pleas of Philadelphia County. The Complaint alleges that Wells Fargo violated Pennsylvania's Commercial Code ("UCC"), 13 Pa.C.S.A. §9601 *et seq.*, independently, and in *pari materia* with Pennsylvania's Motor Vehicle Sales and Financing Act ("MVSFA"), 12 Pa.C.S.A. §§6201, *et seq.*, relating to statutory procedural requirements for a Post-Repossession Consumer Disclosure Notice ("Notice of Repossession") that must be sent after a vehicle is repossessed but prior to the disposition (sale) of the repossessed vehicle. The Complaint also alleges failure to follow statutory procedural requirements for the Post-Sale Notice.

Plaintiffs' complaint alleges, *inter alia*: (1) that the Notices of Repossession failed to accurately disclose the intended method of disposition (i.e. the Notices stated the sale would be private when the sale was actually public and therefore the notice also lacked required information regarding the date and time of the public sale); (2) that the Notices of Repossession failed to inform debtors of various (unincurred, therefore, illegal) fees that the Defendant (or its third party agent) would assess as a precondition to redemption or reinstatement; (3) that the Notices of Repossession failed to accurately disclose the proper redemption period; (4) that the Notices of Repossession failed to accurately disclose the debtors rights to redemption and reinstatement by including conflicting and confusing statements about those rights; (5) that the Defendant failed to send Post-Sale Notices by registered or certified mail as required, and lastly, that the Defendant did not send

separately addressed Post-Sale Notices to co-obligors, as required. Complaint, ¶¶41-55. In addition, Plaintiffs challenge Defendant's use of unlicensed repossession brokers. *Id.* at ¶¶56-62.

The Complaint seeks minimum ***statutory damages only*** for the violations of the UCC, independently, and the UCC and MVSFA in *pari materia*. (*Id.*, ¶¶88-92). Comment 4 to 13 Pa.C.S.A. §9625 states that statutory minimum damages are intended to establish a secured party's liability for violations of, *inter alia*, the notice provisions in consumer goods transactions ***even where the borrower suffers no injury***. Official Comments to 13 Pa.C.S.A. §9625.

On September 2, 2020, Defendant removed the case to pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §1332(d)(ECF 1, Notice of Removal).

## II. STANDARD OF REVIEW

As the removing party, Defendant Wells Fargo bears the burden of showing that the case is properly before the federal court. *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014); *Frederico v. Home Depot*, 507 F.3d 188, 193 (3rd Cir. 2007). ***Any doubts must be resolved in favor of remand.*** *Samuel–Bassett v. Kia Motors Am.*, 357 F.3d 392, 398 (3d Cir. 2004)(emphasis added); *Krantz v. Peerless Indem. Ins. Co.*, 2019 WL 1123150, at *5 (E.D. Pa. Mar. 12, 2019). "[F]ederal courts lack jurisdiction if no named plaintiff has standing." *Frank v. Gaos*, 139 S.Ct. 1041, 1046 (2019)(citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n. 20 (1976); *Neal v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d Cir. 2015).

## III. LAW AND ARGUMENT

### 1. Plaintiffs' Complaint does not allege any particularized and concrete injury-in-fact or make any other allegations that provide a basis for Article III standing and Federal jurisdiction.

The Plaintiffs have properly plead, in clear and specific verbiage, that their intent is to limit their respective recovery to minimum statutory damages for statutory violations not involving actual harm or a material risk of actual harm, and to litigate these state-law claims in their chosen

state-court forum. The UCC statute at issue makes clear that no harm needs to be pled or proved to establish liability and minimum statutory damages. In this connection, the Complaint explains, in pertinent part, as follows:

> 13. As masters of their complaint, Plaintiffs are permitted to craft their complaint to avoid federal jurisdiction. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013). This complaint is crafted to comply with the Pennsylvania Rules of Civil Procedure. ***They do not and are not intended to satisfy the Federal Court jurisdiction and pleading requirements***." Complaint, ¶13 (emphasis added).
>
> 14. As said masters of their complaint, Plaintiffs explicitly and intentionally ***limit*** their relief to statutory minimum damages pursuant to 13 Pa.C.S. §9625(c)(2) which expressly permits a recovery to consumers as a result of a secured creditor's non-compliance ***regardless of whether or not any Representative Plaintiff or any Class Member suffered any harm***, capping the recovery to a formulaic figure as determined by a sum determined by adding the finance charge plus 10% of the amount financed." *Id.* at ¶14 (emphasis added).
>
> 15. ***Plaintiffs are not alleging that they or any of the putative class members suffered any actual, particularized, concrete injury-in-fact or material risk of harm to confer Federal jurisdiction***. *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016). *Id.* at ¶15 (emphasis added).

Comment 4 to 13 Pa.C.S.A. §9625 makes crystal clear that statutory minimum damages are intended to establish a secured party's liability for violations of, *inter alia*, the notice provisions in consumer goods transactions – ***even where the borrower suffers no injury***:

> 4. **Minimum Damages in Consumer-Goods Transactions**. Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9-507(1) and is designed to ensure that **every noncompliance** with the requirements of Part 6 in a consumer-goods transaction **results in liability**, ***REGARDLESS OF ANY INJURY THAT MAY HAVE RESULTED***.

Official Comments to 13 Pa.C.S.A. §9625 (emphasis added). Complaint, ¶90. Succinctly stated, Plaintiffs carefully crafted their complaint and did NOT plead any actual harm nor a material risk of actual harm particularized to the Plaintiffs – thus not meeting the pleading ***requirements needed to confer Article III jurisdiction***. *Kamal v. J. Crew Group, Inc.*, 918 F.3d 102 (3d Cir. 2019). ***Any***

***doubts as to Article III jurisdiction must be resolved in favor of remand.*** *Samuel–Bassett,* supra. (emphasis added).

