**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VINCENT SORACE, JOSEPH YERTY, TAMMY YERTY, JAMES ZARONSKY, LINDA ZARONSKY, VIKTOR STEVENSON, ASHLEY YATES, and KIMBERLY SOLOMON-ROBINSON, individually and on behalf of a class of similarly situated persons, | CIVIL ACTION<br><br>No. 2:20-CV-04318 |
| Plaintiffs, | |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

**DEFENDANT WELLS FARGO BANK, N.A.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY ..................................................2

III.    LEGAL STANDARD.........................................................................................3

IV.     ARGUMENT ......................................................................................................4

      A.      Congress Enacted CAFA to Defeat the Jurisdictional Gamesmanship that Plaintiffs Engage in Here ............................................................................4

      B.      Plaintiffs Cannot Defeat CAFA Jurisdiction by Purporting to Disclaim the Damages of the Putative Class.....................................................................6

      C.      Plaintiffs' Attempted Disclaimer of Concrete Injury Does Not Amount to a Lack of Concrete Injury .............................................................................11

      D.      Wells Fargo Has Met Its Burden Under CAFA and Jurisdictional Discovery Is Unnecessary ..........................................................................18

V.      CONCLUSION.................................................................................................21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abraham v. St. Croix Renaissance Grp., LLLP,*
719 F.3d 270 (3d Cir. 2013)..................................................................................................4

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..........................................................................................................13

*Back Doctors Ltd. v. Metropolitan Property & Cas. Ins. Co.,*
637 F.3d 827 (7th Cir. 2011) .............................................................................................7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..........................................................................................................13

*Brill v. Countrywide Home Loans, Inc.,*
427 F.3d 446 (7th Cir. 2005) .............................................................................................4

*Castro v. Linden Bulk Transport.,*
No. 19-20442, 2020 WL 2573288 (D. N.J. April 20, 2020)..................................................20

*Chakejian v. Equifax Information Services, LLC,*
256 F.R.D. 492 (E.D. Pa. 2009).................................................................................9, 10, 11

*Cottrell v. Alcon Labs.,*
874 F.3d 154 (3d Cir. 2017)...............................................................................................17

*Cubler v. TruMark Fin. Credit Union,*
83 A.3d 235 (Pa. Super. Ct. 2013).......................................................................................15

*Dart Cherokee Basin Operating Co. v. Owens,*
574 U.S. 81 (2014)...........................................................................................................3, 4

*Erie Ins. Exch. v. Erie Indem. Co.,*
722 F.3d 154 (3d Cir. 2013)...............................................................................................4

*Excel Pharmacy Servs., LLC v. Liberty Mut. Ins. Co.,*
389 F. Supp. 3d 289 (E.D. Pa. 2019) ............................................................................19, 20

*Farrell v. FedEx Ground Package Sys., Inc.,*
No. CV 19-19973 (FLW), 2020 WL 6054530 (D.N.J. July 10, 2020)....................................18

*Fed. Election Comm'n v. Akins,*
524 U.S. 11 (1998).............................................................................................................17

*Freeman v. Early Warning Servs., LLC*,
    443 F. Supp. 3d 581 (E.D. Pa. 2020) ..................................................................16

*Gennock v. Kirkland's, Inc.*,
    No. 2:17-cv-454, 2017 WL 6883933 (W.D. Pa. Nov. 29, 2017),
    *R. & R. adopted*, No. 2:17-cv-454, 2018 WL 350553 (W.D. Pa. Jan. 9, 2018) .....................10

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)...........................................................................................17

*Home Depot U. S. A., Inc. v. Jackson*,
    139 S. Ct. 1743 (2019)........................................................................................4

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
    846 F.3d 625 (3d Cir. 2017)............................................................12, 13, 14, 16

*Judon v. Travelers Prop. Cas. Co. of Am.*,
    773 F.3d 495 (3d Cir. 2014)...............................................................................7

*Kamal v. J. Crew Group, Inc.*,
    918 F.3d 102 (3d Cir. 2019)........................................................................15, 16

*Langer v. Capital One Auto Fin.*,
    No. CV 16-6130, 2019 WL 296620 (E.D. Pa. Jan. 23, 2019) ...........................14, 17

*Lewis v. Ford Motor Co.*,
    610 F. Supp. 2d 476 (W.D. Pa. 2009)...............................................................4, 18

*Lujan v. Defenders. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................12, 17

*Mielo v. Steak 'n Shake Operations, Inc.*,
    897 F.3d 467 (3d Cir. 2018)..........................................................................13, 14

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) .........................................................................10, 11

*Neale v. Volvo Cars of N. Am., LLC*,
    794 F.3d 353 (3d Cir. 2015)...............................................................................11

*Papurello v. State Farm Fire & Cas. Co.*,
    144 F. Supp. 3d 746 (W.D. Pa. 2015)..............................................................19, 20

*Portnoff v. Janssen Pharm., Inc.*,
    237 F. Supp. 3d 253 (E.D. Pa. 2017) ....................................................................3

*Pozzuolo v. Portfolio Recovery Associates, LLC*,
    371 F. Supp. 3d 217 (E.D. Pa. 2019) ..................................................................16

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,*
  485 F.3d 804 (5th Cir. 2007) ...........................................................21

*Public Citizen v. Department of Justice,*
  491 U.S. 440 (1989).........................................................................17

*Scott v. Fred Beans Chevrolet of Limerick, Inc.,*
  183 F. Supp. 3d 691 (E.D. Pa. 2016) ...............................................15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010)...........................................................................4

*Smith v. Bayer Corp.,*
  564 U.S. 299 (2011).............................................................................6

*Spivey v. Vertrue, Inc.,*
  528 F.3d 982 (7th Cir. 2008) ...........................................................20

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016)..........................................................12, 14, 15

*Standard Fire Ins. Co. v. Knowles,*
  568 U.S. 588 (2013)...............................................................3, 6, 7, 9

*Susinno v. Work Out World Inc.,*
  862 F.3d 346 (3d Cir. 2017)..............................................................12

*Tonge v. Fundamental Labor Strategies, Inc.,*
  277 F. Supp. 3d 809 (E.D. Pa. 2017) ...............................................13

