## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT SORACE, JOSEPH YERTY, | ) | |
| TAMMY YERTY, JAMES ZARONSKY, | ) | |
| LINDA ZARONSKY, VIKTOR | ) | CIVIL ACTION |
| STEVENSON, ASHLEY YATES, | ) | |
| and KIMBERLY SOLOMON-ROBINSON, | ) | No. 2:20-CV-4318 |
| individually and on behalf of a class | ) | |
| of similarly situated persons, | ) | CLASS ACTION |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

### FIRST AMENDED CLASS ACTION COMPLAINT [1]

AND NOW COMES Vincent Sorace, Joseph and Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson (collectively known as "Plaintiffs"), on behalf of themselves individually and all others similarly situated, hereby file this Complaint against Wells Fargo Bank, N.A. and allege as follows:

### INTRODUCTION

1.  Plaintiffs bring this consumer class action on behalf of similarly situated residents of Pennsylvania, seeking monetary, equitable, injunctive, and declaratory relief through the Uniform Commercial Code ("UCC"), independently, and in *pari materia* with the Motor Vehicle Sales

---

[1] This First Amended Complaint is filed pursuant to Fed. R. Civ. P. 15(a)(1)(B). This Honorable Court stayed the briefing of the Motion to Dismiss (ECF 3) within 21 days after its service. ECF 12. This First Amended Complaint is intended to moot or narrow challenges raised in ECF 3. In the event that the Court requests that Plaintiffs file a Motion for Leave to Amend, Plaintiffs will do so immediately.

Finance Act ("MVSFA"),[2] necessitated by the Bank's failure to comply with the strict statutory requirements for Post-Repossession Consumer Disclosure Notices ("Notices of Repossession") that Defendant sent to consumer vehicle owners after the repossession of a motor vehicle securing a retail installment sales contract.

## PARTIES

2.     Plaintiff Vincent Sorace is an adult individual residing at 233 Monkey Wrench Road, Greensburg, PA 15601.

3.     Plaintiffs Joseph Yerty and Tammy Yerty are adult individuals who reside at 423 Brumbaugh Lane, Martinsburg, PA 16662.

4.     Plaintiffs James Zaronsky and Linda Zaronsky are adult individuals residing at 20 South Shupe St, Mount Pleasant, PA 15666.

5.     Plaintiffs Viktor Stevenson and Ashley Yates are adult individuals residing at 3100 Chartiers Ave., Pittsburgh, PA 15214.

6.     Plaintiff Kimberly Solomon-Robinson is an adult individual residing at 2614 Sampson St., Pittsburgh, PA 15235.

7.     All Plaintiffs had vehicles repossessed by Defendant (or its agent) in Pennsylvania.

8.     Wells Fargo sent each Plaintiff a Notice of Repossession at an address in Pennsylvania.

---

[2] The MVSFA was originally found in Chapter 7 of Title 69 of Purdon's Statutes. In 2014, it was repealed and recodified in Chapter 62 of Title 12 of Pennsylvania Consolidated Statutes. Plaintiffs are not asserting a private right of action under the MVSFA. Rather, all claims presented herein are made both within the confines of the UCC, independently, (i.e., Wells Fargo's duty as a fiduciary and bailor and its obligation of good faith) and in *pari materia* with the MVSFA.

9.     Excluding the Yerty Plaintiffs who reinstated their loan, Wells Fargo sent each Plaintiff a Post-Sale Notice.

10.     Defendant Wells Fargo Bank, N.A. (hereafter "Wells Fargo") is a federally chartered bank and is a subsidiary of Wells Fargo & Company.

**VENUE**

11.     Wells Fargo regularly and systematically conducts business throughout Pennsylvania.

**DEFINITIONS**

12.     **Collector-Repossessor:** The term "Collector-Repossessor" means, pursuant to 12 Pa.C.S.A.§6202:

(1)  A person who, as an independent contractor and not as a regular employee of an installment seller or a sales finance company, collects payments on installment sale contracts or repossesses motor vehicles that are the subject of installment sale contracts.

(2)  The term excludes the following:
       (i)  A duly constituted public official or an attorney at law acting in an official capacity.
       (ii)  A licensed seller or licensed sales finance company making collections or repossessions on installment sale contracts, if the seller or sales finance company:
       (A)  was previously a holder; or
       (B)  was not a holder but occasionally makes collections or repossessions for other licensed sellers or licensed sales finance companies.

This term includes brokers of repossession services, pursuant to 12 Pa.C.S.A. 6211(a).

13.     **Debtor**: The term "Debtor" is "A: (1) person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor …" *See*, 13 Pa. C.S.A. §9102.

14.     **Good Faith**:  The term "Good Faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing. 13 Pa.C.S.A. §1201; See, *Obligation of Good Faith*" below.

15.     **Motor Vehicle**:   Except as otherwise stated, the term "Motor Vehicle" means a device in which, upon which, or by which a person or property is or may be transported or drawn upon a public highway, including an automobile, a truck, a sports utility vehicle, a van, a minivan, a camper, a recreational vehicle, a motorcycle, or a truck. For purposes of this Complaint, the term is not intended to include a semitrailer or manufactured home.

