# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT SORACE, JOSEPH YERTY, TAMMY YERTY, JAMES ZARONSKY, LINDA ZARONSKY, VIKTOR STEVENSON, ASHLEY YATES, and KIMBERLY SOLOMON-ROBINSON, individually and on behalf of a class of similarly situated persons, | ) ) ) ) ) ) ) ) | CIVIL ACTION<br><br>No. 2:20-CV-4318 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WELLS FARGO BANK, N.A., | ) ) | |
| Defendant. | ) | |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE



EXHIBIT

1

# TABLE OF CONTENTS

**Page**

Recitals .................................................................................................................. 1

1. Definitions ................................................................................................... 9
2. Conditions and Effectiveness of Agreement ............................................. 20
3. Settlement Consideration ........................................................................... 25
4. Qualified Settlement Fund ......................................................................... 32
5. Payments from the Settlement Fund .......................................................... 35
6. Retention and Duties of Settlement Administrator .................................... 39
7. Notice to the Class and Settlement Website .............................................. 42
8. Covenants Not to Sue ................................................................................. 45
9. Representations and Warranties ................................................................. 46
10. Releases ...................................................................................................... 47
11. Opt Out Rights ........................................................................................... 49
12. Objections .................................................................................................. 51
13. Termination ................................................................................................ 53
14. Certification of Settlement Class For Settlement Purposes ....................... 55
15. Attorneys' Fees and Litigation Costs, and Incentive Payment ................. 56
16. Stay of Discovery and Other Proceedings ................................................ 58
17. Confidential Treatment of Notice List ...................................................... 59
18. Media and Confidentiality ......................................................................... 60
19. Right to Cure .............................................................................................. 61
20. Notices ....................................................................................................... 61
21. Miscellaneous Provisions .......................................................................... 61

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is entered into by and between (i) Plaintiffs, Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson ("Plaintiffs"), individually and as Class Representatives on behalf of the Settlement Class, and (ii) Defendant Wells Fargo Bank, N.A., d/b/a Wells Fargo Auto ("Wells Fargo").  The Parties intend and agree to resolve, discharge, and settle fully, finally, and forever claims of the Settlement Class asserted in the case captioned *Sorace et. al. v. Wells Fargo Bank, N.A.*, Civ. No. 2:20-CV-4318, pending in the United States District Court for the Eastern District of Pennsylvania, subject to approval of the Court.

### RECITALS

A.       On July 7, 2020, Plaintiffs filed their initial Complaint in this case in the Court of Common Pleas of Philadelphia County, Pennsylvania at Docket No. 200700334 seeking to recover for alleged violations of the Pennsylvania Uniform Commercial Code ("UCC") independently and *in pari materia* with the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA") due to Wells Fargo's alleged failure to comply with the statutory requirements relating to Post-Repossession Consumer Disclosure Notices ("Notices of Repossession") and Explanation of Calculation of Surplus or Deficiency Notices ("Post-Sale Notices"), as well as issues with the repossession process.

B.       Wells Fargo removed this case from state court to the United States District Court for the Eastern District of Pennsylvania on September 2, 2020 and filed a Motion to Dismiss on September 30, 2020, arguing that Plaintiffs failed to plead facts to support their claims and that there was no private right of action to enforce the terms of the MVSFA. (Dkt. 1, 5).

C.      Plaintiffs filed a Motion to Remand on October 29, 2020 (Dkt. 10).  Plaintiffs'

Motion for Remand was withdrawn on February 16, 2021 and dismissed with prejudice on

February 17, 2021 (Dkt. 20, 21).

D.      Plaintiffs filed their First Amended Class Action Complaint on March 31, 2021

again alleging Wells Fargo violated the UCC, independently, and read *in pari materia* with the

MVSFA, by failing to comply with the statutory requirements relating to Notices of Repossession

and Post-Sale Notices, as well as asserting various issues with the repossession process (Dkt. 24).

Wells Fargo filed its Motion to Dismiss on May 14, 2021 (Dkt. 27), again arguing that Plaintiffs

failed to plead facts to support their claims and that there was no private right of action to enforce

the terms of the MVSFA, and in response, Plaintiffs moved for leave to amend their claims a

second time, which was granted. (Dkt. 30, 34-36).

E.      Plaintiffs filed their Second Amended Class Action Complaint on August 2, 2021,

again alleging Wells Fargo violated the UCC, independently, and read *in pari materia* with the

MVSFA, by failing to comply with the statutory requirements relating to Notices of Repossession

and Post-Sale Notices, as well as asserting various issues with the repossession process (Dkt. 36).

Plaintiffs asserted putative class action claims under a variety of provisions under the UCC and

the MVSFA in *pari materia* with the UCC, alleging that Wells Fargo's Notices of Repossession,

Post-Sale Notices, and repossession processes were deficient.

F.      Plaintiffs brought claims not only on their own behalf, but also on behalf of five

proposed classes: the Public Auction Class, Hidden Fees Class, Unincurred Fees Class, Unlicensed

Repossession Brokers Class, and Post-Sale Notice Class.

G.      Plaintiffs asserted that the Public Auction Class was comprised of all borrowers (a)

who entered into a retail installment sales contract in Pennsylvania for the financing of the

purchase of a Motor Vehicle primarily used for personal, family or household use; (b) from whom Wells Fargo, as secured party, repossessed the Motor Vehicle or ordered it to be repossessed; (c) to whom Wells Fargo sent a Notice of Repossession to a Pennsylvania address, at any time between July 7, 2014 and the date of class certification; (d) which stated that the repossessed vehicle would be sold at a private sale; and (e) whose repossessed Motor Vehicle was offered for sale to the public at the Manheim Ohio Auto Action.

H.     Plaintiffs asserted that the Hidden Fees Class was comprised of all borrowers (a) who entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use; (b) from whom Wells Fargo, as secured party, repossessed the Motor Vehicle or ordered it to be repossessed (c) whose repossession was effectuated by a Repossessor or brokered by a Repossession Broker who had an agreement with Wells Fargo to assess Storage Fees, Redemption Fees, and/or a Personal Property Fees; and, (d) to whom Wells Fargo sent or caused to be sent a Notice of Repossession to a Pennsylvania address at any time between July 7, 2014 and the date of class certification which did not itemize a Storage Fee, Redemption Fee, the Repossession Broker's commission in the cost of repossession, and/or a Personal Property fee.

I.     Plaintiffs asserted that the Unincurred Fees Class was comprised of all borrowers (a) who entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use; (b) from whom Wells Fargo, as secured party, repossessed the Motor Vehicle or ordered it to be repossessed; (c) whose repossession was handled by a Repossessor or Repossession Broker who had an agreement with Wells Fargo that authorized the assessment of a Storage Fee, a Redemption Fee, and/or a Personal Property Fee; (d) to whom Wells Fargo sent or caused to be sent a Notice of Repossession

to a Pennsylvania address at any time between July 7, 2014 and the date of class certification; and (e) who redeemed their motor vehicle or reinstated their loan and was required to pay a Storage Fee, a Redemption Fee, a Personal Property fee, or a fee for the repossession of their vehicle which included a fee for a Repossession Broker's services.

J.      Plaintiffs asserted that the Unlicensed Repossession Brokers Class was comprised of all borrowers (a) who entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use; (b) to whom Well Fargo sent or caused to be sent a Notice of Repossession to a Pennsylvania address at any time between July 7, 2014 and the date of class certification listing a cost(s) of repossession; and (c) from whom Wells Fargo, as secured party, ordered his/her/their Motor Vehicle to be repossessed by or through a Repossession Broker that, as of the date of the repossession, did not possess a license with the Department of Banking and Securities of the Commonwealth of Pennsylvania.

K.      Plaintiffs asserted that the Post-Sale Notice Class was comprised of all borrowers (a) who entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use; (b) whose Motor Vehicle was repossessed by Wells Fargo in Pennsylvania; (c) whose motor vehicle was sold by Wells Fargo; (d) whose mailing address and/or whose co-obligor's mailing address at the time of the sale of the vehicle, according to Wells Fargo's business records, was/were in Pennsylvania; and, (e) to whom Wells Fargo did not send a Post-Sale Notice by registered or certified mail at any time on or after December 1, 2014 through the date of class certification.

L.      Plaintiffs, in the Second Amended Complaint, on their own behalf and on behalf of the putative class members, sought the greater of actual and minimum statutory damages from

Wells Fargo in connection with their claims, together with declaratory relief and injunctive relief, *inter alia*, declaring that the Deficiency Balances were invalid and could not be collected, ordering the return of funds collected on the Deficiency Balances, barring Wells Fargo from pursuing the collection of any Deficiency Balances on Plaintiffs' and the putative class members' Accounts, and the removal of the tradeline from Plaintiffs' and the putative class members' Consumer Credit Reports.

M.     Wells Fargo filed its Motion to Dismiss Plaintiffs' Second Amended Complaint on September 1, 2021, again arguing that Plaintiffs failed to plead facts to support their claims and that there was no private right of action to enforce the terms of the MVSFA (Dkt. 38). Plaintiffs filed their Opposition to Wells Fargo's Motion to Dismiss on October 4, 2021 (Dkt. 40). Wells Fargo's Motion for Leave to File a Reply in Support of its Motion to Dismiss was granted on October 28, 2021, and the Clerk was directed to file the Reply brief on the docket (Dkt. 43, 44).

N.     On November 4, 2021, Plaintiffs sought leave to extend the time to file a sur reply, which the Court granted the following day. (Dkt. 45, 46).

O.     The Parties subsequently agreed to mediate the case with the Honorable Judge Welsh (Ret.), on January 26, 2022. (Dkt. 48).

P.     The Parties sought a Stay of Litigation Pending Mediation on November 16, 2021, which the Court granted on November 19, 2021. (Dkt. 48, 49).

Q.     After the first mediation session with the assistance of Judge Welsh, the Parties sought a further Stay of Litigation on February 8, 2022 and February 23, 2022 (Dkt. 50, 51) pending a second mediation session with Judge Welsh that was set for April 19, 2022. The Court granted this request on February 25, 2022. (Dkt. 52). On May 3, 2022, the Parties filed a Joint Status Report and Request to Continue Stay (Dkt. 53), which the Court granted on May 10, 2022

(Dkt. 54) and stayed the litigation through July 5, 2022. On July 5, 2022, the Parties filed a Joint

Status Report and Request to Continue Stay (Dkt. 55), which the Court granted on July 7, 2022

(Dkt. 56) and stayed the litigation through September 12, 2022. On July 22, 2022 the Case was

reassigned from Honorable C. Darnell Jones, II to Honorable Gerald J. Pappert. (Dkt. 57). On

September 9, 2022, the Parties filed a Joint Status Report and Request to Continue Stay (Dkt. 58),

which the Court granted on September 9, 2022 (Dkt. 59) and stayed the litigation through

November 11, 2022. On November 11, 2022, the Parties filed a Joint Status Report and Request

to Continue Stay (Dkt. 60), which the Court granted on November 16, 2022 (Dkt. 61) and stayed

the litigation through December 31, 2022.  On December 23, 2022, the Parties filed a Joint Status

Report and Request to Continue Stay (Dkt. 62), which the Court granted on December 27, 2022

(Dkt. 63) and stayed the litigation through February 15, 2023.  On February 15, 2023, the parties

filed a Joint Status Report and Request to Continue Stay (Dkt. 64), which the Court granted on

February 17, 2023, providing for a final stay through April 3, 2023. (Dkt. 65).  On April 3, 2023,

the parties jointly requested a telephone conference with the Court, which was held on April 14,

2023.  (Dkt. 66, 67, 68).  Following the conference, the Court provided for an additional extension

of the stay through May 15, 2023.  (Dkt. 69, 70).

   R. Based upon their investigation and evaluation of the facts and law relating to the

matters in the pleadings, mediation before Judge Welsh, and fruitful, months-long settlement

discussions, the Parties have agreed to settle this Action pursuant to the provisions of this

Agreement.

   S. Wells Fargo has denied and continues to deny each and every allegation of liability,

wrongdoing, and damages, as it contends that it has factual and legal defenses to all claims and

class allegations asserted in the Action.  Wells Fargo has always maintained, and continues to

maintain, that it has acted in accordance with governing law. Plaintiffs likewise maintains the strength of their positions. This Agreement shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Parties with respect to any claim by any Class Member, any fault, liability, wrongdoing or damage, or any defenses Wells Fargo asserted. The Parties nonetheless have concluded that continuing the Action would be protracted, expensive, and disruptive to their business and/or lives. They, therefore, have decided that it is desirable to fully and finally settle the Action on the terms and conditions set forth herein to avoid the further expense, inconvenience, and distraction of the Action and to dispel any related uncertainty.

T.      By this Agreement, and recognizing the consideration provided for under this Agreement, the Class Representatives and Class Counsel intend to fully and finally resolve the remaining claims against Wells Fargo in connection with the Action, as more fully set forth herein.

U.      The Class Representatives and Class Counsel recognize the expense and length of proceedings necessary to continue the litigation through further discovery, motion practice, trial, and any possible appeals.  They have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation.  They are also aware of the burdens of proof necessary to establish liability and damages for the claims alleged in the Action and the defenses thereto.  Based upon their evaluation, the Class Representatives and Class Counsel have determined that the settlement set forth in the Agreement is in the best interests of the Class Representatives and the Settlement Class and is fair, adequate and reasonable, based upon the following substantial benefits that the settlement bestows upon the Settlement Class:

i.      For all Settlement Class Members with a Deficiency Balance, Wells Fargo will fully compromise the Deficiency Balances, which as of March 2023 totaled approximately $64.39M, on their Wells Fargo Accounts;

ii.     Wells Fargo will pay $15,000,000 into a Settlement Fund for the benefit of the Settlement Class and for the purposes of implementing this settlement,

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

which will be used to provide monetary relief to Settlement Class Members, as described below, to pay an Incentive Payment to the Class Representatives, to pay the Settlement Administrator's costs associated with disseminating the Class Notice, setting up a Settlement Website, distributing funds, and any other costs associated with the Settlement Administrator's duties, and to pay Attorney's Fees and Expenses incurred by the Settlement Class through Class Counsel, with any remaining funds, if any, to be distributed to the *Cy pres* Recipient(s), all as approved by the Court;

iii.    For all Settlement Class Members who made payments following repossession and sale of the vehicle related to the Account through the Effective Date, a refund of those payments ("Refund Payments"), which total approximately $6.659M in March of 2023, which will be provided from the $15,000,000 Settlement Fund;

iv.    Settlement Class Members will be entitled to a cash benefit equal to a pro rata share of the Settlement Fund on a per account basis after deduction of the Refund Payments, Incentive Payment, Settlement Administration costs, and Attorney's Fees and Expenses;

v.    Wells Fargo will request that the Credit Reporting Agencies to which Wells Fargo reports delete the entire tradelines associated with each Settlement Class Member's Accounts that are the subject of this Action (except where a Settlement Class Member specifically opts out of the tradeline deletion).

vi.    In the event that there are any Settlement Class Members against whom Wells Fargo has a deficiency judgment related to their Wells Fargo accounts (and Wells Fargo is aware of none), Wells Fargo will file satisfaction of judgments for each such judgment.  In the event that Class Counsel seeks to expunge any such judgments, Wells Fargo will not oppose such a request.

V.    This Agreement and all associated exhibits or attachments are made for the sole purpose of attempting to consummate settlement of this Action on a class-wide basis.  This Agreement and the settlement it evidences are made in compromise of disputed claims.  Because the Action is pled as a class action, this settlement must receive preliminary and final approval by the Court.  Accordingly, the Class Representatives and Wells Fargo enter into this Agreement and associated settlement on a conditional basis.  In the event that Wells Fargo or the Class Representatives exercise a right herein to terminate or rescind this Agreement, the Court does not execute and file the Order Granting Final Approval of Settlement, or the associated Judgment does

not become Final for any reason, this Agreement shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever, it shall not be referred to or utilized for any purpose whatsoever by anyone, and the negotiation, terms and entry of the Agreement shall remain subject to the provisions of Federal Rules of Evidence, any and all state or Federal statutes of a similar nature, and the mediation privilege.  Notwithstanding the foregoing, Wells Fargo may use, offer, admit, or refer to the Agreement and to the settlement reached therein where necessary to defend itself in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding.

W.      The Parties expressly reserve all rights, claims and defenses and do not waive any such rights, claims or defenses in the event that the Agreement is not approved for any reason. The Parties agree that they each retain and reserve all rights, and agree not to take a position to the contrary.  The Class Representatives and Class Counsel agree not to argue or present any argument, and hereby waive any argument, that Wells Fargo could not contest class certification and/or proceeding collectively on any grounds if the Action were to proceed or that this Agreement is evidence of or constitutes an admission that class certification may be appropriate.

**1.**     __Definitions.__

As used in all parts of this Agreement, including the recitals above, and the exhibits hereto, the following terms have the meanings specified below:

1.1.     "Action" means the matter initially filed on or about July 7, 2020 in the Court of Common Pleas of Philadelphia County, Pennsylvania, later removed to the United States District Court for the Eastern District of Pennsylvania, entitled *Sorace et. al. v. Wells Fargo Bank, N.A.*, 2:20-CV-04318. At the time of settlement, the Action was stayed pending mediation with Judge Welsh (Ret).

1.2.    "Account" or "Accounts" means each Settlement Class Member's auto loan account(s) owned by Wells Fargo Auto related to the financing of his/her/their vehicle(s), which were subsequently repossessed and which are the subject of this Action.

1.3.    "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release and all of its attachments and exhibits, which the Class Representatives and Wells Fargo understand and agree sets forth all material terms and conditions of the settlement of the Action between them and which is subject to Court approval.  It is understood and agreed that the Parties' obligations under this Agreement are conditioned on, *inter alia*, the occurrence of the Effective Date and other conditions set forth in this Agreement.

1.4.    "Attorney's Fees and Expenses" means such funds as may be awarded to Class Counsel pursuant to Section 15 of the Agreement to compensate them for their fees and expenses incurred in connection with the Action.

1.5.    "Class" means the collective group of (1) All debtors, obligors, and co-obligors: who entered into a retail instalment sales contract in Pennsylvania for the financing of a Motor Vehicle purchased primarily for personal, family or household use and whose retail installment sales contract was assigned or sold to Wells Fargo; and, (2) from whom Wells Fargo, as secured party, repossessed the vehicle or ordered it to be repossessed after Wells Fargo deemed the contract to be in default; and (3) who were sent a Notice of Intent to dispose of or sell the repossessed vehicle by Wells Fargo at any time on or after July 7, 2014 through the date of Preliminary Approval.

1.6.    "Class Counsel" means, collectively, all counsel of record representing the Class Representatives in this Action.

- 10 -

1.7.    "Class Member" or "Member of the Class" means a natural person who is a member of the Class according to the Class definition herein.

1.8.    "Class Notice" means the Notice that is mailed by the Settlement Administrator to potential Settlement Class Members, in substantially the form attached as **Exhibit 1** to this Agreement and/or as ultimately approved by the Court.  Class Notice shall be mailed not less than seventy (70) days before the date set by the Court for the Final Approval Hearing.

1.9.    "Class Period" means any time on or after July 7, 2014 through the date of Preliminary Approval.

1.10.    "Class Representatives" or "Plaintiffs" means Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson, the named Plaintiffs and proposed class representatives in the Action identified in the first Paragraph of this Agreement.

1.11.    "Complaint" and "Class Action Complaint" refer to the operative complaint in this Action.

1.12.    "Confidential" or "Protected Materials" means the Notice List and other materials referenced in Section 17 below.

1.13.    "Consumer Credit Report" refers to an individual's credit report as issued by any of the three major Credit Reporting Agencies.

1.14.    "Court" means the United States District Court for the Eastern District of Pennsylvania.

1.15.    "Cy Pres Recipients" mean the entity or entities to be agreed upon by the Parties and approved by the Court to receive any remaining Settlement Funds following distribution to Settlement Class Members pursuant to Paragraph 5.4 of this Agreement.

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

1.16.   "Credit Reporting Agency" or "Credit Reporting Agencies" refers to TransUnion, Experian, Equifax, and any other credit reporting agency to which Wells Fargo reports.

1.17.   "Defendant" or "Wells Fargo" refers to Wells Fargo Bank, N.A., d/b/a Wells Fargo Auto.

1.18.   "Deficiency Balance" for purposes of this settlement, means the Account balance remaining following the repossession and sale of a Settlement Class Member's vehicle, after crediting the Class Member's account with the sale price of the vehicle and including all interest and other charges. The Parties agree that the Deficiency Balances for all Settlement Class Members are disputed liabilities that are being fully compromised by way of an accord and satisfaction through this Settlement.

1.19.   "Deficiency Balance Compromise" refers to the compromise of a Settlement Class Member's Deficiency Balance, which is a disputed debt by the Parties.

1.20.   "Defense Counsel" shall mean Defendant's counsel of record in the Action.

1.21.   "Distribution Date" means the date when the Settlement Administrator commences distribution from the Settlement Fund to Class Members, which shall be 60 days after the Effective Date.

1.22.   "Effective Date" means the date when all of the conditions set forth in section 2 have occurred, provided, however, that Defendant has not exercised its right of termination under section 13 of this Agreement.

