**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

VINCENT SORACE, JOSEPH YERTY,
TAMMY YERTY, JAMES ZARONSKY,
LINDA ZARONSKY, VIKTOR
STEVENSON, ASHLEY YATES, and
KIMBERLY SOLOMON-ROBINSON,
individually and on behalf of a class of
similarly situated persons,

        Plaintiffs,

   v.

WELLS FARGO BANK, N.A.,

        Defendant.

CIVIL ACTION

No. 2:20-CV-4318

Hon. Gerald J. Pappert

**OBJECTION TO APPROVAL OF PROPOSED SETTLEMENT AGREEMENT OF
CLASS MEMBERS, JENNIFER LYNN HUMMEL AND SHAWN DAVID HUMMEL**

Aurelius Robleto, Esq.
PA ID No. 94633
Renee M. Kuruce, Esq.
PA ID No. 314691

ROBLETO KURUCE, PLLC
6101 Penn Ave., Ste. 201
Pittsburgh, PA 15206
Tel:  (412) 925-8194
Fax:  (412) 346-1035

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..........................................................................................ii

      Cases ........................................................................................................................ii

      Other Authority ......................................................................................................iii

Introduction..............................................................................................................2

OBJECTION..............................................................................................................3

    I.     The Proposed Release Provisions are Overbroad and
           Render the Proposed Settlement Unfair,
           Unreasonable, and Inadequate ................................................................5

    II.    The Proposed Forgiveness of Deficiency Claims Is an
           Illusory "Benefit" That Will Provide Little or No
           Benefit, While Saddling Plaintiffs with an Increased
           Tax Burden.............................................................................................11

    III.   The Proposed Settlement Fund is Insufficient .......................................13

    IV.   The Proposed Attorneys' Fees and Expenses are
           Excessive and Unwarranted Under the Circumstances ..........................15

    V.    The "Side Deal" Between the Proposed
           Representative Plaintiffs and Wells Fargo Must Be
           Closely Scrutinized ................................................................................17

Conclusion ..............................................................................................................19

| Exhibit A | - | Complaint filed in *Hummel, et al. v. Wells Fargo Bank, N.A.*, (W.D. Pa., case no. 2:23-cv-02002-CCW) |
| Exhibit B | - | November 7, 2023, Wells Fargo's Second Notice to the Hummels |
| Exhibit C | - | Notice of Proposed Class Action Settlement |
| Addendum 1 | - | Signed Objection of Jennifer Lynn Hummel |
| Addendum 2 | - | Signed Objection of Shawn David Hummel |

**<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>:**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)........................................................4, 19

*Antista v. Fin. Recovery Servs.*, No. 2:17-cv-3567 (WJM),
2017 U.S. Dist. LEXIS 213609  (D.N.J. Dec. 28, 2017)..............................................12

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .........................................................18

*City of Long Beach v. Monsanto Co.*, No. CV 16-3493 FMO (ASx),
2022 U.S. Dist. LEXIS 210099 (C.D. Cal. Nov. 19, 2022).........................................14

*Curry v. Money One Fed. Credit Union*, Civil Action
No. DKC 19-3467, 2021 U.S. Dist. LEXIS 235884 (D. Md. Dec. 9, 2021) ...............14

*In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG),
2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sep. 18, 2007).............................................14

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ...............................................................4

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ......................................................................................15, 19

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .......................................................................................3, 15

*Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481 (3d Cir. 2017) .......................3, 4-5, 10

*Hummel, et al. v. Wells Fargo Bank, N.A.*,
(W.D. Pa., case no. 2:23-cv-02002-CCW)....................................................................2

*Jin Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, No. 17-4029-DDC-GEB,
2019 U.S. Dist. LEXIS 85229 (D. Kan. May 21, 2019)...............................................14

*Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am.
Sales Practice Litig. Agent Actions)*, 148 F.3d 283 (3d Cir. 1998)..............................4

*In re NFL Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016) ..................18

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014)....................................................17

*Rood v. Commissioner*, Docket No. 3366-94., 1996 Tax Ct. Memo
LEXIS 262 (T.C. May 29, 1996) aff'd *Rood v. Comm'r of IRS*,
122 F.3d 1078 (11th Cir. 1997) ....................................................................................12

*Shull v. Synchrony Bank*, No. 1:19-cv-00715,
2020 U.S. Dist. LEXIS 52365 (M.D. Pa. Mar. 26, 2020)..............................................11

*Stewart v. Apple Inc.*, 2022 U.S. Dist. LEXIS 139222; *22-232022
WL 3109565, (N.D. Ca., Aug. 4, 2022).....................................................................13-14

*Taylor v. Shutterfly, Inc.*, No. 5:18-cv-00266-BLF, 2021 U.S. Dist.
LEXIS 237069 (N.D. Cal. Dec. 7, 2021)........................................................................14

*Turner v. C.R. England, Inc.*, No. EDCV 14-2207 PSG (SPx),
2016 U.S. Dist. LEXIS 204168 (C.D. Cal. Apr. 18, 2016)............................................14

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) .........................14

*In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712 (3d Cir. 2023)................................15-19

*Zarin v. Commissioner*, 916 F.2d 110 (3d Cir. 1990)...............................................12, 15

**Other Authority:**

Fed. R. Civ. P. 23..........................................................................................*passim*

26 U.S.C. § 61.......................................................................................................11

26 U.S.C. § 108.....................................................................................................11

Cal. Civ. Code § 1542 .............................................................................................6

13 Pa.C.S. § 2725..................................................................................................11

42 Pa.C.S. § 5525..................................................................................................11

73 P.S. § 201-9.2...................................................................................................8-9

73 P.S. §§ 2270.1 - 2270.6 ....................................................................................8-9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VINCENT SORACE, JOSEPH YERTY, TAMMY YERTY, JAMES ZARONSKY, LINDA ZARONSKY, VIKTOR STEVENSON, ASHLEY YATES, and KIMBERLY SOLOMON-ROBINSON, individually and on behalf of a class of similarly situated persons,

        Plaintiffs,

    v.

WELLS FARGO BANK, N.A.,

        Defendant.

CIVIL ACTION

No. 2:20-CV-4318

Hon. Gerald J. Pappert

## OBJECTION TO APPROVAL OF PROPOSED SETTLEMENT AGREEMENT OF CLASS MEMBERS, JENNIFER LYNN HUMMEL AND SHAWN DAVID HUMMEL

The proposed terms for settlement of this class action favor the defendant, the named plaintiffs, and their lawyers—in conflict with the interests of thousands of unnamed plaintiffs. The Settlement Agreement[1] incorporates an unreasonably broad release, which would unfairly protect Wells Fargo from its liability for claims that are not the subject of this litigation. It would absolve Wells Fargo from known and *unknown* claims—even when the plaintiffs would have rejected the settlement had they been aware of the unknown claims they would be releasing.

The financial provisions of the proposed class settlement are such that most constituents would not receive any meaningful relief. Apart from the refund of payments on deficiency balances, very little of the settlement fund would remain for general distribution to class members.

---

[1] "***Settlement Agreement***" shall refer to the "Class Action Settlement Agreement and Release" executed by the proposed representative plaintiffs and Wells Fargo, appearing on the docket of this case at doc. no. 74-2.

Compounding that problem, Wells Fargo has agreed to a "side deal," precluding it from objecting to the plaintiffs' attorneys' fees and expenses up to $6 million and $100,000, respectively. Under the circumstances of this case, an award of more than 40% of the entire settlement fund to the plaintiffs' lawyers would be unreasonable and excessive.

Additionally, Wells Fargo's forgiveness of deficiency claims is an illusory "benefit" designed to create the appearance of value but that, in practice, would unfairly increase the plaintiffs' tax obligations (as a result of imputed income based on the cancellation of debt), while improperly conferring a tax benefit upon Wells Fargo (in the form of tax deductions arising from its forgiven accounts receivable).

Because the proposed settlement terms are neither fair, nor reasonable, nor adequate, this Court cannot certify the proposed settlement class.

## Introduction

The Hummels[2] are members of the proposed settlement class, but they hold additional claims against Wells Fargo that are not dependent upon the repossession-related claims involved in this case.

To vindicate those claims, the Hummels commenced a class action[3] against Wells Fargo on November 17, 2023. Prior to filing their class action complaint, the Hummels sought to intervene in this case to prevent their claims against Wells Fargo from being quietly swept away in an agreement to resolve repossession claims. This Court denied that request for

---

[2] The "Hummels" are Jennifer Lynn Hummel and Shawn David Hummel, a married couple.

[3] That class action is pending before the United States District Court for the Western District of Pennsylvania at *Hummel, et al. v. Wells Fargo Bank, N.A.*, case no. 2:23-cv-02002-CCW. A copy of the Complaint filed in that case is attached hereto as *Exhibit A*.

intervention,[4] observing that:

> The Hummels have sufficient interest as members of the class, but denying the Motion to Intervene does not impair their ability to protect their interests. Any substantive challenges can be addressed as objections to the settlement.

*Mem. Op.*, doc. no. 83, p.5.  In accordance with this Court's guidance, the Hummels now act to protect their interests and the interests of those similarly situated by presenting the following substantive challenges to the proposed settlement.[5]

## <u>OBJECTION</u>

Court approval and adherence to certain procedural requirements are necessary "both for certifying the class and for determining whether the settlement is 'fair, reasonable and adequate.'" *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 322 (3d Cir. 2019) *quoting Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017).  In making that determination, the district court must consider whether:

> **(A)** the class representatives and class counsel have adequately represented the class;
> **(B)** the proposal was negotiated at arm's length;
> **(C)** the relief provided for the class is adequate, taking into account:
>> **(i)** the costs, risks, and delay of trial and appeal;
>> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>> **(iv)** any agreement required to be identified under Rule 23(e)(3); and
> **(D)** the proposal treats class members equitably relative to each other.

---

[4]  The Court denied Hummels intervention rights on September 7, 2023, and it granted preliminary approval to the Settlement Agreement on September 15, 2023.

[5]  The Hummels' attorneys have never previously objected to the proposed settlement of a class action.

Fed. R. Civ. P. 23(e)(2).  Moreover, the Court of Appeals for the Third Circuit has established a framework for determining whether a settlement is fair, reasonable, and adequate.[6]

In addition to the protocol set forth in Rule 23(e), a settlement class must also comply with the standard requirements for the certification of any class under Rules 23(a) and (b)[7] since the "other specifications of the rule--those designed to protect absentees by blocking unwarranted or overbroad class definitions-- demand undiluted, even heightened, attention in the settlement context." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Halley v. Honeywell Int'l, Inc.,*

---

[6] Initially, the court adopted a set of nine considerations (the "Girsh factors") for district courts to evaluate in determining whether to certify a settlement class:

> . . . (1) the complexity, expense and duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. . . .

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) *quoting Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Later, in *Prudential*, the court expanded upon the *Girsh* factors and identified the following additional points for courts to consider, when appropriate:

> …the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved - or likely to be achieved - for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 323 (3d Cir. 1998).

[7] Except that a court considering a settlement class need not address the consideration of Rule 23(b)(3)(D), regarding the likely difficulties in managing a class action, since that concern is moot in the context of a settlement. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

861 F.3d 481, 487 (3d Cir. 2017) (requiring district courts to determine if settlement classes comply with Rules 23(a) and (b)).

Against that analytical framework, the Hummels interpose the following objections.

## I.     The Proposed Release Provisions are Overbroad and Render the Proposed Settlement Unfair, Unreasonable, and Inadequate.

The Settlement Agreement includes an unwarranted and excessively broad release for Wells Fargo.  In defining the term "Released Claims," the agreement provides that:

> "**Released Claims**" mean any and all claims, defenses, demands, actions, causes of action, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, statutory damages, contribution or indemnity, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to: (1) allegations that were or could have been asserted in the Second Amended Complaint against the Released Parties… (5) the charging, payment, collection, and attempted collection of amounts relating to any Account

*Settlement Agreement*, § 1.38, pp.15-16 (emphasis added).  The scope of those "Released Claims" is increased dramatically by the inclusion of "Unknown Claims," which is separately defined to mean:

> "**Unknown Claims**" mean any Released Claims which any Releasor does not know or suspect to exist in his or her favor at the time of the entry of the Judgment, and which, if known by him or her might have affected his or her settlement with and release of the Releasees, or might have affected his or her decision to opt out of the Settlement Class or to object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Class Representatives shall expressly and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have to the fullest extent

> allowed by law, waived the provisions, rights, and benefits of any statute or principle of common law which provides that general releases do not extend to claims which the debtor does not know or suspect exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the creditor.… The Class Representatives acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material term of the settlement of which this release is a part.

*Id.* at § 1.51, p.19 (emphasis added).  Based on those definitions, Unknown Claims are a subset of Released Claims with the distinctive characteristic that the plaintiffs are unaware of them.  But— *if they had known about them*—the Unknown Claims could have affected their decisions about whether to opt out of the class or object to the settlement.[8]  *Id.*

In a failed effort to justify that blind and practically absolute release, the plaintiffs claim that the waiver of Unknown Claims "was separately bargained for and a material term of the settlement."  *Id.*  But the claim of a separate bargain strains credulity since the financial terms of the settlement appear to leave the fund at risk of administrative insolvency while conferring significant tax advantages upon the defendant.

---

[8]  The Settlement Agreement requires the plaintiffs to waive all statutory protection available under California Civil Code section 1542 and all similar laws.  As set out in that Agreement, California Civil Code section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

*Settlement Agreement*, § 10.2, pp. 47-48.

***The Distinct Claims at Issue in the Hummels' Class Action***

The Hummels fall within the membership parameters of the proposed settlement class,[9] but they also hold claims against Wells Fargo for its misconduct that will not be addressed in the context of this litigation.  Consequently, the Hummels could recover for their repossession-based claims in common with the plaintiffs in this case, but they would simultaneously release their other claims against Wells Fargo for improper fees.  That result would be unconscionable, considering that the Hummels' class action alleges highly credible claims against the defendant.

Wells Fargo admitted in its November 19, 2021, letter to the Hummels that it had incorrectly assessed late fees to their account after processing a payment with the incorrect date (the "*First Notice*").  *Exh A*, p. 22.  Wells Fargo enclosed a check in the amount of $108.04 with its First Notice, which check the Hummels never cashed or deposited.  *Id.* at 21.  Wells Fargo explained that "check includes $100.66 for late fees that should not have been assessed," and that "check also included an additional amount as compensation."  *Id.* (emphasis added).  Wells Fargo further explained that it "sent a check for any fees and/or charges that were added to the account as a result of this error" but that "any unpaid fees and/or charges will remain on the account."  *Id.* (emphasis added).  So, according to Wells, it attempted to return the improper fees and charges

---

[9]  The Hummels are residents of the Commonwealth of Pennsylvania.  Wells Fargo became the secured party on their vehicle loan and, sometime in 2015, it repossessed their Ford Explorer.  Wells Fargo issued a Repossession Notice to the Hummels in late 2015.

that it should not have imposed—but its borrowers would nevertheless remain liable for those admittedly improper charges.[10]

On November 7, 2023, Wells Fargo sent a similar notice (the "*Second Notice*"), a copy of which is attached hereto as *Exhibit B*.  In that Second Notice, Wells Fargo again admitted to improperly charging the Hummels $4,084.52 in "interest and/or other fees that should not have been assessed."  *Exh. B*, p. 1.  Evidently, two years after its First Notice, Wells had persisted in its pattern and practice of imposing improper charges upon its consumer borrowers.  The defendant must not be permitted to evade liability for those improper charges under the guise of a settlement of its separate violations of the UCC and MVSFA.

---

[10] As reflected in the Complaint attached as *Exhibit A*, the Hummels are pursuing remedies in a separate class action case, alleging claims against Wells Fargo under Pennsylvania's Fair Credit Extension Uniformity Act [73 P.S. §§ 2270.1 - 2270.6] ("*FCEUA*") and its enforcement vehicle the Unfair Trade Practices and Consumer Protection Law [73 P.S. §§ 201.1 – 201.10] ("*UTPCPL*").  Wells Fargo's improper collection of a late fee violates the FCEUA, which prohibits:

> The collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

73 P.S. § 2270.4(b)(6)(i).  In addressing enforcement and penalties, the FCEUA provides that "If a …creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the [UTPCPL]."  73 P.S. § 2270.5(a).  Consequently, Wells Fargo is liable for statutory damages under the UTPCPL and each affected plaintiff should:

> recover actual damages or one hundred dollars ($ 100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2(a).

