# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENT SORACE, JOSEPH YERTY, TAMMY YERTY, JAMES ZARONSKY, LINDA ZARONSKY, VIKTOR STEVENSON, ASHLEY YATES, and KIMBERLY SOLOMON-ROBINSON, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | CIVIL ACTION<br><br>No.: 2:20-CV-4318 |

## DECLARATION OF ROBERT L. ROSSI IN SUPPORT OF REQUEST FOR AN AWARD OF ATTORNEYS' FEES

I, Robert L. Rossi, do hereby state as follows:

I have been asked by Attorney Richard Shenkan, counsel for plaintiffs in *Sorace v. Wells Fargo Bank, N.A.*, United States District Court, Eastern District of Pennsylvania, to express an opinion regarding the amount of attorneys' fees to be awarded to class counsel in the instant case, particularly with respect to the reasonableness of the amount sought by class counsel in light of the relief obtained by virtue of the settlement. This Declaration comprises that opinion, and I state all my opinions herein to a reasonable degree of professional certainty.

### QUALIFICATIONS

I graduated from Dartmouth College in 1973, received my J.D. degree from Boston College Law School in 1976, and have been admitted to practice law since January 1977.



I am presently a member of the Maine bar, have previously been admitted to the California and Massachusetts bars, and have also been admitted to practice before the First, Second, Fourth, Sixth, and District of Columbia Circuit Courts of Appeal.

I am a resident of Portland, Maine, with a principal office in that city.

I am the author of the two-volume treatise, *Attorneys' Fees (2d edition)*, which was published by Lawyers Cooperative Publishing in 1995, as well as the updated edition of that treatise, *Attorneys' Fees (3d edition)*, originally published by West Group in 2001. From 1991 through 1994 I authored the yearly supplements to the First Edition of *Attorneys' Fees*. After the publication of the second edition and third editions, respectively, I continued to author the yearly supplements to the treatise, as well as yearly updated chapters.

During the course of my preparation of each yearly supplement, I reviewed the head notes for several hundred new cases, read all or part of approximately 200 cases, and included excerpts from approximately 100-150 cases in each supplement.

My preparation of the manuscript for the second edition of the treatise took approximately three years. During the course of preparing that manuscript, I personally reviewed and/or read several thousand cases concerning the subject of attorneys' fees. The preparation of the manuscript for the third edition also resulted in an extensive review of cases beyond those that had been included in the prior supplements. In addition, for each of the last twenty (20) years I have revised and updated chapters of the third edition of the book, which has also involved an extensive review of cases beyond those included in the intervening supplements. All of the above-described work was personally done by me without any assistance.

I have consulted and provided expert testimony in state and federal court cases on the subject of attorneys' fees for attorneys in several jurisdictions, including Louisiana, Massachusetts, Missouri, Texas, Vermont, mltiple federal courts, and Multidistrict Litigation in the District of Nevada. This has involved attorney-client fee disputes as well as applications for court-awarded fees in class actions.

I have over 40 years of experience as an attorney, principally as a legal researcher and writer, and have briefed and orally argued over 50 appellate cases in state and federal courts.

I have reviewed the following documents filed in this case which are pertinent to the matter on which I have been asked to give an opinion: Notice of Proposed Class Action Settlement; Plaintiffs' Motion for Preliminary Settlement Approval, Certification of the Settlement Class, and Approval of Class Settlement Notice; Plaintiffs' Memorandum of Law in Support of Their Motion for Preliminary Approval, Conditional Certification of Settlement Class, and Approval of Class Notice; Class Action Settlement Agreement and Release; [Proposed] Order Preliminarily Approving Settlement and Providing for Notice; and [Proposed] Final Judgment and Order of Dismissal with Prejudice.

## OPINION

1. The instant case is a common fund case, and the Third Circuit has made it clear that the percentage-of-the-fund method is generally favored in common fund cases. *E.g.*, *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3rd Cir. 2011); *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294 (3d Cir. 2005). While courts frequently employ a lodestar cross-check to determine the reasonableness of a fee award under the percentage method, *Sullivan v. DB Investments, Inc.*, 667

F.3d 273 (3rd Cir. 2011), courts have not explicitly required it. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) (lodestar cross-check is only "advisable"). *See also Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ("we have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach").

    2. Settlements in common-fund cases often include benefits to the class other than cash. When that is the case, questions may arise as to whether such non-cash benefits can be quantified, and whether they should be included in the gross recovery for purposes of calculating a percentage-of-the fund attorneys' fee.

    3. In the present case, there are several items of recovery that provide benefits to the class:

    (a) The creation of a $15 million settlement fund, to be distributed as refunds to those class members who made payments on any deficiency balances on their accounts, and to all class members on a per account basis, both after payment of Incentive Awards to the class representatives, payment of settlement administration costs, and payment of Attorneys' Fees and Expenses;

    (b) the compromise of Deficiency Balances, which provide a benefit worth approximately $65 million, calculated according to Wells Fargo's records.

    (c) credit repair relief in the form of an agreement by the defendant to transmit a request to the three major Credit Reporting Agencies requesting that they delete the entire credit tradeline associated with all Class Members' Accounts.

4. The first two items set forth above — the $15 million cash payment, and the compromise of all deficiency balances — are easily quantifiable, and total almost $80 million. Case law in this district has approved of including the value of such debt forgiveness in calculating the total settlement value for purposes of applying the percentage-of-recovery method in making a fee award. *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000).

5. If the $80 million figure is taken as the settlement value, the fee sought by class counsel ($6.0 million) is only 7.5% of the total settlement value. Given that the majority of fee awards in common fund cases range between 20-30% of the fund, *see* 1 Rossi, Attorneys' Fees (3d ed.) § 7:9, this percentage figure is certainly reasonable.

6. In addition, while the credit repair relief set forth as item (c) above is more difficult to quantify, courts have recognized that this type of relief provides a tangible benefit and adds value to a settlement, and in one case in this district the court estimated that the value of the credit repair relief was equal to the cash component of the settlement. *Ciccarone v. B.J. Marchese, Inc.*, 2004 WL 2966932 (E.D. Pa. Dec. 22, 2004). In this case, that would add an additional $15 million to the settlement value, for a total of almost $95 million.

7. Therefore, in my opinion, whether or not the value of the credit repair relief is included in the total settlement value, the fee requested is well within the parameters of a "reasonable fee" utilizing a percentage-of-the-fund method, and thus, under any reasonable calculation of the total settlement value, it is my opinion that the $6 million fee requested by class counsel is reasonable.

8. The Declaration of Judge Diane Welsh, who acted as the mediator in this case and assisted the parties in achieving the settlement, shares a similar assessment of the reasonableness of Class Counsel's requested attorney fee of $6 million. She states, in her Declaration, that "an

attorney fee of $6 million, representing approximately 7.5% of the aggregate benefit conferred ($15 M in cash plus $65M in compromised Deficiency Balances)...is reasonable....".

9. The reasonableness of the fee request is further bolstered by the language in Judge Welsh's Declaration setting forth the mechanics of the negotiation process in this case, and making it clear that the amount of the requested fee award was negotiated separately from the merits.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 24, 2024            _Robert L. Rossi_
                                    Robert L. Rossi