Article III standing ***requires*** that the plaintiff ***show***: (1) an injury-in-fact; (2) a causal connection between the injury and the defendant's conduct; and, (3) a likelihood that a favorable decision will provide redress for the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo*, supra. The requirements for standing do not change in the class action context. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017). Whether Plaintiffs (and putative class members) have suffered an injury-in-fact matters not; they have failed to plead these mandates in the Complaint. Therefore, the pleading requirements for Article III standing, including the requirement that they plead a short and plain statement of the grounds for the court's jurisdiction pursuant to F.R.C.P. 8(a)(1), are simply not satisfied and this action must be remanded to the court of jurisdiction.

In *Spokeo, supra*, the Supreme Court considered Congress' ability to confer Article III standing for *intangible* harms, such as a statutory violation without any allegations of a concrete injury-in-fact. *Spokeo*, 136 S.Ct. at 1549. To assess whether an intangible harm constitutes an injury-in-fact, the Supreme Court directed courts to look both at the "judgment of Congress" and at history. *Id.* The congressional inquiry considers whether Congress has "identif[ied] and elevat[ed]" an intangible harm because, as the Supreme Court recognized, "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and "its judgment is...instructive and important." *Id.*

The historical inquiry considers "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S.Ct. at 1549. The Plaintiff in *Spokeo* alleged that the

Defendant had violated the FCRA by gathering and disseminating information about him in response to a search that revealed incorrect information about his life. The profile generated by the defendant falsely stated that the plaintiff was married, had children, was in his 50's, had a job, was relatively affluent, and held a graduate degree. *Id.* at 1546. However, the plaintiff did not allege that any particular employer declined to hire him because of the inaccuracies and did not allege any other type of actual harm. *Id.* at 1554. The District Court dismissed the plaintiff's complaint on the ground that he had not properly plead an injury-in-fact as required by Article III.

On appeal, the Ninth Circuit determined the plaintiff had satisfied the injury-in-fact requirement, *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014), but the Supreme Court vacated the decision and remanded the case back to the Ninth Circuit, holding that Article III standing does not exist simply by virtue of an alleged statutory violation. The Supreme Court explained that "[i]njury in fact is a constitutional requirement, and it is settled that *Congress* cannot erase Article III's standing requirements by statutorily granting the right to sue where a plaintiff would not otherwise have standing." *Spokeo*, 136 S. Ct. at 1547–1549 (emphasis added); *See also, Woturski v Federal Warranty Service Corp.*, 2018 WL 1399303 (N.J. Dist. Ct., 2018)("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right...[B]are procedural violation[s], divorced from any concrete harm do not satisfy the injury-in-fact requirement," citing *Spokeo, supra.*). To establish injury-in-fact, "a plaintiff must ***show*** that he or she suffered an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1547–1549 (emphasis added). This Complaint clearly does not show the *Spokeo* requisites.

On remand, to determine whether the violation of a statute, standing alone, established concrete harm, the Ninth Circuit adopted the two-part test set forth by the Second Circuit in *Strubel v. Community Bank*, 842 F.3d 181 (2d Cir. 2016). *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (*Spokeo II* ). In applying the "*Strubel/Spokeo II*" test, the Supreme Court held that the District Court must determine: "(1) whether the statutory provisions at issue were established to protect...concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations actually harm, or present a material risk of harm to, such interests." *Id.* Thus, *Spokeo II* held that in the case of an alleged statutory violation, the violation must yield ***actual harm*** <u>or</u> create a ***"material risk" of actual harm*** in order to satisfy the Article III standing requirement. *Spokeo II*, 867 F.3d at 1115.

As this Honorable Court noted, in order to establish Article III standing:

> Plaintiffs "must allege an injury to himself that is 'distinct and palpable' as distinguished from merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.' " [citations omitted] *U.S. ex rel. Krahling v. Merck & Co.*, 44 F. Supp. 3d 581, 603 (E.D. Pa. 2014) (Hon. C. Darnell Jones, II).

Plaintiffs carefully crafted their Complaint to avoid pleading actual harm or the material risk of actual harm. Plaintiffs plead no distinct or palpable injury, or any injury at all.

In *Kamal, supra*, the Third Circuit Court of Appeals held the *Strubel/Spokeo II* test applies in this Circuit. The *Kamal* Court recognized that Third Circuit case law has held that situations exist where the violation of a statute alone cannot, in and of itself (without any concrete injury-in-fact), give rise to Article III standing. The Court explained, "we are now presented with a case that requires us to consider the full reach of <u>congressional power</u> to elevate a procedural violation into an injury-in-fact. We – like several of our sister circuits – understand *Spokeo* 'to instruct that an alleged procedural violation ... manifest[s] concrete injury' if the violation actually harms or

presents a material risk of harm to the underlying concrete interest." *Kamal*, 918 F. 3d at 112-13 (emphasis added) (*quoting Strubel*, 842 F.3d at 190; *citing Spokeo II*, 867 F.3d at 1115). **This test requires the complaint to "*clearly and specifically*" set forth facts showing a material risk of harm "*particular to [the Plaintiff]*."** *Kamal*, 918 F.3d at 116 (emphasis added). Here, there are no such facts plead in the complaint so they certainly cannot satisfy the requirement that they be "clearly and specifically" plead. Furthermore, there is absolutely no material risk of harm plead particular to the Plaintiff or any class member. Indeed, the Complaint is devoid of any actual harm or material risk of harm allegations.

"As masters of their complaint, Plaintiff are permitted to craft their complaint to avoid federal jurisdiction. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013). This complaint is crafted to comply with the Pennsylvania Rules of Civil Procedure. It does not and is not intended to satisfy the Federal Court jurisdiction and pleading requirements." Complaint, ¶13. "Plaintiffs are not alleging that they or any of the putative class members suffered any actual, particularized, concrete injury-in-fact or material risk of harm to confer Federal Jurisdiction. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)." *Id.* at ¶15.