*USX Corp. v. Adriatic Ins. Co.,*
  345 F.3d 190 (3d Cir. 2001)..............................................................18

*Vaccaro v. Amazon.com.dedc,*
  No. 18-11852, 2019 WL 1149783 (D.N.J. March 13, 2019)............18

*Winkworth v. Spectrum Brands, Inc.,*
  No. CV 19-1011, 2019 WL 5310121 (W.D. Pa. Oct. 21, 2019) ........7, 9

**RULES**

Fed. R. Civ. P. 26(b)(2)(C) ...............................................................20

**STATUTES**

13 Pa. C.S. § 9625.................................................................................7

13 Pa. C.S. § 9625(b).........................................................................15

iv

13 Pa. C.S. § 9625(c)(a) .................................................................19

13 Pa. C.S. § 9625(c)(1) ...................................................................5

13 Pa. C.S. § 9625(c)(2) ................................................2, 8, 15, 19

15 U.S.C. § 1681c(g)(1) ..................................................................15

28 U.S.C. § 1332 ..............................................................................3

28 U.S.C. § 1332(d)(2) ...................................................................20

**OTHER AUTHORITIES**

S. Rep. No. 109-14, 2005 U.S.C.C.A.N. 3 .......................................3, 4, 21

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), submits its Opposition to the Memorandum in Support of Motion to Remand (D.E. 10-1, "Motion") filed by Plaintiffs Vincent Sorace, Joseph and Tammy Yerty, James and Linda Zaronsky, Victor Stevenson and Ashley Yates, and Kimberly Solomon-Robinson (collectively, "Plaintiffs").

## I.     INTRODUCTION

Plaintiffs' motion to remand this case is nothing but jurisdictional gamesmanship and should be denied.  Plaintiffs ask this Court to ignore the substance of their Complaint and, instead, leave undisturbed Plaintiff's forum shopping strategy.  To do so, Plaintiffs seek to evade potential remedies to avoid federal jurisdiction by preemptively and superficially disclaiming remedies and injury on behalf of absent putative class members.  Such tactics are the exact type of behavior that the Class Action Fairness Act ("CAFA") was enacted to prevent.  Plaintiffs' self-proclaimed "deliberate" pleading to avoid federal standing does not negate the substance of the allegations, which Pennsylvania courts have held are more than bare statutory damages and linked to actual damages.  Nor can Plaintiffs disclaim potential substantial recovery on behalf of absent class members prior to certification, who may want to seek other available remedies, including waiver of deficiencies or removal of deficiency judgments.  The context of these cases are not "bare procedural violations" with minimal statutory damages; rather, the damages available under the Pennsylvania UCC are potentially substantial and often in the thousands of dollars per class member.  As such, federal jurisdiction exists here.

Accordingly, jurisdictional discovery is also not warranted.  Wells Fargo provided sworn evidence as to the amount in controversy, which easily exceeds the $5 million threshold for even a portion of the class period.  Plaintiffs are really seeking additional information, which they are not entitled to as part of removal and remand considerations.  Consistent with abundant case law

in the Third Circuit, Wells Fargo has provided appropriate evidence in support of removal, and Plaintiffs have provided no evidence to the contrary. Under the law, Plaintiffs' request should be denied, and Plaintiff's motion to remand and request for discovery should be denied in its entirety.

## II.       FACTUAL AND PROCEDURAL HISTORY

Plaintiffs filed their Class Action Complaint in the Court of Common Pleas for Philadelphia County, Pennsylvania, on July 7, 2020. Plaintiffs assert claims against Wells Fargo for violations of the Uniform Commercial Code ("UCC") and Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA") due to Wells Fargo's alleged systemic failure to comply with the statutory requirements relating to Post-Repossession Consumer Disclosure Notices, including notices of repossession and post-sale notices. Compl. ¶ 1. Plaintiffs allege various violations on behalf of five different classes of Pennsylvania debtors over a period of six years. Compl. ¶¶ 94-98. Specifically, Plaintiffs and the putative class members "seek the minimum statutory damages pursuant to 13 Pa. C.S. § 9625(c)(2)", which consists of the "credit service charge (finance charge) plus 10% of the principal amount of the obligation (amount financed)." Compl. ¶¶ 88, 91. Plaintiff further seek an additional $500 in damages per debtor based on alleged violations specific to post-sale notices. *Id.* at ¶ 92. At the same time, and regardless of the factual allegations made in support of millions of dollars in alleged class-wide damages, Plaintiffs also "deliberately" seek to disclaim "any actual, particularized, concrete injury-in-fact or material risk of harm to confer Federal jurisdiction" in the Complaint. *Id.* at ¶¶ 15-16.

Wells Fargo was served on August 3, 2020. On September 2, 2020, Wells Fargo timely removed the case to this Court. Following removal, counsel for Wells Fargo reached out to counsel for Plaintiffs to discuss staying the briefing on Wells Fargo's anticipated motion to dismiss, as Wells Fargo expected that Plaintiffs may seek to remand based upon their allegations attempting

to disclaim federal jurisdiction.  However, rather than agree to stay briefing on Wells Fargo's dismissal arguments, Plaintiffs' counsel refused and required Wells Fargo to file its Motion to Dismiss on September 30, 2020.  Upon seeing Wells Fargo's arguments in this Court for dismissal of the Complaint, Plaintiffs' counsel requested, and received Wells Fargo's consent, for an extension of time to respond up to and including October 29, 2020.  Late in the day on October 29, 2020, Plaintiffs' counsel sought to obtain Wells Fargo's consent to stay briefing on the pending motion to dismiss, because Plaintiffs would be filing a motion to remand – now claiming a lack of federal jurisdiction.  The fact that Plaintiffs' counsel only decided to argue lack of federal jurisdiction after reviewing Wells Fargo's dismissal arguments in this Court speaks volumes about Plaintiffs' strategy here.

### III.    <u>LEGAL STANDARD</u>

CAFA provides federal courts with diversity jurisdiction over class actions where (1) the amount in controversy exceeds $5 million; (2) there are minimally diverse parties; and (3) the class consists of 100 or more members.  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. § 1332).  Unlike other forms of removal, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 82 (2014); *see also Portnoff v. Janssen Pharm., Inc*., 237 F. Supp. 3d 253, 256 (E.D. Pa. 2017).  Rather, "Congress enacted CAFA to facilitate class actions in federal court, and its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Portnoff*, 237 F. Supp. 3d at 257 (citing *Dart Cherokee Basin*, 574 U.S. at 89); S. Rep. No. 109-14, *43, 2005 U.S.C.C.A.N. 3.