16.     **Notice of Repossession**: The term "Notice of Repossession" refers to a post-repossession consumer disclosure notice and has the same meaning as the term "notification of disposition" in 13 Pa.C.S.A. §§9611, 9613, and 9614 and as "Notice of Repossession" in 12 Pa.C.S.A. §6254. Wells Fargo used at least one standardized, uniform form throughout the Class Period. The only information modified in the Notices of Repossession that are unique to each customer principally consists of amounts, personally identifiable information, unique data pertaining to the repossessed vehicle, the customer's loan information, and the date after which the disposition of the chattel is to occur.

17.     **Obligation of Good Faith**: The term "Obligation of Good Faith" refers to the requirement that "[e]very contract or duty within this title imposes an obligation of good faith in its performance and enforcement." 13 Pa. C.S.A. §1304.

18.     **Obligor**:  The term "Obligor" refers to A person that, with respect to an obligation secured by a security interest in or an agricultural lien on the collateral: (1) owes payment or other performance of the obligation; (2) has provided property other than the collateral to secure payment

or other performance of the obligation; or, (3) is otherwise accountable in whole or in part for payment or other performance of the obligation. The term does not include any issuer or nominated person under a letter of credit.

19. **Personal Property Fee**: The term "Personal Property Fee" refers to a fee which Wells Fargo and/or a third party repossessor, and/or the auction selling the repossessed vehicle charged typically as a precondition to the debtor(s) regaining possession of the personal belongings contained in the repossessed vehicle.

20. **Post-Sale Notice**: The term "Post-Sale Notice" is a post-sale consumer disclosure notice which has the same meaning as the term "Explanation of Calculation of Surplus or Deficiency" in Section 9616 of the UCC. 13 Pa. C.S.A. §9616. This term also refers to the "deficiency notice" required by 12 Pa.C.S.A. §6261(d) (Emphasis added). Principally, the only information modified in Post-Sale Notices that are unique to each customer consists of amounts, personally identifiable information, unique data pertaining to the repossessed vehicle, the customer's loan information, and dates.

21. **Redeem/Redemption**:  Unless stated otherwise, the term "Redemption" means a "buy back" of the repossessed vehicle by terminating the contract upon payment of the unpaid portion of the amount financed and the finance charge, plus late charges, and reimbursement of reasonable expenses incurred by Wells Fargo attributed to the retaking, repairing and storing the repossessed vehicle, and any other amounts lawfully due under the contract or permitted by law. 12 Pa.C.S.A. §6259.

22.    **Redemption Fee a/k/a Cure Fee or Administrative Fee**: The term "Redemption Fee" refers to a fee that Wells Fargo and/or a third party (a repossessor, repossession broker, and/or vehicle auction) charges as a precondition either for: (a) Redemption or Reinstatement. This fee is sometimes referred to as a "Cure Fee" or an "Administrative Fee."

23.    **Reinstatement:** The term "Reinstatement" refers to when a borrower pays some or all of the past due installments plus late charges, costs of suit, and actual incurred costs of retaking, repairing and storing the vehicle in order to bring the contract current, to reacquire possession of the repossessed vehicle, and to resume making installment payments.

24.    **Relevant Period**: The term "Relevant Period" or "Class Period" refers to the time period of July 7, 2014 through class certification for purposes of all putative classes except for the Post-Sale Notice Class, which is December 1, 2014 through class certification.

25.    **Schumer Box**: The term "Schumer box" is a table with a standardized format that discloses the rates, fees, terms and conditions of a credit card or other lending agreement as required under the federal Truth in Lending Act (TILA).

26.    **Storage Fee / Storage Expense**: The term "Storage Fee" or "Storage Expense" is an assessment to debtors (purportedly) for the storage of the repossessed vehicle.

## FACTS

27.    After repossessing Vincent Sorace's vehicle on or about July 22, 2014, Wells Fargo sent or caused to be sent to him a Notice of Repossession which is attached as **Exhibit 1**.

28.    After repossessing Kimberly Solomon-Robinson's vehicle on or about November 3, 2017, Wells Fargo sent or caused to be sent to her a Notice of Repossession attached hereto as **Exhibit 2**.

29.     After Wells Fargo repossessed: (a) James and Linda Zaronskys' vehicle on or about August of 2014; (b) Viktor Stevenson's and Ashley Yates's vehicle on or about July 5, 2016; and (c) Joseph and Tammy Yertys' vehicle in or about July of 2014, Wells Fargo sent or caused to be sent to each of them a Notice of Repossession.

30.     Plaintiffs presently do not have a copy of the Notices of Repossession sent to James and Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Joseph and Tammy Yerty. Copies of these documents are within the possession of the Defendant and will be obtained in discovery.  It is believed and averred that the Notices of Repossession sent or caused to be sent to each of them are the same or substantially similar as the form Notice of Repossession sent to Vincent Sorace and/or Kimberly Solomon-Robinson.

31.     At all relevant times, as Wells Fargo had possession, custody, and control of motor vehicles which were not owned by itself, it had a fiduciary duty and/or a bailor's duty towards Plaintiffs and the putative class members.