1.23.   "Final" means five (5) business days after the latest of: (i) the date of final affirmance on an appeal of the Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Judgment; (iii) if no appeal is filed, the expiration of the date of the time for the filing or noticing any form of valid appeal or writ review from the Judgment.   If the

Judgment is set aside, modified, or overturned by any court including on appeal and is not fully reinstated on appeal, the Judgment shall not become Final.

1.24. "Final Approval Hearing" means a hearing set by the Court to take place on or about the date which is at least thirty (30) days after the Opt-Out Deadline for the purpose of:

> (i)   Determining the fairness, adequacy and reasonableness of the Agreement and associated settlement pursuant to class action procedures and requirements;

> (ii)   Determining the good faith of the Agreement and associated settlement; and

> (iii)   Entering Judgment.

1.25. "Final Approval Order," "Order of Final Approval," and "Order Granting Final Approval of Settlement" shall mean an order to be entered and filed by the Court entitled "Final Judgment and Order of Dismissal with Prejudice", substantially in the form attached hereto as **Exhibit 3**.

1.26. "Judgment" means the Final Approval Order and judgment to be rendered by the Court pursuant to this Agreement, in the form attached hereto as **Exhibit 3**, or in a similar form without material changes thereto.

1.27. "'Notice of Intent" means a notice of intent sent by or on behalf of Wells Fargo to dispose of a repossessed or surrendered motor vehicle, also known as a "Notice of Repossession."

1.28. "Notice Approval Date" means the date of the Preliminary Approval Order when the Court approves the Notice.

1.29.   "Notice List" means a list, to be treated as Confidential pursuant to the terms of Section 17 of this Agreement, with the information required in Section 7.2 below, as prepared by Wells Fargo.

1.30.   The "Notice Mailing Date" shall be a date no later than sixty (60) days after the Notice Approval Date, when the Notice is mailed to the individuals on the Notice List.

1.31.   "Objection Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Settlement Class Member must serve written objections to the Settlement, if any, in accordance with section 12 of this Agreement to be able to object to the Settlement.  The Objection Deadline shall be no earlier than forty (40) days after the Notice Mailing Date and not later than thirty (30) days prior to the Final Approval Hearing.

1.32.   "Opt-Out Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Request to Opt Out must be filed or submitted in writing to the Settlement Administrator in accordance with Section 11 of this Agreement in order for a person who would otherwise fall within the definition of Settlement Class to be excluded from the Settlement Class.  The Opt-Out Deadline shall be no earlier than forty (40) days after the Notice Mailing Date and not later than thirty (30) days prior to the Final Approval Hearing.

1.33.    "Parties" means the Class Representatives, individually and on behalf of all Members of the Settlement Class, and Wells Fargo.

1.34.   "Per Account Payment" means the payment to be distributed to the Settlement Class Member, on a per account basis, after deducting the payments set forth in Paragraphs 3.3.2 and 3.3.3 from the Settlement Fund.

1.35.    "Post -Sale Notice" means a notice letter containing an explanation of how Wells Fargo calculated a Settlement Class Member's deficiency balance after the disposition of their vehicle.

1.36.    "Preliminary Approval Order" shall mean a proposed order to be executed and filed by the Court entitled "Order Preliminarily Approving Settlement and Providing for Notice" substantially in the form attached hereto as **Exhibit 2**.

1.37.    "Refund Payment" means the total amount of all payment(s) made on an Account following repossession and subsequent sale of the vehicle, through the Effective Date.

1.38.    "Released Claims" mean any and all claims, defenses, demands, actions, causes of action, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, statutory damages, contribution or indemnity, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to: (1) allegations that were or could have been asserted in the Second Amended Complaint against the Released Parties; (2) any claim regarding or relating to a Notice of Repossession, Notice of Intent, and/or Post Sale Notice; (3) the origination, financing, assignment, and servicing of any Account; (4) the repossession, surrender to, and control of any vehicle by Wells Fargo or any individual or entity acting on its behalf relating to any Account; (5) the charging, payment, collection, and attempted collection of amounts relating to any Account; (6) any notice or other communication

delivered or required to be delivered before, after, or otherwise in connection with the repossession, surrender, control, or disposition of any vehicle relevant to any Account; (7) any sale or disposition of any vehicle related to any Account; (8) the furnishing of information to Credit Reporting Agencies related to any Account; or (9) any claim arising out of or relating to the Uniform Commercial Code and the Pennsylvania Motor Vehicle Sales Finance Act related to an Account. The Released Claims do not include (a) claims arising out of the failure of any Party to perform in conformity the terms of this Agreement; or, (b) any other loan or account Wells Fargo has (or has had) with any Settlement Class Member, not encompassed by this Action.

1.39.   "Released Wells Fargo Claims" mean any and all claims, defenses, demands, actions, causes of action, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, statutory damages, contribution or indemnity, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to: (1) claims that Wells Fargo could have asserted in the Action that arise out of or relate to the Account; or (2) any claim regarding or relating to the Notice of Repossession or any claim relating to the repossession or disposition of Settlement Class Member's vehicles, including collection of Settlement Class Members' Deficiency Balances that Wells Fargo is fully compromising as part of this Agreement. This release is not intended to and does not affect (a) claims arising out of the failure of any Party to perform in conformity the terms of this Agreement; (b) any other accounts

that Settlement Class Members may have with Wells Fargo not encompassed by this Action; (c) claims or defenses arising from any repossession or relating to the Account occurring after the Class Period.  Nothing in this Release or Agreement shall be construed as a limitation on Wells Fargo from accepting payment, repossessing vehicles, administering collections, or obtaining judgment on Accounts encompassed by this Action that were reinstated and do not have a Deficiency Balance as of the Effective Date, nor shall it be construed as impacting any continuing obligation of Settlement Class Members to make payments on an Account where it is reinstated as of the Effective Date and payments continue to be due as of the Effective Date.

 1.40. "Releasees," "the Releasees," or "the Released Parties" means (1) Wells Fargo; (2) each of Wells Fargo's past, present, or future subsidiaries, parent companies, divisions, affiliates, partners or any other organization units of any kind doing business under their names, or doing business under any other names, or any entity now or in the past controlled by, controlling, or under the common control with any of the foregoing and doing business under any other names, and each and all of their respective affiliates and subsidiaries, and each of their respective predecessors, successors, and assigns; and (3) each of the present and former officers, directors, partners, shareholders, agents, employees, attorneys (including any consultants hired by counsel), advisors, independent contractors, representatives, beneficial owners, insurers, accountants, heirs, executors, and administrators, and each of their respective predecessors, successors, and assigns of any person or entities in subparts (1) or (2) hereof.  This definition specifically includes Wells Fargo Auto, formerly known as Wells Fargo Dealer Services, and Wells Fargo & Company.

 1.41. "Releasors" means the Class Representatives, all Settlement Class Members, and each of their respective heirs, executors, administrators, assigns, predecessors, and successors, and any other person claiming by or through any or all of them.

1.42.    "Request to Opt Out" means the written request from a Class Member that seeks to exclude that person from the Settlement Class and that complies with the requirements set forth in section 11 of this Agreement.

1.43.    "RISC" means a motor vehicle retail installment sales contract for the purchase of a motor vehicle.

1.44.    "Settlement" means the settlement terms set forth in this Agreement.

1.45.    "Settlement Account" means the bank account or other financial vehicle that has been directed to hold, or is holding, the Settlement Fund.

1.46.    "Settlement Administrator" means third-party selected by and as agreed upon by the Parties, which will act as the Settlement Administrator and assist with implementing and effectuating the terms of this Agreement, which in this matter shall be Rust Consulting.

1.47.    "Settlement Class" means the collective group of all of the Class Members who do not properly and timely exclude themselves from (i.e., opt out of) this Settlement, and thus means the collective group of all of the Class Members who will become bound by the Judgment when the Effective Date occurs.

1.48.    "Settlement Class Member" or "Member of the Settlement Class" means any person who is a member of the Settlement Class.

1.49.    "Settlement Fund" means the Fifteen Million Dollars ($15,000,000) that Wells Fargo shall pay pursuant to section 3 of the Agreement.  The Settlement Fund is for the benefit of the Settlement Class and will be used to pay Settlement Class Members, the Incentive Payment, Attorney's Fees and Expenses, and costs of settlement administration.

1.50.    "Settlement Website" means the website to be established by the Settlement Administrator as set forth in section 7.

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B122E4

1.51.    "Unknown Claims" mean any Released Claims which any Releasor does not know or suspect to exist in his or her favor at the time of the entry of the Judgment, and which, if known by him or her might have affected his or her settlement with and release of the Releasees, or might have affected his or her decision to opt out of the Settlement Class or to object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Class Representatives shall expressly and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have to the fullest extent allowed by law, waived the provisions, rights, and benefits of any statute or principle of common law which provides that general releases do not extend to claims which the debtor does not know or suspect exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the creditor.  Each Releasor may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Released Claims, but the Releasors, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released to the fullest extent allowed by law any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, contract, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Class Representatives acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material term of the settlement of which this release is a part.

1.52.    The plural of any defined term includes the singular, and the singular of any defined term includes the plural.

1.53.    Other terms are defined in the text of this Agreement and shall have the meaning given to those terms in the text.  In all documents related to the settlement, capitalized terms shall have the meanings given to them in this Agreement.

**2.    <u>Conditions and Effectiveness of Agreement.</u>**

2.1    This Agreement is expressly contingent upon the satisfaction, in full, of the material conditions set forth in this Section below.  The Effective Date of this Agreement shall be the date when all of the following actions and events listed below have occurred.

2.2    The Parties have signed the Agreement.

2.3    <u>CAFA.</u>  This Settlement shall be administered as if governed by 28 U.S.C. § 1715. Wells Fargo shall work with the Settlement Administrator to provide the notice to government officials under that statute but in no event shall the Final Approval hearing take place prior to the provision of effective notices and the expiration of statutory time.  A copy of the CAFA notice shall be sent to Class Counsel contemporaneously when such notices are sent. The cost in connection with the Settlement Administrator's services to prepare and send the CAFA notices shall be paid from the Settlement Fund. The Final Approval Order shall make a finding that 28 U.S.C. § 1715 was fully complied with.

2.4    <u>Court Approval.</u>   The Court approves this Agreement in accordance with the following steps:

2.4.1    <u>Motion for Preliminary Approval.</u>   After good faith consultation with Defense Counsel, Class Counsel will present a Motion for Preliminary Approval to the Court within twenty (20) days of execution of this Agreement including the Class Notice, in substantially

the form of **Exhibit 1** hereto, and the Preliminary Approval Order, in substantially the form of **Exhibit 2** hereto.

      2.4.2  <u>Certification of Class for Settlement Purposes</u>.  In connection with the proceedings for Preliminary and Final Approval, the Class Representatives shall seek orders (Preliminary and Final, respectively) certifying the Class pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure for purposes of this Settlement only.

      2.4.3  <u>Entry of Preliminary Approval Order</u>.  The Court shall enter a Preliminary Approval Order in substantially the form of that attached as **Exhibit 2** hereto, which shall among other things:

      a.    Preliminarily certify the proposed Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for settlement purposes only;

      b.    Preliminarily approve this Agreement as fair, reasonable and adequate under Rule 23 of the Federal Rules of Civil Procedure subject to final determination by the Court;

      c.    Approve the appointment of the Class Representatives as representatives of the Class for the Settlement and the appointment of Class Counsel;

      d.    Approve the Settlement Administrator (as agreed to by the parties), to handle the mailing and processing of all notices, checks, and the disposition of the Settlement Fund;

      e.    Approve a form of Class Notice substantially in the form of **Exhibit 1** to be sent to the individuals on the Notice List;

      f.    Require that the Notice List be used only for purposes of administration of this Settlement, except only as otherwise stated herein, and be treated as confidential and protected due to the nature of the financial information;

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

g.      Direct the Settlement Administrator, promptly after entry by the Court of the Preliminary Approval Order, to mail the Notice to each individual on the Notice List by first-class mail, and, if an e-mail address is readily accessible in Wells Fargo's records, also by e-mail transmittal;

h.      Schedule a Final Approval Hearing on final approval of this settlement;

i.      Establish a procedure for Members of the Class to exclude themselves and set a date, at least thirty (30) days before the Final Approval Hearing, after which no Member of the Class shall be allowed to opt out of the Settlement and shall be bound to the terms of the Settlement, absent court approval;

j.      Establish a procedure for Settlement Class Members to appear and/or object to the Settlement and set a date, at least thirty (30) days before the Final Approval Hearing, after which no Settlement Class Member shall be allowed to object;

k.       Require any attorneys representing Settlement Class Members, at the Settlement Class Member's expense, to file a notice of appearance and notice of intent to appear if they plan to appear that the Final Approval Hearing;

l.      Stay all proceedings in the Action against the Defendant, other than proceedings as may be necessary to carry out the terms and conditions of the Agreement;

m.      Pending Final Approval, and upon expiration of the Opt-Out Deadline, barring each Settlement Class Member from maintaining, commencing, prosecuting or pursuing directly, representatively, or in any other capacity any Released Claim subsumed and covered by the Release in this Agreement in any court or arbitration forum;

n.      Contain such other and further provisions consistent with the terms and provisions of this Agreement as the Court may deem advisable; and

o.      Authorize the Parties to take all necessary and appropriate steps to establish the means necessary to implement the terms of this Agreement.

2.5     <u>Class Notice</u>.  The Settlement Administrator shall cause the Class Notice to be mailed pursuant to the Preliminary Approval Order and the terms of this Agreement.

2.6     <u>Order of Final Approval and Judgment</u>.  The Court shall enter the Order of Final Approval substantially in the form attached as **Exhibit 3**, which shall among other things:

a.      Find that (i) the Court has personal jurisdiction over the Settlement Class Members, (ii) the Court has jurisdiction over the claims asserted in the Action, and (iii) venue is proper;

b.      Finally approve the Settlement;

c.      Finally certify the Settlement Class for settlement purposes only;

d.      Find that the form and means of disseminating the Class Notice complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution, and find that the Parties and procedures used complied with Pennsylvania and federal law so as to give full effect to the Settlement;

e.      Enter Final Judgment with respect to the Released Claims of all Settlement Class Members and dismiss the Released Claims with prejudice;

f.      Make the Releases in section 10 of this Agreement effective as of the date of the Final Judgment;

g.      Permanently bar the Class Representatives and all Settlement Class Members from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for the Released Claims;

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

h.     Permanently bar the Class Representatives and all Settlement Class Members from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, or persons who would otherwise fall within the definition of Settlement Class Members but who have requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint or counterclaim to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims;

i.     Find that, by operation of the entry of the Judgment, the Class Representatives and all of the Settlement Class Members shall be deemed to have forever released, relinquished, and discharged the Released Parties from any and all Released Claims, and Wells Fargo shall be deemed to have forever released, relinquished, and discharged the Class Representatives and the Settlement Class Members from the Released Wells Fargo Claims;.

j.     Authorize the Parties to implement the terms of this Agreement;

k.     Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Agreement, the Final Judgment, and for any other necessary purposed; and,

l.     Issue related orders to effectuate the Final Approval of the Settlement and its implementation.

2.7     <u>No Injunctive Relief</u>.  The Final Approval Order and Judgment shall not provide for any injunctive relief against Defendant.

2.8     <u>Finality of Judgment</u>.  The Judgment is final when the Final Approval Order has become Final, including expiration of the time for filing any appeal or other form of objection to the Final Approval Order, full and final resolution of any appeal or objection that may be filed,

and expiration of the time for seeking review of that disposition through an appeal, *en banc* hearing, or higher level of review.

**3.    Settlement Consideration.**

3.1    In consideration for the Releases set forth in section 10 and other consideration as stated in the Agreement, Wells Fargo will provide the following benefits.

3.2    Compromise of Deficiency Balances.  Upon the Effective Date, Wells Fargo shall cease collecting on and agrees to fully compromise the Deficiency Balance alleged to be owed by each Settlement Class Member whose Account has a Deficiency Balance following the repossession and sale of the vehicle.  Wells Fargo represents that, to the best of its knowledge based on researching customer accounts, the Deficiency Balances owed by Class Members total approximately $64.39M as of March 2023, and these numbers will be updated as of the date of Preliminary Approval and again at the Effective Date. The Parties have agreed to resolve and compromise the Deficiency Balances via an accord and satisfaction with this Settlement Agreement. While the Parties acknowledge that, to date, there has not been any judicial determination that the compromise of the disputed Deficiency Balances constitutes an accord and satisfaction, Wells Fargo does not have any objection to Plaintiffs requesting such a determination from the Court.  The Class Notice shall advise Class Members of what their compromised Deficiency Balance amount will be if they remain in the Settlement and if the Settlement is finally approved. The Class Notice shall advise Class Members that those Class Members who would receive a Deficiency Balance Compromise under the Settlement, and are not excluding themselves from the Settlement, Wells Fargo does not object to (and, accordingly, Class Counsel recommends) that the Settlement Class Member stop paying on the Deficiency Balance amount immediately, pending the final outcome of Plaintiffs' request for entry of a Final Approval Order.

In the event that the Final Approval Order is not entered within 150 days after entry of the Preliminary Approval Order or the Effective Date does not occur until 40 days after the entry of the Final Approval Order, the Settlement Administrator may, at the direction of Class Counsel, send a separate letter to these Settlement Class Members with a Deficiency Balance advising them that they may stop paying on the Deficiency Balance, pending the final outcome of settlement approval. Class Counsel and Defense Counsel will work collaboratively to assemble this written communication. Any payments made by a Settlement Class Member towards their Deficiency Balance after the Effective Date will be returned to the Settlement Class Member unless otherwise directed by the Settlement Class Member.

3.3     Funding of Settlement.  Settlement Monetary Consideration under this Agreement is made up of a Settlement Fund in the amount of Fifteen Million Dollars ($15,000,000), which will cover, in the following order, (1) settlement administration costs; (2) Incentive Payments to the Class Representatives as approved by the Court; (3) Attorneys' Fees and Expenses to Class Counsel as approved by the Court, (4) Refund Payments to Settlement Class Members who made payments on any Deficiency Balances on their Accounts, which is estimated at approximately $6.659 million; and (5) payments to all Settlement Class Members based on a per account basis after deduction of the Refund Payments, Incentive Payments, settlement administration costs, and Attorneys' Fees and Expenses.

3.3.1     Within thirty (30) days after the Court's entry of the Preliminary Approval Order, Wells Fargo will fund the Settlement Fund by depositing into an account, the terms of which shall be subject to Wells Fargo's approval, the sum of Fifteen Million Dollars ($15,000,000) into

the account administered by the Settlement Administrator. Any balance of this funding remaining in the event that the Settlement is not approved shall revert to Wells Fargo.

      3.3.2   The Settlement Administrator's costs associated with disseminating the Class Notice, the Settlement Website, distributing checks to Settlement Class Members, and any escrow, administrative and/or bank related fees and costs associated with the Settlement Administrator's distribution of payments, as well as the Incentive Payment to the Class Representatives and Attorney's Fees and Expenses awarded by the Court shall be paid out of the Settlement Fund.

      3.3.3   For Accounts where payments were made following repossession and sale of the vehicle, any such payments (i.e., Refund Payments), will be distributed to those Accounts from the Settlement Fund. The amounts of such Refund Payments made by Settlement Class Members shall be updated through the Effective Date. In the case of accounts that list more than one person as a borrower or co-borrower, the Refund Payment will be divided equally among borrowers or co-borrowers with separate checks issued to each, unless either borrower or their legal representative submits a written request via mail, fax, or uploaded on the Settlement Website to the Settlement Administrator within forty (40) days of the Notice Mailing Date, signed by both borrower and co-borrower or their legal representative(s) for a modification of the (default) equal division pursuant to the procedures set forth in the Class Notice. Refund Payments for Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a request by the executor, executrix, administrator, administratrix, or legal representative of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Refund Payments for Accounts with only one

borrower where the Settlement Administrator can determine that a borrower is deceased will not be paid absent a request by the executor, executrix, administrator, administratrix, or legal representative of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Any such requests will be denied unless there is an opened/reopened estate at the time of the request and/or upon approval of Class Counsel.

      3.3.4   After deducting the payments set forth in Paragraphs 3.3.2 and 3.3.3 from the Settlement Fund, Settlement Class Members shall be paid their respective Per Account Payment from the Settlement Fund. In the case of Accounts that list more than one person as a borrower or co-borrower, the pro rata share payable on that Account will be divided equally among borrowers or co-borrowers after deduction of the Refund Payments, Incentive Payment, settlement administration costs, and Attorneys' fees and Expenses, with separate checks issued to each, unless either co-borrower or their legal representative submits a written request via mail, fax, or uploaded on the Settlement Website to the Settlement Administrator within forty (40) days of the Notice Mailing Date, signed by both borrower and co-borrower or their legal representative(s) for a modification to the presumptive equal division pursuant to the procedures set forth in the Class Notice. Per Account Payments for Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is deceased will be paid to the surviving co-borrower, absent a request by the executor, executrix, administrator, administratrix, or legal representative of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment, for the deceased Settlement Class Member's share of the Settlement Fund. Per Account Payments for Accounts with only one borrower where the Settlement Administrator can determine that a borrower is

deceased will not be paid absent a request by the executor, executrix, administrator, administratrix, or legal representative of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Any such requests will be denied unless there is an opened/reopened estate at the time of the request and/or upon approval of Class Counsel. Settlement Class Members are eligible for only one Per Account Payment, regardless of whether the Account was subject to more than one repossession.