***Other Members of the Proposed Settlement Class are Similarly Situated***
***and the Hummels' Class Action Claims Would Be Released Under the Proposed Settlement***

Wells Fargo's overbroad release would eliminate[11] the Hummels' claims (remember, Wells Fargo's release extends to known and unknown claims involving members' accounts). *Settlement Agreement*, §§ 10.1 - 10.6, pp. 47-49.  But the Hummels would not be the only prospective class members to have their claims extinguished through the release without any consideration.

Many other similarly situated members of the proposed settlement class would also be denied a remedy.  The bank sent the same "form letter" that it sent to the Hummels to a significant segment of the membership in the proposed settlement class.  That much is clear from the design of the notice itself, which begins with the perfunctory salutation "Dear JENNIFER HUMMEL AND SHAWN D HUMMEL."  *Exh. A*, p. 21.  The inconsistent capitalization is obviously the result of Wells Fargo merging its notice form with a customer database, to automate distribution to its affected customers (filling in the blanks with their addresses and the amounts Wells Fargo had improperly charged them).

Further evidencing the mass-form nature of the Notices is the conditional explanation that "If the total amount was less than $5.00, we increased it and issued a check for $5.00." *Id.*  From the Hummels' perspective, the fact that Wells Fargo made minimum payments of $5.00 is irrelevant boilerplate.  Similarly, Wells Fargo wrote that "[t]his payment is in addition to any amount we previously sent" without revealing whether it made any previous payments.

---

[11] As shown by the Hummels' proposed Intervention Complaint, their claims *could have been asserted* in the Second Amended Complaint.  *Doc. No.* 79-5.  As a result, they would be extinguished under the release.  In fact, the proposed release also targets the improper fees claim more directly, through its release of "any and all claims… that in any way concern… the charging, payment, collection, and attempted collection of amounts relating to any Account." *Id.* (emphasis added).  There is no need to belabor the issue.  The plain language of the proposed release reveals that the Hummels' claims under the FCEUA and UTPCPL for improper collection of fees would fall within its yawning ambit.

*Id.*  Again, revealing its "one-size fits all" approach, Wells Fargo wrote that it "sent a check for any fees and/or charges that were added to the account as a result of this error, whether they were previously paid or remain unpaid."  *Id.*

Based on the cookie cutter features of the Notices and the fact that Wells Fargo issued *two* of them to the Hummels alone, it is extraordinarily unlikely that they are the *only* members of this perspective settlement class whose improper fee claims are imperiled by the proposed release.  The Hummels do not yet know the precise number or identities of the similarly situated members of the proposed settlement class.  However, given that there are 21,640 potential class members and that the bank contended that each loan account had been in default, it seems virtually impossible that the Hummels could be the *only* members of the proposed settlement class holding claims against Wells Fargo for improper fees.  Under those circumstances, it would be unjust to approve a settlement with so comprehensive of a release. As the Third Circuit Court of Appeals has explained:

> It is not unusual for a class settlement to release all claims arising out of a transaction or occurrence. "[A] judgment pursuant to a class settlement can bar later claims **based on the allegations underlying the claims in the settled class action**." *In re Prudential Ins Co. of America Sales Practice Litig. (Prudential II)*, 261 F.3d 355, 366 (3d Cir. 2001). "[W]e have endorsed the rule because it serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent **relitigation of settled questions at the core of a class action**." *Id.* (quotations omitted). Accordingly, **the scope of the release is an important consideration in evaluating whether a settlement is fair and adequate** under Rule 23(e).

*Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 494 (3d Cir. 2017) (emphasis added).

Here, the proposed settlement class would extinguish the improper fee claims of all members of the proposed settlement class, and not just the Hummels.  Thus, any suggestion that the Hummels could protect their own interests by opting out of a settlement class would

be facile and reductive.  Since the Court has denied the Hummels' request to intervene, those claims will not be addressed in this case.  Given that this Court will not adjudicate the improper fee claims, it must assure that it does not arbitrarily deprive their holders of a remedy at law.

## II.    The Proposed Forgiveness of Deficiency Claims Is an Illusory "Benefit" That Will Provide Little or No Benefit, While Saddling Plaintiffs with an Increased Tax Burden.

Most of the deficiency balances that would be forgiven under the settlement are no longer collectible through any court.  The proposed settlement involves repossessions that occurred between July 7, 2014 and September 15, 2023.  *Exh. C*, p.1.  In Pennsylvania, those deficiency claims are barred by the statute of limitations after four years.  *See* 42 Pa.C.S. § 5525(a); and 13 Pa.C.S. § 2725(a).  Here, that means that more than 60% of nine-year settlement period involves stale claims that are not collectable through any legal means.[12]

Wells Fargo could receive tax deductions from its forgiveness of the deficiency claims, while many class members will see their tax burdens increase from the compromised deficiency claims.  Wells Fargo will issue IRS forms 1099-C for forgiven deficiency claims exceeding $600.  *Exh. C*, p. 6.  Cancellation of indebtedness would create "phantom income," increasing the tax burdens for the members of the settlement class.[13]

The value of tax deductions to Wells Fargo from $64.39 million in losses would almost certainly exceed the $15 million that the bank agreed to pay under the Settlement Agreement.  But that inequitable outcome would be incorrect as a matter of law.  That is because the

---

[12] By the time of the fairness hearing, the deficiency claims arising between July 7, 2014 and January 31, 2020 will have become legally uncollectable.

[13] 26 U.S.C. § 61(a)(11) ("gross income" defined to include "[i]ncome from discharge of indebtedness"); 26 U.S.C. § 108(e)(1) ("general rule that gross income includes income from the discharge of indebtedness"); *Shull v. Synchrony Bank*, No. 1:19-cv-00715, 2020 U.S. Dist. LEXIS 52365, at *9 (M.D. Pa. Mar. 26, 2020) ("The 1099-C issuance negatively impacts debtors because they must generally report the debt discharge as income.").

compromise of the deficiency claims is neither a loss to Wells Fargo nor gross income to the plaintiffs.[14]

Addressing the so called "contested liability doctrine," the Court of Appeals for the Third Circuit[15] explained that "if a taxpayer, in good faith, disputed the amount of a debt, a subsequent settlement of the dispute would be treated as the amount of debt cognizable for tax purposes." *Zarin v. Commissioner*, 916 F.2d 110, 115 (3d Cir. 1990). Here, Wells Fargo agreed to "agrees to fully compromise the Deficiency Balance alleged to be owed by each Settlement Class Member whose Account has a Deficiency Balance." *Settlement Agreement*, p. 27, § 3.2; *see also, Exh. C*, p. 2 ("The parties have a good faith dispute as to the validity of this debt…"). Under *Zarin*, the result of that compromise is that the amount of each member's deficiency balance is fixed at $0.00—Wells Fargo incurred no loss, and the plaintiffs received no gross income. Consequently, no reason exists to issue any forms 1099-C.

The inequitable tax features of the proposed settlement do not appear to have been an innocent error. The settlement provides no means for members to decline a discharge of the disputed deficiency claims against them—other than to opt out of the settlement entirely. *Exh. C*, pp. 6-7. In remarkable contrast, the proposed settlement would permit a class member to

---

[14] Through the Settlement Agreement, the "Parties agree[d] that the Deficiency Balances for all Settlement Class Members are disputed liabilities that are being fully compromised by way of an accord and satisfaction through this Settlement." *Settlement Agreement*, p.12, § 1.18. *See also Exh. C*, p. 6 ("Plaintiffs dispute that any Deficiency Balance is owed by any Class Member, while Wells Fargo claims that Deficiency Balances are owed.").

[15] *Zarin* is by no means an outlier, and its reasoning is consistent with decisions of other courts and revenue ruling guidance from the IRS. "[T]he tax code contains reporting exceptions for… debts disputed at the time of discharge…" *Antista v. Fin. Recovery Servs.*, No. 2:17-cv-3567 (WJM), 2017 U.S. Dist. LEXIS 213609, at *3 (D.N.J. Dec. 28, 2017) *citing Zarin*, 916 F.2d at 115; *Rood v. Commissioner*, Docket No. 3366-94., 1996 Tax Ct. Memo LEXIS 262, at *9 (T.C. May 29, 1996) aff'd *Rood v. Comm'r of IRS*, 122 F.3d 1078 (11th Cir. 1997) ("If, however, the cancellation of all or part of a debt is made in settlement of a dispute concerning the debt, no income from cancellation of indebtedness arises."); 1984 IRB LEXIS 102, *6 (I.R.S. July 1, 1984) ("The amount owed by the taxpayer that is forgiven by the seller in return for a release of a contract counterclaim is not income from discharge of indebtedness under section 61 (a) (12) of the Code and therefore is not subject to exclusion under section 108.").

refuse the tradeline deletion benefit, without any explanation for the difference in policy. *Exh. C*, p. 7.

Wells Fargo has no basis to issue forms 1099-C based on its proposed compromise of the disputed deficiency claim balances. This Court must not approve a settlement proposing unfair tax consequences in defiance of controlling legal precedent.

### III.    The Proposed Settlement Fund is Insufficient.

The attorneys for the named plaintiffs have described their proposed resolution as an "exceptional settlement" that will "confer benefits of more than $80 Million to more than 21,000 Pennsylvania consumers." *Doc. No.* 77, p. 5. Here, the only real money involved is a proposed settlement fund of $15 million.

It is exceedingly unlikely that there will be sufficient funds to make any meaningful distributions to any class members apart from the reimbursement of the amounts that borrowers actually paid to Wells Fargo on deficiency claims. As disclosed in the settlement agreement, payments from the fund are to be distributed through a waterfall, prioritizing (i) settlement administration costs; then (ii) incentive payments to the named plaintiffs; (iii) plaintiffs' attorneys' fees and expenses; (iv) a refund of class members post-repossession payments of Wells Fargo's disputed deficiency claims; and (v) a per-account distribution to all class members. *Settlement Agreement*, § 3.3, p. 26.

Despite giving the highest priority to the expense of administering the settlement, the parties have not supplied an estimate of that cost. Nevertheless, the administrative expenses in similar class action settlements suggest that the cost here could fall into the range of $500,000 to $2.5 million.[16] At the high end of that range, the settlement fund would be

---

[16] *Stewart v. Apple Inc.*, 2022 U.S. Dist. LEXIS 139222; *22-232022 WL 3109565, (N.D. Ca., Aug. 4, 2022) (administration cost of $2.48 million to a potential class of 16.8 million members where 16.2 million members

depleted before the attorneys' fees would be paid and not a single dollar would be paid to any unnamed plaintiff.

The cost of administering this particular settlement will be substantial.  To begin with, the Settlement Agreement contemplates service of a notice upon 16,705 potential members of the settlement class via U.S. Mail, a sample of which is attached hereto as *Exhibit C*.  The notice spans ten pages and contains unique, account specific information regarding the borrower and the exact amount of the relevant deficiency claim.  *See Exh. C*, pp. 1, 2, 7.  The cost of printing, binding, and delivering that notice will be considerable.  After that, the settlement agreement contemplates that a first round of payments will be mailed to class members who have not excluded themselves—potentially followed by a second, third, and fourth round of distribution checks via U.S. Mail.  *Doc. No.* 74-2, pp. 35-28.  The postage expense alone will likely reach several hundred thousand dollars.  The cost of maintaining the website contemplated in the settlement agreement also will be significant.  Moreover, the plan administrator will incur significant expenses for professional services, including those required to address members' requests for information, to exclude themselves from the settlement, to divide payments among co-borrowers, or to redirect payments that would have been paid to deceased borrowers.

---

received notice via electronic mail); *Curry v. Money One Fed. Credit Union*, Civil Action No. DKC 19-3467, 2021 U.S. Dist. LEXIS 235884, at *17-18 (D. Md. Dec. 9, 2021) ($2,179.70 administration expense to a class of 69); *Turner v. C.R. England, Inc.*, No. EDCV 14-2207 PSG (SPx), 2016 U.S. Dist. LEXIS 204168, at *26 (C.D. Cal. Apr. 18, 2016) (administration cost of $3,750 to a class of 58); *Taylor v. Shutterfly, Inc.*, No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069, at *5-6 (N.D. Cal. Dec. 7, 2021) (administrative cost of $75,000 with 1,759 notices by regular mail and approx. 223,000 by email); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 U.S. Dist. LEXIS 68964, at *10 (E.D.N.Y. Sep. 18, 2007) ($300,000 administrative expense approved for notice to 21,595 parties); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 250 n.28 (D.N.J. 2005) (administrative cost of $15 million borne by defendant); *Jin Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, No. 17-4029-DDC-GEB, 2019 U.S. Dist. LEXIS 85229, at *34-35 (D. Kan. May 21, 2019) (administrative cost borne by defendant); *City of Long Beach v. Monsanto Co.*, No. CV 16-3493 FMO (ASx), 2022 U.S. Dist. LEXIS 210099, at *21 (C.D. Cal. Nov. 19, 2022) (same).

As illustrated on the table below, if the administration costs were constrained to $1,670,500 (*i.e.*, $100 per account), only $490,500 would remain for distribution to the class. In that case, the holder of each unique account could receive a check for $29.36 (or, for a joint account, each plaintiff could receive a check for $14.68).

|  | *Debit* | *Balance* |
|---|---|---|
| Settlement Fund |  | 15,000,000.00 |
| Administration Expenses | (1,670,500.00) | 13,329,500.00 |
| Incentive Awards | (80,000.00) | 7,229,500.00 |
| Attorneys' Fees and Expenses | (6,100,000.00) | 570,500.00 |
| Refunded Deficiency Payments | (6,659,000.00) | 490,500.00 |

**Per Account Distribution Amount:** **$29.36**

If the plan administrator's costs exceed $129.36 per account, the fund would become administratively insolvent.

In this case, given the shortage of cash available for distribution to class members and the compounding concerns arising from the other objections articulated herein, the proposed settlement is emphatically unfair, unreasonable, and inadequate. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 322 (3d Cir. 2019) ("The settlement of a putative class action requires the approval of a district court, both for certifying the class and for determining whether the settlement is 'fair, reasonable and adequate.'"). Accordingly, this Court must deny final approval to the proposed class action settlement.

## IV.    The Proposed Attorneys' Fees and Expenses are Excessive and Unwarranted Under the Circumstances.

"Courts should take special notice when class members are offered discounts and tickets while others—like counsel—get cash." *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, *15 (3d Cir. 2023). The plaintiffs' attorneys have bargained for the right to claim up to $6

million as a legal fee, along with up to $100,000 in expense reimbursement and $80,000 in
incentive awards to the named plaintiffs.  According to the plaintiffs' counsel:

> the requested attorneys' fees of $6,000,000.00 represents less
> than 10% of the quantifiable portions of the settlement
> consideration… (i.e., solely the $15 million cash payment plus
> the compromise of approximately $64.39 million in disputed
> Deficiency Balances – totaling approximately $76.5 Million
> Dollars).

*Doc. No.* 74-1, p. 34.  The plaintiffs' attorneys are wrong, first, because the sum of $15 million
and $64.39 million is <u>not</u> approximately $76.5 million, it's exactly $79.39 million.  Second,
and more importantly, the forgiveness of disputed deficiency balances would confer a tax
advantage upon Wells Fargo, at the expense of many class members whose tax burdens would
be increased.  *See* section II, *supra.*  That result would be particularly unfair considering that
(i) the statute of limitations has expired for most of those deficiency claims; and (ii) the
compromise of a disputed claim is not taxable to the plaintiffs, as a matter of law.  *Zarin v.
Commissioner*, 916 F.2d 110, 115 (3d Cir. 1990).