In *Kamal,* the Plaintiff alleged statutory violations of the Fair and Accurate Credit Transactions Act of 2003 (FACTA), which prohibits anyone who accepts credit or debit cards as payment from printing more than the last five digits of a customer's credit card number on the receipt. *Kamal*, 918 F.3d at 106. The Plaintiff filed his complaint after he received three receipts from Defendant J. Crew Group, Inc. (and related entities) that included both the first six and last four digits of his credit card number. The Complaint alleged two purported "concrete" injuries: (1) the printing of the prohibited information itself, *i.e.*, a violation of FACTA's plain text; and (2) the "increas[ed] risk of identity theft" resulting from that printing. The District Court dismissed the

Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing based on its determination that Kamal did not plead facts that he suffered a concrete injury from the alleged violation. *Id.* The Third Circuit Court of Appeals affirmed the decision of the District Court:

> [T]he Supreme Court has explained that a "risk of real harm" may "satisfy the requirement of concreteness." *Id.* Kamal maintains this inquiry is irrelevant because he has pleaded the violation of a "statutory right to remedy an 'intangible harm'" [that is] itself sufficient to confer standing. He points to a passage in *Spokeo*, where the Court explained that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury-in-fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."...But this passage lends no help to Kamal. The emphasized phrase "*additional* harm" clearly presumes that the putative plaintiff had already suffered a *de facto* injury resulting from the procedural violation...Here, absent unauthorized third-party disclosure, Kamal's alleged FACTA violation is not "an injury in and of itself." Accordingly, we will evaluate whether the FACTA procedural right protects a concrete interest, and if the violation alleged by Kamal entails <u>a degree of risk sufficient to meet the concreteness requirement</u>...Kamal contends we should defer to what he sees as Congress's determination that all conduct prohibited by FACTA creates a sufficient risk of identity theft...<u>But the lesson of *Spokeo* is that we must confirm that a concrete injury or material risk exists even when Congress confers a right of action</u>...The closest the Second Amended Complaint comes to alleging material risk of harm is its allegation that "identity thieves ... obtain Card receipts that are lost or discarded, or through theft, and use the information on them to commit fraud and theft."...As the District Court explained [though], <u>this threat consists of a "highly 'speculative chain of future events,'"</u>...[W]e agree with the District Court that this speculative chain of events does not constitute a material risk of harm.

*Kamal,* 918 F.3d at 115-116 (emphasis added; internal citations omitted).[1]

In closing, the Third Circuit in *Kamal* stated that "<u>absent a sufficient degree of risk</u>, J. Crew's alleged violation of FACTA is a bare procedural violation that does not create Article III

[1] The District Court in *Kamal* noted that a hypothetical third party would first have to obtain one of the receipts and then figure out the remaining digits and any additional information required to use the card. *Kamal,* 918 F.3d at 116, *citing Kamal v. J. Crew Grp., Inc*, 2017 WL 2587617 (D.N.J. June 14, 2017), at *5.

standing...This result falls within the Supreme Court's admonition [in *Spokeo*] that when *Congress* [as opposed to a state's legislature] adopts procedures designed to decrease the risk of harm to a concrete interest, a violation of one of those procedural requirements may result in no harm." *Kamal,* 918 F.3d at 117 (emphasis added).

The lesson of *Kamal* is that even if Congress confers a right of action (which did not happen in the present case, dealing with the UCC, a state statute) the complaint ***must*** still allege a ***non-speculative material risk of concrete, particularized harm affecting the Plaintiffs***. ***This Complaint conclusively does not do that.*** *See also, Katz v. Six Flags Great Adventure, LLC.*, 2018 WL 3831337 at *8 (N.J. Dist. Ct. 2018)(concluding that Plaintiffs had alleged only a bare statutory violation of FACTA, divorced from any concrete harm, and that a hypothetical risk of harm was insufficient to confer Article III standing on plaintiffs).

The Eastern District of Pennsylvania used similar reasoning in *Pozzuolo v. Portfolio Recovery Assocs., LLC*, 371 F. Supp. 3d 217 (E.D. Pa. 2019). In *Pozzuolo*, the Plaintiff alleged that Defendant violated the Fair Debt Collection Practices Act (FDCPA) when it sent him a letter advising him that he could dispute his debt by telephoning Defendant even though only a written dispute suffices to trigger the debt collector's obligations under 15 U.S.C. § 1692g(b) to cease collection and provide verification of the debt to the consumer. *Pozzuolo,* 371 F. Supp. 3d at 219.

Defendant argued that Plaintiff lacked Article III standing because he had not suffered and was not at risk of suffering a concrete injury. This Honorable Court agreed and dismissed the complaint for lack of subject matter jurisdiction because Plaintiff did not allege that he could have and would have disputed the debt (Plaintiff did not dispute the debt), and therefore, Defendant's failure to inform him that only written disputes are legally effective, though while a violation of §1692g, neither harmed him nor created a material risk of harm. *Pozzuolo,* 371 F. Supp. 3d at 219–

220, 224 ("Even though there was a violation of §1692g, Pozzuolo cannot show actual harm or a material risk of harm. By his own admission, he was not 'hurt as a result of receiving this letter.' Indeed, he merely 'scan[ned] over' the letter before forwarding it to counsel…Thus, because he never intended to dispute the debt, the violation did not harm or present a material risk of harm to Pozzuolo.").

As explained above, the Complaint alleges that the Notices of Repossession sent to the Plaintiffs and Class Members by Wells Fargo violated the UCC, independently, and in *pari materia* with the MVSFA by listing unincurred and therefore illegal fees in its Notices of Repossession, and failing, in its Notices of Repossession, to accurately disclose the intended method of disposition, to accurately disclose the proper redemption period, to accurately disclose the debtors rights to redemption and reinstatement, and failing to send Post-Sale Notices by registered or certified mail, as required, and failing to send separately addressed Post-Sale Notices to co-borrowers, as required. Complaint, ¶¶41-55. In addition, Plaintiffs challenge Defendant's use of unlicensed repossession brokers. *Id.* at ¶¶56-62.