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and "[e]vidence establishing the amount is

required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin,* 574 U.S. at 89. "[T]he defendant is *not obligated* to research, state, and prove the plaintiff's claims for damages, but most only present "facts sufficient to establish that Plaintiff would more likely than not recover more than the jurisdictional amount." *Lewis v. Ford Motor Co*., 610 F. Supp. 2d 476, 484 (W.D. Pa. 2009) (internal quotations and citation omitted).

## IV.    ARGUMENT

### A.    Congress Enacted CAFA to Defeat the Jurisdictional Gamesmanship that Plaintiffs Engage in Here.

Congress enacted CAFA to protect against exactly the type of conduct that Plaintiffs engage in here. In endorsing CAFA, the Senate Judiciary Committee explained that "current law enables lawyers to 'game' the procedural rules and keep nationwide or multi-state class actions in state courts . . . ." S. Rep. No. 109-14, *4, 2005 U.S.C.C.A.N. 3. The Committee further explained that "class action lawyers typically misuse the [$75,000] jurisdictional threshold to keep their cases out of federal court" by, for example, including in their complaints "a provision stating that no class member will seek more than $75,000 in relief, even though they can simply amend their complaints after the removal . . . ." *Id.* at *10-11. CAFA attempted to curb those abuses by "expand[ing] substantially federal court jurisdiction over class actions." *Id.* at *43.[1]

---

[1] Plaintiffs argue that this Court should disregard the Committee's statements, pointing to dicta in two Third Circuit cases. Motion at 22. This suggestion is misguided and the language discussed therein is not even applicable here. *See, Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 163 (3d Cir. 2013) (Roth, J., dissenting) (referring to part of Report discussing definitional provisions); *Abraham v. St. Croix Renaissance Grp., LLLP*, 719 F.3d 270, 279 n.8 (3d Cir. 2013) (referring to part of Report discussing CAFA exclusion provision); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) (referring to part of Report discussing burden of proof). Here, by contrast, the Committee's statements about the abuse that led to CAFA's enactment and the effect that CAFA would have on expanding federal jurisdictional are—without question—at the very heart of its statutory text. Indeed, the Supreme Court has relied on the Report on numerous occasions. *Dart*, 574 U.S. at 89; *see also Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1752 (2019) (Alito, J., et al., dissenting); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*

Plaintiffs' Complaint represents the very type of jurisdictional manipulation that CAFA was designed to remedy, as Plaintiffs seek to assert a variety of claims under both the Pennsylvania UCC and the MVSFA, on behalf of five varying classes of putative plaintiffs, for a six year period, asserting statutory damages well above the $5 million threshold for CAFA. Compl. ¶¶ 88, 92 (defined as "not less than the credit service charge (finance charge) plus 10% of the principal amount of the obligation (amount financed)" plus an additional "$500 in statutory damages for each Post-Sale Notice violation, to each debtor/co-obligor separately."). As Plaintiffs have plead, the claims themselves hinge upon "two overarching principles that must guide a secured creditor's conduct in foreclosing on a vehicle loan," as all aspects allegedly must be "commercially reasonable" with a secured creditor required to "conduct itself honestly and observe reasonable commercial standards of fair dealing." Compl. ¶¶ 80-81. This requires considerations beyond a typical "bare procedural violation."

Even further, Plaintiffs make such allegations seeking to put millions of dollars of at issue, but then "disclaim" any harm or actual damages on behalf of the putative classes purely to avoid federal jurisdiction. Compl. ¶ 15. *See, e.g.,* Compl. ¶ 14 ("Plaintiffs explicitly and intentionally _limit_ their relief to statutory minimum damages) (emphasis original); ¶ 15 ("Plaintiffs are not alleging that they or any putative class members suffered any actual, particularized, concrete injury-in-fact") (emphasis original); ¶ 17 ("Plaintiffs and all (putative) class members are not making any claim for a loss or seeking actual damages pursuant to 13 Pa. C.S. § 9625(c)(1) or any other relief pursuant to § 9625(a).") (emphasis original); ¶ 19 ("Rather, Plaintiff challenge Defendant's…sending of…[notices]…which failed to inform the debtor…"). This intentional

_Co._, 559 U.S. 393, 459 (2010) (Ginsburg, J., et al., dissenting). The Report's statements about the origination and effect of CAFA are legitimate sources of statutory interpretation

abrogation of a potential recovery on behalf of putative class members is being done for the sole

purpose of forum shopping. This creates an incurable conflict between the interests of Plaintiffs

and those of the putative class.

**B.** **Plaintiffs Cannot Defeat CAFA Jurisdiction by Purporting to Disclaim the Damages of the Putative Class.**

Plaintiffs cannot defeat CAFA jurisdiction by purporting to disclaim the damages of the

putative class. The Supreme Court has admonished attempts to "remove [a] case from CAFA's

scope" by limiting the damages or other remedies sought by absent class members. *Standard Fire*,

568 U.S. at 590. A plaintiff cannot style her complaint to "reduce[] the value of the putative class

members' claims" because "a plaintiff who files a proposed class action cannot legally bind

members of the proposed class before the class is certified." *Id.* at 593 (citing *Smith v. Bayer*

*Corp.*, 564 U.S. 299, 313 (2011) ("[A] nonnamed class member is [not] a party to the class-action

litigation *before the class is certified*")).

In *Standard Fire*, the plaintiff filed a complaint in state court, which stipulated the plaintiff

and the putative class members would "seek to recover total aggregate damages of less than five

million dollars." *Id.* at 591. The defendant removed the case to federal court based on CAFA

jurisdiction, and the plaintiff moved to remand based on the damages limitation in the complaint.