## **STATUTORY VIOLATIONS**

### **Wells Fargo's Systemic Inaccurate Disclosure
of Disposition of Repossessed Vehicles**

32.     13 Pa. C.S.A. §9610 (b) prohibits the sale of the collateral if the sale is not commercially reasonable.  The statute states, in relevant part, as follows:

> (b)   Commercially reasonable disposition – <u>EVERY aspect of a disposition of collateral</u>, including the method, manner, time, place and other terms, <u>MUST BE commercially reasonable</u>. [Only] <u>IF</u> commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels and at any time and place and on any terms.
> (Emphasis added).

The Notices of Repossession sent to the Public Auction Class stated that the repossessed vehicle would be sold at a "private sale."

33.     A private sale is a wholesale auction at which the public is not invited to attend and place a bid on vehicles.

34.     "A 'public disposition' is one at which the price is determined after the public has had a meaningful opportunity for competitive bidding. "Meaningful opportunity" is meant to imply that some form of advertisement of public notice must precede the sale (or other disposition) and that the public must have access to the sale (disposition)." 13 Pa. C.S. §9610, Comment 7.

35.     The Pennsylvania Superior Court has explained the reason behind the intended disposition disclosure requirement as follows:

> By notifying the debtor of the time and place of public sale, the debtor is given the opportunity to take whatever steps are necessary to protect his interest by taking part in the sale if he so desires. See 13 Pa.C.S. § 9504 (Official 1972 Comment, paragraph 5). Professors James J. White and Robert S. Summers say that "the notice requirement is easy to understand and apply; it is inspired by the forlorn hope that the debtor if he is notified, will either acquire enough money to redeem the collateral or send his friend to bid for it." J.J. White and R.S. Summers, UNIFORM COMMERCIAL *44 CODE, Section 26-9 (Second Edition, 1980) (Footnote omitted).

> *Industrial Valley v. Nash*, 349 Pa. Superior Ct. 27, 502 A.2d 1254 (1985).

36.     Defendant's material statement regarding the method of intended disposition (public or private sale) of these vehicles was systematically not true.

37.     Manheim Auction in Ohio is a public auction, where members of the public (including those whose vehicles were repossessed) could attend and bid on their repossessed vehicles. (See **Exhibit 3**, archived and current advertisements for the public auction on the Manheim's website for years 2014, 2017, 2019, and 2021, particularly "Manheim Ohio" corresponding to "Repo Units"). The same and/or similar public announcements to advertise the

8

public auction were made by Manheim and/or its agent(s) at all times during the Class Period.

38.     Throughout the Class Period, despite the fact that its Notices of Repossession sent to the Public Auction Class Members stated the repossessed vehicles would be sold at a private sale, Wells Fargo sold the repossessed vehicles at the Manheim Auction at 3905 Jackson Pike Grove City, OH 43123 ("Manheim Ohio Auction"), a public auction.

39.     In the Notice of Repossession, Wells Fargo systematically mis-informed Plaintiffs and the Public Auction Class Members of the intended method of disposition.

40.     Indeed, Wells Fargo knew the Manheim Auto Auction in Ohio to be a public auction as it references this auction as a "PUBLIC DISPOSITION" in Notices of Repossession which it systematically sent to borrowers who entered into a retail installment sales contract for the purchase of their vehicle in Ohio (which excludes them from the classes in the present case). Ohio law requires public dispositions. An exemplar of the Notice of Repossession used by Wells to comply with Ohio law is attached hereto as **Exhibit 4**. The Notice of Repossession shows that the Manheim Ohio Auto Auction is, indeed, a public auction.

41.     Wells Fargo concealed the fact that the vehicles of Plaintiffs and Class Members to be sold at a public auction in a deliberate effort to streamline the remarketing auction process (thereby saving money) and to reduce the prospect of redemptions and the attendant statutory obligations incident to redemptions, including Wells Fargo's continuing obligation to return redeemed collateral to the borrowers' county of residence or the county where the vehicle was purchased or repossessed. See, 12 Pa. C.S. §6259(c)(2)).

### Wells Fargo's Systemic Failure to Disclose all
### Fees and Expenses Associated with Redemption
### and its Use of Illegal Fees

42.     Thirteen Pa.C.S. §9623(b)(2) allows a debtor to redeem his vehicle by tendering, *inter alia*, the reasonable expenses and attorney fees described in Pa.C.S. §9615(a)(1).

43.     Thirteen Pa.C.S. §9615(a)(1) limits these expenses to "the reasonable <u>expenses</u> of retaking, holding, preparing for disposition, processing and disposing… incurred by the secured party."

44.     The "safe harbor" notice language set forth in 13 Pa.C.S. §9614(3) also makes clear that only expenses ***actually incurred* by the secured party** can be passed on to the vehicle owner:

> "You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including **our expenses**." (emphasis added).

45.     Thus, Defendant's Notices of Repossession, which claims to inform the debtor how much he/she will have to tender to Redeem the vehicle, can only include in the amount required to redeem those expenses listed in 13 Pa.C.S. §9615(a)(1).

46.     As a matter of uniform practice, all Class Members who reinstated or redeemed their vehicles were charged undisclosed fees, including a Storage Fee, a Cure Fee/Redemption Fee, and/or a Personal Property Fee.