3.3.5    Class Counsel has no responsibility to represent the heirs, creditors, and/or an estate of a deceased Settlement Class Member (or to open an estate) to effectuate the payment of the Per Account Payment or the Refund Payment though may undertake such representation. If such representation is undertaken, it will be separate and apart from Class Counsel's representation of the Class as contemplated by this Settlement Agreement.

3.3.6    Under no circumstances shall Wells Fargo's total payment obligation under the Settlement Agreement exceed $15,000,000.

3.4    Deletion of Tradelines.

3.4.1    Wells Fargo represents and warrants that within sixty (60) days after the Effective Date, Wells Fargo agrees to request that the Credit Reporting Agencies delete the entire tradelines associated with each Settlement Class Member's Account, unless the Settlement Class Member opts out of the tradeline deletion pursuant to the terms of Paragraph 3.4.2. Class Representatives on behalf of themselves and the Settlement Class agree that the Credit Reporting Agencies are separate entities from Wells Fargo and that Wells Fargo does not and cannot guarantee, warrant, or take responsibility for the performance of the Credit Reporting Agencies with respect to changing, deleting, suppressing, or making entries regarding any information previously reported to them by Wells Fargo concerning the Settlement Class Member's Account

DocuSign Envelope ID: B4CCA325-73AC-4446-B818-8D8G53B122E4

and that no cause of action can or will be stated against Wells Fargo, including any for breach of this Agreement against Wells Fargo, in the event any credit reporting agency fails to amend a Settlement Class Member's credit history pursuant to the deletion request.  Wells Fargo is not required to request deletion from any credit reporting agency that Wells Fargo has not reported the Account to.  If an item fails to get deleted or the reporting reoccurs on any Account after Wells Fargo's initial request, and Class Counsel provides prompt written notice to counsel for Wells Fargo (Jarrod Shaw, McGuireWoods LLP, Tower, Two Sixty, 260 Forbes Avenue, Suite 1800, Pittsburgh, PA 15222-3142) and provides the factual basis for which there is a belief that the trade lines were not deleted, Wells Fargo will submit a request to the Credit Reporting Agencies directing them to delete the information required.  After submitting one further tradeline deletion request, Wells Fargo's obligation under this section are complete. The Class Representatives, on behalf of themselves and the Settlement Class, further understand that it may take up to 60 days for the credit bureaus to make the requested credit report change.

    3.4.2 Settlement Class Members may elect not to receive a tradeline deletion by making such an election in writing. To make such an election, the Settlement Class Member must comply with the procedures and deadlines in this Agreement and any Court order entered in this case. The Settlement Class Member must complete and send to the Settlement Administrator, via mail, fax, or uploaded on the Settlement Website, a written request in accordance with Paragraph 11.10 below that is postmarked or transmitted no later than forty (40) days after the Notice Mailing Date.  Any Settlement Class Member that elects not to receive a tradeline deletion is still otherwise bound by the terms of this Agreement based on the good and valuable consideration provided herein.  Wells Fargo may continue to report to the Credit Reporting Agencies as to the Account

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

for any Settlement Class Member that refuses the tradeline deletion.  Any request to refuse the tradeline deletion may be revoked prior to the Effective Date.

      3.4.3   Nothing in section 3.4 is an admission either about Wells Fargo's current or past practices, or an admission that the terms are mandated by law or another requirement.

    3.5   <u>Expungement and/or Satisfaction of Judgments</u>.  In the event that any deficiency judgments are determined to exist (and Wells Fargo is aware of none), Wells Fargo represents and warrants that within sixty (60) days after the Effective Date, it will file satisfactions of judgment for all Settlement Class Members with judgments entered against them for deficiency balances on the loans that are the subject of this Action, unless such judgments have already been satisfied or have lapsed or been extinguished due to the passage of time.  If Wells Fargo is subsequently notified through its counsel as set forth in Section 20 below at any point of the existence of a judgment entitled to satisfaction under this paragraph for which a satisfaction of judgment has not been filed, Wells Fargo will promptly file a responsive satisfaction of judgment, and provided Wells Fargo does so, it will not be in breach of this Agreement or have any liability.  In the event that Class Counsel seeks to expunge any such judgments, Wells Fargo will not oppose such a request.

    3.6   <u>Tax Treatment</u>.  This Agreement is enforceable regardless of its tax consequences. The Parties understand and agree that this Agreement reflects the settlement of disputed legal claims and the Settlement Administrator makes no representations regarding the Agreement's tax consequences.  For each Deficiency Balance Compromise, Satisfaction of Judgment, or Per Account Payment made pursuant to this Settlement, Wells Fargo, by itself or through the Settlement Administrator, and/or Settlement Fund, may report each compromise, satisfaction, or payment to government authorities including the IRS as may be required by law, and it may make

all required deductions and/or withholdings. No Form 1099's will be issued for a Refund Payment. A Form 1099 may be issued to each Settlement Class Member who does not opt out. Settlement Class Members will be solely responsible for the reporting and payment of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to the Settlement. Wells Fargo makes no representations as to the taxability of any portions of the benefits provided to Settlement Class Members herein. The Notice will advise Settlement Class Members to seek their own tax advice prior to acting in response to the Notices.

**4.      Qualified Settlement Fund.**

4.1      The Settlement Fund shall constitute a "qualified settlement fund" ("QSF") within the meaning of Treasury Regulation § 1.46B-1 promulgated under Section 468B of the Internal Revenue Code of 1986 as amended.  The Settlement Administrator shall be the "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3).

4.2      Upon or before establishment of the QSF, the Settlement Administrator shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation § 1.468B-2(k)(4), and shall provide Wells Fargo with that employer identification number on a properly completed and signed IRS Form W-9.

4.3      If requested by either Wells Fargo or the Settlement Administrator, the Settlement Administrator and Wells Fargo shall fully cooperate in filing a relation-back election under Treasury Regulation § 1.468B-1 (j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

4.4      At all times during the administration of this Settlement, the Settlement Administrator shall be insured with a general liability and fidelity policy providing coverage, on a

DocuSign Envelope ID: B4CCA325-73AC-4446-B818-8D8G53B123E4

per claim basis of not less than $15,000,000.00 and will provide Class Counsel and Wells Fargo with a copy of all such policy(s) within seven (7) days of Preliminary Approval.

4.5     Following its remittance of the Settlement Fund monies as described in paragraph 3.3.1 of this Agreement, Wells Fargo and its counsel shall have no responsibility, financial obligation or liability whatsoever with respect to the notifications to the Class required hereunder, the processing of opt out letters, payments to Settlement Class Members, payments to the Class Representatives, investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and any other taxes, penalties, interest or other charges related to taxes imposed on the QSF or its disbursements, payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, since it is agreed that such deposit shall fully discharge Wells Fargo's obligation to the Class Representatives, Settlement Class Members, Class Counsel and expenses of administration with respect to the disposition of the Settlement Fund. Plaintiffs and Class Counsel shall have no financial obligation or liability whatsoever for the payment of federal, state, and local income, employment, unemployment, excise, and any other taxes, penalties, interest or other charges related to taxes imposed on the QSF, or its disbursements, payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, unless they result from Class Counsel's negligence.   This does not impact any individual tax obligations of the Class Representatives or Class Counsel.

4.6     The Settlement Administrator shall file or cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns, including, but not limited to, as applicable, any Form 1099-series return, any tax withholdings statements, and otherwise in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(l) and Treasury Regulation

- 33 -

§ l.468B-2(1)(2). Any contract, agreement or understanding with the Settlement Administrator relating to the QSF shall require the Settlement Administrator or its agent to file or cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns, including, but not limited to, as applicable, any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(1) and Treasury Regulation § l.468B-2(1)(2). The Settlement Administrator may, if necessary, secure the advice of a certified public accounting firm in connection with its duties and tax issues arising hereunder.

4.7     All taxes (including any estimated taxes, and any interest or penalties relating to them), if any, arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Wells Fargo or its counsel with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund. Plaintiffs and Class Counsel, and Wells Fargo and its counsel shall have no liability or responsibility for any of the Taxes. The Settlement Fund shall indemnify and hold Plaintiffs and Class Counsel, and Wells Fargo and its counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification), the payment of which shall the responsibility of the Settlement Administrator.

4.8     Upon written request from Class Counsel, the Settlement Administrator shall purchase treasury bill(s) in the denomination(s) and time period(s) directed by Class Counsel. Absent such a written request, the Settlement Fund will be deposited into an interest-bearing account with a conservative risk profile to be approved by Class Counsel (i.e., a money market

sweep account) through the final distribution as contemplated by Section 5 below.  The Settlement Administrator shall provide Class Counsel with copies of all account statements on reasonable notice but in no event shorter than on a monthly basis.  Reasonable expenses, commissions, and/or fees related to the purchase of treasury bills or any other financial vehicle in which the Settlement Fund is held or invested may be deducted from the Settlement Fund.

**5.**      **Payments from the Settlement Fund.**

5.1.1   After the Effective Date, no portion of the Settlement Fund shall revert to or otherwise be returned to Wells Fargo.

5.1.2   No later than sixty days (60) days after the Effective Date, and using the Notice List as set forth in section 7.2, the Settlement Administrator shall remit payment to the Settlement Class Members in the amounts set forth in section 3.3.4 and 3.3.5 for the Refund Payments and Per Account Payments (the "Distribution Date").

5.1.3   Prior to any distribution, the Settlement Administrator shall run the Notice List through the NCOA, Accurint, Transunion, and/or Experian databases to ascertain updated contact information and death status.  For Settlement Class Members whose checks are returned by the U.S. Postal Service for lack of current correct address, the Settlement Administrator shall seek an address correction via Accurint, TransUnion, and/or Experian batch trace, and as may be necessary skip tracing, and then re-send their checks to any subsequently obtained address that the Settlement Administrator reasonably believes to be valid.

5.1.4   Upon expiration of the one hundred twenty (120) day period following the Distribution Date, the Settlement Administrator shall void the checks of Settlement Class Members that were returned as undeliverable or remain uncashed on that date. Settlement Class Members

whose checks are not cashed within one hundred twenty (120) days after the Distribution Date shall be automatically rendered ineligible for future payments.

5.1.5    Within fourteen (14) days thereafter, the Settlement Administrator shall notify counsel in writing of the number of Settlement Class Members who were sent checks, the number of Settlement Class members who did not cash their checks, the total dollar amount of the checks distributed by the Settlement Administrator, and the total dollar amount of uncashed checks.  At that time, if there is $15,000 or more remaining in the Settlement Fund, the Settlement Administrator shall make a Second Distribution if reasonable and feasible based on the amount remaining and number of checks to be issued within seven (7) days. If applicable, the Second Distribution shall be made on a per-Account basis, by taking the amount remaining in the Settlement Fund divided by the number of Accounts eligible to share in the Second Distribution. The Second Distribution shall be split equally among those Settlement Class Members that are co-borrowers on an Account that is eligible for a check in the Second Distribution, unless a different distribution was requested and implemented in a prior distribution. If there is less than $15,000 remaining in the Settlement Fund, within fourteen (14) days thereafter, any remaining amount based on uncashed checks will be allocated by sending one or more checks to the cy pres recipient as set forth in Paragraph 5.4.

5.1.6    Following the expiration of sixty (60) days after the date of the Second Distribution in Paragraph 5.1.5, all checks issued in the Second Distribution that have not been cashed will be deemed void. Within fourteen (14) days thereafter, the Settlement Administrator shall notify counsel in writing of the number of Settlement Class Members who were sent checks, the number of Settlement Class members who did not cash their checks, the total dollar amount of the checks distributed by the Settlement Administrator, and the total dollar amount of uncashed

checks from the Second Distribution.  At that time, if there is $15,000 or more remaining in the Settlement Fund, the Settlement Administrator shall make a Third Distribution if reasonable and feasible based on the amount remaining and number of checks to be issued within (7) seven days. If applicable, the Third Distribution shall be made on a per-Account basis, by taking the amount remaining in the Settlement Fund divided by the number of Accounts eligible to share in the Third Distribution.  The Third Distribution shall be split equally among those Settlement Class Members that are co-borrowers on an Account that is eligible for a check in the Third Distribution, unless a different distribution was requested and implemented in a prior distribution.  If there is less than $15,000 remaining in the Settlement Fund, within fourteen (14) days thereafter, any remaining amount based on uncashed checks will be allocated by sending one or more checks to the cy pres recipient as set forth in Paragraph 5.4.

       5.1.7    Following the expiration of sixty (60) days after the date of the Third Distribution (if it occurs) in Paragraph 5.1.6, all checks issued in the Third Distribution that have not been cashed will be deemed void. Within fourteen (14) days thereafter, the Settlement Administrator shall notify counsel in writing of the number of Settlement Class Members who were sent checks, the number of Settlement Class members who did not cash their checks, the total dollar amount of the checks distributed by the Settlement Administrator, and the total dollar amount of uncashed checks from the Third Distribution.  At that time, if there is $15,000 or more remaining in the Settlement Fund, the Settlement Administrator shall make a Fourth Distribution if reasonable and feasible based on the amount remaining and number of checks to be issued within (7) seven days. If applicable, the Fourth Distribution shall be made on a per-Account basis, by taking the amount remaining in the Settlement Fund divided by the number of Accounts eligible to share in the Fourth Distribution, unless a different distribution was requested and implemented

in a prior distribution. The Fourth Distribution shall be split equally among those Settlement Class Members that are co-borrowers on an Account that is eligible for a check in the Fourth Distribution. If there is less than $15,000 remaining in the Settlement Fund, within fourteen (14) days thereafter, any remaining amount based on uncashed checks will be allocated by sending one or more checks to the cy pres recipient as set forth in Paragraph 5.4

5.1.8    Following the expiration of sixty (60) days after the date of the Fourth Distribution (if it occurs) in Paragraph 5.1.7, all checks issued in the Fourth Distribution that have not been cashed will be deemed void. Within fourteen (14) days thereafter, any remaining amount based on uncashed checks will be allocated by sending one or more checks to the cy pres recipient as set forth in Paragraph 5.4, regardless of whether the amount is more or less than $15,000.

5.1.9    After the aforesaid distributions, neither the Settlement Administrator, Class Counsel, nor Wells Fargo shall have any further obligation to locate any Settlement Class Member or to make any further distribution to Settlement Class Members.  Notwithstanding the above subsections, the Settlement Administrator may re-issue and send settlement checks (Per Account Payment or Refund Payment) on an individualized basis, at any time, upon learning of an updated mailing address, and may reissue the check to the heir(s) once if they do not cash it within sixty (60) days of its mailing. This only applies to cancellation and reissuance of a check in order to avoid confusion over the balance of the Settlement Fund.

5.1.10  The Settlement Administrator and Class Counsel will file a final accounting with the Court within one hundred fifty (150) days after the Distribution Date, or within ninety (90) days after the last of the Second, Third, or Fourth Distributions if they are made. The final

accounting will include a summary of all distributions from the Settlement Fund, and Class Counsel will request Court approval of the final accounting.

5.2    Incentive Payment.  Within sixty (60) days of the Effective Date and upon the Class Representatives' submission of a Form W-9 to the Settlement Administrator, subject to Court Approval, the Settlement Administrator shall remit an incentive award to the Class Representatives from the Settlement Fund in the amount awarded by the Court but not to exceed $10,000 per person ("Incentive Payment").

5.3    Administrative Costs.  The Settlement Administrator's costs associated with disseminating the Class Notice, the Settlement Website, and any escrow, administrative and/or bank related fees, costs, or reasonable expenses associated with the Settlement Administrator's distribution of payments shall be paid out of the Settlement Fund.

5.4    Cy Pres.  As set forth in Sections 5.1.5 through 5.1.8, the residue of the Settlement Fund, if any, shall be distributed to the Cy Pres Recipient(s) to be agreed upon by the Parties and approved by the Court.

**6.    Retention and Duties of Settlement Administrator.**

6.1    The Settlement Administrator shall administer the Settlement pursuant to the terms of this Agreement.  The Settlement Administrator shall be responsible for the following tasks;  (a) handling all aspects of the Class Notice (including data standardization and de-duplication of the Notice List, updating addresses and determining which Settlement Class Members are deceased by employing the NCOA, Accurint, TransUnion, and/or Experian databases prior to the sending of the Class Notice and printing and mailing the Class Notice; (b) drafting and submitting the CAFA notice with the ultimate approval of Wells Fargo (a copy of which is contemporaneously provided to Class Counsel when transmitted to a government agency); (c) reporting to Class

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123F4

Counsel and Wells Fargo on settlement administration matters upon request on a reasonable basis; (d) creating and hosting an informational website with downloadable forms (as approved by Class Counsel and Wells Fargo), case information, a question/answer interactive component (containing Class Counsel's contact information), and a portal to upload information submitted by Class Members; (e) deploying and operating an automated toll-free number which may provide an Interactive Voice Response to obtain documents and answer questions about this Settlement including the distribution of payments to Settlement Class Members; (f) staffing and answering a toll-free contact number and providing a communication log on a reasonable basis; (g) to otherwise assist in the orderly administration of this claim; (h) sending communication to Class Counsel and the Settlement Class Member as discussed in Section 6.5 below; (i) sending a letter(s) to be approved by all Parties, to Settlement Class Members alerting the Settlement Class members to discontinue payment of any Deficiency Balance pending Final Approval and explaining the status of the proceeding (to be performed only if the Effective Date does not occur within one hundred ninety (190) days of Preliminary Approval); (j) retaining all documents incident to the administration of the Settlement Fund in electronic format, including class notices and evidence of distribution, for a period of at least five (5) years from the Effective Date, promptly providing Class Counsel with any such documents upon written request; and (k) otherwise assisting in the orderly administration of this claim. Within 14 days of the final distribution, the Settlement Administrator shall provide Class Counsel and Wells Fargo with a report summarizing all expenses, fees, and/or commission(s) pertaining to the Settlement Fund, and documentation supporting the report, including any invoices and postage receipts.  The Settlement Administrator shall also be responsible for additional tasks the Parties jointly agree are necessary to accomplish administration of the Settlement.

6.2     The Settlement Administrator shall not have any duties with respect to settlement administration apart from those expressly provided for in this Agreement. Wells Fargo shall not be responsible for any costs of the Settlement Administrator for additional services provided outside the scope of this Settlement Agreement.  All costs of settlement administration will be paid from the Settlement Fund and under no circumstances will Wells Fargo be responsible for any payments outside of the amount of the Settlement Fund.

6.3     Wells Fargo and Class Counsel will coordinate with the Settlement Administrator to provide Class Notice to the Class, as provided in this Settlement Agreement.  Because the information about Class Members that will be provided to the Settlement Administrator will consist of confidential information, non-public personal information, and other information protected by privacy laws, the Settlement Administrator will take all reasonable steps to ensure that any information provided to it by Wells Fargo will be used solely for the purpose of effecting this Settlement and otherwise shall comply with Wells Fargo's vendor and information security requirements and Section 17 below.  The Settlement Administrator shall administer the Settlement in accordance with the terms of this Settlement Agreement and, without limiting the foregoing, shall treat any and all documents, communications and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided for in this Settlement Agreement or by court order.  The Settlement Administrator may share documents, communications and other information and materials with Class Counsel.

6.4     The Settlement Administrator shall complete and provide to Wells Fargo and Class Counsel copies of any IRS W-9, IRS 1099 forms, and Class Notices as necessary to implement the Settlement.

6.5     After the Effective Date, on a date approved by Class Counsel, the Settlement Administrator shall send a letter, the content of which is to be determined by Wells Fargo and Class Counsel, to inform the Settlement Class Member that the Disputed Deficiency Balance has been fully compromised by way of an accord and satisfaction, referencing the amount of the Deficiency Balance, and the Court Order(s) preliminarily and finally approving this Settlement, and means to access their unique Class Notice, which states the amount of the Refund Payments and amount of the compromised Deficiency Balance as of the date of the Preliminary Approval Order. The Notice shall also reference that these documents may be downloaded by accessing the Settlement Website or will be furnished upon request being made to the Settlement Administrator. This communication may be made part of or attached to the payment of a Per Account Payment and, as applicable, Refund Payment. In the event that the Settlement Administrator receives communication relating to the taxability of this settlement by a Settlement Class Member in connection with their respective Account, the Settlement Administrator shall refer the Settlement Class Member to Class Counsel, sending an e-mail to Class Counsel stating the name and telephone number of the Settlement Class Member.

6.6     The Parties agree that Rust Consulting has been selected as the Settlement Administrator based on approval by both Plaintiffs and Wells Fargo.  In the event that there is a dispute between Class Counsel and the Settlement Administrator that cannot be resolved, Class Counsel may file a motion with the Court to resolve that dispute, and as necessary, to replace Rust Consulting. Any replacement settlement administrator will require the approval of the Court.