     The plaintiffs' counsel simply cannot look to the purported value of the compromised
deficiency claims to justify its request for an award up to $6.1 million.  Just as the *Wawa* Court
observed, "[n]on-cash relief . . . is recognized as a prime indicator of suspect settlements."  *In
re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, *15 (3d Cir. 2023) *quoting In re GMC Pick-Up
Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 803 (3d Cir. 1995).  Instead, the twin
concerns[17] that "must play central roles in the assessment of a fee award" are a comparison of
the proposed compensation against "the benefit given to the class, using either the amounts
paid or the sums promised" and the existence of any "side agreements between class counsel

---

[17] The second of those concerns (side deals) is addressed in the following section.

and the defendant [that] suggest an unreasonable attorney's fee award." *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, *7 (3d Cir. 2023).

An analysis of how the proposed attorneys' fees stack up against the benefits to be conferred upon the class leads to the inevitable conclusion that an award of 40% of the total settlement fund would be excessive and unwarranted. The proposed general distribution to class members, if any, is likely to be de minimis. *See* section III, *supra*. It also appears that Wells Fargo may be seeking a tax benefit to which it is not entitled—at the expense of the members of the settlement class. *See* section II, *supra*. With those considerations in mind, the excessively broad release that Wells Fargo seeks here is indefensible. *See* section I, *supra*.

Based upon those unfavorable features of the proposed settlement, a 40%, $6 million award to the plaintiffs' attorneys is not justifiable. Therefore, this Court should deny final approval to the proposed settlement.

## V.    The "Side Deal" Between the Proposed Representative Plaintiffs and Wells Fargo Must Be Closely Scrutinized.

This Court "…must be on the lookout for clear sailing clauses…" since they "…amount to 'agreement[s] by a settling party not to oppose a fee application up to a certain amount.'" *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, *17 (3d Cir. 2023) *citing Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014). In this case, the Settlement Agreement incorporates a "clear sailing" side deal between the plaintiffs' lawyers and Wells Fargo. Wells Fargo has agreed not to object to the plaintiffs' attorneys' requests for fees up to $6 million and expenses up to $100,000. *Settlement Agreement*, p. 56, § 15.1. Wells Fargo has also agreed not to object to requests for incentive awards of up to $10,000 for each of eight named plaintiffs. *Id.* at 57, § 15.5.

While clear sailing agreements are not an "automatic bar to settlement approval," they

require careful scrutiny.  *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, *19 (3d Cir. 2023).

And there is an unmistakable need for that heightened scrutiny:

> The concern with a clear sailing provision is collusion. The defendant is indifferent to the allocation of its liability between the class and counsel; all that matters is the total liability. To forgo the opportunity to object to the fee award, the defendant will presumably want something in return because it is giving up the chance to reduce its overall liability. We thus might fear that class counsel has given away something of value to the class in return for the defendant's agreement not to contest a fee request below a certain level.

*In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 447 (3d Cir. 2016).  The risk articulated in the NFL case is on full display in this case.  Wells Fargo's goal was to secure as broad a release as possible (see section I, *supra*) and obtain certain tax advantages for itself (see section II, *supra*).  For those benefits, the bank agreed to pay $15 million—and not a penny more.  *Settlement Agreement*, p. 31, § 3.3.6.  After Wells Fargo makes the settlement payment, it would be unaffected by any subsequent disposition of the fund.  Despite having had no remaining interest in the allocation of the settlement fund to attorneys' fees, Wells Fargo's acquiescence to a clear sailing agreement remained valuable as deal leverage.  Here, the bank appears to have used that leverage to its maximum advantage.

It is highly doubtful that this Court would have approved a fee award amounting to *more than* 40% of the common fund.  The historical rationale for awarding fees here is that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Because of that, courts must exercise discretion[18] to determine a "reasonable percentage" for an award from a common fund, "[b]y scrutinizing the

---

[18] As a cross-check, courts typically conduct a lodestar analysis, comparing attorneys' time and hourly rates to the magnitude of the requested fees.  *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, *7 (3d Cir. 2023).

size of the fund or the amount of benefit produced for the class to calculate an award based on a reasonable percentage of the amount the class recovered." *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, *11 (3d Cir. 2023).

Here, the named plaintiffs' attorneys bargained for a smooth sailing agreement that approached the maximum compensation that this court (or any other) would be likely to approve.  Wells Fargo, in turn, bargained to pay as little as it could for the broadest release possible.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 621-23 (1997), *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 795 (3d Cir. 1995) (collusion and inadequate prosecution are the paramount concerns in settlement certification).  The result is a proposed settlement that exalts the interests of the defendant, the plaintiffs' attorneys, and the representative plaintiffs—at the expense of the legitimate interests of the unnamed plaintiffs.

## Conclusion

Because the Court has denied the Hummels' request to intervene, their claims for improper fees will not be addressed in this case.  But this Court must not approve a settlement that would arbitrarily release the claims of the Hummels and other similarly situated class members.  Additionally, the proposed settlement fund appears to be insufficient to provide meaningful relief to the settlement class.  Relatedly, the potential award of attorneys' fees and expenses are unjustified and unreasonable in relation to the magnitude of the common fund.  Moreover, the parties' "smooth sailing" side agreements suggest the potential for collusion, and those side deals are not disclosed in the class notice.

For those reasons, this Court should deny final approval to the proposed settlement.

Dated:  December 18, 2023                    Respectfully submitted,


                                             /s/ Aurelius Robleto
                                             Aurelius P. Robleto
                                             PA I.D. No. 94633
                                             Renee M. Kuruce
                                             PA I.D. No. 314691
                                             ROBLETO KURUCE, PLLC
                                             6101 Penn Avenue, Suite 201
                                             Pittsburgh, PA  15206
                                             Telephone:  (412) 925-8194

                                             *Counsel for the Objectors*

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER LYNN HUMMEL AND SHAWN DAVID HUMMEL Senior, | CIVIL ACTION |
| Plaintiffs, | No.   2:23cv2002 |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs, Jennifer Lynn Hummel and Shawn David Hummel Senior (collectively, the "*Plaintiffs*"), on their own behalves and on behalf of all others similarly situated, hereby submit their Class Action Complaint against Wells Fargo Bank, N.A. ("*Wells Fargo*"), as follows:

### INTRODUCTION

Plaintiffs submit this Complaint on behalf of similarly situated residents of Pennsylvania, seeking monetary redress through Pennsylvania's Fair Credit Extension Uniformity Act and the Unfair Trade Practices and Consumer Protection Law (the latter of which serves as the enforcement vehicle of the former).

### *Background*

1.      The Plaintiffs' litigation journey did not begin with the filing of their Complaint commencing this action.  Rather, they first attempted to intervene in another pending class action involving Wells Fargo's repossession of vehicles in Pennsylvania styled, *Sorace, et al. v. Wells Fargo Bank, N.A.*, E.D. Pa., case no. 20-cv-04318 (the "*Sorace Litigation*").

2.      The Sorace Litigation involves claims against Wells Fargo under the UCC arising from the bank's conduct during its repossession of vehicles from its consumer

borrowers. The Plaintiffs are members of a proposed settlement class, to which the court presiding over that case has granted its preliminary approval.

3. But the Plaintiffs here hold claims against Wells Fargo beyond those at issue in the Sorace Litigation that are not dependent upon the repossession of their vehicle.

4. For that reason, the Plaintiffs sought to intervene in the Sorace Litigation to prevent those further claims against Wells Fargo from being quietly swept away in an agreement to resolve repossession claims. *Sorace*, W.D. Pa., case no. 20-cv-04318 [June. 23, 2023, Mot. to Intervene, doc. no. 75].

5. As the Plaintiffs observed in their intervention arguments, a significant subset of the proposed settlement class very likely holds non-repossession claims against Wells Fargo that are substantially identical to the Plaintiffs' claims.

6. The Plaintiffs did not prevail in their request to intervene in the Sorace Litigation, finding, *inter alia*, that "[t]he Hummels have sufficient interest as members of the class, but denying the Motion to Intervene does not impair their ability to protect their interests. Any substantive challenges can be addressed as objections to the settlement." *Sorace*, W.D. Pa., case no. 20-cv-04318 [Sep. 11, 2023, Mem. Op., doc. no. 83, p.5].

7. Unable to intervene, the Plaintiffs submit this Complaint on behalf of similarly situated residents of Pennsylvania, seeking monetary, equitable, injunctive, and declaratory relief.

8. The Plaintiffs will also object to the proposed class settlement agreement to avoid forfeiture of the distinct claims presented in this class action.

## **PARTIES**

9. Plaintiffs Jennifer Lynn Hummel and Shawn David Hummel Senior are natural persons residing at 2361 East Beckert Avenue in Pittsburgh, Pennsylvania 15212.

2

10.    Defendant Wells Fargo is a federally chartered bank and is a subsidiary of Wells Fargo & Company.  The corporate headquarters for Wells Fargo is located at 101 N. Phillips Ave. in Sioux Falls, South Dakota 57104.

## JURISDICTION AND VENUE

11.    Wells Fargo regularly and systematically conducts business throughout Pennsylvania.  Consequently, this Court has general personal jurisdiction over the Defendant.

12.    Subject matter jurisdiction is appropriate in this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) (CAFA).  "CAFA authorizes federal jurisdiction over class actions that arise under state law but that involve minimally diverse parties and an aggregate amount in controversy in excess of $5 million." *Erie Ins. Exch. v. Erie Indem. Co.*, 68 F.4th 815, 819 (3d Cir. 2023) *citing* 28 U.S.C. § 1332(d)(2).  Here, jurisdiction arises under CAFA since (i) the cause of action arises under Pennsylvania statutory law; (ii) the Defendant is a citizen of South Dakota, while the named Plaintiffs are citizens of the Commonwealth of Pennsylvania; (iii) the aggregate amount in controversy exceeds $5 million; and (iv) the putative class consists of more than 100 members.

13.    Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2).

## DEFINITIONS

14.    **Account** means a Borrower's loan account with Wells Fargo arising under a RISC.

15.    **Borrower** means a "Debtor" and "Obligor" (as those terms are defined herein), under a RISC for the purchase of a Motor Vehicle, pursuant to which Wells Fargo became the secured party.

16.    **CAFA** means the Class Action Fairness Act of 2005, 28 U.S.C. § 1332.

17.    **Class** means the putative class of plaintiffs that the representative Plaintiffs intend

3

to represent, as described with further particularity in the "Class Action Allegations" section of this Complaint.

18. **Consumer Transaction** means a transaction in which (i) an individual incurs an obligation primarily for personal, family, or household purposes, (ii) a security interest secures the obligation, and (iii) the collateral is held or acquired primarily for personal, family, or household purposes.

19. **Debtor** means a person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor.

20. **Error Notice** means a written notice from Wells Fargo to a Borrower or Borrowers, similar in form and subject to the November 19, 2021, notice that Wells Fargo sent to the Plaintiffs.

21. **FCEUA** means Pennsylvania's Fair Credit Extension Uniformity Act. 73 Pa. Stat. Ann. § 2270.1, *et seq.*

22. **Motor Vehicle:** Except as otherwise stated, the term "Motor Vehicle" means a device in which, upon which, or by which a person or property is or may be transported or drawn upon a public highway, including an automobile, a truck, a sports utility vehicle, a van, a minivan, a camper, a recreational vehicle, a motorcycle, or a truck. For purposes of this Complaint, the term is not intended to include a semitrailer or manufactured home.

23. **Obligor** means a person who, with respect to an obligation secured by a security interest in or an agricultural lien and the collateral: (1) owes payment or other performance of the obligation; (2) has provided property other than the collateral to secure payment or other performance of the obligation; or, (3) is otherwise accountable in whole or in part for payment or other performance of the obligation. The term does not include any issuer or nominated person under a letter of credit.

24. **Relevant Statutory Period** means the period beginning on the date exactly six years prior to the filing of this Complaint and ending on the date of class certification.

25. **RISC** means a retail installment sales contract secured by a Motor Vehicle, evidencing a contractual relationship between Wells Fargo and a Borrower pursuant to which the Borrower agrees to make installment payments over time as shown in the RISC for the purchase of the Motor Vehicle.

26. **UTPCPL** means Pennsylvania's Unfair Trade Practices and Consumer Protection Law. 73 Pa. Stat. Ann. § 201-1, *et seq*.

## FACTS

27. On May 1, 2014, the Plaintiffs purchased a 2012 Ford Explorer from Woltz & Wind Ford, Inc. at 2100 Washington Pike in Heidelberg, Pennsylvania 15106. A copy of the RISC evidencing that purchase is attached hereto as *Exhibit A*.

28. Wells Fargo became the secured party for the Plaintiffs' Account.

29. Sometime in 2015, Wells Fargo repossessed the Plaintiffs' Motor Vehicle in Pennsylvania. The Plaintiffs regained possession of their Motor Vehicle by curing any default and reinstating their loan.

30. On July 14, 2016, the Plaintiffs filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. *In re: Hummel,* Bankr. W.D. Pa., case no. 16-22610-CMB.

31. Following Wells Fargo's repossession of their vehicle and the Plaintiffs' bankruptcy filing, Wells Fargo sent correspondence to them on November 19, 2021, admitting that it had improperly processed a payment with an incorrect date and then incorrectly assessed and charged a late fee to the account. A copy of that correspondence is attached hereto as *Exhibit B*.

5

## STATUTORY VIOLATIONS

32.     All residents of Pennsylvania are entitled to its statutory protections for Wells Fargo's acts and omissions in that state.

33.     As detailed herein, the Defendant's conduct relating to the Plaintiffs' Account violated the FCEUA and its enforcement vehicle the UTPCPL, as well as the UTPCPL directly.

### Wells Fargo's Systematic Improper Charges and Miscommunications

34.     Through its November 19, 2021, Error Notice to Plaintiffs, Wells Fargo revealed its pattern and practice of improperly assessing and collecting late fees.

35.     Wells Fargo enclosed a check in the amount of $108.04 with its Error Notice to the Plaintiffs (which the Plaintiffs did not negotiate).

36.     Apologizing for "any inconvenience" it may have caused, Wells Fargo explained that:

> This check includes $100.66 for **late fees that should not have been assessed**.
>
> This check also includes an **additional amount** as **compensation for the time these funds were not available** for use.
>
> If the total amount was less than $5.00, we increased it and issued a check for $5.00.
>
> This payment is in addition to any amount we previously sent.

*Exh. B*, p. 1 (emphasis added).

37.     Confusingly, under the heading "What you need to know," Wells Fargo wrote:

> While **any unpaid fees and/or charges will remain on the account**, to provide the most flexibility for these funds, we sent a check for any **fees and/or charges** that were added to the account **as a result of this error**, whether they were previously paid **or remain unpaid**.  The check amount may be used to pay any unpaid fees and/or charges in the future.

Exh A, p. 06

*Id.* (emphasis added).

38.     Under that same "What you need to know" heading, Wells Fargo claimed that its reason for returning the $108.04 in late fees that it incorrectly charged the Plaintiffs had been "to provide **the most flexibility** for these funds," further warning that the Plaintiffs would still owe the "**unpaid fees and/or charges**" which would "**remain on the account**." *Id.* (emphasis added).

39.     Then, as a potential solution to the difficult circumstances it had created for the Plaintiffs (by returning an improper payment of a fee for a charge that it still intended to collect), Wells Fargo suggested that the "check amount may be used to pay any unpaid fees and/or charges in the future." *Id.*

40.     Adding to the confusion it had created, Wells Fargo contended that it had added $7.38 to the improper charge it was refunding, explaining that that amount was "compensation for the time these funds were not available for use."  But Wells offered no explanation of how it determined that $7.38 was the appropriate amount of compensation.

41.     Wells Fargo admitted that its attempt to issue a payment to the Plaintiffs could cause them even further harm, in the form of tax liabilities and the cost of advice from tax professionals. *Id.* ("You may be responsible for any federal, state, or local taxes associated with a portion of this payment.  We recommend consulting with your tax advisor…").

42.     Upon information and belief, Wells Fargo issued tax forms 1099-C for its payment to the Plaintiffs and those similarly situated, which unfairly increased their tax liability.

43.     Wells Fargo's payment to the Plaintiffs did not take into account that the Plaintiffs had been debtors in a reorganizational bankruptcy and had channeled payments through their chapter 13 plan.  Consequently, the improper payment itself had been subject to an additional percentage charge imposed by the chapter 13 trustee (such trustee fees are overseen by the United

Exh A, p. 07

States Trustee and are the primary source of funding for the chapter 13 trustee's operations). Wells Fargo made no attempt to compensate the Plaintiffs for the additional charges imposed by the chapter 13 trustee arising from Wells Fargo's improperly assessed and collected late fee.