The Complaint seeks ***only*** statutory minimum damages for these violations and does not allege that anything different would have occurred ***if*** Wells Fargo had complied with these statutes, or ***if*** the Plaintiffs (or any putative class members) had the financial resources, means, or inclination to redeem their repossessed vehicles.

In other words, analogous to *Pozzuolo, supra.*, the Complaint is devoid of ***any*** allegations that the Plaintiffs or any Class Members could or would have redeemed their vehicle ***if*** Wells Fargo sent a statutorily compliant Notice of Repossession or would have paid the listed illegal fees. Such conjecture presents mere hypotheticals which do not satisfy the requisite actual harm or material risk of actual harm. There are absolutely no allegations that the Plaintiffs or any Class

Member suffered any actual harm or a material risk of actual harm as a result of Wells Fargo's alleged wrongdoings.

The factually plead parameters of the complaint are controlling, and to meet Article III jurisdiction, the complaint must "*[C]learly and specifically*" set forth facts ... showing a material risk of harm "particular to [the Plaintiff]". *Kamal*, 918 F.3d at 116. Because the Complaint here does not do so, Article III standing does not exist in this case.

The Eastern District of Pennsylvania has held that artful pleading in a complaint to avoid federal jurisdiction, even when done by representative plaintiffs in the class action context, is entirely within plaintiffs' rights, as stated by this Honorable Court in *Ramirez v. Vintage Pharm., LLC*, 2016 WL 9131969 (E.D. Pa. Sept. 21, 2016), *rev'd [on other grounds] and remanded*, 852 F.3d 324 (3d Cir. 2017):

> It is immaterial that Plaintiffs may have structured their Complaint so as to evade federal jurisdiction under CAFA, as many courts have found ***plaintiffs, as "masters of their complaints," may structure their lawsuit to avoid such jurisdiction***. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013). ... *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 2014 WL 2011597, at *8 (E.D. Pa. May 15, 2014) (noting plaintiffs successfully avoided CAFA jurisdiction through [permissible] "gaming the rules" and "artful pleading").

*Ramirez*, 2016 WL 9131969, at *1; As is their right, Plaintiffs deliberately drafted this pleading so that it does ***not*** satisfy the requirement of F.R.C.P. Rule 8(a)(1) which requires that the pleading clearly include "a short and plain statement of the grounds for the court's jurisdiction...". Pursuant to Rule 8(a)(1), a party asserting a claim ***must*** allege in the pleadings the "facts essential to show jurisdiction." *Thorne v. Pep Boys - Manny, Moe & Jack Inc.*, 397 F. Supp. 3d 657, 664 (E.D. Pa. 2019), citing to *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Because federal jurisdiction is ***expressly*** disclaimed (¶8-10), Plaintiffs Complaint does not plead the requisite facts.

Furthermore, with respect to the "congressional inquiry" identified in *Spokeo*, 136 S.Ct. at 1549, *Spokeo* (and *Kamal*), *supra*, discussed ***Congress' ability*** to identify and elevate an intangible harm, such as a statutory violation without any actual injury-in-fact, and confer Article III standing for same. This case, however, involves an alleged violation of State law. State Legislatures have no power to elevate a statutory violation such that the violation standing alone constitutes an injury-in-fact that confers Federal Article III standing. *Congress* decides (within constitutional bounds) what cases the Federal courts have jurisdiction to consider – *not States. U.S. Const. art. III, § 1, § 2, cl. 1.*[2] This issue was squarely addressed in *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp.3d 424 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017).

In *Ross,* the Plaintiffs filed a class action on behalf of those who purchased life insurance from the Defendant alleging violation of a New York statute. Defendant filed a Motion to Dismiss arguing that Plaintiffs lacked standing under Article III of the U.S. Constitution. The District Court agreed and dismissed the Complaint, explaining:

> Plaintiffs' primary argument [that they have Article III standing] is that they have been "individually deprived of their statutory right, conferred by New York law, to truthful financial reporting from a New York domiciled life insurer to whom they have paid premiums for life insurance" and that "[t]his deprivation is an injury-in-fact sufficient to confer Article III standing." In so arguing, Plaintiffs rely on Supreme Court precedent holding that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."...Those holdings are premised on a theory that "Congress may, by legislation, expand standing to the full extent permitted by Article III...[Even assuming that this premise is correct] Plaintiffs' reliance on the precedent suffers from a more fundamental problem: It is far from clear that it applies where, as here, a cause of action arises under *state* rather than *federal* law. As noted, the precedent is premised on the theory that "*Congress* may, by legislation, expand standing to the full extent permitted by Art[icle] III." And the Court is not aware of (and Plaintiffs do not cite) any authority suggesting that a *state* legislature can confer Article III standing upon a plaintiff **who suffers no concrete harm** merely by authorizing

[2] *See also, Lockerty v. Phillips*, 319 U.S. 182, 187, 63 S. Ct. 1019, 1022, 87 L. Ed. 1339 (1943)("The Congressional power to ordain and establish inferior courts includes the power of investing them with jurisdiction..." *In re Randolph*, 2012 WL 170746, at *1 (E.D. Pa. Jan. 19, 2012)("All federal courts, other than the Supreme Court, derive their jurisdiction wholly from the exercise of the authority to 'ordain and establish' inferior courts, conferred on Congress by Article III...of the Constitution.").

> a private right of action based on a bare violation of a state statute. As one district court noted in addressing a similar argument: "It is one thing when Congress enacts a statute, the violation of which constitutes "injury" in the Article III sense...It is quite another thing to suggest that the states have the same power to waive by statute the prudential, or more problematically, the constitutional limitations on standing in federal court and, by way of a state created right, confer injury in the Art. III sense where none would otherwise exist."...Among other things, the limitations on standing "serve[ ] vital interests going to the role of the Judiciary in our system of separated powers,"...and are "founded in concern about the proper—and properly limited—role of the courts in a democratic society,"...It follows that "[s]tates cannot alter that role simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse."