*Id.* In light of the plaintiff's stipulation, the district court remanded the case to state court. *Id.* The

Supreme Court vacated the order, holding that the district court wrongly concluded that plaintiff's

pleading could overcome CAFA jurisdiction. *Id.* at 593. The Court held that the plaintiff "lacked

authority to concede the amount in controversy issue for absent class members" because "a named

plaintiff cannot bind precertification class members." *Id.* at 588. The Court reasoned:

> We do not agree that CAFA forbids the federal court to consider . . . the very real
> possibility that a nonbinding, amount-limiting, stipulation may not survive the class
> certification process. This potential outcome does not result in the creation of a new
> case not now before the federal court. To hold otherwise would, for CAFA

jurisdictional purposes, treat a nonbinding stipulation as if it were binding, exalt form over substance, and run directly counter to CAFA's primary objection: ensuring "Federal court consideration of interstate cases of national importance." It would also have the effect of allowing the subdivision of a $100 million action into 21 just-below-$5-million state-court actions simply by including nonbinding stipulations; such an outcome would squarely conflict with the statute's objection.

*Id.* at 594-95 (internal citation omitted). Although federal courts "permit **individual** plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement," an individual plaintiff "cannot yet bind the absent class."[2] *Id.* at 595-96 (emphasis added). Thus, the district court "should have ignored [the] stipulation." *Id.* at 596.

Put simply, *Standard Fire* teaches that "although a plaintiff may limit her monetary claims, any such limitation *is not binding on the class as a whole* prior to class-action certification and does not relieve the district court of its obligation to conduct its own analysis of the amount in controversy." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 504 n.8 (3d Cir. 2014) (emphasis added). In evaluating Plaintiffs' Motion for Remand, this Court should also consider Plaintiffs' "fiduciary duty," as representatives of the putative class, "not to 'throw away what could be a major component of the class's recovery'" to avoid CAFA jurisdiction. *Winkworth v. Spectrum Brands, Inc.*, No. CV 19-1011, 2019 WL 5310121, at *3 (W.D. Pa. Oct. 21, 2019) (citing *Standard Fire*, 568 U.S. at 594).

Plaintiffs attempt exactly what *Standard Fire* prohibits. Despite the many available forms of relief under the Pennsylvania UCC, 13 Pa. C.S. § 9625, Plaintiffs "explicitly and intentionally

---

[2] Plaintiffs' disclaimer of the potential recovery and Article III standing of absent class members also creates questions regarding Plaintiffs' adequacy to represent the class, as explained by the Supreme Court. *See Standard Fire*, 568 U.S. at 594 ("[A] court might find that [plaintiff] is an inadequate representative due to the artificial cap he purports to impose on the class' recovery.") (citing *Back Doctors Ltd. v. Metropolitan Property & Cas. Ins. Co.*, 637 F.3d 827, 830-831 (7th Cir. 2011)) (noting a class representative's fiduciary duty not to "throw away what could be a major component of the class's recovery").

*limit* their relief to statutory minimum damages pursuant to 13 Pa. C.S. § 9625(c)(2)" and disclaim

any injuries to themselves or the class members in a deliberate effort to avoid federal jurisdiction.

Compl. ¶¶ 14-17. In doing so, Plaintiffs throw away a major component of the absent class

members' potential recovery, as shown by Plaintiffs' own comparison of their case to a similar

lawsuit, *Langer v. Capital One, N.A.*, 2:16-cv-06130-HB (E.D. Pa.):

| Ad Damnum Clause in this Case | Ad Damnum Clause in *Langer v. Capital One, N.A.* |
|---|---|
| A. Certify the requested classes and appoint the undersigned as class counsel; | A. Certify the requested classes; |
| B. Award minimum statutory compensatory damages as provided by 13 Pa. C.S §9625(c)(2) to each member of the Notice of Repossession Class; and, | B. Award the greater of actual damages or the minimum statutory damages to Plaintiffs and to the class as provided by 13 Pa. C.S.A. §9625(b) and (c)(2); |
| C. Grant any other relief, if any, the Court deems just. | C. Award $500 to Plaintiffs and each Post-Sale Notice Class member pursuant to 13 Pa.C.S.A. §9625(e)(5); |
| | D. Declare that the Notice of Repossession and Post-Sale Notice used by Defendant in respect to Plaintiffs and the classes fail to comport with the provisions of the UCC, individually, and UCC and MVSFA in *pari materia*; |
| **NO OTHER RELIEF SOUGHT BY PLAINTIFFS.** | E. Declare that the disputed deficiency balances of Plaintiffs and class members are invalid and not owed as a matter of law in accordance with Savoy, supra.; |
| | F. Enjoin the collection of any invalid and disputed deficiency balances of, and vacate all judgements against, Plaintiffs and class members as permitted by 13 Pa. C.S.A. §9625(a) and/or Savoy, supra.; |
| | G. Temporarily and/or permanently enjoin the use of statutorily deficient notices, and the use of inaccurate submission(s) of the invalid and disputed deficiencies on Plaintiffs' and Class Members' credit reports, and remove the credit tradeline on the credit reports of Plaintiffs and Class Members related to the subject loans and invalid deficiency balances as permitted by 13 Pa. C.S. 9625(a); |
| | H. Vacate all judgements against class members relating to the invalid deficiency balances as permitted by 13 Pa. C.S. 96125(a); |
| | I. Award pre-judgment interest to the extent permitted by law; and |
| | J. Grant such other and further relief as may be deemed just and proper |

D.E. 10-1 at 17. Here, Plaintiffs seek to forgo the ability to obtain a waiver of deficiency balances,

but also vacating deficiency judgments, as well as tradeline deletion of the relevant accounts on

class members' credit reports, which are forms of recovery not necessarily found within the

statute.[3]  Plaintiffs cannot disclaim these potential remedies to avoid federal jurisdiction.  *See Standard Fire*, 568 U.S. at 594; *Winkworth*, 2019 WL 5310121, at *3.

Plaintiffs try to distinguish *Standard Fire* by arguing it does not prevent them from limiting the type of relief sought on behalf of the absent class members, only the monetary amount sought. This distinction lacks a difference.  Relying on *Standard Fire*, the Western District of Pennsylvania has rejected an attempt to avoid CAFA removal by limiting the type of relief sought for the putative class members.  *Winkworth*, 2019 WL 5310121, at *3 (denying motion to remand class action removed pursuant to CAFA, and concluding that "to the extent that Plaintiffs now seek to limit the replacements/refunds to the Pennsylvania Class," and disclaim them for the nationwide class, "their position conflicts with the holding of the United States Supreme Court that a prospective class member cannot legally bind members of a proposed class before the class is certified") (citing *Standard Fire*, 568 U.S. at 596).  This Court should reject Plaintiffs' efforts, as well.