47.     These fees were not incurred by Defendant. In the alternative, if they were incurred, Wells Fargo improperly did not include them in the Notices of Repossession, as stated above, or in the alternative simply acted as a billing agent, passing along otherwise unreasonable and unnecessary fees under the ruse of an expense to its unwitting borrowers.

10

48.     These fees violated the UCC and MVSFA in *pari materia* because 12 Pa.C.S. §6256 states that a borrower is only liable for "actual, necessary, and reasonable costs."

49.     These fees were not actual, necessary and reasonable expenses.

50.      Therefore, Defendant violated both the UCC, independently, and in *pari materia* with the MVSFA by: (1) failing to disclose fees incurred by Wells Fargo that were required to be paid in order for plaintiffs and Class Members to redeem or reinstate, resulting in an inaccurate amount required to redeem/reinstate; and/or, (2) charging (and/or permitting third parties to charge) and/or improperly collecting illegal, unincurred, fees.

51.     Wells Fargo (or its broker) had (have) arrangements with repossessor(s), repossession broker(s), and/or auction(s) permitting the assessment of a Storage Fee, a Cure Fee a/k/a/ a Redemption Fee, and/or Personal Property Fee.

52.     Among the repossession brokers who Wells Fargo used during the Relevant Period for repossessions in Pennsylvania were Millennium Capital and Recovery Corp. ("Millennium") of 1595 Georgetown Rd., Suite A, Hudson, Ohio 44236 and Victory Recovery Services, Inc. ("Victory") of 4657 Thompson Mill Rd., Buford, GA 30518.

53.     Wells Fargo contracted with Victory and Millennium and other repossession brokers who, in turn, contracted with various repossessors throughout Pennsylvania to repossess debtors' vehicles and to charge a Cure Fee (aka "Redemption Fee); a Storage Expense; and/or a Personal Property Fee, either to Wells Fargo directly (in which case Wells Fargo passed along these improper fees to its borrowers) and/or to Wells Fargo's borrowers.

54.     Wells also is believed to have contracted directly with some repossessors in Pennsylvania to repossess vehicles of Class Members, authorizing the assessment of these illegal fees.

55.     The Notice of Repossession sent to all Plaintiffs also failed to inform them that, in the event that they Redeemed or Reinstated, the Redemption Amount would include a Storage Fee, a Redemption Fee/Cure Fee, and/or a Personal Property Fee.

56.     The Yertys paid a Redemption/Cure Fee, Personal Property Fee, and/or a Storage Fee to Wells Fargo and/or Victory.

57.      If these fees were incurred by Wells Fargo, they were required to be disclosed in the Notice of Repossession. Defendant's failure to disclose and include these amounts resulted in the total amounts due for redemption and/or reinstatement in the Notice of Repossession as inaccurate.

58.     In addition, regardless of whether these fees were disclosed in the Notices of Repossession, each of these fees were not bona fide expenses and, therefore, were unlawful fees, as they were not included in the subject retail installment sales contract of Plaintiffs and Class Members and/or not permitted by any statute or regulation.

59.     These illegal fees were not bona fide, reimbursable expenses as none of them were actual, necessary, and/or reasonable.

## **Wells Fargo's Systemic Post-Sale Notices Deficiencies**

60.     For Plaintiffs and Class Members who were sent a Post-Sale Notice any time after December 1, 2014,[3] the MVSFA requires that within 30 days after the sale of a repossessed vehicle, the "installment seller or holder **shall** deliver in person or send by registered or certified mail to the last known address of the buyer a deficiency notice…" 12 Pa.C.S.A.§6261(d).

61.     Wells Fargo sent a Post-Sale Notice to Solomon-Robinson on or about December 24, 2017, though not by registered or certified mail. **Exhibit 5**.

62.     As a matter of policy and practice, at all relevant times, Wells Fargo did not send a Post-Sale Notice to any Representative Plaintiff by registered or certified mail after December 1, 2014 (the Yertys were not sent a Post-Sale Notice due to their loan reinstatement).

## **Wells Fargo's Systemic Use of Unlicensed Repossession Brokers**

63.     Collector-Repossessors are required to be licensed in Pennsylvania when acting in the capacity of principal, employee, agent, ***or broker***. 12 Pa. C.S. §6211.

64.     Throughout the Class Period, Wells Fargo brokered repossessions through numerous brokers, including but not limited to Victory Recovery Services, Inc. and Millennium Capital and Recovery Corporation, both of which were foreign corporations not registered to conduct business in Pennsylvania for the repossession of vehicles.

65.     Neither Millennium nor Victory held a Collector-Repossessor license to broker the repossessions of vehicles in Pennsylvania.

---

[3] Effective December 1, 2014, the MVSFA was recodified at 12 Pa.C.S.A. §6201, *et seq*., in part setting forth the new requirement that Post-Sale Notices be sent in person or by registered or certified mail.

66.     At all relevant times, Wells Fargo knew or should have reasonably known that Victory and Millennium were not licensed as Collector-Repossessors in Pennsylvania and failed to take reasonable steps to ascertain this information and/or prohibit their involvement in repossessions in Pennsylvania.