7.     **Notice to the Class and Settlement Website.**

7.1     Subject to the Court's approval, the form of Class Notice shall be substantially in the form of **Exhibit 1** attached hereto.

7.2     Within thirty (30) days of the Court's entry of the Preliminary Approval Order, Wells Fargo shall provide Class Counsel and the Settlement Administrator with the Notice List in Excel spreadsheet format, containing the following information as of the date of Preliminary Approval according to its latest business records and: (i) the last five (5) digits of the Account number for each Account; (ii) the name(s) of the Class Member(s) associated with each Account such that it can be determined which Accounts have co-borrowers; (iii) the last known mailing address for each Class Member; (iv) the last known telephone number for each Class Member (if readily available within Wells Fargo's records) (to the Settlement Administrator only, to be provided to Class Counsel on an individual basis upon request to the Settlement Administrator or Wells Fargo); (v) the last known email address for each Class Member (if readily available within Wells Fargo's records); (vi) the Social Security Number for each Class Member (to the Settlement Administrator only); (vii) the total amount of the Refund Payments associated with each Account; (viii) the amount of the finance charge; (ix) the amount financed; (x) the amount of any remaining Deficiency Balance associated with each Account; and (xi) whether an Account has been notated that a borrower or co-borrower is deceased. The Settlement Administrator and Class Counsel shall treat the Notice List as confidential pursuant to the terms set forth in Section 17 below and Section 6.3 of this Agreement.

7.3     If the Court provides authorization to send the Class Notice to the individuals on the Notice List, the Settlement Administrator will mail the Class Notice to the individuals on the Notice List via first class mail through the United States Postal Service no later than the Notice Mailing Date.  Prior to mailing, the Settlement Administrator shall attempt to update the last known addresses of the Class Members set forth on the Notice list through the NCOA, Accurint,

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B122E4

TransUnion, and/or Experian databases. The Settlement Agreement and Notice shall also be posted on the Settlement Website.

7.4     Following the mailing of the Class Notice, the Settlement Administrator shall provide counsel with written confirmation of the mailing.

7.5     Unless the Settlement Administrator receives a Notice returned from the United States Postal Service for reasons discussed below in this Paragraph, that Notice shall be deemed mailed and received by the individual to whom it was sent five (5) days after mailing. In the event that subsequent to the first mailing of a Notice, and prior to seven (7) days before the Opt-Out Deadline, the Notice is returned to the Settlement Administrator by the United States Postal Service with a forwarding address for the recipient, the Settlement Administrator shall re-mail the notice to that address, and the Notice will be deemed mailed at that point. The Notice shall be deemed received by the individual once it is mailed for the second time.  Nothing in this Paragraph shall be construed to extend the Opt-Out Deadline or Objection Deadline for any Class Member.

7.6     Within 150 days after the Distribution Date if there is no Second Distribution or 90 days after the Second, Third, or Fourth Distributions, if they occur, the Settlement Administrator, upon the approval of the Court to file under seal (to protect the names, addresses, and other personal information of Class members), will cause to be filed with the Court a list of the names and addresses of all Class Members to whom the Notice was sent and the respective Per Account Payment and Refund Payment amounts and respective cash dates for each, providing all counsel with a copy of such filing.  Wells Fargo will assist in the filing of this document as practicable.

7.7     No later than the mailing of the Class Notice, the Settlement Administrator shall establish the Settlement Website, which shall contain copies of this Agreement and Exhibits including the Class Notice as well as the Complaint, the Preliminary Approval Order, applications

DocuSign Envelope ID: B1CCA32E-73AC-4446-B818-8D8G53B123E4

for attorney's fees and Class Representatives' Incentive Payment, and the Final Approval Order. Other documents relating to this Settlement may also be posted, but only with the approval of the Parties. The Settlement Website shall remain open and accessible for at least one hundred fifty (150) days after the Distribution Date if there is no Second Distribution, or until at least ninety (90) days after the Second, Third, or Fourth Distributions, if they occur.

7.8     No later than the mailing of the Class Notice, the Settlement Administrator shall also send the Class Notice via email to the Settlement Class Members who have an email address on file and reasonably accessible by Wells Fargo.

## 8.     <u>Covenants Not to Sue.</u>

8.1     The Class Representatives, on behalf of themselves and the Settlement Class Members, covenant and agree: (i) not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims, or the facts and circumstances relating thereto, against any of the Released Parties; (ii) not to organize or solicit the participating of Settlement Class Members, or persons who would otherwise fall within the definition of the Settlement Class but who requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto, against any of the Released Parties; and (iii) that the foregoing covenants and this Agreement shall be a complete defense to any of the Released Claims against any of the Releasees.

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

9.      **Representations and Warranties.**

9.1      The Class Representatives represent and warrant that they have not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Parties, and further covenants that they will not assign or otherwise transfer any interest in any of the Class Representatives' Released Claims.

9.2      The Class Representatives represent and warrant that they have no surviving claim or cause of action against any of the Released Parties with respect to any of the Released Claims.

9.3      The Parties, and each of them on his, her, or its own behalf only, represent and warrant that they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations and mediation among their counsel and before the Hon. Diane M. Welsh (ret.), that in executing the Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing the Settlement Agreement by representations, statements or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Settlement Agreement.  Each of the Parties assumes the risk of mistake as to facts or law.

9.4      Wells Fargo represents and warrants that the Notice List includes all Class Members and information set forth in Paragraph 7.2 to the best of its knowledge.  It further warrants and represents that as of March 2023, Wells Fargo's business records reflect 16,705 unique Accounts and 21,640 Class Members, representing approximately $6.659M in Refund Payments and $64.39M in Deficiency Balances.

## 10.    **Releases.**

10.1    On the Effective Date, Releasors, including but not limited to the Class Representatives, on their own behalf and on behalf of each Settlement Class Member, by operation of this Release and the Judgment set forth in the Order of Final Approval, do hereby and shall be deemed to have fully, finally, conclusively, irrevocably, and forever released, settled, compromised, relinquished, and discharged any and all of the Released Parties of and from any and all Released Claims and, without further action by any person or the Court, will be deemed: (a) to have consented to dismissal of the Action and the dismissal with prejudice of any and all Released Claims; (b) to have released and forever discharged any and all Released Claims; and (c) to be forever barred from instituting or further prosecuting, in any forum whatsoever, including but not limited to any state, federal, or foreign court, or regulatory agency, or any arbitration forum, each and every Released Claim.

10.2    The Releasors acknowledge and agree that they are aware that they may hereafter discover material or immaterial facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Release, that it is possible that unknown facts, losses or claims exist, and that known losses may have been underestimated in amount or severity. This was explicitly considered in connection with this Agreement.  It is the Releasors' intention to, and they do hereby, upon the Effective Date of this Agreement, fully, finally, and forever settle and release each and every one of the Releasees from each and every Released Claim, including any rights, remedies, or benefits available under California Civil Code section 1542 and all similar state, local, or federal statutes and other laws.  California Civil Code section 1542 provides:

> A  GENERAL  RELEASE  DOES  NOT  EXTEND  TO  CLAIMS
> THAT  THE  CREDITOR  OR  RELEASING  PARTY  DOES  NOT

KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

10.3    Subject to Court approval, each Settlement Class Member shall be bound by this Agreement and all of their Released Claims shall be dismissed with prejudice and released even if they never received actual, prior notice of the Action or its settlement in the form of the Notice or otherwise.  The Release and agreements contained in this section 10 shall apply to and bind all Settlement Class Members, including those Settlement Class Members whose Notices are returned as undeliverable, and those for whom no current address can be found, if any.

10.4    On the Effective Date, Releasors hereby release the Releasees from each and every Released Claim.

10.5    Promptly after the Effective Date, Settlement Class Members shall dismiss with prejudice all claims, actions or proceedings that are released pursuant to this Agreement.  In the event any such actions or proceedings are not dismissed and Wells Fargo learns of the action, Wells Fargo may provide notice to the Settlement Class Member of this Settlement and request dismissal of the action.

10.6    On the Effective Date, Wells Fargo, by operation of this Release and the Judgment set forth in the Order of Final Approval, does hereby and shall be deemed to have fully, finally, conclusively, irrevocably, and forever released, settled, compromised, relinquished, and discharged any and all of the Settlement Class Members, as well as their heirs and assigns, of and from any and all Released Wells Fargo Claims. This release is not intended to and does not affect any other accounts that Settlement Class Members or their heirs and assigns may have with Wells Fargo. Nothing in this Release or Agreement shall be construed as a limitation on Wells Fargo

from accepting payment, repossessing vehicles, administering collections, or obtaining judgment on Accounts encompassed by this Action that were reinstated and do not have a Deficiency Balance as of the Effective Date, nor shall it be construed as impacting any continuing obligation of Settlement Class Members to make payments on an Account where it is reinstated as of the Effective Date and payments continue to be due as of the Effective Date.

**11.    Opt Out Rights.**

11.1    Overview. Any Class Member may opt out of the Settlement Class. To opt out of the Settlement Class, the Class Member must comply with the procedures and deadlines in this Agreement and any Court order entered in this case.

11.2    Process. A Class Member who wishes to opt out of the Settlement Class must do so in writing.  In order to opt out, the written request must be sent via mail, fax, or uploaded on the Settlement Website (with an attachment containing the Class Members' signature) to the Settlement Administrator at the mailing address, fax number, or website listed in the Class Notice no later than the Opt Out Deadline, as set forth in the Class Notice.

11.3    Form. The Request to Opt Out must: (a) identify the case name; (b) identify the name and address of the person requesting exclusion; (c) be personally signed by the person requesting exclusion; and (d) contain a statement that indicates a desire to be excluded from the Settlement Class, such as "I hereby request that I be excluded from the proposed Settlement Class in the Action."  Mass or class opt outs shall be void.  A request to Opt-Out by a borrower or co-borrower on an Account shall be deemed to be a request to Opt-Out by all borrowers on the Account.

11.4     Any Class Member who does not opt out of the Settlement in the manner described herein shall be deemed to be part of the Settlement Class upon the expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments.

11.5     Any Class Member who desires to opt out must take timely affirmative written action pursuant to this section, even if the person desiring to opt out of the Class (a) files or has filed a separate action against any of the Released Parties, or (b) is, or becomes, a putative or actual class member in any other class action filed against any of the Released Parties.

11.6     Any Class Member who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments relating to the Settlement; (b) be entitled to relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.

11.7     The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all Requests to Opt Out within three (3) business days after the Opt-Out Deadline.

11.8     Within seven (7) business days of the Opt-Out Deadline, the Settlement Administrator shall provide a report to the Court setting forth a list of all Requests to Opt Out.

11.9     Notwithstanding the foregoing, a Class Member shall have the right to revoke a properly and timely submitted request to opt out if a notice of the Class Member's election to revoke his or her request to opt out is sent to the Settlement Administrator, postmarked, transmitted, or uploaded on or before the Opt-Out Deadline.

11.10   Refusal of Tradeline Deletion.  Each Settlement Class Member shall have the option to refuse the deletion of their tradeline.  In order to refuse the tradeline deletion benefit, the Class Member must complete and send (postmarked, faxed, or uploaded to the Settlement Website's portal as described in the Class Notice and on the Settlement Website for this

Settlement), a written request to refuse the tradeline deletion that is postmarked or transmitted no later than forty (40) days after the Notice Mailing Date.  The refusal of the tradeline deletion must: (a) identify the case name; (b) identify the name and address of the person requesting refusal; (c) be personally signed by the person requesting refusal; and (d) contain a statement that indicates a desire to be included in the Settlement Class, but to refuse the tradeline deletion, such as "I hereby request that I be included in the proposed Settlement Class in the Action, however I do not want Wells Fargo to delete my tradeline."  Within forty-five (45) days of the Notice Mailing Date, the Settlement Administrator shall forward copies of all requests to refuse tradeline deletion received to counsel as identified Paragraph 20 below.  A Settlement Class Member may revoke their refusal of the tradeline deletion prior to the Effective Date.

## 12.    **Objections**

12.1    <u>Overview</u>.  Any Settlement Class Member may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in this Agreement and any Court order entered in this case.

12.2    <u>Process.</u>  Any Settlement Class Member who wishes to object to the Settlement must do so in writing. The written objection must be sent via mail, fax, or uploaded on the Settlement Website (with an attachment containing the Class Members' signature) to the Settlement Administrator at the mailing address, fax number, or website listed in the Class Notice no later than the Objection Deadline.  The written objection must also be mailed to the Clerk of Court no later than the Objection Deadline.

12.3    <u>Form of Objection.</u>  The requirements to assert a valid written objection shall be set forth in the Class Notice and on the Settlement Website, and, to be valid, the written objection must: (a) identify the case name and number; (b) identify the name, address, telephone number of

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) be personally signed by the person objecting, or if represented by counsel, signed by his/her counsel; (d) the basis and grounds for objection with specificity; and (e) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel.

12.4    The Settlement Administrator shall provide Class Counsel and Defense Counsel with a copy of all objections within three (3) business days after the Objection Deadline.

12.5    Within seven (7) business days of the Objection Deadline, the Settlement Administrator shall provide a report to the Court setting forth a list of Objections that meet the above guidelines.  The Court shall have the ultimate determination of whether an Objection has been appropriately made.

12.6    Waiver of Objection.  Any Settlement Class Member who does not make his or her objection in the manner provided in this section shall be deemed to have waived such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement as incorporated in the Agreement, and to the award of Attorney's Fees and Expenses to Class Counsel and the payment of an Incentive Payment to the Class Representatives, unless otherwise ordered by the Court.

12.7    Appearance.  Subject to approval of the Court, any Class Member who files and serves a written objection in accordance with this section and the Class Notice may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable but only if the objecting Settlement Class Member: (a) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice of Intention to Appear");

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline.

12.8    The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

12.9    Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Agreement and Class Notice shall not be entitled to appear at the Final Approval Hearing and raise any objections.

## 13.    **Termination.**

13.1    In the event that the Settlement set forth in this Agreement is not approved without material changes by the Court or, if one of the conditions upon which the Agreement is based is not satisfied, or if the Court determines that it lacks jurisdiction to approve the Settlement, or if there is a court order from another court that takes jurisdiction over some or all of the Claims, or if there is a regulator determination that frustrates the purpose of and protection of the Settlement, or in the event that the Effective Date does not occur, Wells Fargo or the Class Representatives shall have the right (but not the obligation) to terminate the agreement.  In that case, no further payments shall be made by Wells Fargo to anyone in accordance with the terms of this Agreement, the Parties will bear their own costs and fees with regard to the efforts to obtain Court approval, and this Agreement shall be deemed null and void with no effect on the Action whatsoever. Reductions in the amount of the requested Attorneys' Fees and Expenses or Incentive Awards shall not be deemed a substantial change necessitating termination of the Settlement.

13.2    Failure of the Court to enter the Preliminary Approval or Final Approval Order in a similar form without material changes thereto as determined by Wells Fargo or the Class

Representatives will be grounds for Wells Fargo or the Class Representatives to terminate the Settlement and the terms of this Agreement. If any material portion of the Agreement or the Order of Final Approval is vacated, modified, or otherwise altered on appeal, Wells Fargo or the Class Representatives may, in their sole discretion, within fourteen (14) calendar days of such appellate ruling, declare that the Agreement has failed to become effective, and in such circumstances the Agreement shall cease to be of any force and effect. Whether the Court makes a finding that an accord and satisfaction as to the deficiency balance compromise has, in fact, occurred is not a condition precedent to this Agreement and is not a basis for termination of this Agreement.

13.3   In the event that 3% or more Class Members exclude themselves from the Settlement Class, Wells Fargo shall have the absolute discretionary right (but not the obligation) to terminate this settlement and Agreement and in such case, each and every one of the Parties' obligations under this Agreement shall cease to be of any force and effect, and this Agreement and any orders entered into in connection therewith shall be vacated, rescinded, cancelled, and annulled except as provided in Paragraph 22 of the Preliminary Approval Order. If Wells Fargo exercises this option, the Parties shall return to the status quo in the Action as if the Parties had not entered into this Agreement. In addition, in such event, the Agreement and all negotiations, Court orders, and proceedings relating thereto shall be without prejudice to the rights of the Parties, and each of them, and evidence relating to the Agreement and all negotiations shall not be admissible or discoverable in the Action or in any other proceeding. Wells Fargo must exercise this option pursuant to this paragraph within ten (10) days after receiving the Opt Out List and at least three (3) days prior to the Final Approval Hearing, by giving written notice of such exercise to Class Counsel.

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

13.4    If one of the Parties exercises a right herein to terminate or rescind this Agreement or this Agreement is not approved by the Court pursuant to the proposed Order of Final Approval, this Agreement, the conditional Class certification provided herein, the Settlement proposed herein (including any modifications made with the consent of the Parties), and any action taken or to be taken in connection therewith shall be terminated and shall become null and void and have no further force or effect, the Preliminary Approval Order shall be vacated except as provided in Paragraph 22 of the Preliminary Approval Order, the Parties shall be restored to their respective positions existing prior to the execution of this Agreement and the Parties' rights and obligations with respect to the use of this Agreement and the settlement contemplated hereby will be subject to section 18 hereof.  In addition, neither this Agreement, the preliminary certification of the Class, the Preliminary Approval Order, nor any other document in any way relating to any of the foregoing, shall be relied on, referred to, or used by anyone in any way for any purpose in connection with any further proceedings in this Action and/or any action, lawsuit, arbitration, or proceeding involving a Released Claim.

**14.    Certification of Settlement Class for Settlement Purposes.**

14.1    After the Preliminary Approval Order and no later than seven (7) days before the Final Approval Hearing, unless ordered otherwise by the Court, the Class Representatives shall move for Final Approval of the Settlement and entry of Final Judgment and shall request that the preliminary certification of the Settlement Class for settlement purposes be made final.  Any responsive papers shall be filed and served no later than three (3) calendar days prior to the Final Approval Hearing.

14.2    If the Settlement is not granted final approval and the Final Approval Order is not entered in substantially the form attached hereto as **Exhibit 3**, the certification of the above-

described Settlement Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for any other purposes in this or any other action can be or have been satisfied. In such circumstances, Wells Fargo reserves and shall have all rights to challenge certification of a Settlement Class or any other class for any other purpose in the Action or any other action on all available grounds as if no Settlement Class had been certified.

## 15.   **Attorneys' Fees and Litigation Costs, and Incentive Payment**

15.1    Wells Fargo will not object to Class Counsel moving the Court for an award of Attorneys' Fees and Expenses in the Action in an amount not to exceed Six Million Dollars ($6,000,000) and One Hundred Thousand Dollars ($100,000) for reimbursement of expenses.

15.2    Class Counsel shall make application for Attorney's Fees and Expenses as part of the Motion for Final Approval, which shall be filed and served no later than seven (7) calendar days prior to the Final Approval Hearing, except as ordered otherwise by the Court. Class Counsel agree that the Attorney's Fees and Expenses awarded shall compensate them for all legal work in the Action up to and including the date of Final Judgment, including any appeal of the Judgment, as well as for all legal work and costs that may be incurred in the Action after the date of Final Judgment. Any award of Attorneys' Fees and Expenses shall be paid out of the Settlement Fund. In no event shall Wells Fargo be obligated to pay more than that which it will deposit into the Settlement Fund pursuant to section 3.3.1.

15.3    Within forty-five (45) days after the Effective Date or entry of an order approving the application for attorneys' fees (whichever is later), the Settlement Administrator shall make payment of the Attorneys' Fees and Expenses awarded by the Court (not to exceed the sums set forth in Paragraph 15.1 above), pursuant to payment instructions in writing from Class Counsel.

In accepting this payment, the Class Representatives and Class Counsel, on behalf of themselves and all Settlement Class Members, acknowledge that the payment and method of payment under this Agreement are in full satisfaction of any and all claims, rights, and demands that Class Counsel, the Class Representatives, or the Settlement Class had, have, or may claim to have in the future for attorneys' fees, costs, expenses, or any other payment in connection with this Action or this Agreement, up to the date of final judgment.  Wells Fargo shall have no responsibility for allocation or distribution of the award among Class Counsel, if applicable.

15.4    As necessary, a Form 1099 for the payment of Attorneys' Fees and Expenses may be filed.  Class Counsel shall cooperate with Wells Fargo and the Settlement Administrator to provide all information necessary to process the payment including completing any requested tax forms (*e.g.*, IRS Form W-9 and applicable tax identification numbers).  Wells Fargo shall have no responsibility for, and no liability whatsoever with respect to, any tax obligations or any allocation among the Class Representatives and Class Counsel, and/or any other person who may assert some claim thereto, of any award or payment made in this Action or pursuant to this Agreement, including but not limited to any award or payment pursuant to this section 15.  Class Counsel and the Class Representatives shall alone be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment made pursuant to this section 15. No party shall be deemed the prevailing party for any other purposes of the Action.

15.5    Class Counsel shall be entitled, subject to Court approval, to apply to the Court for an Incentive Payment to the Class Representatives in an amount not to exceed $10,000 as to each Named Plaintiff, as part of the Motion for Final Approval.  Wells Fargo will not oppose Class Counsel's request for the Incentive Payment provided it is consistent with this Agreement.