44. Moreover, Wells Fargo made clear in its letter that it had a pattern and practice of improperly imposing late charges. The letter included nonapplicable boilerplate style information, demonstrating that Wells Fargo's misconduct was widespread. For example, Wells explained:

    a. "If the total amount was less than $5.00, we increased it and issued a check for $5.00." *Id.*

    b. the improperly charged late fees may have been "previously paid or remain unpaid." *Id.*

    c. some recipients of the letter may have (i) "received a discharge"; (ii) held accounts that were "not otherwise affirmed"; or (iii) which had been "accepted from discharge."

In sum, the letter that Wells Fargo sent to the Plaintiffs was a form letter, which it attempted to use to conceal its misconduct and avoid liability to its borrowers.

### **Violations of Pennsylvania's FCEUA and UTPCPL**

45. In the context of the matters described in this Complaint, Wells Fargo is a "creditor," as that term is defined in the FCEUA (*i.e.*, it is a "person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owed or alleged to be owed."). 73 P.S. § 2270.3.

46. The FCEUA forbids creditors from using any "unfair or unconscionable means to collect or attempt to collect any debt." 73 P.S. § 2270.4(b)(5). The first example of an unfair or unconscionable collection method enumerated in the act is:

> The **collection of any amount**, **including any** interest, **fee**, charge or expense **incidental to the principal obligation**, unless such amount is **expressly authorized by the agreement creating the debt or permitted by law**.

73 P.S. § 2270.4(b)(6)(i).

47.     Wells Fargo's admittedly improper and incorrectly imposed late charges to the Plaintiffs were not expressly authorized under the RISC, nor were they permitted by law. Consequently, those acts constitute unfair or unconscionable means of collection in violation of the FCEUA.

48.     Further, the FCEUA further defines certain activities of creditors as "unfair or deceptive debt collection act[s] or practice[s]."  73 P.S. § 2270.4(b).  Unfair and deceptive debt collection acts and practices include "any false, deceptive or misleading representation or means in connection with the collection of any debt."  73 P.S. § 2270(b)(5).  The Act includes a non-exclusive list of unfair and deceptive debt collection conduct, including:

> …(ii) The false representation of the character, amount or legal status of any debt.
>
> …(v) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> …(viii) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a debt is disputed.
>
> (ix) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued or approved by any court, official or agency of the United States or any state or which creates a false impression as to its source, authorization or approval.
>
> …(xii) The false representation or implication that documents are legal process.

73 P.S. § 2270.4(b)(5).

49.     Further, Wells Fargo's cryptic, half-explained attempted refund of the late charge it improperly imposed upon the Plaintiffs, along with certain unexplained "compensation" constitutes a false representation of the character, amount, or legal status of a debt in violation of the FCEUA.  73 P.S. § 2270.4(b)(5)(ii).

Exh A, p. 09

50.     Wells Fargo's claim that it would continue to charge the returned late fees on the Plaintiffs' account constitutes a threat to take an action that it could not legally take (as it admitted in its letter), in violation of the FCEUA.  73 P.S. § 2270.4(b)(5)(v).

51.     Wells Fargo's claim that it would report the returned payment to the IRS as income to the Plaintiffs constituted a threat to communicate personal credit information to any person, which it knew to have been false, in violation of the FCEUA.  73 P.S. § 2270.4(b)(5)(viii).

52.     Wells Fargo's letter to the Plaintiffs may also have given the appearance of having had the imprimatur of governmental authority, as it provided "tax information" and a section on "what you need to know," in violation of the FCEUA.  73 P.S. § 2270.4(b)(5)(ix).

53.     Wells Fargo's letter to the Plaintiffs may also have given the appearance of legal process, since it (i) was copied to the Plaintiffs' bankruptcy counsel; and (ii) confusingly stated "As a result of at least one bankruptcy case filing that included the account referenced above…" By falsely employing the appearance of legal process, Wells Fargo violated the FCEUA.  73 P.S. § 2270.4(b)(5)(ix).

54.     For the same reason, Wells Fargo's letter to the Plaintiffs may also have simulated or is falsely represented itself as a document authorized, issued or approved by a court, official or agency of the United States or created a false impression as to its source, authorization or approval in violation of the FCEUA.  73 P.S. § 2270.4(b)(5)(xii).

55.     The foregoing violations of the FCEUA are violations of the UTPCPL, and they are remediable thereunder. 73 P.S. § 2270.5 ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of …the Unfair Trade Practices and Consumer Protection Law.").

56.     Furthermore, with its Error Notice, Wells Fargo violated the "catch-all" provision

of the UTPCPL, which proscribes "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 Pa. Stat. Ann. § 201-2(4)(xxi).

57.     The Plaintiffs relied upon Wells Fargo's statements and representations in its Error Notice, confusing though they were.  And that reliance was justified under the circumstances. After all, consumer borrowers lack the sophistication of banks, and they are at a considerable disadvantage when it comes to determining the propriety of a bank's fees and charges, the dates with which payments are processed, and the suitability of "compensation" that a bank should pay when it discovers an error.

58.     And Wells Fargo cannot deny that the Plaintiffs suffered an ascertainable loss. After all, why else would it have "include[d] an additional amount as compensation." *Exh. B*, p.3. That ascertainable loss extends beyond payment for the time that the Plaintiffs were without access to the funds that Wells Fargo had improperly charged.

59.     Because Wells Fargo declined to explain whether the "unpaid fees and/or charges… were previously paid or remain unpaid," the Plaintiffs will require discovery to determine the exact nature and extent of their losses.  *Id.*  But that does not mean that their losses are not ascertainable. If "unpaid fees and/or charges" were to "remain on the account," then those amounts would have triggered additional interest charges and/or expenses needed to pay the remaining charges (*e.g.*, money order fees, postage, service/convenience payment fees, and chapter 13 trustee fees). *Id.* If instead, the fees that had been "previously paid," then Wells Fargo's double collection of them meant that the bank had reallocated portions of the Plaintiffs' ordinary debt service payments, resulting in a cascade of other fees and charges that would not have existed but for Wells Fargo's errors.

11

## DAMAGES

60.     The UTPCL, which allows for private actions and provides a remedy for Wells

Fargo's violations of the FCEUA.  Specifically, the UTPCL provides that:

> Any person who …suffers any ascertainable loss of money or
> property, real or personal, as a result of the use or employment by
> any person of a method, act or practice declared unlawful… may
> bring a **private action to recover actual damages or one hundred
> dollars ($ 100)**, whichever is greater. The **court may, in its
> discretion, award up to three times the actual damages
> sustained, but not less than one hundred dollars ($ 100)**, and may
> provide such additional relief as it deems necessary or proper. **The
> court may award to the plaintiff, in addition to other relief
> provided in this section, costs and reasonable attorney fees.**

73 P.S. § 201-9.2(a).

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this action on their own behalf and as representatives of a putative

class of plaintiffs pursuant to Rule 23.

62.     Plaintiffs define the Class to include all Borrowers:

    (a)     who entered into a RISC to finance the purchase of a Motor Vehicle through a
Consumer Transaction;

    (b)     to whom Wells Fargo issued an Error Notice;

    (c)     within the Relevant Statutory Period and when such Borrowers were residents
or domiciliary of the Commonwealth of Pennsylvania.

63.     The Plaintiffs are members of the Class.

64.     Plaintiffs reserve the right to modify the foregoing class definitions to the fullest

extent permitted under the law.

65.     The Class is so numerous that joinder of all members is impractical.   Upon

information and belief, members of the Class may number in the thousands.

66.     There are questions of law and fact common to all members of the Class.   Common

questions of law include whether Wells Fargo's Error Notices violated the provisions of the FCEUA and UTPCPL, and whether all plaintiffs are entitled to recover in accordance with the damages provisions of the UTPCPL rather than be limited to the compensation determined by Wells Fargo. Common questions of fact include whether Wells Fargo accurately calculated any amounts it determined should be paid to its Borrowers through its Error Notices, whether Wells Fargo properly accounted for other fees and charges that it imposed solely as a result of the fees and charges that it improperly imposed, and the method by which Wells Fargo calculated the "additional compensation" component of any payment.

67.    The claims or defenses of the representative Plaintiffs are typical of those of all plaintiffs. The Plaintiffs' claims arise from Wells Fargo's a boilerplate form, which it systematically issued to many its borrowers in a mechanical attempt to avoid liability for its improper accounting, and all are based on the same factual and legal theories. All plaintiffs financed the purchase of Motor Vehicles in Consumer Transactions, through a RISC under which Wells Fargo became the secured party.

68.    The Plaintiffs will fairly and adequately represent and protect the interests of the Class. They are represented by the lawyers of Robleto Kuruce, PLLC, a law firm of competent lawyers, experienced in class action matters, commercial litigation, secured transactions, and consumer protection laws.

69.    Questions of law and fact common to the class predominate over questions affecting only individual members. These questions include the issues identified in paragraph 66, *supra*, as well as:

(a)    whether each plaintiff entered into a RISC for the purchase of a Motor Vehicle;

(b)    whether Wells Fargo become the secured party under such RISC;

(c)    whether Wells Fargo issued an Error Notice to such plaintiffs;

Exh A, p. 13

(d)     whether such plaintiffs were residents or domiciliary of the Commonwealth of Pennsylvania when Wells Fargo issued such Error Notices;

(e)     whether the issuance of the Error Notices occurred during the Relevant Statutory Period;

(f)     whether Wells Fargo's conduct violated the FCEUA;

(g)     whether Wells Fargo's conduct violated the UTPCPL; and

(h)     whether the plaintiffs are entitled to recover under the remedial provisions of the UTPCPL.

70.     In addition to the predominance of common legal and factual questions, a class action is superior to all other available methods for fairly and efficiently adjudicating the controversy.  The prosecution of several separate actions by the members of the classes would create a risk of inconsistent or varying adjudications. A class action will serve the goals of judicial economy and ensure uniformity of decision.  Moreover, the following pertinent considerations support class certification, *inter alia*:

(a)     The unnamed plaintiffs do not appear to have an interest in controlling the prosecution of this litigation.  Because most putative class members either do not know that their rights have been violated, they likely have little interest in or ability to prosecute individual actions.  Considering the complexity of the issues involved in this litigation, the unnamed plaintiffs are not likely in a position to expend the effort and expense that would be required to litigate their individual claims.

(b)     The extent and nature of the litigation in which the Plaintiffs have been involved, and in which they will have further involvement further supports certification of the putative class.  As we know, the Plaintiffs attempted to intervene in the Sorace Litigation to preserve the claims at issue here.  Moreover, the Plaintiffs will object to the proposed class settlement in that case to assure that the representative plaintiffs in that case do not waive the claims at issue in this action.

(c)     The desirability of concentrating the litigation in this particular forum is clear.  The court presiding over the Sorace Litigation declined to permit the Plaintiffs from intervening to protect their claims.  Since the Plaintiffs have continuously resided in Pittsburgh, Pennsylvania at all relevant times, the United States District Court for the Western District of Pennsylvania is the appropriate forum for this action.

(d)     Class certification proceedings and any trial would be readily manageable as the claims relate to standardized policies and practices and notices based on standard forms.  There are no unusual legal or factual issues which would cause case management problems outside of those routinely handled in class actions.

71.     Additionally, Wells Fargo has acted or refused to act on grounds generally applicable to the (putative) classes, thereby making appropriate final relief with respect to the classes.  Specifically, Wells Fargo joined the named plaintiffs in the Sorace Litigation in opposing the Plaintiffs' efforts to intervene in that case—despite that the claims at issue in this case would be subject to release under the terms of their proposed settlement agreement.

72.     Minimum statutory damages can be calculated easily and with mathematical precision and can be easily determined, *inter alia,* by accessing the electronically stored records of Wells Fargo.

73.     The Plaintiffs do not seek double recovery for any claim.

## COUNT 1

### The Class is Entitled to Recover from Wells Fargo Under the Damages Provisions of the UTPCPL for the Bank's Violations of the FCEUA and the UTPCPL

74.     Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

75.     The actions and omissions by Wells Fargo set forth in this Complaint and below also violated the FCEUA and the UTPCPL.

76.     Wells Fargo violated the FCEUA by, *inter alia*:

(a)     Collecting amounts, including interest, fees, charges or expenses incidental to the principal obligation, when such amounts were not expressly authorized by an agreement creating the debt nor permitted by law.  73 P.S. § 2270.4(b)(6)(i).

(b)     Falsely representing the character, amount or legal status of any debt.  73 P.S. § 2270.4(b)(5)(ii)

(c)     Threatening to take any action that it could not legally take or that it did not intend to take.  73 P.S. § 2270.4(b)(5)(v).

(d)     Communicating or threatening to communicate to the IRS credit information which it knew or which it should have known was false.   73 P.S. § 2270.4(b)(5)(viii).

(e)     Using or distributing a written communication which simulated or falsely represented itself to be a document authorized, issued or approved by any court, official or agency of the United States or any state or which created a false impression as to its source, authorization or approval.   73 P.S. § 2270.4(b)(5)(ix).

(f)     Using of a false representation or deceptive means to collect or attempt to collect any debt.  73 P.S. § 2270.4(b)(5)(x).

(g)     Falsely representing or implying that documents were legal process.  73 P.S. § 2270.4(b)(5)(xii).

77.     The foregoing violations of the FCEUA by Wells Fargo are also violations of the UTPCPL, and they are remediable thereunder. 73 P.S. § 2270.5.

78.     With its Error Notice, Wells Fargo violated the "catch-all" provision of the UTPCPL, which proscribes "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 Pa. Stat. Ann. § 201-2(4)(xxi).

79.     The plaintiffs justifiably relied upon Wells Fargo's Error Notices.

80.     As a direct and proximate result of the plaintiffs' justifiable reliance the plaintiffs were harmed, and that harm is readily ascertainable from the records of Wells Fargo.

WHEREFORE, Plaintiffs, individually and on behalf of the putative class, request that this Honorable Court grant the following relief as against Defendant as follows:

A.      CLASS CERTIFICATION.  Certify the requested Class, approving the Plaintiffs as class representatives and appointing Robleto Kuruce, PLLC as counsel to the Class.

B.      INJUNCTIVE RELIEF.  Impose a temporary and permanent injunction, preventing Wells Fargo from imposing improper charges and from issuing Error Notices in violation of the FCEUA and UTPCPL.

16

C.     MONETARY DAMAGES AND ATTORNEYS' FEES.   Award the greater of three times the actual damages sustained by the members of the Improper/Incorrect Fees Class, or $100 to each member; and costs and reasonable attorneys' fees, as provided under 73 P.S. § 201-9.2(a).

D.     FURTHER AWARD.   Such other and further relief as this Court deems just and proper.

Dated:  November 17, 2023               Respectfully submitted,

                           /s/ Aurelius Robleto
                          Aurelius Robleto
                          PA ID No. 94633
                          Renee M. Kuruce
                          PA ID No. 314691
                          ROBLETO KURUCE, PLLC
                          6101 Penn Ave., Ste. 201
                          Pittsburgh, PA 15206
                          Tel:  (412) 925-8194
                          Fax:  (412) 346-1035
                          apr@robletolaw.com
                          rmk@robletolaw.com

                          *Attorneys for Plaintiffs*

**RETAIL INSTALLMENT SALE CONTRACT**
**SIMPLE FINANCE CHARGE**

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| JENNIFER HUMMEL 3361 E BECKER AVE PITTSBURGH PA 15212 ALLEGHENY | SHAWN DAVID HUMMELL 3361 E BECKER AVE PITTSBURGH PA 15212 ALLEGHENY | WOLTZ & WIND FORD, INC. 2100 WASHINGTON PIKE HEIDELBERG PA 15106 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2012 | FORD EXPLORER | | 1FMHK8D83CGA34341 | ☑ personal, family or household ☐ business ☐ agricultural ☐ |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 3,500.00 |
|---|---|---|---|---|
| 16.99 % | $ 17,206.76 | $ 28,615.48 | $ 45,822.24 | $ 49,322.24 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 636.42 | Monthly beginning MAY 31ST 2014 |

Or As Follows:

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 6% of the part of the payment that is late. Otherwise, the charge will be 2% per month of the part of the payment that is late, figured based on a full calendar month for any part of a month that is more than 10 days.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
**Optional Credit Insurance**
☐ Credit Life  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)

| Premium: | |
|---|---|
| Credit Life $ | N/A |
| Credit Disability $ | N/A |

Insurance Company Name _____

Home Office Address _____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life insurance or credit disability insurance provides. See the policies or certificates for coverage limits of other terms and conditions.

### ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| 1 | Cash Price (including $ 1,924.93 sales tax) | | $ 31,923.93 (1) |
| 2 | Total Downpayment = | | |
| | Trade-In 2005 FORD EXPLORER | | |
| | Trade-In 1FMZU73K65UB20978 (Year) (Make) (Model) (VIN) | | |
| | Gross Trade-In Allowance | $ 2,500.00 | |
| | Less Pay Off Made By Seller | $ N/A | |
| | Equals Net Trade In | $ 2,500.00 | |
| | + Cash | $ 1,000.00 | |
| | + Other | $ N/A | |
| | (If total downpayment is negative, enter "0" and see 4H below) | | $ 3,500.00 (2) |
| 3 | Unpaid Balance of Cash Price (1 minus 2) | | $ 28,423.93 (3) |
| 4 | Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts) | | |
| A | Cost of Optional Credit Insurance Paid to Insurance Company or Companies | | |
| | Life Term N/A $ N/A | | |
| | Disability Term N/A $ N/A | $ N/A | |
| B | Other Optional Insurance Paid to Insurance Company or Companies | | |
| | (Describe) _____ Term N/A $ N/A | | |
| | (Describe) _____ Term N/A $ N/A | $ N/A | |
| C | Official Fees Paid to Government Agencies | | |
| | to _____ for _____ | $ N/A | |
| | to _____ for _____ | $ N/A | |
| | to _____ for _____ | $ N/A | |
| D | Optional Gap Contract | | $ N/A | |
| E | Government Taxes Not Included in Cash Price | | $ N/A | |
| F | Government License and/or Registration Fees | | $ 43.55 | |
| G | Government Certificate of Title Fees | | $ 50.00 | |
| | (Includes $ N/A security interest recording fee) | | |
| H | Other Charges (Seller must identify who is paid and describe purpose) | | |
| | to MOLTZ & WIND FO for DOC FEE | $ 98.00 | |
| | to _____ for _____ | $ N/A | |
| | to _____ for _____ | $ N/A | |
| | to _____ for _____ | $ N/A | |
| | to _____ for _____ | $ N/A | |
| | Total Other Charges and Amounts Paid to Others on Your Behalf | $ 191.55 | (4) |
| 5 | Amount Financed (3 + 4) | | $ 28,615.48 (5) |
| 6 | Finance Charge | | $ 17,206.76 (6) |
| 7 | Total of Payments-Time Balance (5 + 6) | | $ 45,822.24 (7) |

**Other Optional Insurance**

☐ Type of Insurance N/A Term
Premium $ N/A
Description of Coverage N/A
Insurance Company Name N/A
Home Office Address N/A

☐ N/A Type of Insurance N/A Term
Premium $ N/A
Description of Coverage
Insurance Company Name N/A
Home Office Address N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. I want the insurance checked above.

X _____
Buyer Signature                Date

X _____
Co-Buyer Signature             Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

**If you do not meet your contract obligations, you may lose the vehicle.**

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____, _____. SELLER'S INITIALS _____

**Returned Check Charge.** You agree to pay the costs we actually pay to others if any check you give us is dishonored.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____ Mos.

Name of Gap Contract _____

I want to buy a gap contract.
Buyer Signs X _____

### NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.
Buyer Signs X _____   Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
You authorize us to obtain information about you, the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.
See back for other important agreements.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

### NOTICE TO BUYER.
**DO NOT SIGN THIS CONTRACT IN BLANK.**
**YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN.**
**KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

Buyer Signs X _____ Date 05/01/201_ Co-Buyer Signs X _____ Date 05/01/201_

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X _____ Date 05/01/201_ Co-Buyer Signs X _____ Date 05/01/201_
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ Address _____
Seller _____ Date 05/01/201_ By X _____ Title _____
Seller assigns its interest in this contract to FORD MOTOR CREDIT CO (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned without recourse   ☐ Assigned with recourse   ☐ Assigned with limited recourse
WOLTZ & WIND FORD, INC.

Seller _____ By _____ Title _____

FORM NO. 553-PA (REV. 1-06) LAW ©2006 The Reynolds and Reynolds Company. TO ORDER: www.reyrey.com 1-800-344-0996, fax 1-800-531-9055

ORIGINAL LIENHOLDER

Exh A, p. 18

OTHER IMPORTANT AGREEMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.

**c. Security interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the cost of the insurance and a finance charge at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on the front. The term "heavy commercial motor vehicle" means any new or used motor vehicle which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of fifteen thousand (15,000) pounds or more, or (ii) a semitrailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

we have to go to court to recover the vehicle, you pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs a court awards us.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.
If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.
If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**h. Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement.** You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. **Unearned finance charges will not be rebated under this contract because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).**

**4. WARRANTIES SELLER DISCLAIMS**
The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.
**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

**5. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**6. Applicable Law**
Federal law and the law of the state of the Seller's address shown on the front of this contract apply to this contract.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Form No. 553-PA 1-08

**Wells Fargo Auto**
PO Box 5143
Sioux Falls, SD 57117-5143
888-753-3042



000039  CW92Z1TA

AURELIUS P ROBLETO, ROBLETO KURUCE PLLC
6101 PENN AVE
STE 201
PITTSBURGH, PA 15206

November 19, 2021

Subject: Important information about the account ending in 5265
Customer(s): JENNIFER HUMMEL AND SHAWN D HUMMEL
Case No: 1924826
Chapter number: 13

Dear AURELIUS P ROBLETO:

Our records indicate you represent our Customer(s)
in the bankruptcy case above. Please forward the enclosed communication
to your client(s) at your earliest convenience.
If you have questions, please call us at
1-888-753-3042, Monday - Friday, 7:00 a.m. to 7:00 p.m. Central Time.
For customers with hearing or speech disabilities, we accept
telecommunications relay service calls.

Sincerely,

Wells Fargo Customer Care
Enclosure

SHRP 1933588
ECN 572489890927115

Check Date: 11/19/2021
Check Number: 0010145125
Check Amount: $108.04

OT-LTR-382d (09/01/21) CR-LTR-144 (07/29/21)

Exh A, p. 20

231

**Wells Fargo Auto**
PO Box 5143
Sioux Falls, SD 57117-5143
888-753-3042


JENNIFER HUMMEL AND SHAWN D HUMMEL
2361 E BECKER AVE
PITTSBURGH, PA 15212


November 19, 2021

PLEASE DETACH BEFORE DEPOSITING



HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK   **CASHIER'S CHECK**   HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

11-24/1210

WELLS FARGO   **AUTO**

**Check Number: 0010145125**

**Date: November 19, 2021**

Pay to the
order of JENNIFER HUMMEL AND SHAWN D HUMMEL   **$108.04**

***One Hundred Eight dollars and 04/100***

Drawer: WELLS FARGO BANK, N.A.

For ███5265 CR███588 ███7115
Wells Fargo Bank, N.A.

FOR INQUIRIES: 480-394-3122

Authorized Signature

Authorized Signature

⑈0010145125⑈ ⑆███248⑆ ███9306⑈

Exh A, p. 21



**Wells Fargo Auto**
PO Box 5143
Sioux Falls, SD 57117-5143

JENNIFER HUMMEL AND SHAWN D HUMMEL
2361 E BECKER AVE
PITTSBURGH, PA 15212

November 19, 2021

Subject: Important information for account ending in 5265

**Please note:** This notice is being provided for informational purposes only. As a result of at least one bankruptcy case filing that included the account referenced above, Wells Fargo is not attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer who is impacted by an active bankruptcy case or who has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge. **This is not a bill or a request for payment as to these customers.**

Dear JENNIFER HUMMEL AND SHAWN D HUMMEL:

During a review of the account, we identified that we may have processed a payment with the incorrect date. As a result, late fees may have been assessed on the account incorrectly. We are enclosin a check for $108.04. We apologize for any inconvenience this caused.

- This check includes $100.66 for late fees that should not have been assessed.

- This check also includes an additional amount as compensation for the time these funds were not available for use.

- If the total amount was less than $5.00, we increased it and issued a check for $5.00.

- This payment is in addition to any amount we previously sent.

**Tax information**
Wells Fargo may be required to report some of this payment amount to the IRS. You may be responsible for any federal, state, or local tax obligations associated with a portion of this payment. We recommend consulting with your tax advisor if you have any questions about potential tax liability or 1099 forms you may receive.

**What you need to know**
While any unpaid fees and/or charges will remain on the account, to provide the most flexibility for these funds, we sent a check for any fees and/or charges that were added to the account as a result of this error, whether they were previously paid or remain unpaid. The check amount may be used to pay any unpaid fees and/or charges in the future.

Exh A, p. 22

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)** County of Residence of First Listed Plaintiff _____<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant _____<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☑ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☑ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Claim for damages under Pennsylvania's UTPCPL. 73 Pa. Stat. Ann §§ 201-1, et seq.

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE: November 17, 2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44A REVISED June, **2009**
IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA
THIS CASE DESIGNATION SHEET MUST BE COMPLETED

**PART A**

This case belongs on the (     Erie        Johnstown          Pittsburgh) calendar.

1. **ERIE CALENDAR -** If cause of action arose in the counties of Crawford, Elk, Erie, Forest, McKean. Venang or Warren, OR **any** plaintiff or defendant resides in one of said counties.

2. **JOHNSTOWN CALENDAR -** If cause of action arose in the counties of Bedford, Blair, Cambria, Clearfield or Somerset OR any plaintiff or defendant resides in one of said counties.

3. Complete if on **ERIE CALENDAR**: I certify that the cause of action arose in_____ County and that the _____resides in_____County.

4. Complete if on **JOHNSTOWN CALENDAR**:  I certify that the cause of action arose in _____County and that the_____resides in _____County.

**PART B** (You are to check ONE of the following)

1.    This case is related to Number_____    . Short Caption_____._____

2. ✔ This case is not related to a pending or terminated case.

DEFIN1TIONS OF RELATED CASES:

CIVIL:  Civil cases are deemed related when a case filed relates to property included in another suit or involves the same issues of fact or it grows out of the same transactions as another suit or involves the validity or infringement of a patent involved in another suit EMINENT DOMAIN:  Cases in contiguous closely located groups and in common ownership groups which will lend themselves to consolidation for trial shall be deemed related. HABEAS CORPUS **&** CIVIL RIGHTS:  All habeas corpus petitions filed by the same individual shall be deemed related. All pro se Civil Rights actions by the same individual shall be deemed related.

**PARTC**

I. CIVIL CATEGORY (Select the applicable category).

    1.     Antitrust and Securities Act Cases

    2.     Labor-Management Relations

    3.     Habeas corpus

    4.     Civil Rights

    5.     Patent, Copyright, and Trademark

    6.     Eminent  Domain

    7.     All  other federal question cases

    8. ✔   All  personal  and property damage tort cases,  including  maritime,  FELA, Jones Act, Motor vehicle, products liability, assault, defamation,  malicious prosecution, and false arrest

    9.     Insurance indemnity, contract and other diversity cases.

    10.    Government Collection Cases (shall include HEW Student Loans (Education), V A  0verpayment, Overpayment of Social Security, Enlistment Overpayment (Army, Navy, etc.),  HUD Loans, GAO Loans (Misc. Types), Mortgage Foreclosures, SBA Loans, Civil Penalties and Coal Mine Penalty and Reclamation Fees.)

I certify that to the best of my knowledge the entries on this Case Designation Sheet are true and correct

Date:  November 17, 2023                    _____
                                                                    ATTORNEY AT LAW

NOTE: ALL SECTIONS OF BOTH FORMS MUST BE COMPLETED BEFORE CASE CAN BE PROCESSED.

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)   Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)   County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)   Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.   Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.   Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.   Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.   Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.   Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

EXHIBIT B



**Wells Fargo Customer Care - Remediation**
PO Box 5143
Sioux Falls, SD 57117-5143

November 7, 2023

Subject: Important information for account ending in 5265
Chapter: 13
Case No: 1924826

Dear RONDA J WINNECOUR:

During a review of the account, we identified that there was an issue applying a payment, and interest and/or additional fees were incorrectly assessed. This issue may have contributed to actions taken to repossess the vehicle. As a result, we are enclosing a check for $4,778.79 as property of the customer's bankruptcy estate. Please cash or deposit the check at your earliest convenience.

- This check includes $4,084.52 for any interest and/or other fees that should not have been assessed.
- This check may also include amounts related to the repossession.
- This check also includes an additional amount as compensation for the time these funds were not available for use.
- We are also waiving the outstanding balance on the account following sale of the vehicle, to the extent that balance was not already discharged in bankruptcy.

**What you need to know**
If you do not wish to accept these funds to administer as part of the customer's bankruptcy estate, please void the check and return it in the enclosed business reply envelope. Upon receipt, we will reissue the check to the proper party(ies)/customer(s).

If you have questions, please call us at 1-888-858-5056, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time. For customers with hearing or speech disabilities, we accept telecommunications relay service calls.

Thank you,

Wells Fargo Customer Care

SHRP 14450971
ECN 572489890927115

OT-LTR-377vwA (09/09/22)  Ref: CR-LTR-136 (06/18/21)

**Wells Fargo Customer Care - Remediation**
PO Box 5143
Sioux Falls, SD 57117-5143

000073   CW91T1TA

RONDA J WINNECOUR
600 GRANT ST
PITTSBURGH, PA 15219

November 7, 2023

CASHIER'S CHECK

PLEASE DETACH BEFORE DEPOSITING

Deposit Date: 11/17/2023
Lockbox: ███51
Batch: 972
Transaction: 35

CASHIER'S CHECK

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK    HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

1124/1210

**WELLS FARGO**

Check Number: 0017426547

Date: November 7, 2023

Pay to the
order of  RONDA J WINNECOUR                                      $4,778.79

***Four Thousand Seven Hundred Seventy-Eight dollars and 79/100***

Drawer: WELLS FARGO BANK, N.A.

For 3010015265 CR14450971 572489890927115
Wells Fargo Bank, N.A.

FOR INQUIRIES: 480-394-3122

Authorized Signature

Authorized Signature

⑈0017426547⑈ ⑆███████████06⑈

Deposit Date: 11/17/2023
Lockbox: 2███51
Batch: 972
Transaction: 35
R/T: ███████
Account Number: ███████06
Check Number: 0017426547
Amount: $4778.79

Exh B, p. 03

FIRST- CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
ZIP CODE 28269
PERMIT 3451

029   JAH6AP1  15219

Deposit Date: 11/17/2023
Lockbox: ███51
Batch: 972
Transaction: 35

Exh B, p. 04

EXHIBIT C

<table>
<tr><td>

**Informational Settlement Website:**
www.VehicleRepoLawsuit.com
**Settlement Toll Free Number**
**Informational Line:**
(800)-549-1837
**Settlement Fax Number:**
(800)-387-7158
**Class Member Identification**
**Number:** [Unique Information in
your Class Notice]

</td><td>

You may access the Settlement Website by using the camera on your mobile device to scan this QR code.



</td><td>

Your Deficiency Balance Amount is $[Unique Information in your Class Notice] as of the date of preliminary approval. This is a disputed debt and will be fully compromised by accord and satisfaction if this settlement is approved. **DO NOT MAKE ANY MORE PAYMENTS TOWARDS THIS DEFICIENCY BALANCE, PENDING FINAL APPROVAL (SEE BELOW)**

</td></tr>
</table>

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*RE: Case No. 2:20-cv-04318–GJP*

*Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky, Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon-Robinson, individually and on behalf of all others similarly situated v. Wells Fargo Bank, N.A.*

A Court has authorized this Notice. This is not a solicitation from a lawyer. You are receiving this Notice because you may be a Class Member for purposes of a proposed Settlement. Your rights may be affected whether or not you act in response to this Notice. Please read this Notice carefully.