*Ross,* 115 F. Supp. 3d at 433–435 (emphasis added and in original; internal citations omitted).

In *Mangini v. R.J. Reynolds Tobacco Co.,* 793 F.Supp. 925 (N.D.Cal.1992)(discussed in *Ross*), the plaintiff, pursuant to the private attorney general provision of the California code, brought a suit on behalf of the California public alleging violations of the Federal Cigarette Labeling and Advertising Act and California Business and Professions Code. On a motion to remand, the Federal District Court for the Northern District of California found that the plaintiff did not have standing. The defendant contended that the mere violation of the state statute, which confers standing on plaintiff in state court, rose to the level of Article III injury. *Id.* at 929. The *Mangini* Court disagreed, holding that state legislatures may not expand the standing in federal courts in the same manner, even in a diversity case. *Id.*[3]

---

[3] *See also, Greenberg v. Digital Media Sols. LLC,* 2019 WL 1986758, at *1 (N.D. Cal. May 1, 2019)("[While] Congress can elevate an injury to Article III status, it may not follow that a state legislature can do so as well. The Supreme Court explained in *Spokeo, Inc. v. Robins*...that 'Congress is well positioned to identify intangible harms that meet minimum Article III requirements,' but presumably this positioning is at least partly (if not entirely) because Congress has authority over federal court jurisdiction, which state legislatures do not."); *Robainas v. Metro. Life Ins.,* 2015 WL 5918200, at *6 (S.D.N.Y. Oct. 9, 2015) ("[S]tates may not bypass constitutional or prudential standing requirements"); ("Plaintiff cannot rely on California law to expand Article III standing"); *LaPierre ex rel. Yorktown v. DiBartolo,* 2013 WL 656313, at *3 (S.D.N.Y. Feb. 21, 2013) ("State courts may afford litigants standing to appear where federal courts would not, but the fact that a state court would permit a plaintiff to assert an action has no bearing on ... standing under Article III."); *McGovern v. U.S. Bank N.A.,* 362 F. Supp. 3d 850, 858 (S.D. Cal. 2019)("That the California legislature gave a plaintiff the right to seek public injunctive relief through the UCL is irrelevant because just as the United States Congress 'cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing,'...neither can the California legislature or California courts.").

Thus, regardless of what Congress can do, *State* Legislatures have no authority/power to confer Article III standing in Federal Courts for a violation of a state statute where no actual injury-in-fact is alleged. The inquiry should end here, and this Case should be remanded to State Court. To the extent the case law is unclear or conflicting on this issue, this also supports remand. *See Barnes v. ARYZTA, LLC*, 288 F. Supp. 3d 834, 839 (N.D. Ill. 2017) ("Defendant admits that Article III standing based on *Spokeo* in the context of Plaintiff's claims in this case is unsettled. That consideration alone supports remand, as '***[a]ny doubt regarding jurisdiction should be resolved in favor of the states***.' Indeed, as a general matter, ***Federal courts 'should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum***.'") (emphasis added).

Even if the Pennsylvania State Legislatures' judgment in enacting 13 Pa.C.S.A. §§ 9610, 9614, 9615, 9623 and 9625 were relevant to the issue of Article III standing, the judgment of the Pennsylvania Legislature was to allow a claim for violation of these statutes where, as here, no actual injuries are alleged, as they expressly need not be for a prima facie Pennsylvania law claim. There was no intent by the legislature to confer Article III standing on these notice violations. As stated earlier, it is critically important to emphasize that Official Comment 4 to 13 Pa.C.S.A. §9625 explains that statutory minimum damages are intended to establish a secured party's liability for any aspect of non-compliance results in liability and minimum statutory damages – ***even where the borrower suffers no injury***.

Furthermore, even assuming that the "material risk of harm" analysis that applies to federal statutes (as established in *Spokeo II*, and adopted by *Kamal, supra.*) applies to this Case, it would be entirely speculative to conclude that Defendant's violation of the statutes at issue presented such a material risk of harm.

While an intangible "material risk of harm" may constitute an "injury-in-fact" sufficient to confer Article III standing, the "material risk of harm" cannot be "conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1548.[4] Indeed, whether the Plaintiffs (or any Class Member or their respective proxies, had the means, resources, or inclination to have redeemed their repossessed vehicle, according to the facts pled, is purely hypothetical and conjectural. This type of speculation does not constitute a "material" risk of harm and is analogous to the speculative/hypothetical situation that the Plaintiff in *Kamal* relied upon for Article III standing, which the *Kamal* Court rejected. *Kamal*, 918 F.3d at 115-116 ("The closest the Second Amended Complaint comes to alleging material risk of harm is its allegation that "identity thieves ... obtain Card receipts that are lost or discarded, or through theft, and use the information on them to commit fraud and theft.").

As in *Pozzuolo*, ***Plaintiffs have not alleged that they would have done anything differently if Defendant had complied with the statutes*** because such inquiry is not required for a prima facie case for the UCC, independently, and in *pari materia* with the MVSFA or the imposition of Section 9625(c)(2) minimum statutory damage. Based on the facts plead. Such an inference would present conjecture and speculation thereby failing to satisfy the elements of Article III jurisdiction.[5]

[4] While Plaintiffs submit that the "historical inquiry" identified in *Spokeo*, 136 S.Ct. at 1549, is irrelevant here because the statute alleged to have been violated, 13 Pa.C.S.A. §9614(1)(i), is a creature of the Pennsylvania State Legislature, a historical inquiry also supports remand. Historically, there was no claim for failure to provide the required information in a Notice of Repossession or Post-Sale Notice.