Equally unconvincing is Plaintiffs' argument that the Court should allow them to disclaim the absent class members' damages because class members with actual damages can simply "opt out" of the class.  To support this point, Plaintiffs cite *Chakejian v. Equifax Information Services, LLC*, 256 F.R.D. 492 (E.D. Pa. 2009), which is readily distinguishable.  In *Chakejian*, the court certified a class action under the Fair Credit Reporting Act ("FCRA") which sought only statutory damages.  *Id.*  In rejecting a challenge to the plaintiff's adequacy as class representative, the court found the plaintiff could elect to forego actual damages without creating a conflict of interest with potential class members who sustained actual damages exceeding the statutory cap of $1,000.  *Id.* at 499.  The court reasoned that there was no evidence of class members who may have significant

---

[3] Although Wells Fargo notes that these are potential forms of recovery in these types of cases, Wells Fargo only argues here that they exist, and does not concede or waive any rights to argue in this litigation that they may not be appropriate or recoverable here.

actual damages, and "*[u]nless a district court finds that personal injuries are large in relation to statutory damages*, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." *Id.* (quoting *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)) (emphasis added). The Court further reasoned that a class member who turns up with a significant claim for actual damages could opt out of the class. *Chakejian*, 256 F.R.D. at 500.

*Chakejian* does not apply here for several reasons. To begin with, *Chakejian* was decided before *Standard Fire*; thus, the court did not have the benefit of the Supreme Court's admonition against disclaiming class members' remedies. The procedural posture was also different; the court in *Chakejian* was reviewing a motion for class certification, not a motion for remand. At that late stage, the court decided, based on the evidence adduced, that it need not force the representative plaintiff to pursue actual damages for the class members when there was no evidence that the class members had sustained any significant damages. *Id.* at 499. Unlike in *Chakejian*, Plaintiffs in this case have artificially limited the absent class members' damages from the outset of this case merely to avoid federal jurisdiction, even when the class members might have viable claims for actual damages or other remedies under the Pennsylvania UCC.

Further, *Chakejian* is distinguishable based on the nature of the FCRA claim at issue there. Under the FCRA, "individual losses . . . are likely to be small," such as a modest privacy concern or remote risk of identity theft, and the "actual loss is small and hard to quantify." *Murray*, 434 F.3d at 953; *see also Gennock v. Kirkland's, Inc.*, No. 2:17-cv-454, 2017 WL 6883933, at *11 (W.D. Pa. Nov. 29, 2017) ("The actual harm that a willful violation of FACTA [amendment to the FCRA] will inflict on a consumer will often be small or difficult to prove.") (citation omitted), *R. & R. adopted*, No. 2:17-cv-454, 2018 WL 350553 (W.D. Pa. Jan. 9, 2018). For such claims,

where "the potential for recovery is too slight to support individual suits," the Court may certify a class action for statutory damages, and the few class members with actual damages (if any exist) may opt out. *Murray*, 434 F.3d at 953; *see Chakejian*, 256 F.R.D. at 500 ("When *a few* class members' injuries prove to be substantial, they may opt out and litigate independently.") (emphasis added) (quoting *Murray*, 434 F.3d at 953). But that logic does not hold up in this case, where the absent class members, taking Plaintiffs' own pleading and their own comparison to *Langer* as true*,* may be disclaiming significant other available recovery, including invalidating what could be significant deficiency balances and voiding deficiency judgments, as well as credit reporting relief, just as an example. This does not even address what certain class members might seek in terms of actual damages. For all of these reasons, *Chakejian* does not apply.

In short, Plaintiffs' attempt to disclaim available remedies and damages on behalf of absent putative class members is unenforceable and cannot defeat federal jurisdiction under CAFA. Plaintiffs do not have authority to bind the putative class before certification and therefore cannot limit their potential recovery to avoid federal jurisdiction.

### C.     Plaintiffs' Attempted Disclaimer of Concrete Injury Does Not Amount to a Lack of Concrete Injury.

At bottom, Plaintiffs seek remand for lack of Article III standing, asserting that they carefully constructed their Complaint to disclaim any injuries and avoid federal jurisdiction. Motion at 2-3; *see, e.g.*, Compl. ¶ 15 ("Plaintiffs are not alleging that they . . . suffered any actual, particularized, concrete injury-in-fact or material risk of harm to confer Federal jurisdiction."). But looking beyond their legal conclusions and disclaimers of harm, Plaintiffs' factual allegations plausibly suggest Article III standing exists and thus remand should be denied.

In a class action, at least one named plaintiff must have Article III standing. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015). To establish Article III standing, the

plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders. of Wildlife*, 504 U.S. 555, 560 (1992)). An injury in fact exists when the plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[4] *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

As *Spokeo* teaches, "Article III standing requires a concrete injury even in the context of a statutory violation." 136 S. Ct. at 1549. In other words, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. On the other hand, where the statutory violation is "the very harm that Congress sought to prevent," the violation of a statutorily created procedural right may constitute an injury-in-fact. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (citation omitted); *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 635 (3d Cir. 2017) ("we have also accepted the argument, in some circumstances, that the breach of a statute is enough to cause a cognizable injury—even without economic or other tangible harm"). As discussed below, the Complaint contains sufficient factual detail to suggest Plaintiffs sustained actual injuries that satisfy the Article III standing requirement.