### Improper Certifications to PennDOT

67.     For Class members who did not redeem their vehicle, Wells Fargo or its agent submitted a Pennsylvania Department of Transportation MV-217A form ("retitling forms"), to obtain a new title to each repossessed vehicle. (MV-217A forms used to retitle the vehicles of Plaintiffs Vincent Sorace and James and Linda Zaronsky are attached collectively as **Exhibit 6**.

68.     In executing and submitting a retitling form, Wells Fargo (directly or through its authorized agent) routinely certified that it had "complied with all applicable laws and regulations of Pennsylvania" (MV-217A).

### The UCC and MVSFA must be read *in pari materia*

69.     Wells Fargo, as a secured creditor who elects to exercise self-help repossession of motor vehicles is required to comply with both the UCC, independently, and in *pari materia* with the MVSFA, 12 Pa.C.S.A. §6201, *et seq*. These statutes much be applied in *pari materia*. *Industrial Valley Bank & Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 (1985).

70.     The Eastern District of Pennsylvania and other trial courts in Pennsylvania have certified similar claims involving defective Notices of Repossession and, adhering to *Industrial Valley Bank and Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 1263 (Pa. Super. Ct. 1985), have held that the secured creditor must comply with the MVSFA in *pari materia* with the UCC to ensure that the notice is commercially reasonable, pursuant to the UCC.

14

A. *Dudo v. Capital One, N.A*., 296-2020 (CCP Jefferson County)(final approval order): "Common issues of law and fact … predominate over potential individual issues, including whether Defendant complied with certain content requirements of the MVSFA independently, and the UCC and MVSFA in *pari materia* regarding forms Defendant used when issuing post-repossession consumer disclosure notices sent to all class members --- such that Defendant's failure to comply is per se commercially unreasonable as a matter of law. *Ryan v. Tidewater Finance Co*., 03529-2017 (Phila. CCP., July 23, 2018). **Exhibit 7**.

B. *Ryan v. Tidewater Finance Finance Co, supra*., 03529 Sept. Term, 2017 (preliminary approval order): "The question of sufficiency or commercial reasonableness of Tidewater's form disclosures do not vary among Class Members because each omit the same mandatory content and were mailed in the same manner. … A disclosure notice cannot be commercially reasonable if the text violates the MVSFA, the UCC, or the MVSFA and the UCC in *pari materia* and form notices and/or standardized practices." **Exhibit 8**.

C. *Cosgrove v. Citizens Auto. Finance, Inc.*, 2011 WL 3740809 (E.D. Pa. 2011)("The Pennsylvania UCC does not define "reasonable" notice, but Pennsylvania courts define the term by looking at statutes governing vehicle finance and repossession. See, *Industrial Valley Bank and Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 1263 (Pa. Super. Ct. 1985);" and,

D. *McCall v. Drive Financial Services, L.P., et al.*, January Term, 5 (2006)(certifying a post-repossession disclosure notice class action stating "[t]he legislature, through the UCC and the MVSFA, requires secured parties to provide consumers with specific, detailed notices of repossession and sale)." **Exhibit 9**.

71.    "Statutes or parts of statutes are in *pari materia* when they relate to the same persons or things or to the same class of persons or things." 1 Pa. C.S. §1932(a). "Statutes in *pari materia* shall be construed together, if possible, as one statute." 1 Pa. C.S. §1932(b).

72.    The MVSFA sets forth notice requirements for secured parties who repossess other than by legal process. Likewise, the UCC sets forth the notice requirements for secured parties who repossess other than by legal process. Therefore, these statutes clearly relate to the same persons or things and/or to the same class of persons or things, debtors whose vehicles were repossessed outside the judicial process.

73.     Further, Comment 9 to 13 Pa.C.S.A.§9620 specifically directs courts to construe UCC provisions "harmoniously," i.e. in *pari materia*, with other laws that regulate secured transactions. The MVSFA is such a law.[4]

### Damages

74.     13 Pa. C.S.A. §9625(c)(2) allows consumer debtors such as Plaintiffs (and members of the putative class) to recover statutory damages of not less than the credit service charge (the "Finance Charge" box in the Schumer Box) plus 10% of the principal amount of the obligation ("Amount Financed" box in the Schumer Box). These figures are readily determinable simply by a review of the Schumer Box of each Class Members' retail installment sales contract.

75.     The Official Comments to the UCC are entitled to great weight under Pennsylvania law.

76.     Comment 4 to 13 Pa.C.S. §9625 makes clear that these statutory damages are intended to establish a secured party's liability for violations of, *inter alia*, the notice provisions in consumer goods transactions, regardless of whether "actual damages" are greater, lesser, or even absent. That Comment states in pertinent part:

> 4.     **Minimum Damages in Consumer-Goods Transactions.** Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, ***regardless of any injury that may have resulted***. Official Comment to §9625(c)(2).

---

[4] Plaintiffs do not assert claims under the MVSFA as a private right of action. Plaintiffs' claims for violation of the MVSFA are asserted in *pari materia* with the UCC, through 9610 which requires all dispositions to be commercially reasonable. A disposition is *per se* commercially unreasonable if it violates statutes such as the MVSFA.