15.6     Within sixty (60) days after the Effective Date or entry of an order approving the application for the Incentive Award to the Class Representatives (whichever is later), and as necessary, upon the Class Representatives' submission of a Form W-9 to the Settlement Administrator, the Settlement Administrator shall make payment of the Incentive Award awarded by the Court pursuant to payment instructions in writing from Class Counsel.  Class Counsel shall be responsible for delivering payment on the Incentive Awards to the Class Representatives after receipt of payment from the Settlement Administrator.  A Form 1099 for the payment of any Incentive Award will be submitted to the IRS.

15.7     Neither Wells Fargo nor the Releasees shall have any responsibility for any application of Attorney's Fees and Expenses and Incentive Payment submitted by Class Counsel. The grant, denial, or disallowance by the Court of the application for Attorneys' Fees and Expenses and Incentive Payment and any order or proceedings relating to the applications for Attorneys' Fees and Expenses and Incentive Payment or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement.  Wells Fargo takes no position to any part of Class Counsel's attorney fee to be paid in the form of deferred compensation (e.g., a structured annuity).

16.     **Stay of Discovery and Other Proceedings**

16.1     To the extent the Action has not already been stayed by the Court, upon execution of this Agreement, the Parties shall discontinue all discovery activity or related proceedings in the Action.

16.2     Upon the Effective Date, the Defendants shall have no obligation to preserve documents and evidence with respect to Released Claims for purposes of this litigation, and the Class Representatives and Class Counsel shall not pursue any spoliation claims or sanctions

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

against Defendants with respect to documents or evidence related to the Released Claims in this action.

17. **Confidential Treatment of Notice List**

17.1     The Parties agree that the terms of this Section of the Agreement govern the dealings of the Parties with respect to materials provided in this Action and shall continue in force after the Effective Date of the Settlement.  Except as set forth below, Plaintiffs' Counsel and the appointed Settlement Administrator agree that the provision of the information set forth in the Notice List shall be used only for purposes of implementing the terms of the Agreement to administer the Settlement in this Action.  The information set forth in the Notice List must be stored and maintained in a secure manner that ensures access is limited to only Class Counsel and the appointed Settlement Administrator, as it contains confidential personally identifiable information and financial information of Class Members.  In the event any of this confidential information is to be filed with the Court, the parties shall seal such documents (or any portion thereof), by following the protocols for electronic filings in this District.

17.2     In the event that the Court determines that there is an actual or threatened breach of this Agreement, as incorporated into the Preliminary Approval Order, by the party who received the information, the Parties agree that Wells Fargo would not have an adequate remedy at law and would be entitled to specific performance, and/or injunctive relief, to correct the improper disclosure or use of such information, in addition to any other remedy the party may be entitled at law or in equity.  Notwithstanding any clause to the contrary in this Agreement, Class Counsel may retain a copy of the Notice List as this provision is not intended to restrict Class Counsel's right to communicate with and represent his clients, but only as to those accounts on the Notice List that do not Opt Out of the Settlement.

17.3    Notwithstanding this section, the Parties shall be excused from any duty to return or destroy Protected Material to the extent necessary to comply with outstanding court orders or with judicial and non-judicial subpoenas, civil investigative demands or other compulsory process.

17.4    The Court shall retain jurisdiction to ensure compliance with this Section.

## 18.    **Media and Confidentiality**

18.1    The Parties, including their Counsel, agree that the terms of this Settlement shall remain confidential and not be disclosed by any party until the Settlement Agreement is filed in connection with the Motion for Preliminary Approval.  Notwithstanding the foregoing, Wells Fargo may disclose the Settlement Agreement as required by law to any federal, state, or regulatory agency, body, or governmental authority, including but not limited to the Securities and Exchange Commission or the Office of the Comptroller of Currency, to which Wells Fargo may be required to report information of this type, or when such disclosure is specifically requested or demanded by such regulatory agency, body, or governmental authority.  Further, either Party may share the terms of this Agreement with a prospective Settlement Administrator.

18.2    Nothing in this Agreement shall preclude Class Counsel, Plaintiffs, Wells Fargo, or Defense Counsel from making statements related to this case/and or settlement so long as such information is truthful and not misleading and does not adversely impact the orderly disposition of this claim.  Plaintiffs and Class Counsel agree not to make any direct written solicitations to Class Members to opt out or object to the settlement.

18.3    Nothing in this Agreement is intended to, or shall be construed to, prevent or inhibit Class Counsel from providing legal advice/services to Class Counsel's clients including Plaintiffs and, after the Preliminary Approval Date, any other Class Members, nor to impair Class Counsel's rights and duties pursuant to the Rules of Professional Responsibility.

19.    **Right to Cure.**

19.1    The Parties, Class Counsel, and Defense Counsel agree to reasonably cooperate to comply with the terms of this Agreement.  If any Party or their counsel fail to comply with a term or condition of this Agreement, they shall have the right to cure such non-compliance within fourteen (14) days after receiving written notice by the other Party.  No Party shall commence legal action or seek intervention by the Court with respect to another Party or their counsel's failure to comply with the terms or condition of this Agreement without first providing written notice and an opportunity for the other party to cure the non-compliance(s).

20.    **Notices**

20.1    All notices (other than the Class Notice) required by the Agreement shall be made in writing and communicated by mail and email to the following addresses:

All notices to Class Counsel shall be sent to Class Counsel c/o:

Richard Shenkan
SHENKAN INJURY LAWYERS, LLC
6550 Lakeshore St.
West Bloomfield, MI 48323
rshenkan@shenkanlaw.com

All notices to Defense Counsel shall be sent to Defense Counsel c/o:

Jarrod D. Shaw
Karla L. Johnson
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, Pennsylvania 15222
jshaw@mcguirewoods.com
kjohnson@mcguirewoods.com

21.    **Miscellaneous Provisions**

21.1    Cooperation.  The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effect and implement

all terms and conditions of the Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Agreement.

     21.2   <u>No Admission</u>.  The Agreement compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Parties as to the merits of any claim or defense.  The Parties agree that the amounts paid in settlement and the other terms of the Agreement were negotiated in good faith by the Parties and at arm's length and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  Neither the Agreement nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Releasees, or any of them; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Releasees, or any of them, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  The Class Representatives and Class Counsel agree not to argue or present any argument, and hereby waive any argument, that Wells Fargo could not contest (or is estopped from contesting) class certification and/or proceeding collectively on any grounds if this Action were to proceed; this Agreement shall not be deemed an admission by, or ground for estoppel against, Wells Fargo that class certification and/or proceeding collectively in the Action is proper or cannot be contested on any grounds.

     21.3   <u>Exhibits</u>.  All of the exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

     21.4   <u>Amendment/Modification</u>.  The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.  Class Counsel, on behalf of the Class, are expressly authorized by the Class Representatives to take all appropriate action required or permitted to be taken by the Class pursuant to the Agreement to effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Agreement on behalf of the Class which they deem appropriate.

21.5     Entire Agreement.  The Agreement and the related documents entered at this time of this Agreement or referenced herein constitute the entire agreement among the Parties hereto concerning the settlement of the Action.  No representations, warranties, or inducements have been made to any party concerning the Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each party shall bear its own costs and attorney fees.

21.6     Authority.  Each person executing the Agreement or any of its exhibits on behalf of any Party hereto hereby warrants that such person has the full authority to do so.

21.7     Counterparts.   The Agreement may be executed in one or more counterparts, including by signature transmitted by facsimile or by email in PDF format.   All executed counterparts and each of them shall be deemed to be one and the same instrument.

21.8     Successors and Assigns.  The Agreement shall be binding upon, and inures to the benefit of, the heirs, executors, successors, and assigns of the Parties hereto; but this Agreement is not designed to and does not create any third-party beneficiaries.

21.9     No Third-Party Rights or Beneficiaries.  Except as expressly provided for herein, no government agency or official can claim any rights under this Agreement or Settlement, whether with respect to the conduct that is the subject of the Releases, the restrictions in section 3,

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B122E4

or the funds (or remainder of funds) paid or used in the Settlement.  There are no third-party beneficiaries created or implied.

21.10   <u>Jurisdiction</u>.  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, and all Parties hereto submit to the jurisdiction of the Court for the sole purposes of implementing and enforcing the settlement embodied in the Agreement until such time that the Court enters an order dismissing the action with prejudice.

21.11   <u>Governing Law</u>.  The Agreement and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the Commonwealth of Pennsylvania, and the rights and obligations of the Parties to the Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the Commonwealth of Pennsylvania without giving effect to that State's choice of law principles.

21.12   <u>Drafting</u>.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either party.  No party shall be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel.  Each party and their counsel cooperated in the drafting and preparation of the Agreement.  In any construction to be made of the Agreement, the Agreement shall not be construed against any party and the canon of contract interpretation to the contrary shall not be applied.

21.13   <u>Recitals</u>.  The recitals set forth above shall be and hereby are terms of this Agreement as if set forth herein.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

21.14   <u>No Collateral Attack</u>.  The Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of notices of the Settlement after the Final Judgment is entered.

*Remainder of Page Left Blank*

Dated: _____May 31_____, 2023

CLASS REPRESENTATIVE
VINCENT SORACE

By: VINCENT SORACE

Dated: _____, 2023

CLASS REPRESENTATIVE
JOSEPH YERTY

By: JOSEPH YERTY

Dated:_____, 2023

CLASS REPRESENTATIVE
TAMMY YERTY

By: TAMMY YERTY

Dated: _____, 2023

CLASS REPRESENTATIVE
JAMES ZARONSKY

By: JAMES ZARONSKY

Dated: _____, 2023

CLASS REPRESENTATIVE
LINDA ZARONSKY

By: LINDA ZARONSKY

- 66 -

Dated: _____, 2023

CLASS REPRESENTATIVE
VINCENT SORACE

By: VINCENT SORACE

Dated: May 31 _____, 2023

CLASS REPRESENTATIVE
JOSEPH YERTY

By: JOSEPH YERTY

Dated: May 31 _____, 2023

CLASS REPRESENTATIVE
TAMMY YERTY

By: TAMMY YERTY

Dated: _____, 2023

CLASS REPRESENTATIVE
JAMES ZARONSKY

By: JAMES ZARONSKY

Dated: _____, 2023

CLASS REPRESENTATIVE
LINDA ZARONSKY

By: LINDA ZARONSKY

- 66 -

Dated: _____, 2023

CLASS REPRESENTATIVE
VINCENT SORACE


By: VINCENT SORACE

Dated: _____, 2023

CLASS REPRESENTATIVE
JOSEPH YERTY


By: JOSEPH YERTY

Dated: _____, 2023

CLASS REPRESENTATIVE
TAMMY YERTY


By: TAMMY YERTY

Dated: _May 31_____, 2023

CLASS REPRESENTATIVE
JAMES ZARONSKY

By: JAMES ZARONSKY

Dated: _May 31_____, 2023

CLASS REPRESENTATIVE
LINDA ZARONSKY

By: LINDA ZARONSKY

- 66 -

Dated: __May 31_____, 2023

CLASS REPRESENTATIVE
VIKTOR STEVENSON

By: VIKTOR STEVENSON

Dated: __May 31_____, 2023

CLASS REPRESENTATIVE
ASHLEY YATES

By: ASHLEY YATES

Dated: _____, 2023

CLASS REPRESENTATIVE
KIMBERLY SOLOMON-ROBINSON

By: KIMBERLY SOLOMON-
ROBINSON

Dated: _____, 2023

DEFENDANT
WELLS FARGO, BANK N.A.

By: _____

Name: _____

Title: _____

- 67 -

Dated:_____, 2023

CLASS REPRESENTATIVE
VIKTOR STEVENSON

_____

By: VIKTOR STEVENSON

Dated:_____, 2023

CLASS REPRESENTATIVE
ASHLEY YATES

_____

By: ASHLEY YATES

Dated: _May 31_____, 2023

CLASS REPRESENTATIVE
KIMBERLY SOLOMON-ROBINSON

_____

By: KIMBERLY SOLOMON-
ROBINSON

Dated: _____, 2023

DEFENDANT
WELLS FARGO, BANK N.A.

_____

By: _____

Name: _____

Title: _____

Dated:_____, 2023

CLASS REPRESENTATIVE
VIKTOR STEVENSON

_____

By: VIKTOR STEVENSON

Dated:_____, 2023

CLASS REPRESENTATIVE
ASHLEY YATES

_____

By: ASHLEY YATES

Dated: _____, 2023

CLASS REPRESENTATIVE
KIMBERLY SOLOMON-ROBINSON

_____

By: KIMBERLY SOLOMON-
ROBINSON

Dated: __5/26/2023_____, 2023

DEFENDANT
WELLS FARGO, BANK N.A.
d/b/a WELLS FARGO AUTO

Craig Baldauf
93381AB941C94FA...

By: ___Craig Baldauf_____

Title: _Counsel Senior Executive___

DocuSign Envelope ID: B4CCA32E-73AC-4446-B818-8D8G53B123E4

# EXHIBIT 1

CLASS ACTION WEBSITE/
REFERENCE
[Contact for Settlement
Administrator]
1-800-xx-xxxx
Fax No.
CLASS NOTICE NUMBER:
_____[INSERT]

You may access the Settlement Website by using the
camera on your mobile device to scan this QR code:

Your Deficiency
Balance Amount is
$_____ as of the
date of preliminary
approval. This is a
disputed debt and
will be fully
compromised by
accord and
satisfaction if this
settlement is
approved.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*RE: Case No. 2:20-cv-04318-GJP*
*Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky,*
*Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson,*
*individually and on behalf of all others similarly situated v. Wells Fargo Bank, N.A.*

**A Court has authorized this Notice. This is not a solicitation from a lawyer. You are receiving this Notice because you may be a Class Member for purposes of a proposed Settlement. Your rights may be affected whether or not you act in response to this Notice. Please read this Notice carefully.**

### WHY HAVE YOU BEEN SENT THIS NOTICE

The class action lawsuit *Sorace, et. al., v. Wells Fargo Bank, N.A.*, 2:20-cv-04318-GJP (the "Lawsuit"), is pending before the Honorable Gerald J. Pappert in the United States District Court for the Eastern District of Pennsylvania. The parties to the Lawsuit have reached a proposed settlement (the "Settlement").

The Settlement, if approved by the Court, will resolve the Lawsuit filed by Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon Robinson ("Plaintiffs" or "Class Representatives") against Wells Fargo Bank, N.A., d/b/a Wells Fargo Auto ("Defendant" or "Wells Fargo") over whether Wells Fargo complied with the Pennsylvania Uniform Commercial Code ("UCC"), independently, and in conjunction with the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA"). Plaintiffs alleged that Wells Fargo violated the requirements relating to various laws governing the repossession of vehicles. Wells Fargo denies and disputes the claims asserted in the Lawsuit. The Settlement avoids the costs and risks to the parties associated with proceeding with the Lawsuit.

The Settlement defines the "Class"[1] as all debtors, obligors, and co-obligors: (a) who entered into a retail installment sales contract in Pennsylvania for the financing of a Motor Vehicle purchased primarily for personal, family or household use and whose retail installment sales contract was assigned or sold to Wells Fargo; and, (b) from whom Wells Fargo, as secured party, repossessed the vehicle or ordered it to be repossessed after Wells Fargo deemed the contract to be in default; and (c) who were sent a Notice of Intent to dispose of or sell the repossessed vehicle by Wells Fargo at any time on or after July 7, 2014 through [ENTER date of Preliminary Approval]. The people who meet this definition are known as "Class Member(s)."

The relevant time period for the Settlement is from July 7, 2014 through _____ [ENTER date of Preliminary Approval]. According to Wells Fargo's records, you are a Class Member. If you do not exclude yourself (Opt-Out) from the Settlement as discussed herein, then you will be subject to and bound by the terms of the Settlement and become a "Settlement Class Member." Accordingly, please read this Notice carefully.

Under the Settlement, Wells Fargo will provide a gross settlement payment of $15 million to a Settlement Fund to be used to pay (i) a refund of the payments made by those Settlement Class Members who paid on their Account after their vehicle was repossessed and sold by Wells Fargo through the Effective Date ("Refund Payment"); (ii) an equal cash payment for each Account ("Per Account Payment"); (iii) the costs of administering the Settlement; (iv) Attorney's Fees and Expenses, as awarded by the Court, and (v) Incentive Payments to the Class Representatives, as awarded by the Court. The Refund Payments and Per Account Payments for Accounts with more than one borrower will be split evenly among the co-borrowers, unless requested otherwise, as explained below.

Wells Fargo will also fully compromise Deficiency Balances that it claims are presently owed on the Settlement Class Members' Accounts where the vehicle was repossessed and sold ("Deficiency Balance Compromise"). Wells Fargo's business records show that the total amount of the Deficiency Balance Compromise for all Class Members as of the date of Preliminary Approval is approximately $_____ [ENTER Total Deficiency Balance Compromise amount]. If you have a Deficiency Balance that will be compromised (no longer due) as part of this Settlement, the amount of your Deficiency Balance compromise as of the date of Preliminary Approval is set forth in the box below. Any payments made after the Effective Date toward these compromised Deficiency Balance amounts will be returned to the Settlement Class Member or will not be cashed.

**[Class Member Name]'s Deficiency Balance Amount that will be Fully Compromised (no longer due) as Part of this Settlement is approximately $ _____.**
**DO NOT MAKE ANY MORE PAYMENTS TOWARDS THIS DEFICIENCY BALANCE, PENDING FINAL APPROVAL (SEE BELOW)**

---

[1] Capitalized Terms are defined in the Settlement Agreement, a copy of which can be accessed at _____ [ENTER website address].

1

Wells Fargo also agrees to request that the credit reporting agencies, Experian, TransUnion, and Equifax, delete the entire tradelines associated with each Settlement Class Member's Account with the exception of any Accounts where the Class Member refuses the tradeline deletion in writing pursuant to the requirements set forth below. In exchange, Wells Fargo and each Class Member will release the other from liability (or potential liability) in connection with the Settlement Class Member's Account (but does not impact payments currently due if the Settlement Class Members Account has been reinstated), as more fully set forth in the Settlement Agreement. The Settlement Agreement can be reviewed at _____ [ENTER website address], or by requesting a copy from Class Counsel or the Settlement Administrator (contact information below).

## SUMMARY OF SETTLEMENT BENEFITS & YOUR OPTIONS

The Settlement will provide several benefits to the Settlement Class Members.

### Refund Payments

Settlement Class Members who made payments towards their disputed Deficiency Balances between the sale of the repossessed vehicle through the Effective Date will receive a refund of these monies paid ("Refund Payments"). Refund Payments on Accounts with more than one borrower will be split evenly among the co-borrowers, unless requested otherwise pursuant to the requirements set forth below. Refund Payments on Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a request by the legal representative, executor, or administrator of the estate of the deceased co-borrower pursuant to the requirements set forth below. Refund Payments for Accounts with only one borrower where the Settlement Administrator can determine that a borrower is deceased will not be paid absent a request by the legal representative, executor, or administrator of the estate of the deceased borrower pursuant to the requirements set forth below. According to Wells Fargo's records the amount of the Refund Payment pertaining to your Account as of the date of Preliminary Approval is $ _____ [ENTER Class Member's Refund Payment amount, if applicable].

### Per Account Payments

The amount remaining in the Settlement Fund, after payment of the Refund Payments, Attorney's Fees and Expenses, the Incentive Payments to the Class Representatives, and payment of settlement administration fees, will be divided among the Settlement Class Members on an equal per-Account basis ("Per Account Payment"). This will result in an anticipated Per Account Payment of approximately $_____. If you want to exclude yourself from the Settlement and pursue the claims made in this Class Action in your own individual lawsuit, and assuming you ultimately prevailed, you would be entitled to receive either actual damages, for any actual damages you can prove, or (if you purchased the repossessed vehicle for consumer use) minimum statutory damages. Your minimum statutory damages are computed by adding the credit service charge (finance charge) plus 10% of the principal amount of your loan. This information is set forth in your Retail Installment Sales Contract. Note that Wells Fargo claims that any damages, actual or statutory, should be decreased by the amount of your deficiency balance. Per Account Payments on Accounts with more than one borrower will be split evenly among the co-borrowers, unless requested otherwise pursuant to the requirements set forth below. Per Account Payments on Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a request by the legal representative, executor, or administrator of the estate of the deceased co-borrower pursuant to the requirements set forth below. Per Account Payments for Accounts with only one borrower where the

Settlement Administrator can determine that a borrower is deceased will not be paid absent a request by the legal, executor or administrator of the estate of the deceased borrower pursuant to the requirements set forth below.

### Deficiency Balance Compromise

The balance remaining on an Account after a repossession and sale of the repossessed vehicle, after crediting the Class Member's Account with the sale price of the vehicle and including interest and all other charges, is a "Deficiency Balance." The parties have a good faith dispute as to the validity of this debt and have entered into a Settlement Agreement after extensive arms-length negotiations. In connection with the Settlement, Wells Fargo has agreed to fully compromise the disputed Deficiency Balances it claims are presently due and owing by the Settlement Class Members by an accord and satisfaction ("Deficiency Balance Compromise").