## WHY HAVE YOU BEEN SENT THIS NOTICE

The class action lawsuit *Sorace, et. al., v. Wells Fargo Bank, N.A.*, 2:20-cv-04318–GJP (the "Lawsuit"), is pending before the Honorable Gerald J. Pappert in the United States District Court for the Eastern District of Pennsylvania. The parties to the Lawsuit have reached a proposed settlement (the "Settlement").

The Settlement, if approved by the Court, will resolve the Lawsuit filed by Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon Robinson ("Plaintiffs" or "Class Representatives") against Wells Fargo Bank, N.A., d/b/a Wells Fargo Auto ("Defendant" or "Wells Fargo") over whether Wells Fargo complied with the Pennsylvania Uniform Commercial Code ("UCC"), independently, and in conjunction with the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA"). Plaintiffs alleged that Wells Fargo violated the requirements relating to various laws governing the repossession of vehicles. Wells Fargo denies and disputes the claims asserted in the Lawsuit. The Settlement avoids the costs and risks to the parties associated with proceeding with the Lawsuit.

The Settlement defines the "Class"[1] as all debtors, obligors, and co-obligors: (a) who entered into a retail installment sales contract in Pennsylvania for the financing of a Motor Vehicle purchased primarily for personal, family or household use and whose retail installment sales contract was assigned or sold to Wells Fargo; and, (b) from whom Wells Fargo, as secured party, repossessed the vehicle or ordered it to be

repossessed after Wells Fargo deemed the contract to be in default; and (c) who were sent a Notice of Intent to dispose of or sell the repossessed vehicle by Wells Fargo at any time on or after July 7, 2014 through September 15, 2023. The people who meet this definition are known as "Class Member(s)."

The relevant time period for the Settlement is from July 7, 2014 through September 15, 2023. According to Wells Fargo's records, you are a Class Member. If you do not exclude yourself (Opt-Out) from the Settlement as discussed herein, then you will be subject to and bound by the terms of the Settlement and become a "Settlement Class Member." Accordingly, please read this Notice carefully.

Under the Settlement, Wells Fargo will provide a gross settlement payment of $15 million to a Settlement Fund to be used to pay (i) a refund of the payments made by those Settlement Class Members who paid on their Account after their vehicle was repossessed and sold by Wells Fargo through the Effective Date ("Refund Payment"); (ii) an equal cash payment for each Account ("Per Account Payment"); (iii) the costs of administering the Settlement; (iv) Attorney's Fees and Expenses, as awarded by the Court, and (v) Incentive Payments to the Class Representatives, as awarded by the Court. The Refund Payments and Per Account Payments for Accounts with more than one borrower will be split evenly among the co-borrowers, unless requested otherwise, as explained below.

Wells Fargo will also fully compromise Deficiency Balances that it claims are presently owed on the Settlement Class Members' Accounts where the vehicle was repossessed and sold ("Deficiency Balance Compromise"). Wells Fargo's business records show that the total amount of the Deficiency Balance Compromise for all Class Members as of the date

---

[1] Capitalized Terms are defined in the Settlement Agreement, a copy of which can be accessed at www.VehicleRepoLawsuit.com.

- 1 -

Exh C, p. 01

of Preliminary Approval is approximately $[Unique Information in your Class Notice]. If you have a Deficiency Balance that will be compromised (no longer due) as part of this Settlement, the amount of your Deficiency Balance compromise as of the date of Preliminary Approval is set forth in the box below. Any payments made after the Effective Date toward these compromised Deficiency Balance amounts will be returned to the Settlement Class Member or will not be cashed.

> **[Unique Information in your Class Notice]'s Deficiency Balance Amount that will be Fully Compromised (no longer due) as Part of this Settlement is approximately $[Unique Information in your Class Notice]**
>
> **DO NOT MAKE ANY MORE PAYMENTS TOWARDS THIS DEFICIENCY BALANCE, PENDING FINAL APPROVAL (SEE BELOW)**

Wells Fargo also agrees to request that the credit reporting agencies, Experian, TransUnion, and Equifax, delete the entire tradelines associated with each Settlement Class Member's Account with the exception of any Accounts where the Class Member refuses the tradeline deletion in writing pursuant to the requirements set forth below. In exchange, Wells Fargo and each Class Member will release the other from liability (or potential liability) in connection with the Settlement Class Member's Account (but does not impact payments currently due if the Settlement Class Members Account has been reinstated), as more fully set forth in the Settlement Agreement. The Settlement Agreement can be reviewed at www.VehicleRepoLawsuit.com, or by requesting a copy from Class Counsel or the Settlement Administrator (contact information below).

## SUMMARY OF SETTLEMENT BENEFITS & YOUR OPTIONS

The Settlement will provide several benefits to the Settlement Class Members.

### Refund Payments

Settlement Class Members who made payments towards their disputed Deficiency Balances between the sale of the repossessed vehicle through the Effective Date will receive a refund of these monies paid ("Refund Payments"). Refund Payments on Accounts with more than one borrower will be split evenly among the co-borrowers, unless requested otherwise pursuant to the requirements set forth below. Refund Payments on Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a request by the legal representative, executor, or administrator of the estate of the deceased co-borrower pursuant to the requirements set forth below. Refund Payments for Accounts with only one borrower where the Settlement Administrator can determine that a borrower is deceased will not be paid absent a request by the

legal representative, executor, or administrator of the estate of the deceased borrower pursuant to the requirements set forth below. According to Wells Fargo's records the amount of the Refund Payment pertaining to your Account as of the date of Preliminary Approval is $[Unique Information in your Class Notice].

### Per Account Payments

The amount remaining in the Settlement Fund, after payment of the Refund Payments, Attorney's Fees and Expenses, the Incentive Payments to the Class Representatives, and payment of settlement administration fees, will be divided among the Settlement Class Members on an equal per-Account basis ("Per Account Payment"). This will result in an anticipated Per Account Payment of approximately $[Unique Information in your Class Notice]. If you were to exclude yourself from the Settlement and pursue the claims made in this Class Action in your own individual lawsuit, and assuming you ultimately prevailed, you would be entitled to receive either actual damages, for any actual damages you can prove, or (if you purchased the repossessed vehicle for consumer use) minimum statutory damages. Your minimum statutory damages are computed by adding the credit service charge (finance charge) plus 10% of the principal amount of your loan. This information is set forth in your Retail Installment Sales Contract. Note that Wells Fargo claims that any damages, actual or statutory, should be decreased by the amount of your deficiency balance. Per Account Payments on Accounts with more than one borrower will be split evenly among the co-borrowers, unless requested otherwise pursuant to the requirements set forth below. Per Account Payments on Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a request by the legal representative, executor, or administrator of the estate of the deceased co-borrower pursuant to the requirements set forth below. Per Account Payments for Accounts with only one borrower where the Settlement Administrator can determine that a borrower is deceased will not be paid absent a request by the legal, executor or administrator of the estate of the deceased borrower pursuant to the requirements set forth below.

### Deficiency Balance Compromise

The balance remaining on an Account after a repossession and sale of the repossessed vehicle, after crediting the Class Member's Account with the sale price of the vehicle and including interest and all other charges, is a "Deficiency Balance." The parties have a good faith dispute as to the validity of this debt and have entered into a Settlement Agreement after extensive arms-length negotiations. In connection with the Settlement, Wells Fargo has agreed to fully compromise the disputed Deficiency Balances it claims are presently due and owing by the Settlement Class Members by an accord and satisfaction ("Deficiency Balance Compromise").

If you have a Deficiency Balance that will be compromised, and you are not excluding yourself from the Settlement, you should stop paying on the Deficiency Balance amount immediately, pending the *final* outcome of Plaintiffs' request for entry of a Final Approval Order. The final outcome of this request will be known on the "Effective Date," which means the last date after entry of the Final Approval Order and expiration of any appeal periods, or other form of objection to the Final Approval Order, full and final resolution of any appeal or objection that may be filed, and expiration of any time periods for seeking review of that disposition through an appeal, *en banc* hearing, or higher level of review. If the Final Approval Order does not become *final* (after expiration of the last deadline for any appeal/review) then you will continue to owe the Deficiency Balance amount. If the Final Approval Order does become final (after expiration of the last deadline for any appeal/review), then your Deficiency Balance will be compromised, and any payments made after the Effective Date toward the compromised Deficiency Balance amounts will be returned to the Settlement Class Members or will not be cashed.

As noted above, a Deficiency Balance only arises after a repossessed vehicle has been sold or otherwise disposed of. As such, if you got your vehicle back after it was repossessed (*i.e.*, if you redeemed your vehicle or reinstated your loan with Wells Fargo) and your vehicle was not subsequently repossessed and sold or otherwise disposed of prior to the Effective Date, then

you do not have a Deficiency Balance and your loan balance will not be compromised as a result of this Settlement. Any balance remaining on your Account will continue to be due and owing to Wells Fargo. You should retain this document for tax purposes.

### Request to Delete Credit Reporting

Wells Fargo has agreed to submit requests to the three major credit reporting agencies—Experian, Equifax, and TransUnion—to delete the entire credit reporting tradelines related to Settlement Class Members' Accounts with the exception of any Accounts where the Class Member refuses the tradeline deletion in writing pursuant to the requirements set forth below. If you do not wish to have your tradeline deleted, please review the requirements to refuse such relief as set forth in Paragraph 11 below.

### Your Options

At this time, you are assumed to be a Class Member who is participating in the Settlement. Therefore, your rights will be affected even if you do nothing. Please read this Notice carefully. The following is a general summary of the actions you can take and the results of those actions. If you want to have a detailed discussion regarding your specific situation or have other questions or concerns, you may contact Class Counsel at 1-800-893-0319.

| YOUR ACTION | RESULT OF THAT ACTION |
|---|---|
| **DO NOTHING** | You remain in the Settlement. If the Settlement is approved, you will receive the benefits summarized in this notice. In exchange, you give up the right to sue Wells Fargo for matters concerning your Account and the repossession and sale of your vehicle up to the date of preliminary approval of the settlement as set forth in the Settlement Agreement. |
| **ASK TO BE EXCLUDED** | You are removed from the Settlement. You will not receive the benefits summarized in this Notice. However, this is the only option that allows you to pursue (or continue) your own lawsuit or to participate in any other lawsuit against Wells Fargo concerning your Account or the repossession and sale of your vehicle. The deadline for you to submit your signed request to be excluded is **Tuesday, December 26, 2023**, so you must act promptly. Note that if you exclude yourself from the Settlement, then the Settlement will not impact you, and therefore, you have no right to object to the Settlement. See Paragraph 19, below. If you exclude yourself so that you can pursue your own individual lawsuit against Wells Fargo and you executed an arbitration agreement, Wells Fargo may attempt to enforce the arbitration agreement to require you to submit your claim(s) through arbitration. |
| **OBJECT TO THE SETTLEMENT** | If you object to the Settlement, you are still in the Settlement, but you have notified the Court in writing that you do not like the Settlement and the reason(s) why. The deadline for you to submit a signed objection is **Tuesday, December 26, 2023**, so you must act promptly. See Paragraph 24, below. If you exclude yourself from the Settlement, then the Settlement will not impact you, and therefore, you have no right to object to the Settlement. |
| **REQUEST AN ALTERNATIVE DIVISION OF THE PER ACCOUNT PAYMENT AND THE REFUND PAYMENT (CO-BORROWERS ONLY)** | If you are a co-borrower on an Account, you may also request an alternate division of the Per Account Payment and Refund Payment (if applicable) between co-borrowers on an Account, rather than the presumptive equal division. This is not the same as objecting to the Settlement and you will still be a part of the Settlement. The deadline for you to submit a request for alternate division to the equal payment allocation is **Tuesday, December 26, 2023**, so you must act promptly. See Paragraph 26, below. |

Exh C, p. 03

| | |
|---|---|
| **REQUEST AN ALTERNATIVE DISTRIBUTION OF THE PER ACCOUNT PAYMENTS AND THE REFUND PAYMENTS RELATING TO ACCOUNTS WITH DECEASED CLASS MEMBERS** | Per Account Payments and Refund Payments (if applicable) for Accounts with more than one borrower where one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a written request by the legal representative of the estate of the deceased Class Member supported by sufficient documentation. For Accounts with only one borrower where the Settlement Administrator can determine that the borrower is deceased, no payments will be made absent a written request by the legal representative, executor, or administrator of the estate of the deceased Class Member supported by sufficient documentation. The deadline for you to submit such written requests is **Tuesday, December 26, 2023**, so you must act promptly. Creditors, heirs, or legal representatives of deceased Class Members estates are responsible for hiring their own counsel to represent them, should they deem it necessary. See Paragraph 15, below. |
| **GO TO THE HEARING WHERE THE COURT CONSIDERS WHETHER TO APPROVE THE SETTLEMENT** | You are still in the Settlement and get the benefits of the Settlement that you are eligible for (as explained in this Notice), if approved by the Court. You do not need to attend the hearing to get the benefits of the Settlement, but you are invited to attend and will be afforded an opportunity to speak in Court about the fairness of the Settlement (should you choose to do so). If you object to the Settlement, you need to state in your objection your intention to appear at the fairness hearing. See Paragraphs 24 and 27-29, below. |

## WHAT THIS NOTICE CONTAINS

1. Why is there a Notice?....................................5
2. What is this Lawsuit About? ........................5
3. Why is this a Class Action? ..........................5
4. Why is there a Settlement? ...........................5

### WHO IS IN THE SETTLEMENT?

5. How do I know if I am part of the Settlement? ..........5
6. What if I am not sure whether I am included in the Settlement? ..........................................5

### THE SETTLEMENT BENEFITS

7. What does the Settlement provide? ............................6
8. What is the Refund Payment? ...................................6
9. What is the Per Account Payment? .........................6
10. What is the Deficiency Balance Compromise? ...........6
11. What is the credit reporting benefit? ..........................7
12. When will I receive my benefits? ................................7
13. What am I giving up and what claims might I still have to pursue if I remain in the Settlement?...............7
14. Will this affect my taxes? ..............................................7
15. What happens if this notice is addressed to a Class Member that has passed away? .......................8
16. What happens if this debt was discharged in or is presently included in a bankruptcy? ...........................8
17. What happens if I voluntarily surrendered my vehicle, redeemed my vehicle, or reinstated my Account?.........8

### HOW TO GET BENEFITS

18. Do I need to do anything to get the Refund Payment, Per Account Payment, credit reporting benefit or the Deficiency Balance compromise? .................................8

### EXCLUDING YOURSELF FROM THE SETTLEMENT

19. How do I exclude myself from the Settlement? ..........8
20. If I do not exclude myself, can I sue Wells Fargo for the same thing later? .....................................................8
21. If I exclude myself, can I still benefit from this Settlement? ...............................................................9

### THE LAWYERS REPRESENTING YOU

22. Do I have a lawyer in the case? ...................................9
23. How will the lawyers be paid?....................................9

### OBJECTING TO THE SETTLEMENT

24. How do I tell the Court if I do not like the Settlement? .....................................................................9
25. What is the difference between objecting and asking to be excluded? .........................................................9

### REQUESTING AN ALTERNATIVE DIVISION OF PAYMENTS (FOR CO-BORROWERS)

26. If I am a co-borrower, can I request an alternative division (alternative to the equal division) of the Per Account Payment and Refund Payment as between both co-borrowers?.......................................................9

### THE COURT'S FAIRNESS HEARING

27. When, where, and how will the Court decide whether to approve the Settlement?........................................10
28. Do I have to attend the fairness hearing?..................10
29. May I speak at the hearing?  ......................................10

### GETTING MORE INFORMATION

30. How do I get more information? ...............................10

## BASIC INFORMATION

### 1.  Why is there a Notice?

A Court has authorized this Notice because you have a right to know about the proposed Settlement and your options. In summary fashion, this Notice explains the Lawsuit, the key terms of the proposed Settlement and your legal rights. If the Court approves the Settlement, after any appeals are resolved, the Settlement Administrator will make the Refund Payments (as applicable) and Per Account Payments to Settlement Class Members, and Wells Fargo will provide the other relief described in this Notice.