[5] *See also, Cottle v. Monitech, Inc.*, 2017 WL 6519024, at *1, *8 (E.D.N.C. 2017) (concluding that allegations of mere confusion are insufficient to support standing where plaintiff did not allege "that she would have evaluated the terms of her lease differently, made a different choice had she been presented with additional information, or in any way behaved other than she did," absent defendant's statutory violations), *aff'd*, 733 F. App'x 136 (4th Cir. 2018); *Schwartz v. HSBC Bank USA*, N.A., 2017 WL 95118, at *6 (S.D.N.Y. 2017) (finding no concrete injury where plaintiff made conclusory allegation that the bank's omissions "impinged on [his] awareness of the cost of credit"); *Kelen v. Nordstrom, Inc.*, 259 F.Supp.3d 75, 81 (S.D.N.Y. 2016)(stating that the complaint "does not claim that [plaintiff] changed her behavior in any way based on [defendant's] allegedly insufficient disclosures"); *Jamison v. Bank of Am., N.A.*, 194 F.Supp.3d 1022, 1028 (E.D. Cal. 2016)(holding that allegations failed to confer Article III standing where plaintiff did not allege that any actual consequences of defendant's alleged violations ever arose).

It's important to note that "[t]he Legislature did not [even] distinguish between debtors who surrender their cars and those who lose their cars to involuntary repossession" to maintain their respective right to claim minimum statutory damages. *Cosgrove v. Citizens Automobile Finance, Inc.*, 2010 WL 3370760 (E.D. Pa. 2010)(similar Notice of Repossession class action involving, *inter alia*, alleged failure of secured party to accurately state right to reinstatement as commercially unreasonable conduct).

Wells Fargo's Notice of Removal cites to the undersigned's settled class action of *Langer v. Capital One Auto Fin.*, 2019 WL 299620 (E.D. Pa. Jan 23, 2019), stating that "this Court has found that it is possible for violations of the UCC and MVSFA to satisfy Article III standing requirements...". (See ECF 1, p. 15-16, ¶56). Comparing this case to *Langer* highlights the ***dissimilarities*** between what was pled there, and underscores the fact that there is no Article III jurisdiction in the case *sub judice*. A comparison of the Ad Damnum clause from this Case and *Langer*, below, show the marked differences in the relief sought.

***<u>End of Page</u>***

| Ad Damnum Clause in this Case | Ad Damnum Clause in *Langer v. Capital One, N.A.* |
|---|---|
| A. Certify the requested classes and appoint the undersigned as class counsel; | A. Certify the requested classes; |
| B. Award minimum statutory compensatory damages as provided by 13 Pa. C.S §9625(c)(2) to each member of the Notice of Repossession Class; and, | B. Award the greater of actual damages or the minimum statutory damages to Plaintiffs and to the class as provided by 13 Pa. C.S.A. §9625(b) and (c)(2); |
| C. Grant any other relief, if any, the Court deems just. | C. Award $500 to Plaintiffs and each Post-Sale Notice Class member pursuant to 13 Pa.C.S.A. §9625(e)(5); |
| *NO OTHER RELIEF SOUGHT BY PLAINTIFFS.* | D. Declare that the Notice of Repossession and Post-Sale Notice used by Defendant in respect to Plaintiffs and the classes fail to comport with the provisions of the UCC, individually, and UCC and MVSFA in *pari materia*; |
| | E. Declare that the disputed deficiency balances of Plaintiffs and class members are invalid and not owed as a matter of law in accordance with Savoy, supra.; |
| | F. Enjoin the collection of any invalid and disputed deficiency balances of, and vacate all judgements against, Plaintiffs and class members as permitted by 13 Pa. C.S.A. §9625(a) and/or *Savoy, supra*.; |
| | G. Temporarily and/or permanently enjoin the use of statutorily deficient notices, and the use of inaccurate submission(s) of the invalid and disputed deficiencies on Plaintiffs' and Class Members' credit reports, and remove the credit tradeline on the credit reports of Plaintiffs and Class Members related to the subject loans and invalid deficiency balances as permitted by 13 Pa. C.S. 9625(a); |
| | H. Vacate all judgements against class members relating to the invalid deficiency balances as permitted by 13 Pa. C.S. 96125(a); |
| | I. Award pre-judgment interest to the extent permitted by law; and |
| | J. Grant such other and further relief as may be deemed just and proper |

As evidenced by the comparison table of the relief sought in each case above, the complaint in *Langer*, is clearly not analogous to the present case. Moreover, as Judge Bartle explained in *Langer* (as noted in the Table, above), the plaintiffs' complaint sought "***the greater of actual or*** statutory damages." *Langer, supra.* at 4. In this case, Plaintiffs do not seek any actual damages, a controlling distinguishing fact. Additionally, Judge Bartle analyzed in-depth the actual damages alleged, connecting such with the facts stated in the *Langer* complaint:

> Plaintiffs further allege that the Pennsylvania Department of Transportation would not have transferred title from them to Capital One had the Department been aware of these violations and that therefore they are still the rightful owners of the vehicles at issue. They further seek to restrain and to enjoin any attempt by Capital One to collect or enforce any balance for monies due on their car loan. These allegations do not equate to a bare procedural violation of law. On the contrary, ***they describe actual damage in the loss of their vehicle and the existence of monetary loss***. They represent a particularized and concrete injury sufficient to satisfy standing requirements for adjudication in federal court.

*Langer,* 2019 WL 299620 at 4 (emphasis added). In the present case, as expressly permitted by appellate precedent, the Plaintiffs carefully crafted this Complaint to avoid Federal Jurisdiction. In this connection, Plaintiffs did not make any allegation regarding PennDOT, which the *Langer* Court found supported an actual injury. Further emphasizing distinguishing characteristics, the Plaintiffs here do not seek to restrain or enjoin any attempt by the Defendant to collect or enforce balances allegedly due on the loans as was expressly sought in *Langer*.[6]

[6] The undersigned settled the *Langer* case on behalf of approximately **10,000 class members** for the benefit conferred of **$38.6M** ($6.5M cash + $6.5M (estimated) credit reparation benefit + $25.4 disputed deficiency debt compromised + $180,000 in payment refunds). *See, Langer, et al., v. Capital One, N.A.*, 2:16-cv-06130-HB (ECF 101, p. 27). Unlike *Langer*, this unique class action involves the imposition of bogus fees under the ruse of an expense which results in the systematic, inaccurate redemption amounts set forth in the Plaintiffs' and class members' Post-Repossession Disclosure Notices. Plaintiffs' counsel specially drafted the unique complaint to seek markedly different relief, for substantially dissimilar legal theories than in *Langer*, and is intended, *inter alia*, to avoid federal jurisdiction.