To start, Plaintiffs are incorrect that they can dodge federal jurisdiction by failing to plead each element of Article III standing verbatim. A complaint need not plead any magic words to support a claim for relief; in fact, the Court should look beyond the pleader's legal conclusions

---

[4] A "concrete" injury is one that is real and not abstract. *Spokeo*, 136 S. Ct. at 1548. "[I]ntangible injuries can nevertheless be concrete," such as a violation of the right to free speech. *Id.* at 1549. Further, "particularized" simply means that the injury "affect[s] the plaintiff in a personal and individual way." *Id.* at 1548.

and examine the factual content in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating Rule 8 requires that a complaint contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," while "labels and conclusions" or "a formulaic recitation of the elements" are insufficient) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

*Twombly* and *Iqbal*'s axiomatic pleading standard applies in the standing context, too. *See In re Horizon Healthcare*, 846 F.3d at 633 ("In reviewing facial challenges to standing, we apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)" and "[w]e disregard [] legal conclusions"). The Court should "examine the allegations in the complaint from a number of different angles to see if [the plaintiff's] purported injury can be framed in a way that satisfies Article III standing." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 479 (3d Cir. 2018) (citations omitted); *see also In re Horizon Healthcare*, 846 F.3d at 633-34 ("At the pleading stage, general ***factual allegations*** of injury resulting from the defendant's conduct may suffice. . . .") (emphasis added). The factual content in the complaint may support Article III standing even if no injury is expressly alleged. *Mielo*, 897 F.3d at 479; *see also Tonge v. Fundamental Labor Strategies, Inc.*, 277 F. Supp. 3d 809, 813 n.6 (E.D. Pa. 2017) (the fact that the complaint "did not explicitly allege violations of [plaintiff's] right to privacy and right to certain information" did not require court to disregard arguments about privacy and informational harms as basis for standing, as plaintiff had "specifically alleged that [defendants] violated her rights under two FCRA provisions, and that the purpose behind those provisions was to protect consumers' "right to privacy," make them "aware of their ability to control and correct the information" in their consumer reports, and to "ensure that consumers are informed of their rights to dispute").

Thus, to determine whether Article III standing exists, the Court should decide whether the Complaint includes sufficient content to plausibly suggest one or more Plaintiffs have: (1) suffered a concrete injury-in-fact; (2) that is fairly traceable to Wells Fargo's conduct, and (3) that the injury is redressable in this lawsuit. *See Spokeo*, 136 S. Ct. at 1547; *see also In re Horizon Healthcare*, 846 F.3d at 633. These elements may be satisfied based on the factual content in the Complaint despite the lack of precise allegations setting forth each element. *Mielo*, 897 F.3d at 479.

The factual content in the Complaint satisfies all three criteria and thus Article III standing exists. Plaintiffs sue Wells Fargo for its alleged failure to comply with the requirements for notices of repossession and post-sale notices under the Pennsylvania UCC and MVSFA. *See generally* Compl. They allege that Wells Fargo failed to provide adequate Notice of Repossession of their vehicles under the Pennsylvania UCC after repossessing their vehicles, including providing confusing language as to their rights to reinstate or redeem their vehicles. Compl. ¶¶ 37-40; 50-52. They also allege that Wells Fargo sold all but one of their repossessed vehicles at public auction and failed to send post-sale notices in compliance with the statutes requiring separate delivery to debtors via certified mail. *Id.* ¶¶ 42, 54-55. Plaintiffs allege that the Wells Fargo failed to inform them of "a Storage Fee, a Redemption Fee, a Reinstatement Fee, an Administrative Fee, and/or a Personal Property Fee" involved with the redemption or reinstatement of their contracts and used unlicensed entities as part of repossession. Compl. ¶¶ 45; 56-57. Although Wells Fargo disputes that any statutory violation occurred, these allegations plausibly suggest Plaintiffs sustained the exact type of injury contemplated by the statutes at issue: the repossession and sale of their vehicles in a manner contrary to Pennsylvania law. *See Langer v. Capital One Auto Fin.*, No. CV 16-6130, 2019 WL 296620, at *5 (E.D. Pa. Jan. 23, 2019) ("[Plaintiffs] have alleged a particularized and concrete injury, that is, the repossession of their vehicles in a manner contrary

to Pennsylvania law."). Plaintiffs' injuries are concrete because they are real and not abstract. *Spokeo*, 136 S. Ct. at 1548. The injuries are also particularized because Plaintiffs were personally affected. *Id.*

Plaintiffs' injuries are also allegedly traceable to Wells Fargo's conduct—its repossession and sale of the vehicles, and its alleged failure to send notices in accordance with the statutes. *See, e.g.*, Compl. ¶¶ 41-44, 53, 55. Lastly, the injury is redressable through the statutory damages that Plaintiffs seek. Compl. ¶¶ 88, 91-92; WHEREFORE Clause ¶ B. These statutory damages are linked to Plaintiffs' alleged injuries for an amount equal to the credit service charge plus 10% of the principal amount of the amount they financed with Wells Fargo. 13 Pa. C.S. § 9625(c)(2); *see also Scott v. Fred Beans Chevrolet of Limerick, Inc.*, 183 F. Supp. 3d 691, 697 (E.D. Pa. 2016) ("[T]he remedies set forth in § 9625 are compensatory in nature, and thus damages ***must be linked to the plaintiff's injuries***.") (emphasis added); *Cubler v. TruMark Fin. Credit Union*, 83 A.3d 235, 241 (Pa. Super. Ct. 2013) ("[S]ection 9625 provides a damages formula that is expressly linked to the aggrieved party's *injury*, not to the degree of the offending party's culpability, which is a feature inherent in penalties" for bare procedural violations and criticizing interpretation of Official Comment) (citing 13 Pa. C.S. §§ 9625(b) & (c)(2)).

Plaintiffs do not seem to quibble with the second and third elements for Article III standing. Rather, they assert that their Complaint has failed to establish a concrete injury, citing *Kamal v. J. Crew Group, Inc.*, 918 F.3d 102 (3d Cir. 2019). D.E. 10-1 at 6-7. Their reliance on *Kamal* is misplaced. In *Kamal*, the plaintiff sued for violation of the Fair and Accurate Credit Transactions Act ("FACTA"), which requires merchants to truncate credit card numbers on consumer receipts. *Id.* at 106; 15 U.S.C. § 1681c(g)(1). The plaintiff alleged that the defendant for provided him with a receipt that did not comply with FACTA's truncation requirement, but did not allege that the

receipt was disclosed to a third party. *Id.* at 108-09. The Third Circuit held the plaintiff lacked Article III standing to sue for this bare procedural violation of FACTA. *Id.* at 117. In reaching this conclusion, the Third Circuit observed Congress enacted FACTA as "to prevent the concrete harm of identity theft." *Id.* at 115. No third party had access to the plaintiff's receipt, and he suffered no harm or material risk of harm. *Id.* at 117-18. Without a sufficient degree of risk, the plaintiff alleged only a "bare procedural violation" divorced from any concrete harm, which could not support Article III standing. *Id.*; *see generally Freeman v. Early Warning Servs., LLC*, 443 F. Supp. 3d 581 (E.D. Pa. 2020) (explaining Third Circuit's decision in *Kamal* and observing that it "illustrates [the] difference" between a statutory violation that constitutes an injury in fact and one that does not).