77.     Plaintiffs and the Post-Sale Notice Class Members also seek damages under Section 9625(e)(5) which provides for $500 in statutory damages for each Post-Sale Notice violation, to each debtor/co-obligor separately.

78.     Plaintiffs further seek the extinguishment of all Class Members' deficiency balances on the subject vehicle loan accounts plus other injunctive and declaratory relief as expressly permitted by 13 Pa. C.S. §9625(a).

### CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring this action on their own behalf and on behalf of four classes designated pursuant to Fed.R.Civ.P. Rule 23.

80.     Plaintiffs propose to define their first class (hereafter "Notice of Repossession Class") as: All debtors, borrowers, and obligors:

(i)      who entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use;

(ii)     from whom Wells Fargo, as secured party, repossessed the Motor Vehicle or ordered it to be repossessed; and,

(ii)     to whom Wells Fargo sent a Notice of Repossession to a Pennsylvania address, which was based on the same or substantially similar form as **Exhibit 1** or **Exhibit 2**.

81.     Plaintiffs propose to define their second class (hereafter "Public Auction Class") as:

All debtors, borrowers, and obligors:

(i)      who entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use;

(ii)     from whom Wells Fargo, as secured party, repossessed the Motor Vehicle or ordered it to be repossessed;

(iii)   to whom Wells Fargo sent a Notice of Repossession to a Pennsylvania address, at any time between July 7, 2014 and the date of class certification;

(iv)   which stated that the repossessed vehicle would be sold at a private sale; and,

(v)   whose repossessed Motor Vehicle was offered for sale at the Manheim Ohio Auto Auction at a sale at which members of the general public were invited to attend or which was advertised to the general public.

82.   Plaintiffs propose to define their third class (hereafter "Hidden Fees Class") as:

All borrowers, debtors, and obligors:

(i)   Who entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use;

(ii)   from whom Wells Fargo, as secured party, repossessed the Motor Vehicle or ordered it to be repossessed;

(iii)   whose Motor Vehicle was repossessed by a Collector-Repossessor who had an agreement with Wells Fargo or with Wells Fargo's repossession broker that authorized the assessment of a Storage Fee, a Redemption Fee, a Reinstatement Fee, an Administrative Fee, and/or a Personal Property Fee; and,

(iv)   to whom Wells Fargo sent or caused to be sent a Notice of Repossession to a Pennsylvania address at any time between July 7, 2014 and the date of class certification.

83.   Plaintiffs propose to define their fourth class (hereafter "Unlicensed Repossession Class") as: All debtors, borrowers, and obligors:

(i)   Who entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use;

(ii)   from whom Wells Fargo, as secured party, repossessed the Motor Vehicle or ordered it to be repossessed; and,

(iii)   whose vehicle was repossessed in Pennsylvania by, or whose repossession in Pennsylvania was brokered by, a Collector-

Repossessor who was not licensed for the repossession or brokering of the repossession with the Department of Banking and Securities of the Commonwealth of Pennsylvania, between July 7, 2014 and the date of class certification.

84.     Plaintiffs propose to define their fifth class (hereafter "Post-Sale Notice Class") as:

All debtors borrowers, and obligors:

(i)     who entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a Motor vehicle primarily used for personal, family or household use;

(ii)    whose Motor Vehicle was repossessed by Wells Fargo in Pennsylvania;

(iii)   whose motor vehicle was sold by Wells Fargo;

(iv)    whose mailing address and/or whose co-obligor's mailing address at the time of the sale of the vehicle, according to Wells Fargo's business records, was/were in Pennsylvania; and,

(v)     to whom Wells Fargo did not sent a Post-Sale Notice by registered or certified mail at any time on or after December 1, 2014 through the date of class certification.

85.     Plaintiffs reserve the right to modify the class definitions and the time periods involved.

86.     The size of each of the classes described in this pleading are so numerous that joinder of all members is impractical.

87.     The classes and any trial would be readily manageable as the claims relate to standardized policies and practices and notices based on standard forms.

88.     There are questions of law and fact common to the classes, which predominate. These include but are not limited to the following questions:

(a)     Whether Plaintiffs and the Class obtained Motor Vehicle financing through Wells Fargo and pledged their vehicle as collateral;

19

(b)     Whether Wells Fargo or its agents repossessed the financed vehicle or ordered it to be repossessed;

(c)     Whether Wells Fargo sent a Notice of Repossession or Post-Sale Notice within six years prior to the filing of the original complaint;

(d)     Whether Wells Fargo sold any of the Public Auction Class Members' repossessed vehicles at the Manheim Ohio Auto Auction, which constituted a public auction;

(e)     Whether Wells Fargo retained unlicensed Collector/Repossessors to broker or facilitate the repossessions of any Class Members' vehicles; and,

(f)     Whether any of these acts violated the UCC, independently, and/or the UCC and MVSFA in *pari materia*.

89.     The Representative Plaintiffs' claims are typical of those of the class.  All are based on the same factual and legal theories. All Class Members financed the purchase of vehicles through Wells Fargo and pledged their vehicle as collateral or had a consumer vehicle installment sales contract that was assigned to Wells Fargo.