If you have a Deficiency Balance that will be compromised, and you are not excluding yourself from the Settlement, you should stop paying on the Deficiency Balance amount immediately, pending the *final* outcome of Plaintiffs' request for entry of a Final Approval Order. The final outcome of this request will be known on the "Effective Date," which means the last date after entry of the Final Approval Order and expiration of any appeal periods, or other form of objection to the Final Approval Order, full and final resolution of any appeal or objection that may be filed, and expiration of any time periods for seeking review of that disposition through an appeal, *en banc* hearing, or higher level of review. If the Final Approval Order does not become *final* (after expiration of the last deadline for any appeal/review) then you will continue to owe the Deficiency Balance amount. If the Final Approval Order does become *final* (after expiration of the last deadline for any appeal/review), then your Deficiency Balance will be compromised, and any payments made after the Effective Date toward the compromised Deficiency Balance amounts will be returned to the Settlement Class Members or will not be cashed.

As noted above, a Deficiency Balance only arises after a repossessed vehicle has been sold or otherwise disposed of. As such, if you got your vehicle back after it was repossessed (*i.e.*, if you redeemed your vehicle or reinstated your loan with Wells Fargo) and your vehicle was not subsequently repossessed and sold or otherwise disposed of prior to the Effective Date, then you do not have a Deficiency Balance and your loan balance will not be compromised as a result of this Settlement. Any balance remaining on your Account will continue to be due and owing to Wells Fargo. You should retain this document for tax purposes.

### Request to Delete Credit Reporting

Wells Fargo has agreed to submit requests to the three major credit reporting agencies – Experian, Equifax, and TransUnion – to delete the entire credit reporting tradelines related to Settlement Class Members' Accounts with the exception of any Accounts where the Class Member refuses the tradeline deletion in writing pursuant to the requirements set forth below. If you do not wish to have your tradeline deleted, please review the requirements to refuse such relief as set forth in Paragraph 11 below.

### Your Options

At this time, you are assumed to be a Class Member who is participating in the Settlement. Therefore, your rights will be affected even if you do nothing. Please read this Notice carefully. The following is a general summary of the actions you can take and the results of those actions. If you want to have a detailed discussion

DocuSign Envelope ID: B1CGA32E-780C-4A40-B9188-D8CB2B1135A

regarding your specific situation or have other questions or concerns, you may contact Class Counsel at 1-XXX-XXX-XXX.

| YOUR ACTION | RESULT OF THAT ACTION |
|---|---|
| **DO NOTHING** | You remain in the Settlement. If the Settlement is approved, you will receive the benefits summarized in this notice. In exchange, you give up the right to sue Wells Fargo for matters concerning your Account and the repossession and sale of your vehicle up to the date of preliminary approval of the settlement as set forth in the Settlement Agreement. |
| **ASK TO BE EXCLUDED** | You are removed from the Settlement. You will not receive the benefits summarized in this Notice. However, this is the only option that allows you to pursue (or continue) your own lawsuit or to participate in any other lawsuit against Wells Fargo concerning your Account or the repossession and sale of your vehicle. The deadline for you to submit your signed request to be excluded is **[DATE]**, so you must act promptly. Note that if you exclude yourself from the Settlement, then the Settlement will not impact you, and therefore, you have no right to object to the Settlement. See Paragraph 19, below. If you exclude yourself so that you can pursue your own individual lawsuit against Wells Fargo and you executed an arbitration agreement, Wells Fargo may attempt to enforce the arbitration agreement to require you to submit your claim(s) through arbitration. |
| **OBJECT TO THE SETTLEMENT** | If you object to the Settlement, you are still in the Settlement, but you have notified the Court in writing that you do not like the Settlement and the reason(s) why. The deadline for you to submit a signed objection is **[DATE]**, so you must act promptly. See Paragraph 24, below. If you exclude yourself from the Settlement, then the Settlement will not impact you, and therefore, you have no right to object to the Settlement. |
| **REQUEST AN ALTERNATIVE DIVISION OF THE PER ACCOUNT PAYMENT AND THE REFUND PAYMENT (CO-BORROWERS ONLY)** | If you are a co-borrower on an Account, you may also request an alternate division of the Per Account Payment and Refund Payment (if applicable) between co-borrowers on an Account, rather than the presumptive equal division. This is not the same as objecting to the Settlement and you will still be a part of the Settlement. The deadline for you to submit a request for alternate division to the equal payment allocation is **[DATE]**, so you must act promptly. See Paragraph 26, below. |
| **REQUEST AN ALTERNATIVE DISTRIBUTION OF THE PER ACCOUNT PAYMENTS AND THE REFUND PAYMENTS RELATING TO ACCOUNTS WITH DECEASED CLASS MEMBERS** | Per Account Payments and Refund Payments (if applicable) for Accounts with more than one borrower where one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a written request by the legal representative of the estate of the deceased Class Member supported by sufficient documentation. For Accounts with only one borrower where the Settlement Administrator can determine that the borrower is deceased, no payments will be made absent a written request by the legal representative, executor, or administrator of the estate of the deceased Class Member supported by sufficient documentation. The deadline for you to submit such written requests is **[DATE]**, so you must act promptly. Creditors, heirs, or legal representatives of deceased Class Members estates are responsible for hiring their own counsel to represent them, should they deem it necessary. See Paragraph 15, below. |
| **GO TO THE HEARING WHERE THE COURT CONSIDERS WHETHER TO APPROVE THE SETTLEMENT** | You are still in the Settlement and get the benefits of the Settlement that you are eligible for (as explained in this Notice), if approved by the Court. You do not need to attend the hearing to get the benefits of the Settlement, but you are invited to attend and will be afforded an opportunity to speak in Court about the fairness of the Settlement (should you choose to do so). If you object to the Settlement, you need to state in your objection your intention to appear at the fairness hearing. See Paragraphs 24 and 27-29, below. |

**WHAT THIS NOTICE CONTAINS**

**BASIC INFORMATION**

1. Why is there a Notice?............................................ 3
2. What is this Lawsuit About? ................................. 3
3. Why is this a Class Action? .................................. 3
4. Why is there a Settlement? ................................... 3

**WHO IS IN THE SETTLEMENT?**

5. How do I know if I am part of the Settlement? ...... 4
6. What if I am not sure whether I am included in the Settlement? ............................................................. 4

**THE SETTLEMENT BENEFITS**

7. What does the Settlement provide? ....................... 4
8. What is the Refund Payment? ............................... 4
9. What is the Per Account Payment? ....................... 4
10. What is the Deficiency Balance Compromise?...... 4
11. What is the credit reporting benefit? .................... 4
12. When will I receive my benefits? .......................... 4
13. What am I giving up and what claims might I still have to pursue if I remain in the Settlement?........................ 5
14. Will this affect my taxes? ..................................... 5
15. What happens if this notice is addressed to a Class Member that has passed away? ................................. 5
16. What happens if this debt was discharged in or is presently included in a bankruptcy?.................................... 5
17. What happens if I voluntarily surrendered my vehicle, redeemed my vehicle, or reinstated my Account? ................. 5

**HOW TO GET BENEFITS**

18. Do I need to do anything to get the Refund Payment, Per Account Payment, credit reporting benefit or the Deficiency Balance compromise? .......................................... 5

**EXCLUDING YOURSELF FROM THE SETTLEMENT**

19. How do I exclude myself from the Settlement? ...................5
20. If I do not exclude myself, can I sue Wells Fargo for the same thing later? ...........................................................5
21. If I exclude myself, can I still benefit from this Settlement?  5

**THE LAWYERS REPRESENTING YOU**

22. Do I have a lawyer in the case?...............................................5
23. How will the lawyers be paid?................................................5

**OBJECTING TO THE SETTLEMENT**

24. How do I tell the Court if I do not like the Settlement? .........6
25. What is the difference between objecting and asking to be excluded? ..........................................................6

**REQUESTING AN ALTERNATIVE DIVISION OF PAYMENTS (FOR CO-BORROWERS)**

26. If I am a co-borrower, can I request an alternative division (alternative to the equal division) of the Per Account Payment and Refund Payment as between both co-borrowers?............8

**THE COURT'S FAIRNESS HEARING**

27. When, where, and how will the Court decide whether to approve the Settlement? ............................................6
28. Do I have to attend the fairness hearing?................................6
29. May I speak at the hearing? ...................................................6

**GETTING MORE INFORMATION**

30. How do I get more information?..............................................6

## BASIC INFORMATION

### 1. Why is there a Notice?

A Court has authorized this Notice because you have a right to know about the proposed Settlement and your options. In summary fashion, this Notice explains the Lawsuit, the key terms of the proposed Settlement and your legal rights. If the Court approves the Settlement, after any appeals are resolved, the Settlement Administrator will make the Refund Payments (as applicable) and Per Account Payments to Settlement Class Members, and Wells Fargo will provide the other relief described in this Notice.

### 2. What is this Lawsuit About?

The Plaintiffs have claimed that Wells Fargo violated the Pennsylvania Uniform Commercial Code (UCC) independently and in conjunction with the Pennsylvania Motor Vehicle Sales Finance Act (MVSFA) by (1) failing to send its borrowers proper Notices of Repossession after Wells Fargo repossessed Class Members motor vehicles (2) failing to send Post-Sale Notices in the required manner after the repossessed vehicles were sold or otherwise disposed of, and (3) other various issues with the repossession process in connection with Class Members' repossessions. Plaintiffs, on their own behalf and on behalf of the Class Members, sought to recover statutory damages and certain declaratory, injunctive, and equitable relief, including the compromise of Deficiency Balances on Class Members' Accounts which Wells Fargo contends are presently due and owing, the expungement requests for the removal of all references to the repossession and Account on Class Members' credit reports, the return of monies paid towards the disputed Deficiency Balances, and the cessation of collection efforts for all Class Members with Deficiency Balances relating to their Accounts. Wells Fargo, on the other hand, contends that the post-repossession consumer disclosure notices it sent to Plaintiffs and the Class Members complied in all respects with its statutory obligations, that it otherwise complied with the law in all respects, and that it denies any and all liability. Wells Fargo further contends that it is entitled to pursue collection of the Deficiency Balances and asserts other defenses. These issues have not yet been decided by the Court, and, if the Settlement is approved, these issues will not be resolved on the merits.

### 3. Why is this a Class Action?

In a class action, one or more people called "representative plaintiffs" or "Class Representatives" sue on behalf of themselves and other people with similar claims ("Class Members"). All these people together are the "Class." In this Lawsuit, the Plaintiffs, Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon Robinson, are the Class Representatives. If this Settlement is approved, the Settlement will resolve the claims of all Class Members except for those individuals who exclude themselves from the class or pursue a claim that is excluded from being released by the Settlement Agreement.

### 4. Why is there a Settlement?

The Court has not decided in favor of the Plaintiffs or Wells Fargo. Instead, both sides have agreed to a Settlement. By agreeing to the Settlement, both sides avoid the cost and risk of a trial, and the individuals affected may decide whether to participate in the Settlement. Class Counsel recommends the Settlement. Without a Settlement, there would continue to be a dispute concerning class

certification and disputes concerning liability and damages that would need to be determined at trial. A trial could result in a greater benefit to Settlement Class Members, a smaller benefit to Settlement Class Members, or no benefit at all to Settlement Class Members. A trial could also potentially could result in Class Members being held liable for the Deficiency Balances which, though disputed, Wells Fargo claims are owed. This Settlement provides very substantial benefits, including monetary Refund Payments (as applicable), Per Account Payments, the compromise of the disputed Deficiency Balances by way of an accord and satisfaction, and the credit tradeline relief described herein that may improve Settlement Class Members credit by deleting credit information relating to the repossession and the Class Member's Account. The Settlement does not mean that Wells Fargo did anything wrong.

### WHO IS IN THE SETTLEMENT?

If you received this Notice in the mail, Wells Fargo's records indicate you are a Class Member and are included in this Settlement, unless you exclude yourself. Even if you did not receive a mailed notice, you may still be a Class Member and included in this Settlement, as described below.

### 5.  How do I know if I am part of the Settlement?

You are included in the Settlement if you fall within the definition of the Class, as set forth in the Settlement, and do not exclude yourself from the Settlement (see below for where the Settlement Agreement and related documents can be reviewed).

### 6.  What if I am not sure whether I am included in the Settlement?

If you are not sure whether you are included in the Settlement, you may call, write, or email Class Counsel or the Settlement Administrator with questions.

Class Counsel
Attorney Richard Shenkan
Shenkan Injury Lawyers, LLC.
6550 Lakeshore St. West Bloomfield, MI  48323
[Email Address]
Fax No: [1-xxx-xxx-xxxx]
Toll Free Number:  1-800-XXX-XXXX

Settlement Administrator
LIST SETTLEMENT ADMINISTRATOR'S NAME AND CONTACT INFORMATION

### THE SETTLEMENT BENEFITS

### 7.  What does the Settlement provide?

If the Settlement is approved and becomes final, it will provide, among other things, the following benefits to the Settlement Class Members (i.e., Class Members who do not exclude themselves from the Settlement):

- Refunds of the payments Settlement Class Members made toward their disputed Deficiency Balances (see Question 8);
- Per Account Payments (see Question 9);
- The compromise of the Settlement Class Members' Deficiency Balances (see Question 10); and,
- Requests to the credit reporting agencies to delete the credit trade lines or repossession related credit information associated with the Settlement Class Members' Accounts (see Question 11).

More details are in the Settlement Agreement, which is available to be reviewed at [website address].

### 8.  What is the Refund Payment

If you made any payment(s) on your Account following repossession and subsequent sale of your motor vehicle, the amount that you paid will be refunded. In the case of Accounts that list more than one person as a borrower or co-borrower, the Refund Payment will be divided equally among borrowers or co-borrowers with separate checks issued to each, unless either borrower or their legal representative submits a written request to the Settlement Administrator pursuant to the requirements set forth in Section 26, below. Refund Payments for Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a request by the executor, administrator, or legal representative of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Refund Payments for Accounts with only one borrower where the Settlement Administrator can determine that a borrower is deceased will not be paid absent a request by the executor, administrator, or legal representative of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Any such requests will be denied unless there is an opened/reopened estate at the time of the request and/or upon approval of Class Counsel. When you receive your Refund Payment, you should cash the check immediately. *If you do not promptly cash your check, your payment may be forfeited by you and paid to a charity or other Class Members.*

### 9.  What is the Per Account Payment?

A cash payment will be sent to each Settlement Class Member. The Per Account Payment will be distributed in equal payments to the Settlement Class Members on a per Account basis, after payment of Refund Payments, Attorney's Fees and Expenses, Incentive Payments, and payment of settlement administration costs. In the case of Accounts that list more than one person as a borrower or co-borrower, the Per Account Payment payable on that Account will be divided equally among borrowers or co-borrowers, with separate checks issued to each, unless either borrower or their legal representative submits a written request to the Settlement Administrator pursuant to the requirements set forth in Section 26, below. Per Account Payments for Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a request by the executor, administrator, or legal representative, of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Per Account Payments for Accounts with only one borrower where the Settlement Administrator can determine that a borrower is deceased will not be paid absent a request by the executor, administrator, or legal representative, of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Any such requests will be denied unless there is an opened/reopened estate at the time of the request and/or upon approval of Class Counsel. When you receive your Refund Payment, you should cash the check immediately. *If you do not promptly cash your check, your payment may be forfeited by you and paid to a charity or other Class Members.*

### 10.  What is the Deficiency Balance Compromise?

If Wells Fargo sold your repossessed vehicle and the amount of the sale or disposition did not cover the amount that you purportedly owed on the loan, then you may owe Wells Fargo a Deficiency Balance. Plaintiffs dispute that any Deficiency Balance is owed by any Class Member, while Wells Fargo claims that Deficiency Balances are owed. As part of the Settlement, Wells Fargo agrees

to compromise the Settlement Class Members' Deficiency Balances ("Deficiency Balance Compromise") by way of an accord and satisfaction. A Deficiency Balance Compromise in an amount of $600.00 or more may result in the issuance of IRS Form 1099C.

Example: At the time Wells Fargo sold Amanda's repossessed vehicle, she owed $10,000 on her loan. Wells Fargo incurred $250 to repossess her vehicle and $250 to sell the vehicle. Amanda's vehicle sold for $6,000 at auction. Amanda's deficiency balance would be $4,500.

|  | Calculation |  |  |
|---|---|---|---|
| [($10,000 + $250 + $250) | - | ($6,000)] | = | $4,500 |
| Total amount owed by Amanda | | Amount from vehicle sale | | Deficiency Balance |

If you have a Deficiency Balance that will be compromised (no longer due) as part of this Settlement, the approximate amount of your Deficiency Balance compromise as of the date of Preliminary Approval is set forth in the box below.

<div style="border:2px solid red; color:red; text-align:center;">

**[Class Member Name]'s Deficiency Balance Amount that will be Fully Compromised (no longer due) as Part of this Settlement is approximately $ _____.**

**DO NOT MAKE ANY MORE PAYMENTS TOWARDS THIS DEFICIENCY BALANCE,PENDING FINAL APPROVAL (SEE BELOW)**

**Please retain this document for tax purposes.**

</div>

If you have a Deficiency Balance that will be compromised, and you are not excluding yourself from the Settlement, you should stop paying on the Deficiency Balance amount immediately, pending the *final* outcome of Plaintiffs' request for entry of a Final Approval Order. The final outcome of this request will be known on the "Effective Date," which means the last date after entry of the Final Approval Order and expiration of any appeal periods, or other form of objection to the Final Approval Order, full and final resolution of any appeal or objection that may be filed, and expiration of any time periods for seeking review of that disposition through an appeal, *en banc* hearing, or higher level of review. If the Final Approval Order does not become *final* (after expiration of the last deadline for any appeal/review) then you will continue to owe the Deficiency Balance amount. If the Final Approval Order does become *final* (after expiration of the last deadline for any appeal/review), then any payments made after the Effective Date toward the compromised Deficiency Balance amounts will be returned to the Settlement Class Members or will not be cashed. Wells Fargo has also agreed to attempt to satisfy any judgment against a Class Member for a Deficiency Balance if any are found to exist on an Account, though it is not aware of any such judgments.

A Deficiency Balance only arises after a vehicle has been sold or otherwise disposed of by Wells Fargo. As such, if you got your vehicle back after it was repossessed (i.e., if you redeemed your vehicle or reinstated your loan with Wells Fargo) and your vehicle was not subsequently repossessed and sold or otherwise disposed

of prior to the Effective Date, you do not have a Deficiency Balance and your loan balance will not be compromised as a result of the Settlement. Any balance remaining on your Account will continue to be due and owing to Wells Fargo.

### 11. What is the credit reporting benefit?

As part of the Settlement, Wells Fargo will ask Experian, Equifax, and TransUnion to delete the entire credit reporting tradelines related to Settlement Class Members' Accounts with the exception of any Accounts where the Class Member refuses the tradeline deletion in writing pursuant to the requirements set forth herein. It is likely that your credit score will increase as a result of this benefit; however, there is no guarantee as to this positive effect.

**In order to refuse the tradeline deletion benefit, you must do so in writing**. The written request to refuse the tradeline deletion benefit must be sent (postmarked, faxed, or uploaded to the Settlement Website's portal with an attachment containing the class members' signature) to the Settlement Administrator at the mailing address, fax number, or website listed in this Notice by **[DATE]**. The written request to refuse the tradeline deletion benefit must: (a) identify the case name; (b) identify the name and address of the person requesting refusal; (c) be personally signed by the person requesting refusal; and (d) contain a statement that indicates a desire to be included in the Settlement Class, but to refuse the tradeline deletion, such as "I hereby request that I be included in the proposed Settlement Class in the Action, however I do not want Wells Fargo to delete my tradeline."

### 12. When will I receive my benefits?

Settlement Class Members will receive their benefits after the Court grants final approval of the Settlement (see Question 27) and after any appeals are resolved. If there are appeals, resolving them can take time. Please be patient.

### 13. What am I giving up and what claims might I still have to pursue if I remain in the Settlement?

Unless you exclude yourself from the Settlement, you will become a Settlement Class Member and you will give up your right to sue (or continue a lawsuit against) Wells Fargo pertaining to the subject Account, including repossession-related matters. The claims which you would be releasing are set forth in the Settlement Agreement. The full Settlement Agreement is available at _____ [ENTER website address].

### 14. Will this affect my taxes?

**We cannot give you a definitive answer in this Notice.** A Deficiency Balance Compromise in an amount of $600.00 or more may result in the issuance of IRS Form 1099C. You should consult a tax professional regarding tax implications because all situations are unique. It is most prudent to consult your tax professional about your unique tax situation.

**You are urged to consult with a tax professional regarding the benefits and tax implications of this Settlement. You should retain this document for tax purposes.**

### 15. What happens if this notice is addressed to a Class Member that has passed away?

Refund Payments (if applicable) and Per Account Payments for Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a written request by the legal representative, executor, or administrator of the

estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment(s). For Accounts with only one borrower where the Settlement Administrator can determine that the borrower is deceased, no payments will be made absent a written request by the legal representative, executor, or administrator, of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment(s). Any such requests will be denied unless there is an opened/reopened estate at the time of the request and/or upon approval of Class Counsel. Any such written requests must be sent (postmarked, faxed, or uploaded to the Settlement Website to the Settlement Administrator at the mailing address, fax number, or website listed in this Notice by [DATE]. Any such written requests must: (a) include documentation sufficient to show an open estate and/or one or more persons legally entitled to payment(s); and (b) be personally signed by the legal representative, executor or administrator of an estate of the deceased Class Member, and/or creditor of the deceased Class Member.