### 2.  What is this Lawsuit About?

The Plaintiffs have claimed that Wells Fargo violated the Pennsylvania Uniform Commercial Code (UCC) independently and in conjunction with the Pennsylvania Motor Vehicle Sales Finance Act (MVSFA) by (1) failing to send its borrowers proper Notices of Repossession after Wells Fargo repossessed Class Members motor vehicles (2) failing to send Post-Sale Notices in the required manner after the repossessed vehicles were sold or otherwise disposed of, and (3) other various issues with the repossession process in connection with Class Members' repossessions. Plaintiffs, on their own behalf and on behalf of the Class Members, sought to recover statutory damages and certain declaratory, injunctive, and equitable relief, including the compromise of Deficiency Balances on Class Members' Accounts which Wells Fargo contends are presently due and owing, the expungement requests for the removal of all references to the repossession and Account on Class Members' credit reports, the return of monies paid towards the disputed Deficiency Balances, and the cessation of collection efforts for all Class Members with Deficiency Balances relating to their Accounts. Wells Fargo, on the other hand, contends that the post-repossession consumer disclosure notices it sent to Plaintiffs and the Class Members complied in all respects with its statutory obligations, that it otherwise complied with the law in all respects, and that it denies any and all liability. Wells Fargo further contends that it is entitled to pursue collection of the Deficiency Balances and asserts other defenses. These issues have not yet been decided by the Court, and, if the Settlement is approved, these issues will not be resolved on the merits.

### 3.  Why is this a Class Action?

In a class action, one or more people called "representative plaintiffs" or "Class Representatives" sue on behalf of themselves and other people with similar claims ("Class Members"). All these people together are the "Class." In this Lawsuit, the Plaintiffs, Vincent Sorace, Joseph Yerty, Tammy Yerty, James Zaronsky Linda Zaronsky, Viktor Stevenson, Ashley Yates, and Kimberly Solomon Robinson, are the Class Representatives. If this Settlement is approved, the Settlement will resolve the claims of all Class Members except for those individuals who exclude themselves from the class or pursue a claim that is excluded from being released by the Settlement Agreement.

### 4.  Why is there a Settlement?

The Court has not decided in favor of the Plaintiffs or Wells Fargo. Instead, both sides have agreed to a Settlement. By agreeing to the Settlement, both sides avoid the cost and risk of a trial, and the individuals affected may decide whether to participate in the Settlement. Class Counsel recommends the Settlement. Without a Settlement, there would continue to be a dispute concerning class certification and disputes concerning liability and damages that would need to be determined at trial. A trial could result in a greater benefit to Settlement Class Members, a smaller benefit to Settlement Class Members, or no benefit at all to Settlement Class Members. A trial could also potentially result in Class Members being held liable for the Deficiency Balances which, though disputed, Wells Fargo claims are owed. This Settlement provides very substantial benefits, including monetary Refund Payments (as applicable), Per Account Payments, the compromise of the disputed Deficiency Balances by way of an accord and satisfaction, and the credit tradeline relief described herein that may improve Settlement Class Members credit by deleting credit information relating to the repossession and the Class Member's Account. The Settlement does not mean that Wells Fargo did anything wrong.

## WHO IS IN THE SETTLEMENT?

If you received this Notice in the mail, Wells Fargo's records indicate you are a Class Member and are included in this Settlement, unless you exclude yourself. Even if you did not receive a mailed notice, you may still be a Class Member and included in this Settlement, as described below.

### 5.  How do I know if I am part of the Settlement?

You are included in the Settlement if you fall within the definition of the Class, as set forth in the Settlement, and do not exclude yourself from the Settlement (see below for where the Settlement Agreement and related documents can be reviewed).

### 6.  What if I am not sure whether I am included in the Settlement?

If you are not sure whether you are included in the Settlement, you may call, write, or email Class Counsel or the Settlement Administrator with questions.

**Class Counsel**
Attorney Richard Shenkan
Shenkan Injury Lawyers, LLC.
6550 Lakeshore St.
West Bloomfield, MI 48323
Email: Repo@CreditInjury.com
Fax Number: 1-888-769-1774
Toll Free Number: 1-800-893-0319

Exh C, p. 05

**Settlement Administrator**

Sorace v Wells Fargo Bank, N.A., d/b/a Wells Fargo Auto
Settlement Administrator
C/O Rust Consulting, Inc. - 8323
PO BOX 8010
Faribault MN 55021-9410
Website: www.VehicleRepoLawsuit.com
Settlement Information Line: (800) 549-1837
Settlement Fax Line: (800) 387-7158
Settlement Email Address: info@VehicleRepoLawsuit.com

### THE SETTLEMENT BENEFITS

**7.   What does the Settlement provide?**

If the Settlement is approved and becomes final, it will provide, among other things, the following benefits to the Settlement Class Members (*i.e.*, Class Members who do not exclude themselves from the Settlement):

- Refunds of the payments Settlement Class Members made toward their disputed Deficiency Balances (see Question 8);

- Per Account Payments (see Question 9);

- The compromise of the Settlement Class Members' Deficiency Balances (see Question 10); and,

- Requests to the credit reporting agencies to delete the credit trade lines or repossession related credit information associated with the Settlement Class Members' Accounts (see Question 11).

More details are in the Settlement Agreement, which is available to be reviewed at www.VehicleRepoLawsuit.com.

**8.   What is the Refund Payment?**

If you made any payment(s) on your Account following repossession and subsequent sale of your motor vehicle, the amount that you paid will be refunded. In the case of Accounts that list more than one person as a borrower or co-borrower, the Refund Payment will be divided equally among borrowers or co-borrowers with separate checks issued to each, unless either borrower or their legal representative submits a written request to the Settlement Administrator pursuant to the requirements set forth in Section 26, below. Refund Payments for Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a request by the executor, administrator, or legal representative of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Refund Payments for Accounts with only one borrower where the Settlement Administrator can determine that a borrower is deceased will not be paid absent a request by the executor, administrator,

or legal representative of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Any such requests will be denied unless there is an opened/reopened estate at the time of the request and/or upon approval of Class Counsel. When you receive your Refund Payment, you should cash the check immediately. ***If you do not promptly cash your check, your payment may be forfeited by you and paid to a charity or other Class Members.***

**9.   What is the Per Account Payment?**

A cash payment will be sent to each Settlement Class Member. The Per Account Payment will be distributed in equal payments to the Settlement Class Members on a per Account basis, after payment of Refund Payments, Attorney's Fees and Expenses, Incentive Payments, and payment of settlement administration costs. In the case of Accounts that list more than one person as a borrower or co-borrower, the Per Account Payment payable on that Account will be divided equally among borrowers or co-borrowers, with separate checks issued to each, unless either borrower or their legal representative submits a written request to the Settlement Administrator pursuant to the requirements set forth in Section 26, below. Per Account Payments for Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a request by the executor, administrator, or legal representative, of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Per Account Payments for Accounts with only one borrower where the Settlement Administrator can determine that a borrower is deceased will not be paid absent a request by the executor, administrator, or legal representative, of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment. Any such requests will be denied unless there is an opened/reopened estate at the time of the request and/or upon approval of Class Counsel. When you receive your Refund Payment, you should cash the check immediately. ***If you do not promptly cash your check, your payment may be forfeited by you and paid to a charity or other Class Members.***

**10.   What is the Deficiency Balance Compromise?**

If Wells Fargo sold your repossessed vehicle and the amount of the sale or disposition did not cover the amount that you purportedly owed on the loan, then you may owe Wells Fargo a Deficiency Balance. Plaintiffs dispute that any Deficiency Balance is owed by any Class Member, while Wells Fargo claims that Deficiency Balances are owed. As part of the Settlement, Wells Fargo agrees to compromise the Settlement Class Members' Deficiency Balances ("Deficiency Balance Compromise") by way of an accord and satisfaction. A Deficiency Balance Compromise in an amount of $600.00 or more may result in the issuance of IRS Form 1099C.

- 6 -

Exh C, p. 06

**Example:** At the time Wells Fargo sold Amanda's repossessed vehicle, she owed $10,000 on her loan. Wells Fargo incurred $250 to repossess her vehicle and $250 to sell the vehicle. Amanda's vehicle sold for $6,000 at auction. Amanda's deficiency balance would be $4,500.

### Calculation

| | | | | |
|---|---|---|---|---|
| [($10,000 + $250 + $250) | - | ($6,000)] | = | $4,500 |
| Total amount owed by Amanda | | Amount from vehicle sale | | Deficiency Balance |

If you have a Deficiency Balance that will be compromised (no longer due) as part of this Settlement, the approximate amount of your Deficiency Balance compromise as of the date of Preliminary Approval is set forth in the box below.

> **[Unique Information in your Class Notice]'s Deficiency Balance Amount that will be Fully Compromised (no longer due) as Part of this Settlement is approximately $[Unique Information in your Class Notice]**
>
> **DO NOT MAKE ANY MORE PAYMENTS TOWARDS THIS DEFICIENCY BALANCE, PENDING FINAL APPROVAL (SEE BELOW)**
>
> **Please retain this document for tax purposes.**

If you have a Deficiency Balance that will be compromised, and you are not excluding yourself from the Settlement, you should stop paying on the Deficiency Balance amount immediately, pending the *final* outcome of Plaintiffs' request for entry of a Final Approval Order. The final outcome of this request will be known on the "Effective Date," which means the last date after entry of the Final Approval Order and expiration of any appeal periods, or other form of objection to the Final Approval Order, full and final resolution of any appeal or objection that may be filed, and expiration of any time periods for seeking review of that disposition through an appeal, *en banc* hearing, or higher level of review. If the Final Approval Order does not become *final* (after expiration of the last deadline for any appeal/review) then you will continue to owe the Deficiency Balance amount. If the Final Approval Order does become *final* (after expiration of the last deadline for any appeal/review), then any payments made after the Effective Date toward the compromised Deficiency Balance amounts will be returned to the Settlement Class Members or will not be cashed. Wells Fargo has also agreed to attempt to satisfy any judgment against a Class Member for a Deficiency Balance if any are found to exist on an Account, though it is not aware of any such judgments.

A Deficiency Balance only arises after a vehicle has been sold or otherwise disposed of by Wells Fargo. As such, if you got your vehicle back after it was repossessed (*i.e.,* if you redeemed your vehicle or reinstated your loan with Wells Fargo) and your vehicle was not subsequently repossessed

and sold or otherwise disposed of prior to the Effective Date, you do not have a Deficiency Balance and your loan balance will not be compromised as a result of the Settlement. Any balance remaining on your Account will continue to be due and owing to Wells Fargo.

**11. What is the credit reporting benefit?**

As part of the Settlement, Wells Fargo will ask Experian, Equifax, and TransUnion to delete the entire credit reporting tradelines related to Settlement Class Members' Accounts with the exception of any Accounts where the Class Member refuses the tradeline deletion in writing pursuant to the requirements set forth herein. It is likely that your credit score will increase as a result of this benefit; however, there is no guarantee as to this positive effect.

**In order to refuse the tradeline deletion benefit, you must do so in writing.** The written request to refuse the tradeline deletion benefit must be sent (postmarked, faxed, or uploaded to the Settlement Website's portal with an attachment containing the class members' signature) to the Settlement Administrator at the mailing address, fax number, or website listed in this Notice by **Tuesday, December 26, 2023**. The written request to refuse the tradeline deletion benefit must: (a) identify the case name; (b) identify the name and address of the person requesting refusal; (c) be personally signed by the person requesting refusal; and (d) contain a statement that indicates a desire to be included in the Settlement Class, but to refuse the tradeline deletion, such as "I hereby request that I be included in the proposed Settlement Class in the Action, however I do not want Wells Fargo to delete my tradeline."

**12. When will I receive my benefits?**

Settlement Class Members will receive their benefits after the Court grants final approval of the Settlement (see Question 27) and after any appeals are resolved. If there are appeals, resolving them can take time. Please be patient.

**13. What am I giving up and what claims might I still have to pursue if I remain in the Settlement?**

Unless you exclude yourself from the Settlement, you will become a Settlement Class Member and you will give up your right to sue (or continue a lawsuit against) Wells Fargo pertaining to the subject Account, including repossession-related matters. The claims which you would be releasing are set forth in the Settlement Agreement. The full Settlement Agreement is available at www.VehicleRepoLawsuit.com.

**14. Will this affect my taxes?**

**We cannot give you a definitive answer in this Notice.** A Deficiency Balance Compromise in an amount of $600.00 or more may result in the issuance of IRS Form 1099C. You should consult a tax professional regarding tax implications because all situations are unique. It is most prudent to consult your tax professional about your unique tax situation.

**You are urged to consult with a tax professional regarding the benefits and tax implications of this Settlement. You should retain this document for tax purposes.**

### 15. What happens if this notice is addressed to a Class Member that has passed away?

Refund Payments (if applicable) and Per Account Payments for Accounts with more than one borrower where the Settlement Administrator can determine that one of the co-borrowers is now deceased will be paid to the surviving co-borrower, absent a written request by the legal representative, executor, or administrator of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment(s). For Accounts with only one borrower where the Settlement Administrator can determine that the borrower is deceased, no payments will be made absent a written request by the legal representative, executor, or administrator, of the estate of the deceased co-borrower, supported by documentation sufficient to show an open estate and one or more persons legally entitled to the payment(s). Any such requests will be denied unless there is an opened/reopened estate at the time of the request and/or upon approval of Class Counsel. Any such written requests must be sent (postmarked, faxed, or uploaded to the Settlement Website to the Settlement Administrator at the mailing address, fax number, or website listed in this Notice by **Tuesday, December 26, 2023**. Any such written requests must: (a) include documentation sufficient to show an open estate and/or one or more persons legally entitled to payment(s); and (b) be personally signed by the legal representative, executor or administrator of an estate of the deceased Class Member, and/or creditor of the deceased Class Member.

### 16. What happens if this debt was discharged in or is presently included in a bankruptcy?

If the loan obligation was discharged in bankruptcy (yours and/or your co-borrower's bankruptcy) or is presently part of a bankruptcy proceeding, then you should consult a bankruptcy attorney regarding this matter. You may have an obligation to notify the bankruptcy trustee regarding the cash payment and other benefits you are expected to receive. The law at issue in this case permits you to obtain minimum statutory damages regardless of whether you suffered an injury (See 13 Pa. C.S. §9625, Comment 4). Furthermore, the equitable benefits such as the credit reparation relating to the expungement of the credit tradeline constitute permissible equitable relief pursuant to 13 Pa. C.S. §1103 and §9625(a).

### 17. What happens if I voluntarily surrendered my vehicle, redeemed my vehicle, or reinstated my Account?

Because the lawsuit challenges the content of the Notices of Repossession and Post-Sale Notices and is not based on actual harm you may have suffered, you are a Class Member even if you voluntarily surrendered your vehicle, redeemed your vehicle, or reinstated your loan with Wells Fargo. If

you reinstated your Account and the vehicle has not been subsequently repossessed and sold as of the Effective Date, then you will not receive the Deficiency Balance benefit, and it is Wells Fargo's position that any loan balance will not be compromised as a result of the Settlement.

### HOW TO GET BENEFITS

### 18. Do I need to do anything to get the Refund Payment, Per Account Payment, the credit reporting benefit, or the Deficiency Balance Compromise?

No. If the Court approves the Settlement, you do not need to do anything further in order to remain a part of the Settlement and receive the benefits described herein, as applicable to you.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

IF YOU DO NOT WANT THE REFUND PAYMENT, PER ACCOUNT PAYMENT, AND OTHER BENEFITS FROM THIS SETTLEMENT, AND YOU INSTEAD WANT TO KEEP THE RIGHT TO SUE WELLS FARGO, OR CONTINUE TO SUE WELLS FARGO, RELATING TO YOUR ACCOUNT, THEN YOU MUST TAKE STEPS TO EXCLUDE YOURSELF FROM (OR "OPT OUT" OF) THE SETTLEMENT.

### 19. How do I exclude myself from the Settlement?

In order to exclude yourself (opt-out), you must do so in writing. The written request must be sent via mail, fax, or uploaded on the Settlement Website (with an attachment containing the class members' signature) to the Settlement Administrator at the mailing address, fax number, or website listed in this Notice by **Tuesday, December 26, 2023**. The written exclusion request must: (a) identify the case name; (b) identify the name and address of the person requesting exclusion; (c) be personally signed by the person requesting exclusion; and (d) contain a statement that indicates a desire to be excluded from the Settlement Class, such as "I hereby request that I be excluded from the proposed Settlement Class in the Action." Mass or class opt outs shall be void. A request to Opt-Out by a borrower or co-borrower on an Account shall be deemed to be a request to Opt-Out by all borrowers on the Account.