**2. Plaintiffs may limit the types of damages requested and by doing so are not <u>attempting to legally bind putative class members to limit their damages</u>**

In their Notice of Removal, Defendant claims that "Plaintiffs cannot limit damages of absent class members to avoid federal jurisdiction" citing *Knowles* for the proposition that plaintiff could "not reduce[ ] the value of the putative class members' claims" because "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." (Notice of Removal at ¶55). However, *Knowles* involved a situation where the plaintiff attempted to ***<u>stipulate</u>*** to a cap on damages to avoid CAFA jurisdiction. There, the plaintiff filed a class action complaint alleging that they were harmed when defendant improperly made homeowner's insurance loss payments. In describing the relief sought, the class action complaint stated that the "Plaintiff and Class ***<u>stipulate</u>*** they will seek to recover total aggregate damages of less than five million dollars" and attached an affidavit stipulating that Knowles "will not at any time during this case ... seek damages for the class ... in excess of $5,000,000 in the aggregate." *Knowles*, 568 U.S. 588 at 591. Dissimilarly, *Knowles* did not involve a strategic decision about what ***<u>type</u>*** of damages (actual damages versus minimum statutory damages) the action would pursue, like this one. Further distinguishing is the fact that this Complaint does not limit the ***<u>amount</u>*** of damages.

Thus, *Knowles* only stands for the proposition that plaintiffs cannot *legally bind* putative class members (by way of a non-binding stipulation in a Complaint). That is not what Plaintiffs have done here. Plaintiffs have not sought to legally bind any putative class member. Plaintiffs are not attempting ***<u>to bind</u>*** any (putative) class members at the complaint stage. The Class Members' due process and substantive rights are preserved such that they will have an opportunity to opt-out of any class settlement or on-going litigation ***<u>after</u> a court-approved class notice is sent***. Class members who would rather seek actual damages are not bound, or prohibited from doing so, by

Plaintiffs' Complaint. They may opt-out and seek those damages or other damages, including equitable damages which are similarly not sought in this Complaint.

The Courts have recognized that this very situation is permitted. In *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009), the Honorable Judge Brody explained that, in the context of a defendant's Rule 23 class certification challenge to adequacy of representation, that class action opt-out provisions sufficiently protect putative class members that desire to plead and prove greater, actual damages, explaining that:

> [T]o deny class certification on the basis that the plaintiff should have sought compensatory damages for herself and all class members rather than relying on the statutory-damages remedy, would make consumer class actions...effectively impossible. If the plaintiff were required to pursue actual damages in this case, individual damages issues would quickly overwhelm the common questions and the suit would become unmanageable and uncertifiable." Chakejian, 256 F.R.D. at 499–500.
>
> ...
>
> Furthermore, there are inherent difficulties inherent in tracing and proving the actual harm caused by Equifax's alleged statutory violations. Choosing to pursue only statutory damages...is a litigation strategy that is not the court's place to second guess. Id. at Footnote 4.
>
> ...
>
> 5. With respect to Equifax's argument that a class action is not appropriate because of the availability of actual damages under the FCRA, the court reiterates its position as previously discussed, supra, in connection with the adequacy requirement, that the use of opt-out provisions is sufficient to redress any concern about the financial detriment to individual class members through class action litigation in this case." *Id.* at Footnote 5 (emphasis added; internal quotations and citations omitted).

Accordingly, the Plaintiffs are permitted to limit the claims to actual damages, and actual damages do not have to be taken into account when determining the amount in controversy. To the extent that any class member seeks to pursue his/her actual damages, they will have the choice to do so, by opting-out of this litigation, after having received a class notice aptly explaining their

legal rights. Absent their opt-out, they will be bound to a minimum statutory damage formulaic damage calculation – which easily be calculated with mathematical precision by adding the "finance charge" plus 10% of the "amount financed" figure in the Truth in Lending box of the retail installment sales contracts. 13 Pa. C.S. §9625(c)(2). Of course, no absent class member is bound by this limitation until they are sent a court-approved notice affording them of due process. As stated above, those ***damages*** are available for "every noncompliance with the requirements of Part 6 in a consumer-goods transaction … ***regardless*** **of any *injury* that *may* have resulted.**" Cmt. 4 to 13 Pa.C.S. §9625. [emphasis added] Thus, the §9625(c) minimum statutory damages sought by Plaintiffs are not dependent on whether Plaintiffs or the putative class members suffered any injury. By contrast, 13 Pa.C.S. §9625(b) permits actual damages for these violations, and is thus the UCC damages subsection that provides compensation in the amount of any actual injury-in-fact. But, Plaintiffs do not seek any actual damages under §9625(b) because they do not aver any actual damages or any injury-in-fact.

**3. Defendant has not met its burden of showing that the CAFA jurisdictional requirements have been met**

Defendant, as the removing party, has not met its burden of showing that this case meets the jurisdictional requirements to be before this Court. Defendant based its Notice of Removal, in part, on its averment that the aggregate amount in controversy exceeds the $5 million threshold required for CAFA jurisdiction. (ECF 1, ¶¶20-36). It purportedly bases this on a "data summary for 1,500 accounts" that allegedly fit the criterium of the class definition. Declarant Matthew D. Brink affirms that he has determined the size of the putative class. Declaration of Matthew D. Brink, ¶6, (ECF 1-8)(hereafter "Declaration"). However, rather than coming forward with accurate figures relating to the *entire* putative class, Wells Fargo curiously and without any explanation truncated the process by only sharing the results of a supposed "sample of 1,500 accounts." *Id.*

Surprisingly, Wells Fargo does not indicate total class size or explain the details of "how" or "why" it architected a "sampling," as opposed to presenting comprehensive data regarding the subject class, data upon which it relied upon for its "sampling" and its CAFA analysis. Why Wells Fargo elected not to disclose all details (which it readily has) to this Honorable Court or Plaintiffs to support its burden is suspect.