Whereas the complaint in *Kamal* established only a bare procedural violation of FACTA, Plaintiffs' allegations support an inference that they incurred the precise injury contemplated by the Pennsylvania UCC.[5] Plaintiffs state that their vehicles were repossessed and (for all Plaintiffs except the Yertys) sold at auction without Wells Fargo providing them notices in the manner required by the UCC. Compl. ¶¶ 37-55. Plaintiffs' injury is the exact injury the UCC provision

---

[5] For the same reason, *Pozzuolo v. Portfolio Recovery Associates, LLC*, 371 F. Supp. 3d 217 (E.D. Pa. 2019) is also distinguishable. The plaintiff in *Pozzuolo* sued a debt collector for failing to include information in a debt validation notice about how to dispute the debt with the debt collector, under the Fair Debt Collection Practices Act ("FDCPA"). *Id.* at 220. The district court recognized that "[a] violation of a statute alone ***may satisfy the injury-in-fact requirement***," but concluded the violation at issue *in that case* only constituted a procedural violation. *Id.* at 222-23 (quoting *In re Horizon Healthcare*, 846 F.3d at 635). Further, the court in *Pozzuolo* faced plaintiff's own testimony that no injury occurred—unlike this instant case. *See Pozzulo*, 371 F. Supp. 3d at 224 (citing plaintiff's deposition testimony that he was not "hurt as a result of receiving this letter" and had no reason to use the debt-disputing procedures missing from the validation notice because he "acknowledges the debt and the amount"). By contrast Plaintiffs allege an injury (i.e., the repossession and sale of their vehicles) but try to disclaim that injury to avoid federal jurisdiction.

was designed to redress. *Langer*, 2019 WL 296620, at \*5.[6]  Even further, the deprivation of information alone can constitute a concrete injury supporting Article III standing. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing even where plaintiff had no intention of seeking housing); *see also e.g.*, *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue"); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) ("The 'injury in fact' that respondents have suffered consists of their inability to obtain information . . .  the statute requires. . . .").

Lastly, Plaintiffs' contention that a state legislature cannot confer Article III standing lacks merit.  "[L]egally protected interests may arise from the Constitution, from common law, or solely by virtue of "***statutes creating legal rights, the invasion of which creates standing***."  *Cottrell v. Alcon Labs.*, 874 F.3d 154, 164 (3d Cir. 2017) (quoting *Lujan*, 504 U.S. at 576-78) (emphasis added).  "Both federal law and state law—***including state statutes—can create interests that support standing in federal courts***."  *Cottrell*, 874 F.3d at 164 (citations omitted) (emphasis added).  This District has found the exact statute at issue creates interests sufficient to confer Article III standing.  *See Langer*, 2019 WL 296620, at \*5.  And as discussed above, Plaintiffs have pled facts showing an invasion of those interests despite their failed attempts to disclaim any injury.

---

[6] Plaintiffs try to distinguish *Langer* by asserting the plaintiffs there sought actual damages while they have only sought statutory damages.  But the court in *Langer* considered more than the monetary loss the plaintiffs incurred in determining they had Article III standing.  The court also considered the "loss of [the plaintiffs'] vehicle" to be a legally sufficient injury. 2019 WL 296620, at \*4-5.  Thus, as this District has found, Plaintiffs have Article III standing based on the repossession of their vehicles.  *Id.* at \*5 ("Here, plaintiffs have not alleged an attenuated risk of future harm or a bare violation of statute divorced from any actual injury.  Instead, as stated above, they have alleged a particularized and concrete injury, that is, the repossession of their vehicles in a manner contrary to Pennsylvania law.").

For these reasons, Article III standing exists, and the Motion for Remand should be denied.

### D.      Wells Fargo Has Met Its Burden Under CAFA and Jurisdictional Discovery Is Unnecessary

Of CAFA's three requirements, Plaintiffs challenge only one—whether the amount in controversy exceeds $5 million.  Motion at 21.  Plaintiffs' challenge has no merit because Wells Fargo has introduced uncontroverted evidence showing that the amount in controversy exceeds this threshold.

To determine jurisdictional facts for purposes of CAFA, district courts "may consider the Complaint, the Notice of Removal, and the parties' submissions related to Plaintiff's motion to remand." *Vaccaro v. Amazon.com.dedc*, No. 18-11852, 2019 WL 1149783, at *4 n.6 (D.N.J. March 13, 2019) (citing *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n.12 (3d Cir. 2001)). Wells Fargo submitted a sworn declaration with its removal papers explaining that the jurisdictional requirements here are met, which is sufficient evidence at this stage of the litigation. *See, e.g., Lewis*, 610 F. Supp. 2d at 484-85 (denying plaintiff's argument that defendant's declaration is "mere speculation upon which the Court cannot rely in ascertaining amount in controversy" and explain that "[defendant's] declaration is made under penalty of perjury and based on his personal knowledge . . . [and] other courts have accepted comparable evidence at this point in the litigation.").

"Unless Plaintiff submits other evidence to dispute Defendant's proofs, there is no factual basis for [a court] to find that Defendant's certifications or other documentary evidence are not credible." *Vaccaro*, 2019 WL 1149783, at *4.  Federal courts in the Third Circuit regularly deny motions to remand where a defendant submits a declaration or other evidence showing CAFA's amount in controversy is satisfied, and the plaintiff submits no contravening evidence of its own. *See, e.g., Farrell v. FedEx Ground Package Sys., Inc.*, No. CV 19-19973 (FLW), 2020 WL

6054530, at *3 (D.N.J. July 10, 2020) (defendants submitted declaration and plaintiffs submitted no evidence to contravene it); *Excel Pharmacy Servs., LLC v. Liberty Mut. Ins. Co.*, 389 F. Supp. 3d 289, 292-93 (E.D. Pa. 2019) (same); *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 755-56 (W.D. Pa. 2015) (same).