90.     Wells Fargo declared a default on loans of all Plaintiffs and Class Members.

91.     The Notices of Repossession sent to the Plaintiffs are based on the same or substantively similar form as, and/or has the same statutory defects, as the notices that Wells Fargo sent to the members of the Notice of Repossession Class and Public Auction Class.

92.     Both the Yerty Plaintiffs and the Class Members in the Unlicensed Repossession Class had their vehicles repossessed in Pennsylvania by unlicensed party(ies).

93.     The Post-Sale Notices sent to the Post-Sale Notice Class were not sent by registered or certified mail.

94.     Plaintiffs will fairly and adequately represent and protect the interests of the classes.

95.     The Plaintiffs are represented by counsel that is competent and experienced in both consumer protection and class action litigation.

96.     Plaintiffs have no conflict with Class Members in the maintenance of this action, and their claims are identical to or at least typical of claims of the Class Members.

97.     A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impracticable.  This class action represents the fairest and most efficient method of adjudicating this controversy.

98.     Because most Class Members either do not know that their rights have been violated, could not economically justify the effort and expense required to litigate their individual claims or have little interest in or ability to prosecute an individual action due to the complexity of the issues involved in this litigation, a class action is the most practical proceeding in which they can recover.

99.     Plaintiffs and the Class Members have substantive claims that are similar, if not identical, in all material respects and will require proof of the same kind and application of the same law.

100.    Wells Fargo has acted or refused to act on grounds generally applicable to the (putative) classes, thereby making appropriate final relief with respect to the classes.

101.    There are no unusual legal or factual issues which would cause case management problems not normally and routinely handled in class actions.

102.    Minimum statutory damages can be calculated easily and with mathematical precision and can be easily determined, *inter alia,* by accessing the electronically stored records of Wells Fargo.

103.    Plaintiffs seek no double recovery for any claim.

104.    The questions of law and fact common to the classes predominate over any questions affecting only individual members.

105.    The prosecution of several separate actions by the members of the classes would create a risk of inconsistent or varying adjudications. A class action will serve the goals of judicial economy and ensure uniformity of decision.

### COUNT 1
### (NOTICE OF REPOSSESSION CLASS, PUBLIC AUCTION CLASS, HIDDEN FEES CLASS, AND UNLICENSED REPOSSESSION CLASS)

106.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

107.    The actions and omissions by Wells Fargo regarding its disposition of Class Members' vehicles violated the UCC, independently, including being commercially unreasonable in violation of 13 Pa.C.S.A.§9610(b), Wells Fargo's Obligation of Good Faith (13 Pa. C.S.A. §1304), being in violation of other statutes, and/or being in violation of its fiduciary and bailor duties that it owed to Plaintiffs and Class Members, and also violated the UCC in *pari materia* with the MVSFA for any of the enumerated MVSFA/UCC corollary statutes, including as follows:

    a.    Failing to accurately state in Notices of Repossession the method of intended disposition and failing to state the time and place of the public disposition of the repossessed vehicle in violation of 13 Pa.C.S.A.§9614(1)(i)) (which incorporates 13 Pa.C.S.A.§9613(1)(iii) and (v)). Wells Fargo systematically sent Notices of Repossession which failed to accurately state the method of intended disposition of the repossessed vehicles, stating that the Motor Vehicle would be sold at a private sale but, in actuality, selling such repossessed vehicles at a public auction;

    b.    Failing to state in Notices of Repossession bona fide expenses that Wells Fargo had actually incurred which borrowers who reinstated their loan, redeemed their vehicle, and/or retrieved their personal property would be required to pay. As a result, the required amounts for redemption and/or reinstatement listed in the Notice of Repossession were systematically inaccurate, in violation of 12

22

Pa.C.S.A.§6254(c)(2), 13 Pa.C.S. §9613 (as incorporated into §9614), and/or 13 Pa.C.S. §9614); and/or,

c.       Stating expenses in Notices of Repossession that were not bona fide incurred expenses. As a result, the required amounts for redemption and/or reinstatement listed in the Notice of Repossession were systematically inaccurate, in violation of 12 Pa.C.S.A.§6254(c)(2), 13 Pa.C.S. §9613 (as incorporated into §9614), and/or 13 Pa.C.S. §9614);

d.       Requiring (either directly and/or via agreement with third parties) Plaintiffs and Class Members who redeemed their vehicles to pay fees and expenses, including a Storage Fee, a Cure Fee/Redemption Fee, and/or a Personal Property Fee, that were not actual, necessary, and reasonable, in violation of the UCC, 13 Pa.C.S. §§9615(a)(1) and 9623(b)(2), and in violation of the UCC in *pari materia* with the MVSFA, 12 Pa.C.S. §6256 ; Collecting post-repossession payments from class members towards deficiencies that were not owed;

e.       Failing to return personal property of class member that was in the vehicles when they were repossessed and collecting an illegal fee from class members as a condition of their obtaining the return of their personal property.