### 16. What happens if this debt was discharged in or is presently included in a bankruptcy?

If the loan obligation was discharged in bankruptcy (yours and/or your co-borrower's bankruptcy) or is presently part of a bankruptcy proceeding, then you should consult a bankruptcy attorney regarding this matter. You may have an obligation to notify the bankruptcy trustee regarding the cash payment and other benefits you are expected to receive. The law at issue in this case permits you to obtain minimum statutory damages regardless of whether you suffered an injury (See 13 Pa. C.S. §9625, Comment 4). Furthermore, the equitable benefits such as the credit reparation relating to the expungement of the credit tradeline constitute permissible equitable relief pursuant to 13 Pa. C.S. §1103 and §9625(a).

### 17. What happens if I voluntarily surrendered my vehicle, redeemed my vehicle, or reinstated my Account?

Because the lawsuit challenges the content of the Notices of Repossession and Post-Sale Notices and is not based on actual harm you may have suffered, you are a Class Member even if you voluntarily surrendered your vehicle, redeemed your vehicle, or reinstated your loan with Wells Fargo. If you reinstated your Account and the vehicle has not been subsequently repossessed and sold as of the Effective Date, then you will not receive the Deficiency Balance benefit, and it is Wells Fargo's position that any loan balance will not be compromised as a result of the Settlement.

### HOW TO GET BENEFITS

### 18. Do I need to do anything to get the Refund Payment, Per Account Payment, the credit reporting benefit, or the Deficiency Balance Compromise?

No. If the Court approves the Settlement, you do not need to do anything further in order to remain a part of the Settlement and receive the benefits described herein, as applicable to you.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

IF YOU DO NOT WANT THE REFUND PAYMENT, PER ACCOUNT PAYMENT, AND OTHER BENEFITS FROM THIS SETTLEMENT, AND YOU INSTEAD WANT TO KEEP THE RIGHT TO SUE WELLS FARGO, OR CONTINUE TO SUE

WELLS FARGO, RELATING TO YOUR ACCOUNT, THEN YOU MUST TAKE STEPS TO EXCLUDE YOURSELF FROM (OR "OPT OUT" OF) THE SETTLEMENT.

### 19. How do I exclude myself from the Settlement?

In order to exclude yourself (opt-out), you must do so in writing. The written request must be sent via mail, fax, or uploaded on the Settlement Website (with an attachment containing the class members' signature) to the Settlement Administrator at the mailing address, fax number, or website listed in this Notice by [DATE]. The written exclusion request must: (a) identify the case name; (b) identify the name and address of the person requesting exclusion; (c) be personally signed by the person requesting exclusion; and (d) contain a statement that indicates a desire to be excluded from the Settlement Class, such as "I hereby request that I be excluded from the proposed Settlement Class in the Action." Mass or class opt outs shall be void. A request to Opt-Out by a borrower or co-borrower on an Account shall be deemed to be a request to Opt-Out by all borrowers on the Account.

### 20. If I do not exclude myself, can I sue Wells Fargo for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Wells Fargo for claims relating to the subject Account. If you have a pending lawsuit, speak to your lawyer in that case immediately because your legal rights may be adversely affected by this Settlement. You must exclude yourself from this Settlement in order to start or to continue your own lawsuit for claims relating to your Account. Your rights may be affected by this Settlement. The full Settlement Agreement is available at _____ [ENTER website address]. You may contact the Settlement Administrator and request that a copy of the Settlement Agreement be sent to you.

### 21. If I exclude myself, can I still benefit from this Settlement?

No. If you exclude yourself, you will not receive any money as a result of the Settlement, you will not receive the Deficiency Balance Compromise, and you will not receive the credit reporting benefit.

### THE LAWYERS REPRESENTING YOU

### 22. Do I have a lawyer in the case?

Yes. The Court has approved Richard Shenkan and the law firm of Shenkan Injury Lawyers, LLC, and Hon. Lawrence F. Stengel (Ret.) and the law firm of Saxton & Stump, to represent the Class. These lawyers and law firms are called "Class Counsel." You will not be charged individually for their legal services; rather, Class Counsels' fees will be paid from the Settlement Fund with the approval of the Court. If you want to be represented by your own lawyer, you may hire one at your own expense. Class Counsels' contact information is listed in Question 6 above. Class Members can speak with Class Counsel at no charge about this case. In connection with the Court's appointment, Class Counsel do not represent deceased Class Member's creditors, heirs, or legal representatives relating to effectuating any settlement payments to any heir(s), legal representatives, or creditors of the deceased Settlement Class Members.

### 23. How will the lawyers be paid?

Class Counsel has asked the Court to award attorney's fees in an amount not to exceed Six Million Dollars ($6,000,000) and for

reimbursement of expenses in an amount not to exceed One Hundred Thousand Dollars ($100,000). An attorney's fee in this amount represents less than 15% of the value of the aggregate gross benefit conferred including the Deficiency Balance Compromise. The value of the requests for credit tradeline removal will vary based upon each Settlement Class Member; however, these are significant additional benefits. The attorney's fees and expenses awarded by the Court, including payment to the Settlement Administrator, will be paid out of the $15 Million Dollar Settlement Fund. Class Counsel will also request Incentive Payments of no more than $10,000 for each Representative Plaintiff for their respective services as Class Representatives for the Class, which will also be paid from the Settlement Fund. Thus, the total Incentive Payments will not exceed $80,000.00. The Court could decide to award less than the amounts requested for Attorney's Fees and Expenses and Incentive Payments.

## OBJECTING TO THE SETTLEMENT

### 24. How do I tell the Court if I do not like the Settlement?

If you are a Settlement Class Member (i.e., you are not excluding yourself from the Settlement), you can object to the Settlement if you do not like any part of it. In order to object to the Settlement, you must do so in writing. The Court will consider your views. The written objection must be sent via mail, fax, or uploaded on the Settlement Website (with an attachment containing the class members' signature) (to the Settlement Administrator at the mailing address, fax number, or website listed in this Notice by [DATE]. The written objection must: (a) identify the case name and number; (b) identify the name, address, telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) be personally signed by the person objecting; (d) state the basis and grounds for the objection with specificity; and (e) provide a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel. The written objection must also be mailed to the Clerk of Court at the address set forth in Paragraph 27 by [DATE].

### 25. What is the difference between objecting and asking to be excluded?

Objecting to the Settlement is informing the Court that you do not like something about the Settlement, and that you, for a clearly stated reason, do not want the Settlement to be approved or that you object to a particular part of the Settlement. You can object only if you do not exclude yourself from the Settlement. Excluding yourself is informing the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## REQUESTING AN ALTERNATIVE DIVISION OF PAYMENTS (FOR CO-BORROWERS)

### 26. If I am a co-borrower, can I request an alternative division (alternative to the equal division) of the Per Account Payment and Refund Payment as between both co-borrowers?

Yes. If you are not excluding yourself from the Settlement and you and a co-borrower would like to request an alternative division of the Per Account Payment and Refund Payment (if applicable) as between both co-borrowers, you must do so in writing. The written request for an alternative division must be sent via mail, fax, or uploaded on the Settlement Website (with an attachment containing the class members' signatures) to the Settlement Administrator at the mailing address, fax number, or website listed in this Notice by [DATE]. The written request for an alternative division must: (a) identify the case name; (b) identify the names and addresses of the Settlement Class Members requesting an alternative division of

payment(s); (c) be personally signed by both co-borrowers or their legal representatives requesting an alternative division of payment(s); and (d) provide a description of how the co-borrowers have agreed for any alternative division of payment(s) to be made as between each other.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to do so.

### 27. When, where, and how will the Court decide whether to approve the Settlement?

The Court will hold a fairness hearing on [DATE] at [TIME] in Courtroom [Number] at James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106. The hearing may be moved to a different date or time, or be held via videoconference or telephone conference, without additional notice (including an earlier date). Therefore, if you are planning on attending the fairness hearing, it is a good idea to confirm in advance that the date and time of the hearing has not changed. Additionally, in light of the restrictions necessitated by the COVID-19 pandemic, the Court, in its discretion, may change the mode or manner of the hearing. You may confirm this information by checking [website address and QR Code] or calling [toll-free number]. At this fairness hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and will listen to Settlement Class Members who ask to speak at the hearing. The Court may also decide several other aspects of the Settlement including how much to pay the Class Representatives for their incentive award and Class Counsel for their services and expenses. Following the hearing, the Court will decide whether to approve the Settlement. It is unknown how long the Court's decision will take. Please be patient.

### 28. Do I have to attend the fairness hearing?

No. Class Counsel will answer questions the Court may have, but you are welcome to come, at your expense. If you timely filed your written objection the Court will consider it. You do not have to come to Court to talk about it, but you may. You may also pay your own lawyer to attend, but it is not required.

### 29. May I speak at the hearing?

You may ask the Court for permission to speak at the hearing. To do so, you must send a letter to the Clerk of Court by [DATE] at the address listed in Question 27 saying that it is your "Notice of Intention to Appear at the Fairness Hearing in *Sorace v. Wells Fargo*, Case No. 2:20 cv 04318." You must include your name, address, telephone number, and signature. Your Notice of Intention to Appear must be (a) filed with the Clerk of the Court; and (b) sent (postmarked, faxed, or uploaded to the Settlement Website's portal with an attachment containing the class member's signature) to Class Counsel at the mailing address, fax number, or website listed in paragraph 6 of this Notice. Any such notice shall include copies of any papers, exhibits, or other evidence sought to be presented. You cannot speak at the hearing if you have opted out or excluded yourself, because the case no longer affects you.

## GETTING MORE INFORMATION

### 30. How do I get more information?

This notice briefly summarizes the key aspects of the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement and other important case documents at [website address]. You may contact Class Counsel at 1-XXX-XXX-XXX or rshenkan@shenkanlaw.com. You may

contact the Settlement Administrator at 1-XXX-XXX-XXX. You should **<u>not</u>** contact Wells Fargo or the Court.

    You may access the Settlement Website by using the camera on your mobile device to scan this QR code:

INSERT QR CODE HERE

DocuSign Envelope ID: B4CCA32E-73AC-4446-B818-8D8G53B122E4

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT SORACE, JOSEPH YERTY, TAMMY YERTY, JAMES ZARONSKY, LINDA ZARONSKY, VIKTOR STEVENSON, ASHLEY YATES, and KIMBERLY SOLOMON-ROBINSON, individually and on behalf of a class of similarly situated persons, | ) ) ) ) ) ) ) ) | CIVIL ACTION<br><br>No. 2:20-cv-4318 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WELLS FARGO BANK, N.A., | ) ) | |
| Defendant. | ) | |

## [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT AND PROVIDING FOR NOTICE

WHEREAS, the above-entitled action is pending before this Court (the "Action");

WHEREAS, the parties having made application, pursuant to Federal Rule of Civil Procedure 23(e), for an order approving settlement of this Action, in accordance with the Settlement Agreement and Release dated _____, 2023, (the "Agreement"), which, together with the exhibits annexed thereto, sets forth the terms and conditions for a proposed settlement of the Action and for dismissal of the Action with prejudice upon the terms and conditions set forth therein; and the Court having read and considered the Agreement and the exhibits annexed thereto;

WHEREAS, all defined terms herein have the same meanings as set forth in the Agreement;

WHEREAS, the Court has reviewed Plaintiffs' Motion for Preliminary Approval, Conditional Certification of Settlement Class, and Approval of Class Notice and supporting brief requesting that this Court (1) conditionally certify the Settlement Class; (2) preliminarily approve the parties' proposed class action settlement; (3) appoint Plaintiffs Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson as the Class Representatives, their counsel as Class Counsel, and Rust Consulting as the Settlement Administrator; (4) set the deadlines for written exclusions or objections to the Agreement;  (5) approve the form of Notice to the Settlement Class; and (6) schedule a hearing on the final approval of the Agreement for _____, 2023 (the "Preliminary Approval Motion").

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    **Nature of Action.**  Plaintiffs Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson ("Plaintiffs") allege that Defendant Wells Fargo Bank, N.A. ("Wells Fargo") violated the Pennsylvania Uniform Commercial Code ("UCC") independently and *in pari materia* with the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA") due to Wells Fargo's alleged failure to comply with the statutory requirements relating to Notices of Repossession and Post-Sale Notices, as well as other issues relating to the repossession process.  Wells Fargo disputes and denies all of Plaintiffs' claims.

2.    **Settlement.**   Plaintiffs Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson (the "Class Representatives"), individually and as Class Representatives on behalf of the Class, and Wells Fargo (collectively, the "Parties") have negotiated a potential settlement to the Action

to avoid the expense, uncertainties, and burden of protracted litigation, and to resolve the Released

Claims (as defined in the Agreement) against Wells Fargo and the Releasees.

      **3.**     **Review.**  At the preliminary approval stage, the Court's task is to evaluate whether

the settlement is within the "range of reasonableness." 4 Newberg on Class Actions § 11.26 (4th

ed. 2010). In determining whether class action settlements should be approved, "[c]ourts judge

the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the

merits against the amount and form of the relief offered in the settlement. [Citation omitted] . . .

They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American

Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). "A district court may approve a settlement agreement

only 'after a hearing and on finding that it is fair, reasonable, and adequate.'" *Good v. Nationwide

Credit, Inc*., 314 F.R.D. 141, 150 (E.D. Pa. 2016) (quoting Fed. R. Civ. P. 23(e)). In determining

whether class action settlements should be approved, courts within the Third Circuit analyze "(1)

the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks

of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class

action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range

of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of

reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of

litigation." *Good*, 314 F.R.D. at 156 (quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).

Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced

counsel support a preliminary finding of fairness. *See Manual for Complex Litigation*, Third, §

30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

class settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

The Court has carefully reviewed the Agreement, including the plan of allocation and the release of claims, as well as the files, records, and proceedings to date in the Action. The terms and conditions in the Agreement are hereby incorporated as though fully set forth in this Order, and, unless otherwise indicated, capitalized items in this Order shall have the meanings attributed to them in the Agreement.

4.    **Jurisdiction.**  This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Members of the Class, and venue in this Court is proper.

5.    **Preliminary Approval.**  Based on the review the Court has conducted, as set forth in paragraph 3, the Court does hereby preliminarily approve the Agreement and the Settlement set forth therein as fair, reasonable, and adequate, subject to further consideration at the Final Approval Hearing described below. The Court finds on a preliminary basis that the Settlement as set forth in the Agreement falls within the range of reasonableness and was the product of informed, good-faith, arms'-length negotiations between the Parties and their counsel, and therefore meets the requirements for preliminary approval. The Court finds and concludes that the assistance of the Honorable Judge Diane M. Welsh (ret.), an experienced mediator, in the settlement process supports the finding that the Settlement is non-collusive.

6.    **Settlement Class.**  The Court conditionally certifies, for settlement purposes only (and for no other purpose and with no other effect upon the Action, including no effect upon the Action should the Agreement not receive Final Approval or should the Effective Date not occur), a class defined as the collective group of:

      a.  All debtors, obligors, and co-obligors: who entered into a retail instalment sales contract in Pennsylvania for the financing of a Motor Vehicle purchased primarily

for personal, family or household use and whose retail installment sales contract was assigned or sold to Wells Fargo; and

b.  from whom Wells Fargo, as secured party, repossessed the vehicle or ordered it to be repossessed after Wells Fargo deemed the contract to be in default; and

c.  who were sent a Notice of Intent to dispose of or sell the repossessed vehicle by Wells Fargo at any time on or after July 7, 2014 through the date of Preliminary Approval.

The Class does not include any individual who validly opts out of the Settlement pursuant to the procedures set forth herein.

The Court finds, for settlement purposes only, that class certification under Fed. R. Civ. P. 23(a) and (b)(3) is appropriate in that, in the settlement context: (a) the Members of the Class are so numerous that joinder of all Class Members in the class action is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual question; (c) the claims of the Class Representatives are typical of the claims of the Class; (d) the Class Representatives will fairly and adequately represent and protect the interests of the Class Members because their interests are co-extensive with those of the Class Members, and they have retained experienced counsel to represent them and the Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

7.    **Designation of Class Representatives and Class Counsel.**  The Court finds and concludes that the Class Representatives Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson have claims typical of and are adequate representatives of the Settlement Class they propose to represent.  The Court hereby appoints Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson as the Class Representatives for the Settlement Class.  The Court finds and concludes that Richard

Shenkan of Shenkan Injury Lawyers, LLC has extensive experience and expertise in prosecuting auto repossession consumer class actions. The Court hereby appoints Plaintiffs' counsel of record in this case, Richard Shenkan of Shenkan Injury Lawyers, LLC and Hon. Lawrence F. Stengel (ret.) of Saxton & Stump, as Class Counsel.

8. **Final Approval Hearing.** A hearing (the "Final Approval Hearing") shall be held before this Court on _____, 202__, at _____ .m., at the James A. Byrne U.S. Courthouse 601 Market Street Philadelphia, PA 19106 to determine, among other things: (i) whether the proposed Settlement of the Action on the terms and conditions set forth in the Agreement is fair, reasonable, and adequate to the Class and should be approved by the Court; (ii) whether a Judgment as provided in Paragraph 1.26 of the Agreement should be entered; (iii) whether Settlement Class Members should be bound by the Release set forth in the Agreement; (iv) any amount of fees and expenses that should be awarded to Class Counsel and any award to the Class Representatives for their representation and service to the Class; (v) to consider any Settlement Class Member's objections to the Settlement and/or any application of Class Counsel for payment or reimbursement of attorney's fees, costs, and expenses and any application for an award to the Class Representatives; and (vi) to rule upon such other matters as the Court may deem appropriate. The Court may hold the Final Approval Hearing by video conference or telephone. The Parties shall include the date of the Final Approval Hearing in the Notice to be mailed to the Settlement Class.

9. **Class Notice.** The Court approves the form, substance, and requirements of the Class Notice (the "Notice") annexed hereto as **Exhibit 1**. The Court further finds that the form, content, and distribution of the Notice, substantially in the manner and form set forth in Paragraph 9 of this Order, meets the requirements of the Federal Rule of Civil Procedure 23 and due process.

The Notice fairly, plainly, accurately, and reasonably informs potential Class Members of appropriate information about: (1) the nature of this action, the definition of the Settlement Class, the identity of Class Counsel, and the essential terms of the Settlement, including the plan of allocation for the monetary and other relief, and includes the address for a website maintained by the Settlement Administrator that has links to the notice, motions for approval and for attorney's fees, and any other important documents in this case; (2) Class Representatives' forthcoming application for the Class Representatives' Incentive Award and Class Counsel's attorneys' fees and costs award; (3) how the Settlement Class Members' pro rata share of the Settlement Fund (the Per Account Payment and Refund Payment, if applicable) will be calculated and distributed; (4) this Court's procedures for final approval of the Settlement; (5) how to Opt-Out or Object to the Settlement; (6) how to obtain additional information regarding this Action and the Settlement, including instructions on how to access the case docket via the Public Access to Court Electronic Records ("PACER") or in person at the Courthouse; and (7) the date of the Final Approval Hearing and that the date may change without further notice to the Settlement Class, and that Class Members may check the settlement website or PACER to confirm that the date has not been changed.

The Court further finds and concludes that the proposed plan for distributing the Notice likewise is a reasonable method calculated to reach all individuals who would be bound by the Settlement. Under this plan, prior to distributing the Notice and after receiving a Notice List from Wells Fargo, the Settlement Administrator will update addresses through the NCOA, Accurint, TransUnion, and/or Experian databases. After the Settlement Administrator updates the Settlement Class's addresses, the Mail Notice will be sent out via first-class mail and the Class Notice will be sent via email to the Settlement Class Members who have an email address on file

that is reasonably accessible by Wells Fargo.  No later than the mailing of the Mail Notice, the Class Notice will be posted to the Settlement Website.  There is no additional method of distribution that is cost-effective and would be reasonably likely to notify potential Class Members who may not receive notice under this proposed distribution plan.

The Court further finds that, subject only to Court approval, the Deficiency Balance stated in each Class Notice, represents a contested liability as between each Settlement Class Member and Wells Fargo, resulting from good faith, arm's-length negotiations, and that a good faith dispute exists as to the validity of the Deficiency Balances arising from the Settlement Class Members' retail installment sales contracts; and, that the Deficiency Balances will be fully compromised by an accord and satisfaction.

The Court hereby concludes that the proposed Notice and Notice plan are the best practicable under the circumstances and are reasonably calculated, under all the circumstances, to apprise potential Class Members of the pendency of the Action, to apprise persons who would otherwise fall within the definition of the Class of their right to exclude themselves from the proposed Class, and to apprise Class Members of their right to object to the proposed Settlement and their right to appear at the Final Approval Hearing.  The Court further finds that the Notice constitutes due and sufficient notice to all persons entitled thereto.