### 20. If I do not exclude myself, can I sue Wells Fargo for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Wells Fargo for claims relating to the subject Account. If you have a pending lawsuit, speak to your lawyer in that case immediately because your legal rights may be adversely affected by this Settlement. You must exclude yourself from this Settlement in order to start or to continue your own lawsuit for claims relating to your Account. Your rights may be affected by this Settlement. The full Settlement

Agreement is available at www.VehicleRepoLawsuit.com. You may contact the Settlement Administrator and request that a copy of the Settlement Agreement be sent to you.

**21. If I exclude myself, can I still benefit from this Settlement?**

No. If you exclude yourself, you will not receive any money as a result of the Settlement, you will not receive the Deficiency Balance Compromise, and you will not receive the credit reporting benefit.

## THE LAWYERS REPRESENTING YOU

**22. Do I have a lawyer in the case?**

Yes. The Court has approved Richard Shenkan and the law firm of Shenkan Injury Lawyers, LLC, and Hon. Lawrence F. Stengel (Ret.) and the law firm of Saxton & Stump, to represent the Class. These lawyers and law firms are called "Class Counsel." You will not be charged individually for their legal services; rather, Class Counsels' fees will be paid from the Settlement Fund with the approval of the Court. If you want to be represented by your own lawyer, you may hire one at your own expense. Class Counsels' contact information is listed in Question 6 above. Class Members can speak with Class Counsel at no charge about this case. In connection with the Court's appointment, Class Counsel do not represent deceased Class Member's creditors, heirs, or legal representatives relating to effectuating any settlement payments to any heir(s), legal representatives, or creditors of the deceased Settlement Class Members.

**23. How will the lawyers be paid?**

Class Counsel has asked the Court to award attorney's fees in an amount not to exceed Six Million Dollars ($6,000,000) and for reimbursement of expenses in an amount not to exceed One Hundred Thousand Dollars ($100,000). An attorney's fee in this amount represents less than 15% of the value of the aggregate gross benefit conferred including the Deficiency Balance Compromise. The value of the requests for credit tradeline removal will vary based upon each Settlement Class Member; however, these are significant additional benefits. The attorney's fees and expenses awarded by the Court, including payment to the Settlement Administrator, will be paid out of the $15 Million Dollar Settlement Fund. Class Counsel will also request Incentive Payments of no more than $10,000 for each Representative Plaintiff for their respective services as Class Representatives for the Class, which will also be paid from the Settlement Fund. Thus, the total Incentive Payments will not exceed $80,000.00. The Court could decide to award less than the amounts requested for Attorney's Fees and Expenses and Incentive Payments.

## OBJECTING TO THE SETTLEMENT

**24. How do I tell the Court if I do not like the Settlement?**

If you are a Settlement Class Member (*i.e.*, you are not excluding yourself from the Settlement), you can object to the Settlement if you do not like any part of it. In order to object to the Settlement, you must do so in writing. The Court will consider your views. The written objection must be sent via mail, fax, or uploaded on the Settlement Website (with an attachment containing the class members' signature) (to the Settlement Administrator at the mailing address, fax number, or website listed in this Notice by **Tuesday, December 26, 2023**. The written objection must: (a) identify the case name and number; (b) identify the name, address, telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) be personally signed by the person objecting; (d) state the basis and grounds for the objection with specificity; and (e) provide a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel. The written objection must also be mailed to the Clerk of Court at the address set forth in Paragraph 27 by **Tuesday, December 26, 2023**.

**25. What is the difference between objecting and asking to be excluded?**

Objecting to the Settlement is informing the Court that you do not like something about the Settlement, and that you, for a clearly stated reason, do not want the Settlement to be approved or that you object to a particular part of the Settlement. You can object only if you do not exclude yourself from the Settlement. Excluding yourself is informing the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## REQUESTING AN ALTERNATIVE DIVISION OF PAYMENTS (FOR CO-BORROWERS)

**26. If I am a co-borrower, can I request an alternative division (alternative to the equal division) of the Per Account Payment and Refund Payment as between both co-borrowers?**

Yes. If you are not excluding yourself from the Settlement and you and a co-borrower would like to request an alternative division of the Per Account Payment and Refund Payment (if applicable) as between both co-borrowers, you must do so in writing. The written request for an alternative division must be sent via mail, fax, or uploaded on the Settlement Website (with an attachment containing the class members' signatures) to the Settlement Administrator at the mailing address, fax number, or website listed in this Notice by **Tuesday, December 26, 2023**. The written request for an alternative division must: (a) identify the case name; (b) identify the names and addresses of the Settlement Class

Members requesting an alternative division of payment(s); (c) be personally signed by both co-borrowers or their legal representatives requesting an alternative division of payment(s); and (d) provide a description of how the co-borrowers have agreed for any alternative division of payment(s) to be made as between each other.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to do so.

### 27. When, where, and how will the Court decide whether to approve the Settlement?

The Court will hold a fairness hearing on **Wednesday, January 31, 2024** at **10AM** in **Courtroom 11-A** at James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106. The hearing may be moved to a different date or time, or be held via videoconference or telephone conference, without additional notice (including an earlier date). Therefore, if you are planning on attending the fairness hearing, it is a good idea to confirm in advance that the date and time of the hearing has not changed. Additionally, in light of the restrictions necessitated by the COVID-19 pandemic, the Court, in its discretion, may change the mode or manner of the hearing. You may confirm this information by checking www.VehicleRepoLawsuit.com and QR Code or calling 1-800-549-1837. At this fairness hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and will listen to Settlement Class Members who ask to speak at the hearing. The Court may also decide several other aspects of the Settlement including how much to pay the Class Representatives for their incentive award and Class Counsel for their services and expenses. Following the hearing, the Court will decide whether to approve the Settlement. It is unknown how long the Court's decision will take. Please be patient.

### 28. Do I have to attend the fairness hearing?

No. Class Counsel will answer questions the Court may have, but you are welcome to come, at your expense. If you timely filed your written objection the Court will consider it.

You do not have to come to Court to talk about it, but you may. You may also pay your own lawyer to attend, but it is not required.

### 29. May I speak at the hearing?

You may ask the Court for permission to speak at the hearing. To do so, you must send a letter to the Clerk of Court by **Tuesday, December 26, 2023**, at the address listed in Question 27 saying that it is your "Notice of Intention to Appear at the Fairness Hearing in *Sorace v. Wells Fargo*, Case No. 2:20 cv 04318." You must include your name, address, telephone number, and signature. Your Notice of Intention to Appear must be (a) filed with the Clerk of the Court; and (b) sent (postmarked, faxed, or uploaded to the Settlement Website's portal with an attachment containing the class member's signature) to Class Counsel at the mailing address, fax number, or website listed in paragraph 6 of this Notice. Any such notice shall include copies of any papers, exhibits, or other evidence sought to be presented. You cannot speak at the hearing if you have opted out or excluded yourself, because the case no longer affects you.

## GETTING MORE INFORMATION

### 30. How do I get more information?

This notice briefly summarizes the key aspects of the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement and other important case documents at www.VehicleRepoLawsuit.com. You may contact Class Counsel at 1-800-893-0319 or Repo@CreditInjury.com. You may contact the Settlement Administrator at 1-800-549-1837 or info@VehicleRepoLawsuit.com. You should **not** contact Wells Fargo or the Court.

You may access the Settlement Website by using the camera on your mobile device to scan this QR code:



ADDENDUM  I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VINCENT SORACE, JOSEPH YERTY,
TAMMY YERTY, JAMES ZARONSKY,
LINDA ZARONSKY, VIKTOR
STEVENSON, ASHLEY YATES, and
KIMBERLY SOLOMON-ROBINSON,
individually and on behalf of a class of
similarly situated persons,

        Plaintiffs,

    v.

WELLS FARGO BANK, N.A.,

        Defendant.

CIVIL ACTION

No. 2:20-CV-4318

Hon. Gerald J. Pappert

## OBJECTION OF JENNIFER LYNN HUMMEL

I, Jennifer Lynn Hummel, object to the proposed settlement of the above-captioned class action lawsuit.

1.    In compliance with the September 15, 2023, Order Preliminarily Approving Settlement and Providing for Notice, I hereby supply the following information with my Objection.

    (a)    As reflected in the caption above, the case name is *Sorace, et al. v. Wells Fargo Bank, N.A.*; and the case number is 2:20-cv-04318-GJP.

    (b)    I am an objecting class member, and my name, address and telephone number are:

            Jennifer Lynn Hummel
            2361 E. Becker Ave.
            Pittsburgh, PA 15212
            (412) 759-4944

        I am represented by counsel, and the names, address, and telephone number of my attorneys are:

            Aurelius P. Robleto, Esq.

PA ID No. 94633
ROBLETO KURUCE, PLLC
6101 Penn Ave., Ste. 201
Pittsburgh, PA 15206
Tel:  (412) 925-8194
Fax:  (412) 346-1035

Renée M. Kuruce, Esq.
PA ID No. 314691
ROBLETO KURUCE, PLLC
6101 Penn Ave., Ste. 201
Pittsburgh, PA 15206
Tel:  (412) 925-8194
Fax:  (412) 346-1035

(c)    This Objection has been personally signed by me and/or my counsel.

(d)    The bases and grounds for this Objection are set forth with specificity in the accompanying *Objection to Approval of Proposed Settlement Agreement of Settlement Class Members, Jennifer Lynn Hummel and Shawn David Hummel*, which I hereby ratify, adopt, and incorporate herein by reference, together with all of its attached copies of papers, exhibits, and other evidence sought to be presented to the Court in support of my Objection.

(e)    My attorney(s) will appear on my behalf at the Final Approval Hearing on January 31, 2024.  However, I do not intend to appear personally at the Final Approval Hearing.

2.    In compliance with Federal Rule of Civil Procedure 23(e)(5)(A), I hereby state that my Objection applies to all members of the proposed settlement class.  Nevertheless, a portion of my Objection applies to a specific subset of the proposed settlement class.  Specifically, along with my spouse and a discrete segment of the settlement class, I hold known claims against Wells Fargo that are not addressed in the settlement but that, nevertheless, would be released under it.

EXECUTED:  December _9_, 2023

Jennifer Lynn hummel
_____
Jennifer Lynn Hummel

_____
Aurelius P. Robleto, Esq.

**Signature:**  _Alle_
Jennifer Hummel (Dec 9, 2023 22:19 EST)
**Email:**  jennhummel@yahoo.com

2

# Jennifer Hummel Objection Signature Form

**Final Audit Report**                                      2023-12-10

| | |
|---|---|
| Created: | 2023-12-07 |
| By: | Renee Kuruce (rmk@robletolaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAeUfPInKmu1jPrsSo7AYkGXKxf5sz84f0 |

## "Jennifer Hummel Objection Signature Form" History

📄 Document created by Renee Kuruce (rmk@robletolaw.com)
2023-12-07 - 9:51:50 PM GMT- IP address: 50.233.78.166

📧 Document emailed to Jennifer Hummel (jennhummel@yahoo.com) for signature
2023-12-07 - 9:51:57 PM GMT

📄 Email viewed by Jennifer Hummel (jennhummel@yahoo.com)
2023-12-10 - 3:16:07 AM GMT- IP address: 69.147.93.12

✍️ Document e-signed by Jennifer Hummel (jennhummel@yahoo.com)
Signature Date: 2023-12-10 - 3:19:22 AM GMT - Time Source: server- IP address: 174.242.35.146

✅ Agreement completed.
2023-12-10 - 3:19:22 AM GMT

**Adobe Acrobat Sign**

ADDENDUM  II

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| VINCENT SORACE, JOSEPH YERTY, TAMMY YERTY, JAMES ZARONSKY, LINDA ZARONSKY, VIKTOR STEVENSON, ASHLEY YATES, and KIMBERLY SOLOMON-ROBINSON, individually and on behalf of a class of similarly situated persons, | CIVIL ACTION<br><br>No. 2:20-CV-4318<br><br>Hon. Gerald J. Pappert |

        Plaintiffs,

   v.

WELLS FARGO BANK, N.A.,

        Defendant.

---

**OBJECTION OF SHAWN DAVID HUMMEL**

I, Shawn David Hummel, object to the proposed settlement of the above-captioned class action lawsuit.

    1.    In compliance with the September 15, 2023, Order Preliminarily Approving Settlement and Providing for Notice, I hereby supply the following information with my Objection.

    (a)    As reflected in the caption above, the case name is *Sorace, et al. v. Wells Fargo Bank, N.A.*; and the case number is 2:20-cv-04318-GJP.

    (b)    I am an objecting class member, and my name, address and telephone number are:

        Shawn David Hummel
        2361 E. Becker Ave.
        Pittsburgh, PA 15212
        (412) 759-4944

I am represented by counsel, and the names, address, and telephone number of my attorneys are:

        Aurelius P. Robleto, Esq.

PA ID No. 94633
ROBLETO KURUCE, PLLC
6101 Penn Ave., Ste. 201
Pittsburgh, PA 15206
Tel: (412) 925-8194
Fax: (412) 346-1035

Renée M. Kuruce, Esq.
PA ID No. 314691
ROBLETO KURUCE, PLLC
6101 Penn Ave., Ste. 201
Pittsburgh, PA 15206
Tel: (412) 925-8194
Fax: (412) 346-1035

(c)     This Objection has been personally signed by me and/or my counsel.

(d)     The bases and grounds for this Objection are set forth with specificity in the accompanying *Objection to Approval of Proposed Settlement Agreement of Settlement Class Members, Jennifer Lynn Hummel and Shawn David Hummel*, which I hereby ratify, adopt, and incorporate herein by reference, together with all of its attached copies of papers, exhibits, and other evidence sought to be presented to the Court in support of my Objection.

(e)     My attorney(s) will appear on my behalf at the Final Approval Hearing on January 31, 2024.  However, I do not intend to appear personally at the Final Approval Hearing.

2.     In compliance with Federal Rule of Civil Procedure 23(e)(5)(A), I hereby state that my Objection applies to all members of the proposed settlement class.  Nevertheless, a portion of my Objection applies to a specific subset of the proposed settlement class.  Specifically, along with my spouse and a discrete segment of the settlement class, I hold known claims against Wells Fargo that are not addressed in the settlement but that, nevertheless, would be released under it.

EXECUTED:  December 9, 2023

Shawn David hummel
_____
Shawn David Hummel

_____
Aurelius P. Robleto, Esq.

Signature: _____
Shawn Hummel (Dec 9, 2023 22:15 EST)
**Email:**  2good4u12955@gmail.com

2

# Shawn Hummel Objection Signature Form

**Final Audit Report**                                                2023-12-10

| | |
|---|---|
| Created: | 2023-12-07 |
| By: | Renee Kuruce (rmk@robletolaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAvgVnQU2eaQNWBLhdB5aGYLH-QfKYI-mR |

## "Shawn Hummel Objection Signature Form" History

📄 Document created by Renee Kuruce (rmk@robletolaw.com)
2023-12-07 - 9:48:33 PM GMT- IP address: 50.233.78.166

✉ Document emailed to Shawn Hummel (2good4u12955@gmail.com) for signature
2023-12-07 - 9:48:40 PM GMT

📄 Email viewed by Shawn Hummel (2good4u12955@gmail.com)
2023-12-07 - 9:48:48 PM GMT- IP address: 66.102.8.73

📄 Email viewed by Shawn Hummel (2good4u12955@gmail.com)
2023-12-09 - 10:35:21 PM GMT- IP address: 66.102.8.75

📄 Email viewed by Shawn Hummel (2good4u12955@gmail.com)
2023-12-10 - 3:13:12 AM GMT- IP address: 66.102.8.65

✍ Document e-signed by Shawn Hummel (2good4u12955@gmail.com)
Signature Date: 2023-12-10 - 3:15:12 AM GMT - Time Source: server- IP address: 174.242.35.146

✅ Agreement completed.
2023-12-10 - 3:15:12 AM GMT

**Adobe Acrobat Sign**