4. **A jurisdictional analysis under CAFA is not required, however if such an analysis is performed in this case, then jurisdictional discovery is warranted and requested**

The Third Circuit has taken an especially negative view of CAFA's legislative history, and has refused to consider the post-enactment Senate Report upon which the Defendant will likely rely:

> Our dissenting colleague similarly relies extensively on CAFA's legislative history and suggests that our decision "contravenes Congress's intent" in enacting that law. Dissent at 163, 163–64, 166, 166–67. But **CAFA's legislative history is particularly suspect** given that it represents the views of only a handful of the legislators voting for the law. *See Brill v. Countrywide Home Loans,* 427 F.3d 446, 448 (7th Cir.2005) (explaining **that Senate Report was signed by only thirteen of 82 senators voting for CAFA and thus has less "force than an opinion poll of legislators**").

*Erie Ins. Exch. v. Erie Indem. Co.,* 722 F.3d 154, 160 (3d Cir. 2013); Emphasis added. See also, *Abraham v. St. Croix Renaissance Grp., L.L.L.P,* 719 F.3d 270 (3d Cir. 2013), which stated;

> Although we need not consider legislative history, we doubt that the Senate Report would aid us in any way in interpreting this exclusion in CAFA. **The Senate Report was issued after CAFA was enacted**. *See Bruesewitz v. Wyeth, L.L.C.,* — U.S. ——, 131 S.Ct. 1068, 1081, 179 L.Ed.2d 1 (2011) (noting that **"[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation").**

*Abraham,* 719 F.3d at 279; Emphasis added.

Even if it was appropriate for Defendant to rely on the CAFA Senate Report (which Plaintiffs deny), even the legislative history supports remand.

Here, the Defendant presented no evidence that the Philadelphia Court of Common Pleas is bias in favor of certifying classes. Moreover, the present case is not a nationwide or multi-state class action or seeking a coupon settlement – all to which the legislators showed concern which prompted this legislation. This case will not result in a "coupon settlement" or "minimal relief to the Plaintiffs and putative class members" because the statutory damages for the Plaintiffs alone (according to the Defendant's records) are approximately $8,000 per loan. A settlement or favorable judgment in this case will provide substantial relief to Pennsylvania consumers.

Because Plaintiffs have not alleged an injury-in-fact, Plaintiffs respectfully submits that this Honorable Court lacks Article III jurisdiction to hear this case. Thus, this case should be summarily remanded without the need for the parties to confirm the amount in controversy. However, if this Honorable Court is inclined to consider the amount in controversy in its analysis of jurisdiction, then Plaintiffs respectfully request leave to engage in jurisdictional discovery which "should be allowed unless the plaintiffs claim is clearly frivolous." *Anthony v. Small Tube Mfg. Corp.*, 535 F.Supp.2d 506, 512 (E.D. Pa. 2007). A deposition of affiants who made the declarations and for limited documents supporting or refuting the contentions in the affidavits are certainly not burdensome for a billion-dollar, publicly traded bank. To attempt to resolve the doubts regarding the jurisdictional amount in controversy, Defendant should have submitted an affidavit to provide the exact size of the class and statutory damages at issue. This sophisticated defendant should not be rewarded for its lack of diligence in its failure to come forward with this most basic information voluntarily.

## IV.   CONCLUSION AND RELIEF REQUESTED

The intangible harm of a statutory violation that is divorced from any actual concrete injury-in-fact is insufficient as a matter of law to confer Article III standing, especially where, as here, a state legislature created the right of action for violation of a statute expressly not requiring

any harm with no Congressional involvement or reference. The Complaint seeks ***only*** statutory damages for procedural violations of Pennsylvania law that does not require a showing of harm for liability, does not allege actual injury or material risk of harm, and does not allege that anything different, regarding impact on Plaintiffs or Class Members, would have occurred or that Plaintiffs of any Class Members would have acted any differently ***if*** Wells Fargo had complied with the UCC, independently, and in *pari materia* with the MVSFA. Unquestionably, the Complaint does not "***clearly and specifically***" set forth facts showing a ***material risk of harm "particular to [the Plaintiff]***" as required by *Kamal*, 918 F.3d at 116 and this Honorable Court's decision in *Krahling, supra*. Furthermore, even if the "material risk of harm" analysis applied to Plaintiffs' claims for statutory violations of Pennsylvania law, Wells Fargo has the burden to establish that the risk must be "material" to the named Plaintiffs based upon the allegations of the Complaint. It has not and cannot do so. Speculation or hypothetical scenarios cannot satisfy this rigid analysis. Here, there are no facts set forth in the complaint supporting Wells Fargos' unsubstantiated (implicit) contention that Article III standing applies. At a minimum, there is a reasonable doubt as to standing and ***all "doubts must be resolved in favor of remand."*** *Samuel–Bassett* at 398 (3rd Cir. 2004)(emphasis added).

Moreover, and in the alternative, Defendant has failed to sustain it burden to meet the thresholds for CAFA jurisdiction, warranting the need for a short period for jurisdictional discovery and supplemental briefing.

WHEREFORE, Plaintiffs respectfully request that this Court summarily remand this case to the Philadelphia County Court of Common Pleas based on lack of Article III standing / Federal jurisdiction.

Oral argument is requested.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
/s/ Richard Shenkan
Richard Shenkan
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Brief in Support of Motion to Remand has been served upon counsel of record for all parties as a result of the CM/ECF system.

SHENKAN INJURY LAWYERS, LLC.
/s/ Richard Shenkan
Richard Shenkan
*Attorney for Plaintiffs*