Here, Wells Fargo submitted a declaration with its Notice of Removal to support all three of CAFA's requirements. Declaration of Matthew D. Brink ("Brink Decl."), D.E. 1-2. As to the amount-in-controversy requirement, Wells Fargo's Loan Administration Area Manager, Matthew Brink, averred that his data analytics team used specific criteria[7] to identify persons who would fit the class population. Brink Decl. ¶ 6. From that population, Mr. Brink selected 1,500 individuals and identified the finance charges and principal amounts of their loans. Mr. Brink swore that their finance charges totaled $9,153,024.04, and that 10% of their principal amounts totaled $2,721,599.87. *Id.* These precise numbers plug into the formula for statutory damages under which Plaintiffs seek recovery. Compl. ¶ 91 (seeking statutory damages under 13 Pa. C.S. § 9625(c)(a)). Adding them together, as the statute requires, equals more than $11 million. *See* 13 Pa. C.S. § 9625(c)(2) (damages equal finance charge plus 10% of the principal amount). This number easily exceeds CAFA's $5 million threshold, even without accounting for the $500-per-obligor damages that Plaintiffs seek under another provision. Compl. ¶ 92. Plaintiff has submitted no evidence to contravene Mr. Brink's declaration. Mere argument, such as Plaintiffs' assertion

---

[7] Mr. Brink averred that the criteria for the search were persons "who: (a) entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a motor vehicle primarily used for personal, family, or household use; (b) from whom Wells Fargo, as a secured party, repossessed the vehicle or ordered it to be repossessed; (c) to whom Wells Fargo has a Pennsylvania address in its records for the Borrower and the vehicle was repossessed in Pennsylvania; (d) who were caused to be sent a Notice of Repossession from Wells Fargo using a Pennsylvania specific form; and (e) within the period beginning six years prior to the filing to the Complaint through December 31, 2017." Brink Decl. ¶ 6. This in fact only represents a portion of the time period alleged in the Complaint.

that Wells Fargo did not sufficiently "explain the details" of its calculation, Motion at 22, is not evidence. Indeed, this Court recently rejected a plaintiff's "critici[sm]" that a defendant's amount-in-controversy declaration was a "guesstimate," explaining that the plaintiff had "fail[ed]" to adduce proof rebutting defendant's evidence. *Papurello*, 144 F. Supp. 3d at 755-56.

Plaintiffs' assertion that Mr. Brink should have provided figures for the entire class is unpersuasive. Motion at 21. Nowhere do they cite authority for this novel argument, and for good reason. Courts commonly rely on declarations averring that the variables in the amount-in-controversy calculation are "at least," "more than," or "exceed" a certain number. *See, e.g.*, *Papurello*, 144 F. Supp. 3d at 755-56 (declaration averred that claims estimates were "more than" a certain number); *accord Castro v. Linden Bulk Transport.*, No. 19-20442, 2020 WL 2573288, at *2 (D. N.J. April 20, 2020) (declaration averred that expenses "exceeded" a certain number); *Excel Pharmacy*, 389 F. Supp. 3d at 292-93 (declaration averred that declined payments were "more than" a certain number). CAFA does not require that a defendant provide an exact number. *See Spivey v. Vertrue, Inc.*, 528 F.3d 982, 985-86 (7th Cir. 2008) ("A removing defendant need not confess liability in order to show that the controversy exceeds the threshold.") (Easterbrook, C. J.). This makes sense because CAFA itself is framed in terms of whether amount in controversy "*exceeds*" $5 million. 28 U.S.C. § 1332(d)(2). Anything over that number is immaterial to the determination of whether CAFA applies. Wells Fargo has met its burden.

As an alternative to remand, Plaintiffs seek jurisdictional discovery. Motion at 22. This Court should deny their request. A court must limit discovery that is not relevant or "is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C). In considering whether to grant jurisdictional discovery prior to remand, "the district court must balance the need for discovery while not unduly delaying the resolution of this preliminary question [of CAFA

jurisdiction].” *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 820 (5th Cir. 2007). It is unnecessary at the removal stage “for the district court to permit exhaustive discovery capable of determining the exact class size to an empirical certainty.” *Id.* at 821. Discovery of that type “more appropriately occurs during class certification.” *Id.* These concerns are particularly salient in light of the legislative history of CAFA. In recommending enactment of the statute, the Senate Judiciary Committee cautioned that “[a]llowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions.” S. Rep. No. 109-14, *44, 2005 U.S.C.C.A.N. 3. The Committee stated that, “Less burdensome means (e.g., factual stipulations) should be used in creating a record upon which the jurisdictional determinations can be made.” *Id.*

Nowhere in Plaintiffs' Motion do they contest the accuracy of Mr. Brink's statements. They simply want more information than what he already provided. Motion at 21. Specifically, they want to know the size and scope of the entire class **beyond** what would satisfy CAFA. While Plaintiffs' inquiry might be relevant to class certification, it is not relevant to removal because **by how much** the amount in controversy exceeds $5 million is not relevant here. *See Preston*, 485 F.3d at 820. As such, Plaintiffs' request for jurisdictional discovery should be denied.

## V. <u>CONCLUSION</u>

Wells Fargo respectfully requests that Plaintiffs' Motion for Remand be denied.

Dated: November 27, 2020                    Respectfully submitted,

/s/ Jarrod D. Shaw
Jarrod D. Shaw (Pa. Id. 93459)
Karla L. Johnson (Pa. Id. 307031)
McGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone:  (412) 667-7907
Facsimile:  (412) 667-7992
Email: jshaw@mcguirewoods.com
Email kjohnson@mcguirewoods.com

*Attorneys for Defendant*
*Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 27, 2020, and sent via U.S. Mail and/or email to participants not registered with the CM/ECF system:

Richard Shenkan
SHENKAN INJURY LAWYERS, LLC
6550 Lakeshore Street
West Bloomfield, MI 48323


*/s/ Jarrod D. Shaw*
Jarrod D. Shaw

*Attorney for Defendant*
*Wells Fargo Bank, N.A.*