f.       Sending adverse credit information about class members to credit reporting agencies in connection with deficiencies that, under *Savoy*, were no longer extant;

g.       Hiring Collector-Repossessors who were not licensed in Pennsylvania to repossess vehicles and/or broker repossessions;

h.       Submitting MV-217A forms to PennDOT which included false certifications, stating that Wells Fargo complied with all statutes and regulations when, in fact, it did not do so [(also in violation of 18 Pa. C.S.A. §4911(a)(1)];

i.       Failing to ensure that its Notices of Repossession complied with the statutory requirements for secured loans as set forth in the UCC, independently, and in *pari materia* with the MVSFA [as incorporated into 9610(b)];

j.       Failing to return redeemed collateral to the borrowers' county of residence or the county where the vehicle was purchased or repossessed. See, 12 Pa. C.S. §6259(c)(2));

k.       Violation of other statutes: 18 Pa.C.S.A. §4911(a)(1) and (2); 12 U.S.C.A. §5531**,** §5536(a), and §5481(15)(A)(x) of the Consumer Financial Protection Act, the Pa. Fair Credit Extension Uniformity Act, and the Pa. Uniform Trade Practices and Consumer Protection Law. The remedies of these statutes are <u>not</u> sought. Rather, the conduct alleged herein violates one or more of these statutes which, in turn, is included in the claim merely to provide additional evidence of Defendant's commercial unreasonable

conduct and breaches of its Obligation of Good Faith and breach of its statutory and common law duties in violation of the UCC; and/or,

l.      Otherwise violating the UCC, independently, and/or the UCC and MVSFA in *pari materia;* and/or otherwise failing to proceed in a commercially reasonable manner, in violation of its Obligation of Good Faith and/or its fiduciary duty/bailor duties.

108.    Violations of the MVSFA are violations of the UCC and MVSFA in *pari materia,* and are also violations of the UCC independently, namely though not limited to the commercial reasonableness requirement of 13 Pa.C.S. §9610(b) and of the UCC's Obligation of Good Faith.

109.    Because of these defects, the Notices of Repossession violated the UCC, independently, by violating §9610(b), §9611, §9613, §9614, §9615, and §9623; 13 Pa. C.S §1201 and §1304; and the UCC and MVSFA in *pari materia* by violating 12 Pa.C.S.A.§6254(c)(2) and (6) coupled with one or more of the above-cited UCC statutes.

## <u>COUNT 2</u>
### (POST-SALE NOTICE CLASS)

110.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

111.    As a matter of pattern and practice of non-compliance, on and after December 1, 2014, Wells Fargo failed to send Post-Sale Notices via registered or certified mail as required by 12 Pa.C.S. §6261(d), in violation of 13 Pa. C.S. §9616 and 12 Pa.C.S. §6261(d) in *pari materia* to 13 Pa. C.S. §9616.

WHEREFORE, Plaintiffs, individually and on behalf of these putative classes, request that this Honorable Court grant the following relief as against Defendant as follows:

A.  Certify the requested classes and appoint the undersigned as class counsel.

B.  Monetary Damages

1.  Award the greater of actual damages or the minimum statutory damages, provided by 13 Pa. C.S. §9625(b) and (c), to each member of the Notice of Repossession Class, Public Auction Class, Unlicensed Repossession Broker Class, and the Hidden Fee Class;

2.  Award $500.00 to each member of the Post-Sale Notice Class provided by 13 Pa. C.S. §9625(e);

C.  Declaratory Relief

1.  Declare that the practices complained of were not commercially reasonable pursuant to 13 Pa.C.S. §9610(b) and/or violated 13 Pa.C.S. §§9614, 9615, 9616, and 9623, independently, and in *pari materia* with 12 Pa.C.S. §§ 6254(c)(2), 6256, and/or 6259;

2.  Declare that the disputed deficiency balances of Plaintiffs and Class Members are invalid and cannot be collected, as a matter of law;

3.  Declare that any loan by which a Class Member borrowed funds to refinance a disputed deficiency balance is null and void and cannot be collected, as a matter of law;

4.  Declare that any monies paid to Wells Fargo post-repossession and/or post-sale by Class Members towards their deficiencies should returned; and,

5.  Declare that Wells Fargo's negative trade line for all Class Members (which is not disputed) is illegal and must be remediated.

D.  Injunctive and Equitable Relief

1.  Pursuant to 13 Pa. C.S. §9625(a), impose a constructive trust on all ill-gotten proceeds; order an accounting of all such proceeds, and their expedited return, with interest, by ordering the Bank to disgorge all moneys received from any Class Member as a payment towards a disputed deficiency balance or as a payment towards a loan for a disputed deficiency balance, nullifying any such loan;

2.  Enjoin the collection of any invalid and disputed deficiency balances as permitted by 13 Pa.C.S. §9625(a);

3.  Temporarily and/or permanently enjoin the use of all statutorily non-compliant statutory notices and use of unlawful expenses/fees in connection with the disposition or redemption of a repossessed motor vehicle; and,

    4.   Order the Bank to remove the Bank's negative trade line for all Class Members' credit reports.

E.  Grant such other and further relief as may be deemed just and proper.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
/s/ *Richard Shenkan*
Richard Shenkan
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading was sent to all counsel of record via ECF, contemporaneously as filed.

SHENKAN INJURY LAWYERS, LLC.
/s/ *Richard Shenkan*
Richard Shenkan