10.     **Settlement Administrator.**   The Court approves the appointment of Rust Consulting to supervise and administer the notice procedure as more fully set forth below:

a.     No later than sixty (60) days from the entry of this Order (the "Notice Mailing Date"), the Settlement Administrator shall cause a copy of the Notice, substantially in the form annexed as **Exhibit 1** hereto, to be mailed by first class U.S. mail to the last known mailing

address of each individual on the Notice List, after being updated by the Settlement Administrator using the NCOA, Accurint, TransUnion, and/or Experian databases;

      b.    No later than the Notice Mailing Date, the Settlement Administrator shall also send the Class Notice via email to the Settlement Class Members who have an email address on file that is reasonably accessible by Wells Fargo.

      c.    No later than the Notice Mailing Date, the Settlement Administrator shall establish a settlement website, and shall post on the website the Agreement and Exhibits, including the Class Notice substantially in the form annexed as **Exhibit 1** hereto, as well as this Preliminary Approval Order, applications for attorneys' fees and class representatives' Incentive Payment (when available), the Final Approval Order, and the operative Complaint in this Action;

      d.    Following the mailing of the Notice, the Settlement Administrator shall provide counsel with written confirmation of the mailing and publication via website;

      e.    The Settlement Administrator shall otherwise carry out its duties as set forth in the Agreement.

      f.    The Notice List shall be treated as Confidential pursuant to Section 17 of the Settlement Agreement

      g.    The Settlement Fund may, though need not, earn interest at Class Counsel's sole discretion.

    11.    **Qualified Settlement Fund**. The Settlement Administrator is authorized to establish an account at a federally-insured financial institution which satisfies the requirements to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation Section 1.468B-1, promulgated under Section 468B of the Internal Revenue Code of 1986, as amended. As set forth in the Settlement Agreement, the Settlement Administrator will administer the Settlement Fund

and will be the "Administrator" of this Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3). The Settlement Administrator shall establish the Qualified Settlement Fund in accordance with the terms of the Settlement Agreement.

12. **Exclusion from the Class.** Any Class Member may, upon request, be excluded from the Class. Any such Class Member must submit a written Request to Opt Out via mail, fax, or uploaded on the Settlement Website (with an attachment containing the Class Members' signature) to the Settlement Administrator at the mailing address, fax number, or website listed in the Class Notice no later than forty (40) days after the Notice Mailing Date. To be valid, the Request to Opt Out must: (a) identify the case name; (b) identify the name and address of the person requesting exclusion; (c) be personally signed by the person requesting exclusion; and (d) contain a statement that indicates a desire to be excluded from the Settlement Class, such as "I hereby request that I be excluded from the proposed Settlement Class in the Action," as set forth in Section 11 of the Agreement. All Class Members who submit valid, verified, and timely Requests to Opt Out in the manner set forth in this Paragraph shall have no rights under the Agreement and shall not be bound by the Agreement or any Final Judgment. Mass or class opt outs shall not be allowed. A Class Member who desires to opt out must make timely affirmative written action pursuant to this Order and the Agreement, even if the person desiring to opt out of the Class (a) files or has filed a separate action against any of the Released Parties, or (b) is, or becomes, a putative class member in any other class action filed against any of the Released Parties.

13. **Copies of Requests to Opt Out.** The Settlement Administrator shall provide Class Counsel and Wells Fargo's Counsel with a list of all timely Requests to Opt Out within three (3) business days after the Opt Out Deadline.

DocuSign Envelope ID: B1CCA325-73AC-4446-B818-8D8G53B123E4

14.     **Entry of Appearance.**  Any member of the Class who does not exclude himself or herself from the Settlement Class may enter an appearance in the Action, at his or her own expense, individually or through counsel of his or her own choice.  If he or she does not enter an appearance, he or she will be represented by Class Counsel.

15.     **Binding Effect on Class.**  All Class Members who do not exclude themselves from the Settlement Class by properly and timely submitting a Request to Opt Out shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Class.

16.     **Refusal of Tradeline Deletion.**  Each Settlement Class Member shall have the option to refuse the deletion of their tradeline.  In order to refuse the tradeline deletion, the Class Member must complete and send to the Settlement Administrator, (postmarked, faxed, or uploaded to the Settlement Website's portal as described in the Class Notice and on the Settlement Website for this Settlement), a written request, to refuse the tradeline deletion that is postmarked or transmitted no later than forty (40) days after the Notice Mailing Date.  The refusal of the tradeline deletion must: (a) identify the case name; (b) identify the name and address of the person requesting refusal; (c) be personally signed by the person requesting refusal; and (d) contain a statement that indicates a desire to be included in the Settlement Class, but to refuse the tradeline deletion, such as "I hereby request that I be included in the proposed Settlement Class in the Action, however I do not want Wells Fargo to delete my tradeline."  Within forty-five (45) days of the Notice Mailing Date, the Settlement Administrator shall forward copies of all requests to refuse tradeline deletion received to counsel as identified Paragraph 20 of the Agreement.  Any Class Member that elects to not receive a tradeline deletion is still otherwise bound by the terms of the Agreement based on the good and valuable consideration provided.

17.    **Objections.**  Any Class Member who does not timely and validly exclude himself or herself from the Settlement Class may appear and show cause, if he or she has any reason to object to the Settlement; provided, however, that no Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, or, if approved, the Final Judgment to be entered thereon approving the same, or any attorney's fees and expenses to be awarded to Class Counsel or award made to the Class Representatives, unless a written objection is sent via mail, fax, or uploaded on the Settlement Website (with an attachment containing the Class Members' signature) to the Settlement Administrator at the mailing address, fax number, or website listed in the Class Notice no later than forty (40) days after the Notice Mailing Date.  The written objection must also be mailed to the Clerk of Court no later than forty (40) days after the Notice Mailing Date. To be valid, the written objection must: (a) identify the case name and number; (b) identify the name, address, telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) be personally signed by the person objecting, or if represented by counsel, signed by his/her counsel; (d) the basis and grounds for objection with specificity; and (e) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel.

Within seven (7) business days of the Objection Deadline, the Settlement Administrator shall provide a report to the Court setting forth a list of Objections that meet the above guidelines. The Court shall have the ultimate determination of whether an Objection has been appropriately made.  Any Settlement Class Member who does not make his or her objection in the manner provided in this Section shall be deemed to have waived such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from making any objection to the Settlement, unless otherwise ordered by the Court.

DocuSign Envelope ID: B4CCA32E-73AC-4446-B818-8D8G53B123E4

18.     **Appearance of Objectors at Final Approval Hearing.**   Any Settlement Class Member who files and serves a written objection in accordance with Paragraph 17 of this Order may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objector files with the Clerk of Court a notice of intention to appear at the Final Approval Hearing and serves the same on all counsel designated in the Class Notice by the Objection Deadline ("Notice of Intention to Appear").  The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.  Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Agreement and Class Notice shall not be entitled to appear at the Final Approval Hearing and raise any objections.

19.     **Service of Motion for Final Approval.**  The motion in support of final approval of the Settlement shall be filed and served no later than seven (7) days prior to the Final Approval Hearing.

20.     **Fees, Expenses, and Awards.**  Class Counsel's application for Attorneys' Fees and Expenses shall be filed and served no later than seven (7) calendar days prior to the Final Approval Hearing.  Neither Wells Fargo nor the Releasees shall have any responsibility for any application for Attorney's Fees and Expenses submitted by Class Counsel.  At or after the Final Approval Hearing, the Court shall determine whether to approve Class Counsel's request for Attorneys' Fees and Expenses and whether to approve any request for an award to the Class Representatives for their service to the Class.

21.    **Releases.**  If the Settlement is finally approved, the Releasors shall release the Releasees from the Released Claims, and Wells Fargo shall release the Settlement Class Members from the Released Wells Fargo Claims.

22.    **Use of Order.**  Neither this Order, the fact that settlement was reached and filed, the Agreement, nor any other related negotiations, statements, or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Wells Fargo, the Class Representatives, or the Settlement Class Members.  This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action.  In no event shall this Order, the fact that a settlement was reached, the Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to in any way be used, offered, admitted, or referred to in the Action, in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties and only by the Parties in a proceeding to enforce the Agreement.

23.    **Continuance of Final Approval Hearing.**  The Court reserves the right to continue the date of the Final Approval Hearing without further notice to the Members of the Class, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.  The Court may approve the Settlement with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Class.

24.    **Stay of Proceedings.**  All proceedings in this Action are stayed until further Order of this Court, except as may be necessary to implement the Settlement or comply with the terms of the Agreement.

25.     **Temporary Bar for all Class Members.**  Pending final determination of whether the Settlement should be approved, and upon expiration of the Opt-Out Deadline, all Class Members who do not timely and validly exclude themselves from the Settlement Class, and each of them, and anyone who purports to act on their behalf, are barred from directly or indirectly maintaining, commencing, prosecuting, or pursuing directly, representatively, or in any other capacity, any Released Claim subsumed and covered by the Release in the Agreement, including in any court or arbitration forum.

26.     **Termination of Settlement.** If: (a) the Agreement is terminated as provided in Section 13 of the Agreement; or (b) any specified material term or condition of the Settlement as set forth in the Agreement is not satisfied as provided in Section 13 of the Agreement, then this Order may not be introduced as evidence or referred to in any actions or proceedings by any person or entity and shall be treated as vacated, *nunc pro tunc* (except Paragraph 22 of this Order shall remain in effect), and each party shall be restored to his, her, or its respective position in this Action as its existed prior to the execution of the Agreement.

27.     **No Merits Determination.**  By entering this Order, the Court does not make any determination as to the merits of this Action.

28.     **Authority.**  The Court hereby authorizes the Parties to take such further steps as necessary and appropriate to establish the means necessary to implement the terms of the Agreement.

29.     **Jurisdiction.**  The Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the Agreement and the Settlement.


IT IS SO ORDERED.

BY THE COURT:

DATED: _____

_____

THE HONORABLE GERALD J. PAPPERT, J.

DocuSign Envelope ID: B1CCA33E-73AC-4446-B818-8D8C52B122F4

# EXHIBIT 3

DocuSign Envelope ID: B1CCA33E-73AC-4446-B818-8B8C52B132F4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT SORACE, JOSEPH YERTY, TAMMY YERTY, JAMES ZARONSKY, LINDA ZARONSKY, VIKTOR STEVENSON, ASHLEY YATES, and KIMBERLY SOLOMON-ROBINSON, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br><br>No. 2:20-cv-4318 |

## [PROPOSED] FINAL JUDGMENT AND
## ORDER OF DISMISSAL WITH PREJUDICE

This matter came before the Court for hearing pursuant to the Order of this Court dated

_____, 2023, on the application of the Parties for approval of the Settlement as set

forth in the Settlement Agreement and Release dated _____, 2023 (the "Agreement").

On _____, 2023, this Court granted preliminary approval to the proposed class action

settlement set forth in the Agreement between Plaintiffs Vincent Sorace, Joseph Yerty, Tammy

Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-

Robinson ("Plaintiffs" or "Class Representatives"), individually and as Class Representatives on

behalf of the Class and Defendant Wells Fargo Bank, N.A. ("Wells Fargo") (collectively the

"Parties").  This Court also provisionally certified the Class for settlement purposes, approved the

procedure for giving Notice to members of the Class, and set a Final Approval Hearing to take

place on _____, 2023.  The Court finds that due and adequate notice was given to

DocuSign Envelope ID: B1CCA33E-73AC-4446-B818-8B8C52B132F4

the Settlement Class as required in the Court's Order Preliminarily Approving Settlement and Providing for Notice.

The Court has reviewed the papers filed in support of the Motion for Final Approval, including the Settlement Agreement and exhibits thereto, memoranda, and arguments submitted on behalf of the Settlement Class, and supporting affidavits.

On _____, 2023, this Court held a duly noticed Final Approval Hearing to consider: (1) whether the terms and conditions of the Agreement are fair, reasonable, and adequate; (2) whether a judgment should be entered dismissing the Settlement Class Members' Released Claims on the merits and with prejudice; (3) whether and in what amount to award attorneys' fees and expenses to Class Counsel; and (4) any award to the Class Representatives for their representation of the Class.

Based on the papers filed with the Court and the presentations made to the Court by the Parties and by other interested persons at the Final Approval Hearing, it appears to the Court that the Settlement Agreement is fair, adequate, and reasonable, and in the best interests of the Settlement Class.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      **Definitions.**  This Judgment incorporates by reference the definitions in the Agreement, as modified by the Court, and all capitalized terms used, but not defined herein, shall have the same meanings as in the Agreement.

2.      **Jurisdiction.**  This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Members of the Class, and venue in this Court is proper.

3.      **No Merits Determination.**  By entering this Order, the Court does not make any determination as to the merits of this case.

4.    **Settlement Class.**  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally certifies this Action as a class action, with the Class defined as the collective group of all persons making up the Settlement Class, defined as the collective group of:

a.  All debtors, obligors, and co-obligors: who entered into a retail installment sales contract in Pennsylvania for the financing of a Motor Vehicle purchased primarily for personal, family or household use and whose retail installment sales contract was assigned or sold to Wells Fargo; and

b.  from whom Wells Fargo, as secured party, repossessed the vehicle or ordered it to be repossessed after Wells Fargo deemed the contract to be in default; and

c.  who were sent a Notice of Intent to dispose of or sell the repossessed vehicle by Wells Fargo at any time on or after July 7, 2014 through the date of Preliminary Approval.

The Class does not include any individual who validly opts out of the Settlement pursuant to the procedures set forth herein.

The Court finds, for settlement purposes only, that class certification under Federal Rules of Civil Procedure 23(a) and (b)(3) is appropriate in that, in the settlement context: (a) the Members of the Settlement Class are so numerous that joinder of all Class Members in the class action is impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual question; (c) the claims of the Class Representatives are typical of the claims of the Settlement Class; (d) the Class Representatives will fairly and adequately represent and protect the interests of the Settlement Class Members because their interests are aligned with those of the Settlement Class Members, and they have retained experienced counsel to represent them and the Settlement Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

5.    **Designation of Class Representatives and Class Counsel.**  The Court confirms the prior appointments of the Plaintiffs Vincent Sorace, Joseph Yerty, Tammy Yerty, James

Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson to serve as Class Representatives and counsel of record representing the Class Representatives in the Action as Class Counsel.

6.    **Settlement Approval.**  Pursuant to Federal Rule of Civil Procedure 23, this Court hereby approves the Settlement set forth in the Agreement and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Parties.  The Court further finds that the Settlement set forth in the Agreement is the result of a good faith arm's-length negotiation between experienced counsel representing the interests of the Parties, with the assistance of the Honorable Judge Diane M. Welsh (ret.) through mediation.  Accordingly, the Settlement embodied in the Agreement is hereby finally approved in all respects, there is no just reason for delay, and the parties are hereby directed to perform its terms.  The terms and conditions of the Settlement Agreement are fully incorporated as through fully set forth in this Order.

7.    **Settlement Fund and Distribution.**  A Settlement Fund has been created consisting of the $15,000,000 Settlement Amount. The Settlement Fund shall be used to pay Settlement Class Members (both Refund Payments and Per-Account Payments), the costs of settlement administration, Attorney's Fees and Expenses, and Incentive Payments, as set forth herein and in the Settlement Agreement.  All unclaimed and excess monies in the Settlement Fund shall be distributed to *Cy Pres* recipient(s) _____, as set forth herein and as requested in the Motion for Final Approval.

8.    **Dismissal with Prejudice.**  Final Judgment is hereby entered with respect to the Released Claims of all Settlement Class Members, and the Released Claims in the Action are hereby dismissed in their entirety with prejudice and without costs.  All claims in the Action are dismissed, and the case shall be closed pursuant to Paragraph 23 of this Order.  Nothing herein is

DocuSign Envelope ID: B1CCA33E-73AC-4446-B818-8B8C52B132F4

intended to waive or prejudice the rights of the Class Members who have timely excluded themselves from the Class, as identified on **Exhibit 1** hereto.  This matter will remain open solely to ensure an orderly administration process.

9. **Deficiency Balance Compromise.** Pursuant to Paragraph 3.2 of the Agreement, upon the Effective Date, Wells Fargo shall cease collecting on and agrees to compromise, by an accord and satisfaction, the Deficiency Balance alleged to be owed by each Settlement Class Member, as consideration, in exchange for the full settlement of any and all claims as set forth in the Settlement Agreement.  Further, upon the Effective Date, Wells Fargo shall not accept payments on Deficiency Balances and will use best efforts to return any payment received by returning the payment instrument to the sender.  The Deficiency Balances, as reflected in the box in the upper right hand corner of their unique class notice, are contested liabilities and are fully compromised by an accord and satisfaction.

10. **Releases.**  The releases as set forth in Section 10 of the Agreement together with the definitions in Sections 1.38, 1.39, 1.40, 1.41, and 1.51 relating thereto are expressly incorporated herein in all respects and made effective by operation of this Judgment.  The Court hereby approves the release provisions as contained and incorporated in Section 10 of the Agreement, including but not limited to, the definitions of Released Claims, Released Wells Fargo Claims, Releasors, Releasees, and Unknown Claims.  The Releasors shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims (including Unknown Claims) against the Releasees.  Wells Fargo shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Wells Fargo Claims against the Settlement Class Members.

11.     **Permanent Bar.**  The Releasors, including the Class Representatives and all Settlement Class Members, and anyone claiming through or on behalf of any of them, are forever barred from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for the Released Claims.  The Releasors further are forever barred from organizing the Settlement Class Members, or soliciting the participation of Settlement Class Members, or persons who would otherwise fall within the definition of Settlement Class Member but who have requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint or counterclaim to include class allegations, or seeking class certification in a pending action in any jurisdiction based on or relating to any of the Released Claims).

12.     **Approval of Class Notice.**  The form and means of disseminating the Class Notice, as provided for in the Order Preliminarily Approving Settlement and Providing for Notice constituted the best notice practicable under the circumstances, including individual notice to all Members of the Class who could be identified through reasonable effort.  Said Notice provided the best notice practicable under the circumstances of the proceedings and the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice, and said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution.

13.     **Attorneys' Fees and Expenses.**  Plaintiffs and Class Counsel have moved for an award of attorneys' fees, costs, and expenses in the amount of  $_____.  The Court finds that an award of $_____ in attorneys' fees and $_____ for reimbursement of expenses is fair and reasonable, and the Court approves of Class Counsel's attorney's fees and

DocuSign Envelope ID: B1CCA33E-73AC-4446-B818-8B8C52B132F4

expenses in this amount.  Attorney fees may be made in the form of a structured settlement.[1]  The Court directs the Settlement Administrator to disburse these funds as provided in the Settlement Agreement.

14.     **Class Representatives Incentive Award.**  The Court further finds that an incentive award for each of the Class Representatives in the amount of $_____ is fair and reasonable, and the Court approves of the incentive award in this amount.  The Court directs the Settlement Administrator to disburse this award to the Class Representatives as provided in the Settlement Agreement.

15.     **Use of Order.**  Neither this Order, the fact that a settlement was reached and filed, the Agreement, nor any related negotiations, statements, or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Wells Fargo, the Class Representatives, or the Settlement Class Members.  This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action.  In no event shall this Order, the fact that a settlement was reached, the Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be used, offered, admitted, or referred to in the Action, in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties and only the Parties in a proceeding to enforce the Agreement.

16.     **Continuing Jurisdiction.**  Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over the administration, consummation,

---

[1] *See*, *Childs v. Comm'r*, 103 T.C. 634 (1994).

enforcement, and interpretation of the Agreement, the Final Judgment, and for any other necessary purpose, including to ensure the protection of Confidential information.

17. **Termination of Settlement.** In the event that the Settlement does not become effective in accordance with the terms of the Agreement, or the Agreement is terminated pursuant to Section 13 of the Agreement, the Parties shall be restored to their respective positions in the Action prior to the execution of the Agreement, the certification of the Settlement Class shall be automatically vacated, and this Judgment shall be rendered null and void (except Paragraph 15 of this Order shall remain in effect) to the extent provided by and in accordance with the Agreement and shall be vacated and, in any such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

18. **Implementation of the Agreement.** The Parties are hereby authorized to implement the terms of the Agreement.

19. **Reasonable Extensions.** Without further order of this Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Agreement.

20. **Class Notice List.** Within 150 days after the Distribution Date if there is no Second Distribution or 90 days after the Second, Third, or Fourth Distributions, if they occur, the Settlement Administrator shall file with this Court, *ex parte* and under seal (in order to protect the names, addresses and other personal information of Class Members), a list of the names and addresses of all Members of the Class to whom Notice was sent and the respective Per Account Payment and Refund Payment amounts and respective cash dates for each, providing all counsel with a copy of such filing.

21. **Final Accounting.** The Settlement Administrator and Class Counsel shall file a final accounting with the Court within 150 days after the Distribution Date, as defined in the

Agreement, in the event there is no second distribution, or within 90 days after the final distribution in the event of more than one distribution.  The final accounting will include a summary of all distributions from the Settlement Fund, and Class Counsel will request Court approval of the final accounting.

22.    **Entry of Final Judgment.**   There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the District Court Clerk is hereby directed.

23.    **Action Closed.**  The District Court Clerk is hereby directed to close the Action.

IT IS SO ORDERED.


DATED: _____                 _____

                                                      THE HONORABLE GERALD J. PAPPERT, J.